## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. _____

RUTH MARK;

and those similarly situated;

      Plaintiffs,

v.

O.P.E.N. AMERICA, INC., d/b/a OPENWORKS;

      Defendants.

---

## CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

---

### INTRODUCTORY STATEMENT

1.     O.P.E.N. America, Inc., d/b/a OpenWorks ("OpenWorks") is a cleaning company, but it claims not to employ cleaners. Instead, it requires its workers—many of whom are recent immigrants to the United States—to incorporate into separate LLCs and enter into franchise agreements under which they purportedly operate as independent companies.

2.     OpenWorks's misclassification of its employees not only allows OpenWorks to skirt state and federal labor and employment laws. It also allows it to charge its workers predatory franchise fees and other costs, many of which it finances for its workers, indenturing them to OpenWorks with extraordinary debt that often exceeds what OpenWorks's workers are able to earn through their work.

3.      The entire scheme is made possible by fraud. OpenWorks recruits it workers with the false promise that they will own a successful and independent business. It purposefully inflates the success rates of its franchisees and misrepresents and obscures the extraordinary costs of working for OpenWorks.

4.      OpenWorks tells its workers that they are independent businesses, but it retains for itself sole authority to contract with customers. This includes negotiating rates, setting the times when cleaning work should be performed, and establishing the scope of work for its cleaning workers at client facilities. OpenWorks even retains full authority to contract with its clients for any work performed by OpenWorks cleaners outside of the pre-negotiated scope of work.

5.      OpenWorks also assigns workers to customers. While OpenWorks allows its workers some freedom in selecting among clients, OpenWorks picks and chooses its favorite workers, giving them the best assignments, while failing to provide meaningful work opportunities for the vast majority of its cleaning workers.

6.      Meanwhile, OpenWorks prevents its cleaning workers from performing any other commercial cleaning work for anyone else during the course of their employment and for two years after. If OpenWorks cleaning workers want to work in commercial cleaning, they have no other option but to work for OpenWorks at rates negotiated by OpenWorks, during hours arranged by OpenWorks and its clients, and to perform the cleaning tasks OpenWorks has agreed to perform for its clients.

7.      The predatory nature of OpenWorks employment and the absurdity of its

misclassification scheme is illustrated by Plaintiff Ruth Mark's experience working for the

company. Mark was promised a small business with a sure path to success, but she ended up

being buried by debt and working brutal hours for meager pay.

8.      In March 2017, Mark sent a text message to her supervisor at OpenWorks

explaining that "since yesterday my heart is troubling,no sleep,no future,nothing seems to be

good. . . .if this continues i don't know if i can continue with this job because right now I

have serious headache. I may develop heart problems. I asked my self are my slave or

employee."

9.      In response, Ms. Mark's supervisor reminded her that, according to

OpenWorks, she was neither a slave nor an employee, but rather a small business owner:

"Building a business is hard work, and this isn't just a job, it's your business."

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331

(federal question), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's

related claims under state law.

11.     Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events

giving rise to Plaintiff's claims occurred in this District, where Plaintiff Ruth Mark and many

other OpenWorks employees have performed cleaning work.

**PLAINTIFF**

12.     Plaintiff Ruth Mark is domiciled in Colorado and was domiciled in Colorado during her work for OpenWorks.

13.     Plaintiff has signed a written consent to be named as a Plaintiff in a FLSA collective action.  The signed consent form is attached as Exhibit 1.

**DEFENDANT**

14.     Defendant OpenWorks is a large, national cleaning company that cleans commercial, industrial, and office facilities in several states.

15.     OpenWorks is an Arizona corporation with its principal place of business in Arizona.

**PLAINTIFF RUTH MARK'S EMPLOYMENT BY OPENWORKS**

16.     Plaintiff Ruth Mark immigrated to Colorado from East Africa in 2011 in order to be reunited with her husband, a refugee from South Sudan.

17.     Mark began working for OpenWorks as a cleaning worker in December 2016.

18.     While she did not understand much about the purported differences between being a franchisee and an employee, she knew that the company had promised her that she would be successful, as they claimed nearly all their other cleaning workers had been.

19.     Mark was particularly attracted to the idea that OpenWorks would allow her to achieve the American Dream of economic security—something she had not yet been able to achieve in the United States.

20.     In exchange for the opportunity to work for them, OpenWorks required Mark to pay it an initial start-up fee of $15,200, paid for with an initial down payment of $5,000, with the remaining $10,200 financed through OpenWorks to be paid over a two-year period.

21.     This initial start-up fee did not include other costs OpenWorks required Mark to pay, including a background check fee, expenses during training, uniforms, the costs of forming an LLC, and other expenses.

22.     While Mark was reticent to pay so much money for the opportunity to work, OpenWorks also promised her that she would receive $3,000 per month for her work cleaning for OpenWorks at its clients' facilities.

23.     Relying on OpenWorks's misrepresentations regarding the success of its cleaning workers, Mark decided to sign up to be an OpenWorks cleaner.

24.     During her time working for OpenWorks, Mark cleaned commercial office buildings and schools for OpenWorks and its clients.

25.     Mark worked long hours, often more than 40 hours a week, and usually very late at night, under severe pressure from OpenWorks.

26.     For all this work, Mark received almost no pay and ended up being buried in debt.

27.     In addition to the initial start-up fee, OpenWorks also required Mark to pay, among other things, an administrative fee of 15% of her revenue, premiums for insurance provided by OpenWorks, a fee for advertising provided by OpenWorks, and a fee to "purchase" the opportunity to clean for any clients beyond the initial clients whose facilities

5

Mark had agreed to clean for OpenWork. This fee—sometimes described by OpenWorks as a "marketing fee"—was triple the monthly billing price purportedly paid by these clients.

28.     In addition to the initial amount financed by OpenWorks to cover the remainder of Mark's start-up fee, OpenWorks also financed for Mark several "marketing fees." The costs of financing those fees included interest rates of 12% per year.

29.     For example, in July 2017, Mark purchased the opportunity to clean for OpenWorks at Illiff Preschool in Denver. The marketing fee Mark had to pay to clean the Illiff Preschool was $4,680, paid off with a down payment of $468.00 and 24 consecutive payments

30.     Mark paid off her loans to OpenWorks (for the initial payment and subsequent marketing fees) through monthly deductions off her paychecks.

31.     Including Mark's initial down payment to OpenWorks and her down payments on marketing fees, the monthly deductions, including monthly costs and installment payments on her loans, reduced her paychecks to substantially below minimum wage. For example, taking into her initial fees, Mark worked well below minimum wage—and indeed had to *pay* for the privilege of working for OpenWorks for the first several weeks of her work for OpenWorks.

32.     Mark also worked overtime for Openworks, including during the week of October 22 through October 29, 2017, when Mark worked for approximately 43 hours.

33.     Mark ultimately stopped working for OpenWorks in November 2017. When she left, she owed OpenWorks thousands of dollars on several promissory notes.

## ALLEGATIONS SUPPORTING
## PLAINTIFF'S WAGE-AND-HOUR CLAIMS

34.     OpenWorks's business model depends on the misclassification of cleaning workers as independent franchisees.

35.     OpenWorks's principal function is cleaning and maintaining facilities for customers, yet OpenWorks purports not to employ cleaners.

36.     Instead, it misclassifies its workers as independent franchisees.

37.     OpenWorks substantially controls and supervises the work of its cleaners through several means, including as follows:

38.     OpenWorks provides extensive training to its workers on its method of cleaning. Before beginning work for OpenWorks, each cleaning worker is required to participate in an approximately 40-hour in-depth training program provided by OpenWorks, which instructs OpenWorks cleaning workers on OpenWorks standard cleaning practices and procedures in client facilities.

39.     For example, OpenWorks required Plaintiff Mark to attend a multi-day training led by OpenWorks District Manager Ed Smykowski beginning in September 2016.

40.     OpenWorks does not pay its cleaning workers for this training and did not pay Plaintiff Mark anything for her required training in September 2016.

41.     OpenWorks is exclusively responsible for negotiating contracts with potential clients, including the scope of work OpenWorks will perform for the client, the schedule for cleaning the clients' facilities, and the price the client will pay OpenWorks for cleaning and maintenance work.

42.     Indeed, OpenWorks prohibits clients from discussing with OpenWorks cleaners contracting matters, including the amount OpenWorks clients pay OpenWorks for its cleaning services.

43.     After OpenWorks has negotiated a cleaning contract with a client, it works to pair OpenWorks cleaning workers with clients. It purports to give OpenWorks cleaning workers some autonomy in selecting clients, but it does not give workers any autonomy in negotiating prices with clients.

44.     If a client later asks OpenWorks to perform work outside of the "scope of work" it negotiated with the client, OpenWorks negotiates the price of that work—sometimes referred to as a "tag job"—and requires OpenWorks's cleaning workers to perform it.

45.     Further, and as discussed further below, OpenWorks does not give all its cleaning workers the same opportunities to clean for OpenWorks's clients. While some smaller clients may be presented to the bulk of OpenWorks cleaning workers, bigger clients that would result in more pay for OpenWorks cleaners are only provided to a handful of OpenWorks favorite cleaners. In this way, OpenWorks retains control over its workers' opportunities for profit or loss.

46.     OpenWorks has admitted to this policy. In a text message he sent to Mark in March 2017, an OpenWorks supervisor explained that in assigning jobs to OpenWorks cleaners, OpenWorks has to consider "who we think is the best candidate for a building, etc., that's the nature of the business."

47.     OpenWorks sends an OpenWorks supervisor to conduct periodic site visits and irregular drop-in visits at client sites to monitor the work of OpenWorks cleaning workers.

48.     When OpenWorks supervisors do not approve of the work being performed by OpenWorks workers, they reprimand the workers and direct them to perform their work differently or to add additional work.

49.     OpenWorks has the right to terminate any particular cleaning worker's work on any particular cleaning account on several different grounds including, among others, the client's dissatisfaction with the work of the OpenWorks cleaning worker and the OpenWorks cleaning worker not being fluent in English.

50.     OpenWorks supervisors frequently instruct cleaning workers to perform work that is outside of the scope of work negotiated by OpenWorks and the client.

51.     For example, in January 2017, a client whose facilities Mark was then cleaning left a note for Mark asking her to clean a window that she thought fell outside of her scope of work. OpenWorks's District Manager nonetheless asked Mark to clean the window for the client.

52.     OpenWorks serves as the intermediary between the clients and OpenWorks cleaners, and in doing so, requires OpenWorks cleaners to respond to client concerns in a manner and at times prescribed by OpenWorks.

53.     For example, on June 7, 2017, another OpenWorks supervisor contacted Mark to ask her to meet him at a client location in Arvada, Colorado. Mark was not

scheduled to visit the client that day and told her supervisor that she would not be able to meet him there. The supervisor told Mark that he had to meet with her that day or the next day to discuss an important client issue.

54.     OpenWorks requires its cleaning workers to wear OpenWorks uniforms while cleaning for OpenWorks clients.

55.     OpenWorks provides OpenWorks cleaning workers with a "starting kit" of supplies and tools. Once OpenWorks cleaning workers have exhausted the materials in the "starting kit," OpenWorks requires them to purchase their own tools and supplies, but requires that any cleaning products they use be "certified" by OpenWorks. If OpenWorks has not yet certified a product that a cleaning worker wants to use, the worker may seek certification from OpenWorks, but the cleaning worker must pay OpenWorks for the costs of certifying the product.

56.     OpenWorks's close supervision of its workers is not the product of a few overzealous supervisors. It too is central to the company's business model.

57.     OpenWorks attracts clients by assuring them that OpenWorks cleaning workers are trained and supervised by OpenWorks. In a video advertisement targeting potential clients, OpenWorks explains that it maintains high-quality work and low turnover of cleaning workers because it "train[s], support[s], and motivate[s] only the best."

58.     OpenWorks also explains that this training and support are designed to foster "uniformity" among OpenWorks cleaning workers. In another video, the company explains that "while [its cleaning sites] benefit from [OpenWorks's] uniform product and processes,

[OpenWorks] is constantly improving, taking best practice, testing them, and implementing them *uniformly* so everyone benefits" (emphasis added).

59.     The relationship between OpenWorks and its cleaning workers is an ongoing, exclusive, and relatively permanent relationship. OpenWorks forces its cleaning workers to sign a covenant not to compete that prevents them from working in commercial janitorial services for anyone besides OpenWorks during the entire course of their employment with OpenWorks and for a period of 24 months thereafter.

## ALLEGATIONS SUPPORTING PLAINTIFF'S FRAUD CLAIMS

60.     OpenWorks is only able to maintain its profitable scheme—which involves recovering massive fees from its own employees, fees that often far outpace the amounts it pays its employees—by defrauding its cleaning workers regarding the likelihood they will succeed as an OpenWorks cleaner.

61.     In September 2016, when Mark had not yet signed an agreement to work for OpenWorks, an OpenWorks supervisor told Mark that over 95% of OpenWorks franchises are open and operating after five years.

62.     During that same conversation, an OpenWorks supervisor also explained that "[o]ther companies measure themselves on how many franchises they sell. But at OpenWorks, we are different because we measure ourselves on how successful our franchisees become. Our success really depends on your success."

63.     OpenWorks knows or should know that this statements highly overstate the success rate of OpenWorks franchisees. Based solely on the number of closed franchises

listed in a franchise disclosure document provided to Plaintiff Mark, nearly half of

OpenWorks's franchisees close within a five-year period.

64.     The purpose of this misrepresentation is to convince potential franchisees that

they are making a wise investment that is almost sure to pay off, when in reality, OpenWorks

understands that very few of its cleaning workers succeed.

65.     Mark relied on misrepresentations regarding the success rate of OpenWorks

franchisees in deciding to pay OpenWorks its start-up fees. Had Mark known the likelihood

that she would fail, she would not have invested in OpenWorks.

## ALLEGATIONS SUPPORTING
## PLAINTIFF'S CLAIMS REGARDING DISTRIBUTION OF ACCOUNTS

66.     OpenWorks suggests to its cleaning workers that they are independent

entrepreneurs with equal opportunities to obtain accounts through OpenWorks.

67.     In fact, OpenWorks cleaning workers rely on OpenWorks to find and assign

them clients.

68.     OpenWorks suggests that all cleaning workers will have an equal opportunity

to access accounts, but it cherry picks the biggest accounts for its favorite cleaning workers

and gives smaller accounts to less favored workers.

69.     On several occasions, OpenWorks did not provide Mark with an opportunity

to clean for a client which would have provided Mark with substantially more revenue or

which would be more convenient for her. Instead, OpenWorks decided to assign those

contracts to other OpenWorks cleaning workers or decided to only allow a small set of

workers to compete over those contracts.

## 29 U.S.C. § 216(B) COLLECTIVE ACTION ALLEGATIONS

70.     Plaintiff brings her FLSA claim for unpaid wages and overtime (Count I) as a

collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all

other similarly situated current and former employees of OpenWorks.

71.     Pending any modifications necessitated by discovery, Plaintiff preliminarily

defines the "216(b) Class" as follows:

> ALL CURRENT AND FORMER CLEANING WORKERS
> EMPLOYED BY OPENWORKS WHILE BEING
> CLASSIFIED AS FRANCHISEES

72.     All potential FLSA Class Members are similarly situated because, among other

things, they were all employed by OpenWorks even while being classified by Defendant as

independent franchisees. Considering deductions off their wages they were also all injuried

by OpenWorks policies of:

a.   failing to pay overtime premiums;

b.   failing to compensate employees for all of the time they worked; and

c.   failing to pay class members at least statutory minimum wage on each pay day as

   mandated by the FLSA.

## RULE 23 WAGE-AND-HOUR CLASS ALLEGATIONS

73.     Plaintiff asserts Counts II as a Fed R. Civ P. 23 class action on her own behalf

and on behalf of class for which she seeks certification.

74.     Pending any modifications necessitated by discovery, Plaintiff preliminarily

defines a class (the "Rule 23 Colorado Wage-and-Hour Class") as follows:

ALL CURRENT AND FORMER CLEANING WORKERS
EMPLOYED BY OPENWORKS IN COLORADO

75.     The class is so numerous that joinder of all potential class members is impracticable.  Plaintiff does not know the exact size of the classes because that information is within the control of Defendant. However, Plaintiff estimates that the Rule 23 Colorado Wage-and-Hour Class includes approximately 50 people based on statements made by Defendant and expected turnover during the period OpenWorks has operated in Colorado.

76.     There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include Defendant's misclassification of its cleaning workers as franchisees.

77.     The class claims asserted by Plaintiff are typical of the claims of all the potential Class Members because Plaintiff experienced the same or similar harm in the form of misclassification and deductions off her wages that resulted in her being paid substantially less than minimum wage.

78.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy.

79.     Plaintiff will fairly and adequately protect and represent the interests of the Class. She was a victim of the same violations of law as the other class members, including numerous violations of federal and state wage-and-hour laws.

80.     Plaintiff is represented by counsel experienced in litigation on behalf of low-wage workers and in wage-and-hour class actions.

81.     The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendant.

82.     Plaintiff is unaware of any member of the Class who is interested in presenting his or her claims in a separate action.

83.     Plaintiff is unaware of any pending litigation commenced by putative class members.

84.     This class action will not be difficult to manage due to the uniformity of claims among putative class members and the susceptibility of the claims to both class litigation and the use of representative testimony and representative documentary evidence.

85.     The contours of the class will be easily defined by reference to Defendant's documents regarding OpenWorks's cleaning workers.

## RULE 23 NATIONWIDE CLASS

86.     Plaintiff asserts Counts III-VI as a Fed R. Civ P. 23 class action on her own behalf and on behalf of classes for which she seeks certification.

87.     Pending any modifications necessitated by discovery, Plaintiff preliminarily defines a class (the "Rule 23 Nationwide Class") as follows:

> ALL CURRENT AND FORMER CLEANING WORKERS
> EMPLOYED BY OPENWORKS

88.     The class is so numerous that joinder of all potential class members is impracticable.  Plaintiff does not know the exact size of the class because that information is

within the control of Defendant. However, Plaintiff estimates that the Rule 23 Nationwide

Class includes over 300 members.

89.     There are questions of law or fact common to the class that predominate over

any individual issues that might exist. Common questions of law and fact include:

Defendant's misrepresentations regarding the likely success of OpenWorks franchisees and

Defendant's practices regarding the distribution of client accounts to OpenWorks cleaning

workers.

90.     The class claims asserted by Plaintiff are typical of the claims of all the

potential Class Members because OpenWorks communicated the same misrepresentations

to Plaintiff as it did to all other class members. A class action is superior to other available

methods for the fair and efficient adjudication of this controversy because numerous

identical lawsuits alleging similar or identical causes of action would not serve the interests of

judicial economy.

91.     Plaintiff will fairly and adequately protect and represent the interests of the

class. She was a victim of the same violations of law as the other class members, including

numerous violations of Arizona law.

92.     Plaintiff are represented by counsel experienced in litigating class actions on

behalf of workers and consumers.

93.     The prosecution of separate actions by the individual putative class members

would create a risk of inconsistent or varying adjudications with respect to individual

potential class members that would establish incompatible standards of conduct for Defendants.

94.     Plaintiff is unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

95.     Plaintiff is unaware of any pending litigation commenced by putative class members.

96.     It is desirable to concentrate this litigation in this forum because some of the contracts at issue were entered into in this jurisdiction and Plaintiff is domiciled in this jurisdiction.

97.     This class action will not be difficult to manage due to the uniformity of claims among putative class members and the susceptibility of these claims to both class litigation and the use of representative testimony and representative documentary evidence.

**COUNT I:**
**BREACH OF THE FAIR LABOR STANDARDS ACT ("FLSA"),**
**29 U.S.C. §§ 201 ET SEQ.**
**(PLAINTIFF AND THE NATIONWIDE FLSA CLASS)**

98.     Plaintiff incorporate by reference all previous and subsequent paragraphs of this Complaint.

99.     Plaintiff bring her FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of all other similarly situated current and former employees of Defendant.

100.     Defendant employed Plaintiff.

101.    Defendants is an enterprise with annual revenues in excess of $500,000 during Plaintiff's employment, and which had two or more employees that handled goods or materials that had been moved in or produced for interstate commerce. Defendant was therefore an enterprise or enterprises engaged in commerce pursuant to 29 U.S.C. § 203(s)(1).

102.    During her employment, Plaintiff and those similarly situated were also engaged in commerce pursuant to 29 U.S.C. § 203(b).

103.    As the employer of Plaintiff and those similarly situated, Defendant was required to pay the Plaintiff and those similarly situated minimum wage and overtime pursuant to 29 U.S.C. §§ 206, 207 and failed to do so.

104.    The failure to pay minimum wage and overtime was willful pursuant to 29 U.S.C. § 255(a) because Defendant knew or showed reckless disregard for the fact Plaintiff and those similarly situated were non-exempt employees covered by the FLSA and therefore entitled to minimum wage and overtime.

105.    Plaintiff and those similarly situated are therefore entitled to the following pursuant to 29 U.S.C. § 216: unpaid minimum wage and overtime, statutory liquidated damages, reasonable attorney's fees, and costs.

**COUNT II:**
**VIOLATION OF COLORADO MINIMUM WAGE AND OVERTIME LAW,**
**COLO REV. STAT., §§ 8-6-101, ET SEQ., 8-4-101, ET SEQ.**
**(PLAINTIFF AND THE RULE 23 WAGE-AND-HOUR CLASS AGAINST**
**DEFENDANT)**

106.    Plaintiff incorporates by reference all previous and subsequent paragraphs of

this Complaint as if fully re-written herein.

107.    Defendant employed Plaintiff and the Rule 23 Wage-and-Hour Class.

108.    Defendants failed to pay Plaintiff and the Rule 23 Wage-and-Hour Class

minimum wage and overtime premiums.

109.    Plaintiff and the Nationwide Class seek recovery of these wages and additional

damages, costs, and attorney's fees pursuant to Colorado law.

**COUNT III:**
**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**
**ARIZ. REV. STAT. § 44-1522**
**(PLAINTIFF AND THE NATIONWIDE RULE 23 CLASS AGAINST**
**DEFENDANT)**

110.    Plaintiff incorporates by reference all previous and subsequent paragraphs of

the Complaint.

111.    By purposefully misrepresenting the success rates of OpenWorks franchisees,

OpenWorks made material misrepresentations regarding the sale of the OpenWorks

franchise with the intent that Mark and other members of the Nationwide Rule 23 Class rely

on those misrepresentations and enter into franchise agreements with OpenWorks.

112.    Plaintiff Mark and other members of the Rule 23 Nationwide Class in fact relied on OpenWorks's material misrepresentations regarding the success rates of OpenWorks franchisees to their detriment, resulting in harm.

113.    Plaintiff and the Rule 23 Nationwide Class are therefore entitled by statute to actual, compensatory, and punitive damages.

### COUNT IV:
### FRAUD UNDER ARIZONA LAW
### (PLAINTIFF AND THE NATIONWIDE RULE 23 CLASS AGAINST DEFENDANT)

114.    Plaintiff incorporates by reference all previous and subsequent paragraphs of the Complaint.

115.    By purposefully misrepresenting the success rates of OpenWorks franchisees, OpenWorks made material misrepresentations of fact regarding knowing that they were false with the intent that Mark and other members of the Nationwide Rule 23 Class rely on those misrepresentations and enter into franchise agreements with OpenWorks.

116.    Plaintiff Mark and other members of the Rule 23 Nationwide Class reasonably and in fact relied on OpenWorks's material misrepresentations regarding the success rates of OpenWorks franchisees, believing them to be true, and acted upon those misrepresentations by investing in OpenWorks, which they would not have had OpenWorks accurately communicated franchisee success rates.

117.    Plaintiff Mark and members of the Rule 23 Nationwide Class were thus injured by Defendant's misrepresentations.

118.    Plaintiff and the Rule 23 Nationwide Class are therefore entitled to actual,

compensatory, and punitive damages.

## COUNT V:
## NEGLIGENT MISREPRESENTATION UNDER ARIZONA LAW
## (PLAINTIFF AND THE NATIONWIDE RULE 23 CLASS AGAINST
## DEFENDANT)

119.    OpenWorks failed to exercise reasonable care in communicating to Plaintiff

Mark and other members of the Rule 23 Nationwide Class the success rates of OpenWorks

franchisees.

120.    OpenWorks had a pecuniary interest in Plaintiff Mark's purchase of an

OpenWorks franchise and in similar purchases made by members of the Rule 23 Nationwide

Class.

121.    The information supplied by OpenWorks to Plaintiff and other members of

the Rule 23 Nationwide Class regarding the success rates of OpenWorks franchisees was

false.

122.    Plaintiff and the Rule 23 Nationwide Class are therefore entitled to actual,

compensatory, and punitive damages.

## COUNT VI:
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING UNDER
## ARIZONA LAW
## (PLAINTIFF AND THE NATIONWIDE RULE 23 CLASS AGAINST
## DEFENDANT

123.    Plaintiff incorporates by reference all previous and subsequent paragraphs of

their Complaint.

124.    Because of its contractual relationship with Mark and other members of the Rule 23 Nationwide Class, Defendant had a duty of good faith and fair dealing respecting its ongoing dealings with Mark and other OpenWorks franchisees.

125.    By denying Mark access to desirable accounts, Defendant breached its duty of good faith and fair dealing, causing Mark harm.

126.    Plaintiff and the Rule 23 Nationwide Class are therefore entitled to actual, compensatory, and punitive damages.

## DEMAND FOR JURY TRIAL

127.    Plaintiff demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

128.    Plaintiff respectfully request an Order from this Court:

   a. certifying the FLSA opt-in classes and issuing prompt notice to members of the FLSA classes;

   b. certifying the Rule 23 classes, naming the named Plaintiff class representative, and naming Plaintiff's counsel class counsel;

   c. granting judgment in favor of all Plaintiff and against all Defendant;

   d. awarding Plaintiff and the Rule 23 classes their damages and penalties under state and federal laws;

   e. awarding Plaintiff and those similarly situated, unpaid minimum wage, unpaid overtime, and liquidated damages pursuant to the FLSA (29 U.S.C. §§ 201 *et seq.*);

f.   awarding Plaintiff and those similarly situated their costs;

g.   awarding Plaintiff and those similarly situated their attorney's fees;

h.   awarding Plaintiff and members of the classes and sub-classes all

appropriate equitable and injunctive relief;

i.   granting such other relief as this Court deems just and proper;

j.   injunctive relief prohibiting Defendant from future discriminatory

and illegal practices as described herein and requiring Defendant to

adopt policies and procedures to eradicate the effects of past

discriminatory and illegal practices;

k.   compensatory damages, including for emotional distress, as allowed

by law;

l.   punitive, exemplary, and liquidated damages as allowed by law;

m.   awarding Plaintiff and those similarly situated prejudgment and post-

judgment interest, when allowable by law.

Respectfully submitted this September 20, 2018.

*s/ David Seligman*
David H. Seligman
Alexander N. Hood
Towards Justice
1410 High St., Suite 300
Denver, CO 80218
Tel.: 720-248-8426
Fax: 303-957-2289
Email: alex@towardsjustice.org
david@towardsjustice.org
*Attorneys for Plaintiff*