EXHIBIT
A

## DECLARATION OF KATRINA HUGHES

I, Katrina Hughes, declare under the penalty of perjury:

1.     I am over 18 years of age and am competent to make this affidavit.

2.     I am a Divisional Vice President of O.P.E.N. America, Inc., d/b/a OpenWorks ("OpenWorks") and have held this position since December, 2016.  Before that time, I was the Colorado Regional Director of OpenWorks.  I am duly authorized to make this Declaration.

3.     This Declaration is based upon my own non-privileged personal knowledge, my review of non-privileged documents and records available to me that are kept in the ordinary course of the operation of OpenWorks's business, non-privileged information provided to me by persons upon whom I regularly rely in the ordinary course of my duties as OpenWorks's Divisional Vice President and I would testify to such matters were I called to do so.

4.     OpenWorks is an Arizona corporation with its principal place of business located in Phoenix, Arizona. Its business is to license the OpenWorks name, trademark, and standardized business operations to independent franchisees in exchange for a franchise fee. OpenWorks does not own or operate any of the OpenWorks branded commercial janitorial business.  OpenWorks also does not control the day-to-day operations of any of its franchisees. Instead, independent franchisees own and operate each OpenWorks franchised janitorial services businesses that offers commercial janitorial services to OpenWorks's clients.

5.     Specifically, OpenWorks enters into janitorial services contracts with commercial clients.  These accounts may then be packaged with other similar contracts to culminate at one of seven (7) levels of a gross monthly dollar amount (the "initial monthly account volume") and assigned to OpenWorks franchisees.  OpenWorks bills each client on a monthly basis and, after deducting fees and charges owed by a franchisee to under the franchise agreement, remits to the franchisee the balance of the gross monthly dollar amount for the franchise package purchased.

6.     In my capacity as an officer of OpenWorks, I am familiar with the usual and customary business practices used to sell franchises to prospective OpenWorks franchisees and the purpose and contents of OpenWorks's documents used in connection with those practices.

7.     Plaintiff in the Litigation entered into an OpenWorks Janitorial Franchise Agreement (the "Agreement") on September 12, 2016.  The Agreement allowed Plaintiff to independently own and operate an OpenWorks franchised commercial janitorial services business.

OpenWorks does not own or operate and has never owned or operated Plaintiff's commercial janitorial services business nor has it ever controlled Plaintiff's day-to-day operations. OpenWorks has never hired, employed or supervised Plaintiff or any of the franchisee's employees. Attached to this declaration as <u>Exhibit 1</u> is a true and correct copy of the Agreement and its attachments.

8.      Prior to becoming an OpenWorks franchisee, Plaintiff received OpenWorks's Uniform Franchise Disclosure Document (the "FDD").  Attached to this declaration as <u>Exhibit 2</u> is a true and correct copy of the FDD that Plaintiff received at least 14 business days prior to executing the Agreement.

9.      On January 18, 2017, Plaintiff assigned all of her right, title, and interest as an OpenWorks franchisee under the Agreement to Ruth, LLC, a Colorado limited liability company. A true and correct copy of the Assignment of All Franchise Rights of Individual(s) to Their Entity executed by Plaintiff on July 18, 2017 is attached to this declaration as <u>Exhibit 3</u>.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 5, 2018.

_____
Katrina Hughes

**A - 0002**

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT C
# OPENWORKS

## JANITORIAL FRANCHISE AGREEMENT

# TABLE OF CONTENTS

**Section**                                                                                                   **Page**

1.    PARTIES ....................................................................................................................... 1

2.    RECITALS .................................................................................................................... 2

    2.1    Ownership of System ...................................................................................... 2

    2.2    Definition of Reasonable Business Judgment ................................................. 2

    2.3    Nature of OpenWorks' Business ..................................................................... 2

    2.4    Objectives of Parties ....................................................................................... 2

3.    DEFINITIONS .............................................................................................................. 2

4.    GRANT OF FRANCHISE ........................................................................................... 5

    4.1    Granting Clause ............................................................................................... 5

    4.2    Term and Renewal .......................................................................................... 5

5.    SERVICES TO YOU .................................................................................................... 6

    5.1    Training............................................................................................................ 6

    5.2    Offering Accounts............................................................................................ 6

    5.3    Starter Kit ........................................................................................................ 9

    5.4    Billing, Collection and Payment ................................................................... 10

    5.5    Consultation ................................................................................................... 10

    5.6    Manual ........................................................................................................... 10

    5.7    Advertising..................................................................................................... 11

    5.8    Suggested Suppliers ...................................................................................... 12

6.    PAYMENTS BY YOU ............................................................................................... 12

    6.1    Initial Fee ...................................................................................................... 12

    6.2    Royalties ........................................................................................................ 13

    6.3    Special Project Fees ...................................................................................... 13

    6.4    Advertising Fund Contributions ................................................................... 13

    6.5    Payment of Royalties and Advertising Fund Contributions ......................... 14

    6.6    Inspection of Records .................................................................................... 14

    6.7    OpenWorks' Right to Audit Your Records ................................................... 14

    6.8    Marketing Fee ................................................................................................ 14

    6.9    Extended Account Guarantee Fee.................................................................. 16

    6.10   Account Transfer Fee and Franchise Transfer Fee ....................................... 16

    6.11   Interest on Late Payments ............................................................................. 16

    6.12   Account Charges............................................................................................ 16

    6.13   Cancellation Charges .................................................................................... 16

INT _PW_ / INT_____
Unit Janitorial Franchise Agreement

**A - 0005**

|  | 6.14 | Minimum Account Service Fee | 17 |
|  | 6.15 | Background Check Fee | 17 |
|  | 6.16 | Document Preparation Fee | 17 |
|  | 6.17 | Manual Check Fee | 17 |
|  | 6.18 | Equipment and Supplies | 17 |
|  | 6.19 | Trouble Call Fee | 17 |
|  | 6.20 | Lost Document Fee | 17 |
|  | 6.21 | Legal Entity Fee | 17 |
| 7. |  | YOUR OBLIGATIONS | 18 |
|  | 7.1 | Use of Trade Name and Marks | 18 |
|  | 7.2 | Quality Control | 19 |
|  | 7.3 | Insurance and Bond | 22 |
|  | 7.4 | Financial and Legal Responsibility | 23 |
|  | 7.5 | Pre-Existing Accounts | 23 |
|  | 7.6 | Variances | 23 |
|  | 7.7 | Computer System | 24 |
|  | 7.8 | Certificate of Tax Compliance | 24 |
| 8. |  | RELATIONSHIP OF PARTIES | 24 |
|  | 8.1 | Interest in Marks and System | 24 |
|  | 8.2 | Independent Status | 24 |
|  | 8.3 | Display of Disclaimer | 24 |
|  | 8.4 | Indemnification | 24 |
|  | 8.5 | Confidential Information | 24 |
|  | 8.6 | Noncompetition | 25 |
|  | 8.7 | Non-Solicitation | 26 |
|  | 8.8 | Modification | 26 |
|  | 8.9 | Lack of Prior Conflict | 26 |
|  | 8.10 | Notification | 27 |
|  | 8.11 | Tolling of Time Periods | 27 |
|  | 8.12 | Non-Disclosure and Non-Competition Agreements | 27 |
| 9. |  | TRANSFER | 27 |
|  | 9.1 | Purpose of Conditions for Approval of Transfer | 27 |
|  | 9.2 | Notice of Proposed Transfer | 27 |
|  | 9.3 | Consent by OpenWorks | 27 |
|  | 9.4 | Conditions for Consent to Transfer | 28 |

|       | 9.5  | Waivers of Some Conditions Upon Certain Types of Transfers | 29 |
|       | 9.6  | OpenWorks' Right of First Refusal | 30 |
|       | 9.7  | Assignment by OpenWorks | 30 |
|       | 9.8  | Legend | 30 |
| 10.   |      | TERMINATION OF FRANCHISE | 30 |
|       | 10.1 | Termination by Consent of the Parties | 30 |
|       | 10.2 | Termination by OpenWorks | 30 |
|       | 10.3 | Termination by You | 32 |
|       | 10.4 | Rights and Obligations After Termination | 32 |
| 11.   |      | MISCELLANEOUS PROVISIONS | 33 |
|       | 11.1 | Construction of Contract | 33 |
|       | 11.2 | Governing Law | 33 |
|       | 11.3 | Notices | 33 |
|       | 11.4 | Amendments | 33 |
|       | 11.5 | Waiver | 34 |
|       | 11.6 | Integration | 34 |
|       | 11.7 | Modification | 34 |
|       | 11.8 | Arbitration | 34 |
|       | 11.9 | Injunctive Remedy for Breach | 35 |
|       | 11.10 | Limitation of Actions | 35 |
|       | 11.11 | Attorneys' Fees and Costs | 36 |
|       | 11.12 | Severability | 36 |
|       | 11.13 | Approval and Guarantees | 36 |
|       | 11.14 | Acceptance by OpenWorks | 36 |
|       | 11.15 | Indulgences, Not Waivers | 36 |
|       | 11.16 | Execution in Counterparts | 36 |
|       | 11.17 | Time of Essence | 36 |
|       | 11.18 | Franchisor Limited Liability | 36 |
|       | 11.19 | Disclaimer of Representations | 38 |

2622019.2 03/16

INT _____ / INT _____
Unit Janitorial Franchise Agreement

A - 0007

ATTACHMENTS

Attachment 1:    Business Starter Packages
Attachment 2:    Terms
Attachment 3:    Personal Guaranty
Attachment 4:    Non-Disclosure and Non-Competition Agreement
Attachment 5:    Trademarks
Attachment 6:    Spousal Consent
Attachment 7:    Illinois Addendum

iv

# INDEX OF DEFINED TERMS

| **Term** | **Section of Agreement Where Defined** |
|---|---|
| Account Assignment Agreement | 5.2.5 |
| Account | 3.1 |
| Account Volume | 3.2 |
| Additional Account Volume | 3.4 |
| Additional Accounts | 5.2.2 |
| Advertising Fund | 5.7.1 |
| AdVol | 5.2.2 |
| Affiliate | 3.5 |
| Agreement | 3.6, Attachments 3 & 4 |
| Area | 8.6.4, Attachment 4 |
| Claim | 11.8 |
| Competitive Business | 8.6.3, Attachment 4 |
| Confidential Information | 3.7, Attachment 4 |
| Counterclaim | 11.8.4 |
| Designated Manager | 3.8 |
| Effective Date | 3.9 |
| Existing Account | 7.5 |
| Fluent in English | 7.2.12 |
| Franchisee | 1, Attachments 3 & 4 |
| Franchise Network | 3.11 |
| Franchise Package | 3.12 |
| Good Standing | 3.13 |
| Gross Revenue | 3.14 |
| Inactive Month | 6.14 |
| Initial Notice | 11.8.1 |
| Initial Resolution | 11.8.2 |
| Initiator | 11.8.1 |
| Janitorial Service | 3.15 |
| Maintenance Agreements | 3.16 |
| Manual | 3.17 |
| Marks | 3.18 |
| Minimum Account Service Fee | 6.14 |
| OpenWorks | 1, 3.20 and Attachment 3 |
| Purchase Contract | 5.2.2 |
| Reasonable Business Judgment | 2.2 |
| Required Transfer | 1 |
| Respondent | 11.8.1 |
| Response | 11.8.3 |
| Second Notice | 11.8.3a |
| Second Resolution | 11.8.3a |
| Special Project Fee | 6.3 |
| Substantial Interest | 3.5 |
| System | 3.22 |
| Termination | 3.23 |
| Territory | 3.24 |
| Time Period | 8.6.2, Attachment 4 |
| Trade Names | 3.25 |
| Transfer | 3.26 |
| You | 1, 3.27 |

v

INT _____ / INT _____
Unit Janitorial Franchise Agreement

**A - 0009**

## OPENWORKS FRANCHISE AGREEMENT

### 1.    PARTIES

This Agreement is signed on ____SEPTEMBER 12____, 2016 ("**Effective Date**") by and between O.P.E.N. America, Inc., an Arizona corporation doing business as OpenWorks ("**OpenWorks**"), with its principal office located at 4742 North 24th Street, Suite 450, Phoenix, Arizona 85016, and

RUTH MARK
,
hereinafter referred to singularly or collectively as "**You**" or "**Franchisee**," a:

[   ] Corporation,   [   ] Limited Liability Company, under the laws of the State of ____COLORADO____. If you are an individual, you agree to Transfer all of your rights and obligations under this Agreement to a legal entity of which you beneficially own 100% of the equity within 90 days after the Effective Date (the "**Required Transfer**"). If you fail to complete the Required Transfer within 90 days of the Effective Date, you agree to pay OpenWorks a fee of $500 per month until such Required Transfer is complete as required by Section 6.21.

**Address, Telephone, Social Security # and/or Federal Tax I.D.:**

The information below is to be completed for you, if you are an individual, or for each individual partner of the partnership, or for each shareholder of the corporation, or for each member of the limited liability company, as indicated above. You are required to maintain an active telephone number and e-mail address and to notify OpenWorks of any changes. The Franchisee represents that the following information is true and complete:

| Name | Residential Address | Telephone | E-Mail | Federal Tax ID or Social Security # |
|---|---|---|---|---|
| RUTH MARK | 2360 S. QUEBEC ST, APT 205 DENVER, CO 80231 | 303-667-1598 | ruthsaidby mail.com | 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 |
|  |  |  |  |  |
|  |  |  |  |  |

**Federal Tax I.D. if a partnership, corporation or limited liability company:**
**Designated Manager Name:** _____.

### FRANCHISE SUMMARY

**Franchise Package:** OW. -3

**Territory:**

**Initial Monthly Account Volume:** $3,000.00

**Fulfillment Period (Days):** 120

**Date Franchisee received UFDD (should be same date as on Receipt page):** 08/18/2016

**Date of Franchisee first personal meeting with OpenWorks rep to discuss purchase of franchise:** 08/18/2016

**Date Franchisee received complete executable copy of Franchise Agreement:** 08/18/2016

**Down Payment:** $ 5,000.00

**Amount Financed:** $10,200.00 (Interest 12%)

**Terms (months):** 24

**Monthly Installments:** $ 480.14

1

2622019.2 03/16

INT ___ / INT ___
Unit Janitorial Franchise Agreement

A - 0010

**Date Franchisee signed this Agreement:** 09/12/2016

**Date Franchisee delivered any down payment, deposit or other payment:** 09/12/2016

## 2.    RECITALS

    **2.1    Ownership of System.** OpenWorks is the owner of certain intellectual property rights, including its Trade Names and the Marks, the distinctiveness and value of which you acknowledge. OpenWorks has spent a considerable amount of time, effort and money to devise, and continues to develop, business methods, technical knowledge and marketing concepts including, but not limited to, trade secrets, commercial ideas, advertising materials, marketing strategies, information on sources of supply, administrative procedures, business forms, and employee training techniques that, taken together, comprise a proprietary System for the operation of Janitorial Services that offer commercial janitorial and other facility services to Accounts pursuant to Maintenance Agreements, all of which are designed to enhance the reputation and goodwill with the public of the services offered pursuant to the System. OpenWorks may, from time to time, add to, amend, modify, delete or enhance any portion of the System (including any of the Trade Names and Marks) as may be necessary in OpenWorks' Reasonable Business Judgment (as defined below) to change, maintain or enhance the System, TradeNames, Marks or reputation, efficiency, competitiveness and/or quality of the System, or to adapt it to new conditions, materials or technology, or to better serve the public. You will fully comply, at your own expense, with all such additions or modifications reasonably designated as applicable to then existing franchise owners similarly situated.

    **2.2    Definition of Reasonable Business Judgment.** OpenWorks agrees to use "Reasonable Business Judgment" in the exercise of its rights, obligations and discretion under this Agreement except where otherwise indicated in this Agreement. "Reasonable Business Judgment" means that OpenWorks' determination shall prevail even in cases where other alternatives are also reasonable so long as OpenWorks is intending to benefit or is acting in a way that could benefit the System by enhancing the value of the Marks, increasing customer satisfaction, or minimizing possible customer brand or location confusion. OpenWorks shall not be required to consider your particular economic or other circumstances when exercising its Reasonable Business Judgment. At no time are you or any third party (including, but not limited to any third party acting as a trier of fact) entitled to substitute your or its judgment for a judgment that has been made by or on behalf of OpenWorks and that meets the definition of Reasonable Business Judgment in recognition of the fact that the long-term goals of a franchised system, and the long-term interests of both OpenWorks and all franchise owners, taken together, require that OpenWorks have the latitude to exercise Reasonable Business Judgment.

    **2.3    Nature of OpenWorks' Business.** OpenWorks is in the business of franchising other parties to operate businesses using OpenWorks' Trade Names, Marks and System.

    **2.4    Objectives of Parties.** OpenWorks wishes to grant you and you wish to accept from OpenWorks a franchise to engage in the Janitorial Services described in this Agreement, using the Trade Names, Marks and System, upon the terms and conditions set forth in this Agreement.

**3.    DEFINITIONS.** For purposes of this Agreement, when any of the following terms begin with capital letters, their meanings are as defined in this <u>Article 3</u> or elsewhere in this Agreement where the term appears in bold type and quotation marks:

    **3.1    "Account"** means a customer who has entered into a Maintenance Agreement with OpenWorks for the performance of janitorial and/or other facility services at the customer's premises.

2

**3.2**   **"Account Volume"** means the gross dollar volume per month that should be generated by the Accounts assigned to you by OpenWorks.

**3.3**   **"Additional Accounts"** has the meaning ascribed to it in <u>Section 5.2.2</u>.

**3.4**   **"Additional Account Volume"** means the gross dollar volume per month that should be generated by the Additional Accounts that you purchased the rights to service from OpenWorks.

**3.5**   **"Affiliate"** means people and companies associated with OpenWorks or you, as the context indicates, including, but not limited to, spouses, members of your household, owners, general partners, limited partners owning a Substantial Interest in OpenWorks or you, shareholders owning a Substantial Interest in OpenWorks or you, corporations in which OpenWorks or you have a Substantial Interest, corporations in which any person or entity owning a Substantial Interest in you also has a Substantial Interest, or officers, directors, employees or agents of OpenWorks or you.  As used in this paragraph, the phrase **"Substantial Interest"** means the right to 10% or more of the capital or earnings of a partnership or limited liability company, or alternatively, ownership of 10% or more of the voting stock of a corporation.

**3.6**   **"Agreement"** means this Franchise Agreement, together with its attachments and all amendments hereto.

**3.7**   **"Confidential Information"** means proprietary and/or confidential information and trade secrets of OpenWorks and the System, including without limitation training materials, programs, methods, techniques, specifications, standards, systems, procedures, sales and marketing programs and strategies, manuals, financial data, knowledge of specifications for and suppliers of equipment, supplies and services, bidding, pricing and billing methods, existing and prospective customer lists and information about them and their service contracts, at any time existing or under consideration, for the operation of OpenWorks regional offices and commercial janitorial and other facility service businesses.

**3.8**   **"Designated Manager"** means the specific individual who will be responsible for the day-to-day management of the Janitorial Services.

**3.9**   **"Effective Date"** means the date of the Agreement as set forth in <u>Article 1</u>.

**3.10**   **"Fluent in English"** has the meaning ascribed to it in <u>Section 7.2.12</u>.

**3.11**   **"Franchise Network"** means the interdependent network composed of OpenWorks, all OpenWorks franchisees, OpenWorks' Affiliates, and any other people or business entities that it has licensed to use the Trade Names, Marks, System or any of them.

**3.12**   **"Franchise Package"** means one of four different programs offered by OpenWorks, each generating a different amount of Initial Account Volume.

**3.13**   **"Good Standing"** means timely compliance by you and your Affiliates with all provisions of this Agreement, the Manual and any other agreement with OpenWorks, specifically including, but not limited to, provisions for timely payment of amounts owed by you to OpenWorks or its Affiliates and for any Account's satisfaction with your Janitorial Service.

**3.14**   **"Gross Revenue"** means the total amount of money received by OpenWorks and its Affiliates or you or your Affiliates from Accounts for all services rendered by you or your Affiliates within an accounting period.

3

**3.15**    **"Janitorial Service"** means the business of providing commercial janitorial and other facility services that OpenWorks has authorized you to conduct under the Trade Names, Marks and System pursuant to this Agreement.

**3.16**    **"Maintenance Agreements"** means written contracts between OpenWorks and customers for the provision of commercial janitorial and other facility services at the customer premises.

**3.17**    **"Manual"** means the Operations Manual, instructions and other correspondence that OpenWorks will lend or communicate to you during the term of this Agreement, covering the operation of the franchised business, as each may be amended and/or supplemented from time to time. The Manual contains forms and requirements for the establishment, promotion and operation of a Janitorial Service and for use of OpenWorks' Trade Name and Marks.

**3.18**    **"Marks"** means the word mark "OpenWorks," the design mark "OpenWorks and design," and other selected trademarks, service marks, trade dress, logotypes, slogans and other commercial symbols licensed by OpenWorks to you under this Agreement from time to time.  A list of additional trademarks is included as Attachment 5 to this Agreement.

**3.19**    **"Franchise Disclosure Document"** means the Uniform Franchise Disclosure Document to which this Agreement was attached and which was previously or contemporaneously provided to you.

**3.20**    **"OpenWorks"** means O.P.E.N. America, Inc., an Arizona corporation, or any person or entity to which OpenWorks allocates all or part of its rights and obligations under this Agreement.

**3.21**    **"Purchase Contract"** has the meaning set forth in Section 5.2.2.

**3.22**    **"System"** means the Confidential Information, and the other business methods, technical knowledge and marketing concepts licensed by OpenWorks to you under this Agreement, including, but not limited to, the right to use OpenWorks' processes, purchasing arrangements, commercial ideas, advertising materials, information on sources of supply, administrative procedures and business forms.

**3.23**    **"Termination"** means the expiration and non-renewal of this Agreement, the early termination of this Agreement under any circumstances, and the cessation of your rights to use the Trade Names, Marks and System.

**3.24**    **"Territory"** means the geographic boundaries of the county as identified in Article 1, within which you will operate your Janitorial Service.

**3.25**    **"Trade Names"** means the commercial names "OpenWorks," "OpenWorks of [name of state or other geographic designation]," and other selected trade names licensed by OpenWorks to you under this Agreement from time to time.

**3.26**    **"Transfer"** means any sale, gift, or other change in ownership of all or any part of the rights and obligations of this Agreement or of all or substantially all of the assets of the Janitorial Service (including without limitation, Accounts), or of an ownership interest in you (if you are a corporation or other legal entity) of a magnitude at least as great as that described in this Section.  If you are a partnership or limited liability company, then one or more transactions (regardless of whether or not they are related) in which there is a cumulative change in the rights to 34% or more of your capital, profits, or distributions of profits will be considered to be a Transfer.  If you are a corporation, then one or more transactions (regardless of whether or not they are related) in which there is a cumulative change in beneficial ownership of 34% or more of your voting stock will be considered to be a Transfer.

2622019.2 03/16

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0013**

3.27   **"You"** means the person or entity that is named as you in Article 1 of this Agreement and your Designated Manager, as the context requires. "You" means, in addition, all people or entities that succeed to the interest of the original you by Transfer or operation of law.

## 4.   GRANT OF FRANCHISE.

### 4.1   Granting Clause.

**4.1.1   Non-exclusive Territory.** Subject to all the terms and conditions set forth in this Agreement, OpenWorks grants to you and you accept from OpenWorks a non-exclusive franchise to operate the Janitorial Service described in this Agreement solely within the Territory using the Trade Names, Marks and System in accordance with the terms of this Agreement. OpenWorks reserves all rights in the Trade Names, Marks and System not expressly granted in this Agreement. Your right to operate within the Territory is not exclusive. Other franchisees may compete there as there may be multiple franchisees in a territory. OpenWorks may compete with you in your Territory, including through alternative methods of distribution. You may, and OpenWorks encourages you to, solicit new business within your Territory, but may not solicit business from existing OpenWorks customers or prospects where an active OpenWorks or other franchisee bid (within the previous six (6) months) exists. OpenWorks will not bid against you itself. You may only solicit business within your Territory and only from prospects with their principal place of business located within your Territory. You may not service prospects located outside of your Territory, even if you did not solicit the business. OpenWorks reserves the right to compete with you under other tradenames or trademarks and offer services that are similar or complimentary to those provided by your franchise.

**4.1.2   Additional Accounts.** You will not have an option to purchase additional franchises. However, you may request that OpenWorks provide you with additional accounts to be serviced under your existing franchise for a marketing fee. Such approval will be made in OpenWorks' sole discretion. To purchase additional accounts, you must execute an amendment to this Agreement, and if you finance the marketing fee, you must execute a promissory note.

### 4.2   Term and Renewal.

**4.2.1   Initial Term.** The initial term of the franchise will begin on the Effective Date and will continue for a period of ten years unless terminated earlier pursuant to Article 10.

**4.2.2   Renewal.** You will have the right to renew the franchise for your Janitorial Service for two additional ten year terms on the same terms and conditions as those on which OpenWorks is customarily granting new franchises at the time of renewal, if at the time of each renewal the following conditions are fulfilled:

(a)   You and your Affiliates are in Good Standing under this Agreement, any other agreement between OpenWorks or its Affiliates and you, and the Manual;

(b)   You have notified OpenWorks in writing at least 180 days before the expiration date of the then current agreement of your desire to renew;

(c)   You and any Affiliates that have signed this Agreement have signed a copy of the new franchise agreement not less than 30 days prior to the expiration of the then current agreement or 150 days after you receive a copy of the new Franchise Agreement from OpenWorks, whichever is later; and

2622019.2 03/16

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0014**

(d)     You and any Affiliates that are parties to this Agreement have signed a general release of claims in a form satisfactory to OpenWorks with respect to past dealings with OpenWorks and its Affiliates.

You understand that the terms of the standard franchise agreement in use by OpenWorks at the times of renewal may contain materially different terms than those contained in this Agreement, including, but not limited to (i) increased royalties and Advertising Fund contributions, (ii) different performance standards and (iii) execution of a general release in a form satisfactory to OpenWorks of any and all claims against OpenWorks or its Affiliates.

**5.     SERVICES TO YOU.**   OpenWorks agrees to perform the following services for you, at locations selected by OpenWorks, provided that you are, at the time when service is to be rendered, in Good Standing under this Agreement, any other agreement with OpenWorks or its Affiliates, and the Manual:

**5.1     Training.**

**5.1.1     Initial Training.**   Before the opening of your Janitorial Service business, OpenWorks will conduct an initial training program in the operation of the Janitorial Service under OpenWorks' System for you and any of your employees who wish to attend at the same time, at no charge to you. You must attend and successfully complete the initial training program to the satisfaction of OpenWorks, as evidenced by a Certificate of Completion of Initial Training awarded by OpenWorks, before you may start operating your Franchise. The initial training program is offered once a month. You must complete the program within 45 days of signing your Franchise Agreement.  Any Designated Manager of your Janitorial Service business must also attend and successfully complete the initial training program to the satisfaction of OpenWorks.  OpenWorks will charge you a fee for any initial training provided to anyone after the first initial training program.

**5.1.2     Continuing Education.**   OpenWorks may offer continuing education programs on matters related to the operation or promotion of the Janitorial Service on an optional or mandatory basis, as it considers appropriate. OpenWorks may charge you up to $150 per class for these programs. OpenWorks reserves the right to adjust this fee at any time in OpenWorks discretion.

**5.2     Offering Accounts.**

**5.2.1     Initial Accounts.**   After you have successfully completed the initial training, signed OpenWorks' Certificate of Completion of Initial Training, picked up your equipment, delivered a copy of your business license and entity/organizational documents, and paid the initial franchise fee, OpenWorks will offer you the initial Account Volume promised in Section 6.1 of this Agreement within the fulfillment period for the Franchise Package you purchase.  OpenWorks will contact you by the method it chooses (e.g., by telephone or e-mail) and give you a certain amount of time to accept or refuse the Account.  If you do not respond during that time period, you will be deemed to have refused the Account. OpenWorks' fulfillment periods are as follows for each Franchise Package:

| Package | Initial Monthly Account Volume | Fulfillment Period (Days) |
|---------|-------------------------------|---------------------------|
| OW 3 | 3,000 | 120 |
| OW 5 | 5,000 | 180 |
| OW 7 | 7,000 | 240 |

2622019.2 03/16

INT _____ / INT _____
Unit Janitorial Franchise Agreement

**A - 0015**

| Package | Initial Monthly Account Volume | Fulfillment Period (Days) |
|---------|-------------------------------|---------------------------|
| OW 10 | 10,000 | 330 |
| OW 15 | 15,000 | 480 |
| OW 20 | 20,000 | 630 |
| OW 25 | 25,000 | 780 |

If you and OpenWorks agree to an initial monthly account volume greater than $25,000, the additional account volume will be offered in increments of 5,000 and increments of 150 days in the fulfillment period.

If OpenWorks does not offer Accounts having the promised initial Account Volume within the required fulfillment period, you will be entitled upon written request to a refund of a portion of your initial franchise fee, as described in Section 6.1 of this Agreement. Such a refund will fulfill OpenWorks' obligation to offer the remaining portion of the initial Account Volume. If you do not make a written request for a refund within 30 days after the end of the fulfillment period, you will be deemed to have waived your right to a refund, but OpenWorks will remain obligated to offer you the remaining portion of the initial Account Volume for the franchise package you selected.

If, during the fulfillment period, you commit any default that would justify termination of an Account or of this Agreement (including but not limited to the performance and noncompliance issues set forth in the Account Satisfaction provisions at Section 7.2.5) OpenWorks may, at its option, suspend the fulfillment period until the default is cured instead of terminating your service to an Account or terminating this Agreement. If it appears, in OpenWorks' Reasonable Business Judgment, that you cannot or will not cure the default, OpenWorks may require you to repeat the initial training course. OpenWorks' fulfillment obligations to you are suspended until you successfully complete training. If you fail to successfully complete the initial training course during your original fulfillment period, then OpenWorks' fulfillment obligations to you will cease. Once you have cured the default or have successfully completed retraining course within the required time frame, the prior fulfillment period will be cancelled and a new fulfillment period will begin to run.

**5.2.2 Additional Accounts.** You will not have the option to purchase additional franchises. However, you may request Additional Accounts from OpenWorks. **"Additional Accounts"** are new Accounts, or an increase in the dollar Account Volume of an existing Account you are already servicing (through increased occupancy, additional services, or for any other reason), offered to you by OpenWorks over and above the Initial Account Volume (**"AdVol"**), under any of the following scenarios:

(a)    You may request OpenWorks to provide you with Additional Accounts;

(b)    OpenWorks may offer Additional Accounts to you on its own;

(c)    OpenWorks, in conjunction with a proposed increase in an Account you are servicing, will require you to purchase an increase in the dollar Account Volume of that Account, and OpenWorks will assess a Marketing Fee (as defined in Section 6.8) from you that is based on the increase; or

(d)    OpenWorks, in conjunction with assigning an Account to you under a previous obligation (Purchase Contract or replacement Account), will require you to purchase the overage if the acceptance of that Account would cause the gross dollar volume under that Purchase Contract to exceed the contract amount.

7

INT _____ / INT _____
Unit Janitorial Franchise Agreement

A - 0016

In each of these cases, you are required to execute an amendment to the Franchise Agreement (a "**Purchase Contract**"), signifying the purchase of the right to service one or more Additional Accounts, and to pay the appropriate Marketing Fee as provided in Section 6.8.1 of this Agreement. You are deemed to have accepted the AdVol after you have serviced the account three times, regardless of when the Purchase Contract is executed and after the third service time OpenWorks will impose any applicable Marketing Fee as of the date that you first serviced the account. OpenWorks may have outstanding obligations to offer you Accounts under more than one Purchase Contract at a time. Assignment of a given Account, if of sufficient monthly billing magnitude, may help to fulfill OpenWorks' obligations to offer you Accounts under more than one Purchase Contract.

You agree that OpenWorks is under no obligation to provide you with Additional Accounts and may do so solely at its own discretion.

**5.2.3 Trial Period.** You may refuse up to three separate new Accounts from the initial Account Volume offered (whether offered telephonically or otherwise and whether or not accompanied by an actual assignment) by OpenWorks for any reason whatsoever during the term of this Agreement. However, each refusal of an offered Account (whether offered telephonically or otherwise and whether or not accompanied by an actual assignment) from the initial Account Volume will extend the fulfillment period by an additional 30 days. After three refusals (whether orally or in writing), any Account offer from the initial Account Volume, that is initially refused by you or to which you discontinue services after accepting an Account will reduce the Account Volume OpenWorks is obligated to offer you by the amount of the Account offered and will also, at OpenWorks' sole discretion, extend the fulfillment period by an additional 30 days.

You have a trial period of 30 days from the date that service under the Maintenance Agreement for the Account is scheduled to commence to refuse an Account. Your refusal of any Account (whether orally or in writing) will not relieve you of any payment obligations to OpenWorks, including without limitation your obligations under promissory notes for installments of your initial franchise fee or any Marketing Fee. OpenWorks must actually receive a notice of refusal (whether orally or in writing) within the 30-day period in order for it to be effective. If you fail to give a notice of refusal, or if OpenWorks does not actually receive it within the 30-day period, you will have waived your right to refuse the Account. You will lose your right to refuse an Account if at any time that you are obligated to service the Account you fail to do so in accordance with the Maintenance Agreement, work schedule, and the Manual.

If you refuse an offered Account during the 30-day trial period, OpenWorks will use commercially reasonable efforts to locate another franchisee to service the Account. **You must continue servicing the Account in good faith until the earlier of (i) the commencement of services by another franchisee, or (ii) 30 days after OpenWorks actually received your notice refusing the Account.**

**5.2.4 Replacement of Accounts.** If any of OpenWorks' initial Accounts terminate their Maintenance Agreements within one year after the Maintenance Agreements commence, OpenWorks will offer you replacement Accounts within 150 days, subject to the conditions set out in this Section. If any of your Additional Accounts terminate their Maintenance Agreements within six months after their Maintenance Agreements commence, OpenWorks will offer you replacement Accounts within 150 days, subject to the conditions set out in this Section. The foregoing guarantees do not apply to Accounts that are terminated as a result of any wrongful act, omission, negligence or nonprofessional interaction with the Account by you or your agents or Affiliates, including but not limited to, theft or breakage of property, failure to reset security alarm systems, duplication of Account keys, being argumentative with the Account and violations of Section 7.2.5 of this Agreement pertaining to an Account's satisfaction with your Janitorial Service. OpenWorks is not obligated to replace any Account lost by you because of the Account's dissatisfaction or request that service be provided by another

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0017**

franchisee.  OpenWorks may act in its sole discretion in determining if the Account has been terminated due to your or your agents' or Affiliates' wrongful act, omission, negligence or nonprofessional interaction with an Account or the Account's dissatisfaction.  OpenWorks is not obligated to replace replacement Accounts.

Replacement Account(s) will be the same or a greater monthly billing magnitude as the Account(s) they replace.  If the monthly billing volume of the replacement Account(s) is greater than the terminated Account(s), OpenWorks may assess a Marketing Fee from you that is based on the overage.

      **5.2.5    Account Assignment Agreement**.  Each assignment to you of a new Account or an increase in an existing Account, beginning with the assignments of Accounts to fulfill your Initial Account Volume, will be made pursuant to a separate Agreement for Account Assignment or Increase (an "**Account Assignment Agreement**"), which will have its own date, Account information, and if applicable, Marketing Fee.  By accepting the new Account or increase in an existing Account and performing services, you agree to all of the applicable terms set forth in this Agreement and in each Account Assignment Agreement as of the date of acceptance, regardless of the date of which you sign the Account Assignment Agreement, which are hereby incorporated herein by reference, including without limitation, the following:

(a)    You acknowledge receiving a copy of the Maintenance Agreement and work schedule for the assigned Account.

(b)    You agree to service the Account and comply strictly with the terms of the Maintenance Agreement and work schedule for the assigned Account, all according to the Manual and the standards, procedures and policies established by OpenWorks from time to time.

(c)    You certify that you have sufficient resources to service the assigned Account, including working capital to purchase all needed supplies and equipment, and to meet all expected payrolls for the first 45 days.

(d)    If any portion of the assigned Account is an Additional Account (additional business in excess of the Initial Account Volume or replacement Account volume OpenWorks is required to provide you), then you agree to pay OpenWorks the Marketing Fee stated in the Account Assignment Agreement.

(e)    You acknowledge that OpenWorks has made no representations to you about how long the Account will use your services except as expressly stated in the Maintenance Agreement.  You understand that there is no assurance that the Account will renew or extend the Maintenance Agreement.  OpenWorks retains all rights as the contracting party with the Account.

(f)    If you discontinue services for the assigned Account at any time for any reason, you agree to immediately turn over to OpenWorks the Account's keys, security codes and cards in your possession or the possession of your employees.  If you do not do so, you agree to pay OpenWorks all charges assessed by the Account plus $500 a day until the Account's keys, codes and cards are delivered to OpenWorks.

      **5.2.6    Accounts Obtained by You**.    You are encouraged to solicit and procure janitorial client Accounts on your own behalf.  You must conduct all marketing activities in strict conformity with the guidelines, policies and procedures set forth in the Manual.  OpenWorks must sign a Maintenance Agreement with these Accounts and will provide the same administrative services to support these Accounts as it does to support Accounts it procures for you.  You will pay all the same types of fees

9

INT\_\_\_\_\_ / INT_____
Unit Janitorial Franchise Agreement

**A - 0018**

in regard to these Accounts as you do in regard to Accounts procured by OpenWorks for you except that you will not be required to pay a Marketing Fee to OpenWorks for Accounts you obtain solely as the result of your own efforts. OpenWorks will impose the fees as of the date you begin servicing the Account unless we agree in writing that certain service calls or services are specifically excluded. Upon the Termination of this Agreement, Accounts you have procured must be assigned to OpenWorks if these Accounts do not already have a signed Maintenance Agreement with OpenWorks. In furtherance of this requirement, upon Transfer or Termination, you will immediately provide OpenWorks with a list of all Accounts and customers and facilities you are servicing or had serviced at any date during the 12 months preceding the date of such Transfer or Termination.

     **5.3**    **Starter Kit**. At no additional charge, OpenWorks will provide you with an equipment and supply kit to commence your Janitorial Service. The current starter kit being provided by OpenWorks is described in <u>Attachment 1</u>. OpenWorks may substitute different brand names or make changes in specifications, but any substituted or changed item will be of equal or greater value and/or quality.

     **5.4**    **Billing, Collection and Payment.**

     **5.4.1**    **Billing and Collection Service.** OpenWorks will provide billing and collection service for you. You must use this service and may not bill Accounts yourself. No later than the 2nd business day of each month, you must send to OpenWorks a statement of all services rendered by you during that month in the form currently prescribed by OpenWorks. Within 45 days after the end of each month, OpenWorks will send you your Gross Revenue for that month, after deduction of any sums currently due and payable by you to OpenWorks under this Agreement. OpenWorks may adjust the deadlines for reporting by you and payment by OpenWorks if, in its sole discretion, such adjustments are made necessary by general changes in the payment practices of Accounts in the area. You will be notified in writing of any such adjustments.

     **5.4.2**    **Limited Cash Flow Protection Service.** At the time of sending your monthly Gross Revenue to you, OpenWorks will advance you a sum equal to any delinquent payments that should have been, but were not, received by OpenWorks from any Accounts you serviced during the month for which payment is made if the following four requirements are met:

     (a)    The Account was not delinquent in the immediately preceding month;

     (b)    OpenWorks had not previously instructed you to terminate service to the Account;

     (c)    The Account was originally provided by OpenWorks; and

     (d)    You submitted to OpenWorks the monthly statement of all services rendered by you, including services rendered to the delinquent Account, in a timely manner and in the form prescribed by OpenWorks.

     **5.4.3**    **Cost of Collection.** OpenWorks is entitled to recover from you any costs it incurs, including but not limited to attorneys' and accountants' costs and fees, filing fees, delivery and photocopying charges, and costs of discovery, in collecting monies owed you by Accounts for your services. OpenWorks may apply to this obligation any monies paid to OpenWorks by you or for your Account.

Any such sums advanced to you by OpenWorks must be paid to OpenWorks within 90 days after the date upon which payment was due from the Account whose payment was delinquent. Thereafter, you must repay OpenWorks or it may deduct amounts owed to it by you for such advances from any and all money

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0019**

collected by OpenWorks on your behalf.  You must pay OpenWorks interest at the rate of 12% per year on any advances for which OpenWorks has not been reimbursed within 90 days after the date upon which payment was due from the Account.

**5.5     Consultation.**  Upon your request, OpenWorks will use commercially reasonable efforts to make its personnel available to you for consultation regarding operation of the Janitorial Service.

**5.6     Manual.**  OpenWorks will lend you a Manual containing information on operational methods, safety, rules and policies, marketing, names of approved suppliers, and other information that OpenWorks believes will be necessary or helpful to you in your operation of the Janitorial Service.  OpenWorks may revise the Manual periodically to conform to the changing needs of the Franchise Network and will distribute updates to you verbally, on the Internet, by email or in the form of memoranda containing these revisions.  You are required to operate your Janitorial Service in accordance with the Manual and any of its revisions.  In the event of any dispute regarding the Manual, the terms of the master copy maintained by OpenWorks shall be controlling.

**5.7     Advertising.**

**5.7.1     Advertising Fund.**  OpenWorks has established an advertising fund (an "**Advertising Fund**") to pool advertising monies of OpenWorks and each of its franchisees so as to achieve greater benefits for all in promoting the OpenWorks brand and its Trade Names and Marks.  OpenWorks may, at its option, establish additional Advertising Funds.  You must pay to OpenWorks as a contribution to the Advertising Fund up to 1% of your Gross Revenue, payable at the same times and in the same manner as royalties.  OpenWorks currently contributes to the Advertising Fund in excess of franchisee contributions for its commercial accounts; however, OpenWorks reserves the right to decrease its contribution amounts in the future.  OpenWorks shall administratively segregate all contributions to the Advertising Fund on its books and records.  However, any payments to the Advertising Fund may, at OpenWorks' discretion, be deposited in OpenWorks' general operating account; may be commingled with OpenWorks' general operating funds; and may be deemed an asset of OpenWorks, subject, however, to OpenWorks' obligation to expend the monies in the Advertising Fund in accordance with the terms hereof.  OpenWorks may, in its sole discretion, elect to accumulate monies in the Advertising Fund for such periods of time as it deems necessary or appropriate, with no obligation to expend all monies received in any fiscal year during such fiscal year.  From time to time, OpenWorks' expenditures for advertising in any fiscal year may exceed the total amount contributed to the Advertising Fund during such fiscal year.  In such event, OpenWorks shall have the right to be reimbursed to the extent of such excess contributions from any amounts subsequently contributed to the Advertising Fund or to use such excess as a credit against its future contributions.  The parties do not intend that the Advertising Fund be deemed a trust.

**5.7.2     Use of Funds.**  The Advertising Fund may be used to pay for market research, development, branding, quality assurance, advertising materials, promotion or public relations programs, media placement for a national or regional advertising program, a referral program, or any combination of them, as OpenWorks, in its sole discretion, may deem necessary or appropriate to advertise or promote OpenWorks and to assure and enhance the name, goodwill, reputation and quality of the System and OpenWorks' brand, Trade Names and Marks.  OpenWorks shall direct all such programs and activities, with sole discretion over the methods, types of support (including without limitation, training, account quality visits and written materials), creative concepts, materials, endorsements and media used, and the timing, placement and allocation thereof.  You agree that the Advertising Fund may be used to meet any and all costs of maintaining, administering, developing, creating, directing and preparing national, regional or local research, development, quality assurance, advertising and promotion materials, branding programs, advertising programs and activities, including without limitation, the costs of creating, preparing and conducting test marketing, surveys, direct mail/distribution, couponing, television, radio,

A - 0020

magazine, bill board, newspaper and other media programs and activities, training and inspection programs, updated Manuals and the costs of hiring others to assist OpenWorks.  OpenWorks may initiate Advertising Fund projects that are national or regional in scope and may also make allocations of Advertising Fund monies to local groups of franchisees or individual franchisees when OpenWorks considers it desirable.  Because the benefits of advertising and promotion are difficult to measure with precision, OpenWorks reserves the unqualified right to determine, in its sole discretion, how Advertising Fund monies will be spent; provided that the monies must be used in a manner that is described above.  You understand and acknowledge that the Advertising Fund is intended to maximize general public recognition and acceptance of the Trade Names and Marks for the benefit of the System as a whole and that OpenWorks undertakes no obligation in administering the Advertising Fund to ensure that any particular franchisee benefits directly or pro rata from the Advertising Fund.  OpenWorks reserves the right to terminate the Advertising Fund, but in such event will spend or use all remaining Advertising Fund assets for advertising in accordance with this Section.

     **5.7.3   Reports.**  OpenWorks will prepare an annual summary of the percentages spent on production, media placement, administrative expenses and other categories as appropriate from the Advertising Fund in the prior year.  This summary will be made available to you at OpenWorks' regional office within 10 business days from OpenWorks' receipt of your written request.

     **5.8   Suggested Suppliers.**  OpenWorks will give you, in the Manual or otherwise in writing, a list of names and addresses of suppliers of goods and services that currently meet its standards and specifications.  In advising you of suppliers that meet its standards and specifications, OpenWorks expressly disclaims any warranties or representations as to the condition of the goods or services sold by such suppliers, including, but not limited to, expressed or implied warranties as to merchantability or fitness for any intended purpose.  You agree to look solely to the manufacturer of goods or the supplier of services for the remedy for any defect in the goods or services.  You may request that OpenWorks approve additional or alternate suppliers by providing OpenWorks with the required information for each proposed supplier in accordance with the Manual.  OpenWorks will evaluate the proposed supplier and give you a written response to your request within sixty (60) days of the date OpenWorks receives the last piece of information from you.  You must also reimburse OpenWorks for all costs incurred by OpenWorks in investigating and inspecting the proposed supplier and in testing the proposed supplier's product.  OpenWorks has the right to deduct these fees from monies that are due to you from OpenWorks.

**6.   PAYMENTS BY YOU.**

     **6.1   Initial Fee.**  You are required to pay OpenWorks in cashier's check or certified check payable to "O.P.E.N. America, Inc." or other form of payment acceptable to OpenWorks, an initial fee determined in accordance with <u>Attachment 2</u> of this Agreement.

     Higher franchise levels with increased account volume more than OW 25 may available in your area.  If so, then the additional account volume would be offered in additional $5,000 increments from the levels at OW 25 stated in <u>Attachment 2.</u>.  The franchise fee would be calculated as the OW 25 franchise fee of $33,000 plus a multiplier of 3 times the increased volume amount.  For example, for a $5,000 increase from a $25,000 account volume to a $30,000 account volume, the initial fee would be calculated as $72,000 + ($5,000 * 3) or $87,000.  The amount financed under the standard program would remain at $10,000 for each additional account volume and the down payment would be calculated as the franchise fee less the $10,000 financed.  The veteran's program would have the same down payment for each franchise level as the standard program but a 10% discount would be deducted from the amount financed.

     You have selected the Franchise Package as stated in <u>Article 1</u> of this Agreement.

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0021**

The fee schedule in Attachment 2 of this Agreement does not include sales tax, which, if applicable, must be paid by you.

If the franchise fee is paid in full before beginning operation, a 10% discount off the franchise fee will be applied.  The exact amounts for the franchise packages are stated in Attachment 2.

If you wish to finance a portion of the franchise fee, OpenWorks will offer financing at 12% per year or at the highest rate permitted by applicable law, whichever is less, over a two year period.  The loan will be memorialized by a promissory note in substantially the form of Exhibit D to the Franchise Disclosure Document.

The initial franchise fee is non-refundable, unless OpenWorks has been unable to offer a sufficient dollar volume of Accounts to you for the package purchased by you within the fulfillment period specified in Section 5.2.1 of this Agreement.  If the dollar volume of Accounts offered to you within the fulfillment period falls short of the amount specified in Section 5.2.1 of this Agreement, then your sole remedy is to receive a partial refund from OpenWorks, calculated as follows:  The partial refund will be an amount equal to the difference between the Initial Account Volume of the package and the Account volume of the Account(s) actually offered, multiplied by the package multiplier applicable to the package that was purchased.  The package multipliers are as follows:

| PKG. | MULTIPLIER |
|------|------------|
| OW 3 | 3.73 |
| OW 5 | 2.90 |
| OW 7 | 2.71 |
| OW 10 | 2.56 |
| OW 15 | 2.56 |
| OW 20 | 2.56 |
| OW 25and greater | 2.56 |

At any time after the fulfillment period, OpenWorks, in its sole discretion, may elect to provide you with a partial refund in accordance with the above calculation in full satisfaction of all of its obligations to provide you with Accounts.

OpenWorks has the right to offset any amounts owed to it by you or your Affiliate against the amount of the refund.

The following is an example of recalculations of the initial franchise fee:

*You purchase Package OW 5 for $18,500, with $9,500 down and $9,000 financed.  This Package should generate $5,000 per month.  However, OpenWorks offers to you Accounts that generate only $4,000 per month within the fulfillment period.  To calculate your refund, the first step is to subtract the actual Account Volume from the Initial Account Volume for the package purchased, as follows: $5,000 - $4,000 = $1,000.  The difference is then multiplied by the multiplier for Package OW 5: $1,000 X 2.9 = $2,900.  However, since you have an outstanding note balance of $9,000 payable to OpenWorks (assuming no payments were made), the $2,900 refund will apply to that balance.  Therefore, in this case the promissory note is reduced from $9,000 to $6,100 ($9,000 - $2,900 = $6,100) and no actual cash refunds are given.*

The reason why the net cost to you of the Accounts provided to you in the example, above, is less than it would have been if you had purchased the smaller package in the first place is that the cost per

13

INT _____ / INT _____
Unit Janitorial Franchise Agreement

A - 0022

dollar of Initial Account Volume decreases as the size of the package increases. If OpenWorks fails to offer you the requisite Initial Account Volume for the package purchased, your initial franchise fee is still calculated at the same lower cost per dollar of Initial Account Volume as the package that you purchased.

**6.2    Royalties.** OpenWorks will deduct from your Gross Revenue a monthly royalty of 15% of the monthly Gross Revenues of the Janitorial Service, calculated on the basis of your Gross Revenue for the immediately preceding month.

**6.3    Special Project Fees.** You agree to pay OpenWorks a "**Special Project Fee**" of a specified percentage of the total contract price for the job, before deduction of royalty fees, of each one-time, non-recurring Account service job, such as a carpet cleaning, performed by you for which OpenWorks obtained and/or priced the job (regardless of who originally obtained the Account). If you obtained the job, but OpenWorks priced it, the Special Project Fee is 15% of the total contract price for the job; if OpenWorks obtained the job, but you priced it, the Special Project Fee is 15% of the total contract price for the job; if OpenWorks obtained and priced the job, the Special Project Fee is 30% of the total contract price for the job. If you obtained and priced the job, the Special Project Fee is zero. OpenWorks will deduct the Special Project Fee for assistance rendered during the preceding month from its monthly remittance of Gross Revenue to you.

**6.4    Advertising Fund Contributions.** You must pay a monthly contribution to the Advertising Fund of up to 1% of the monthly Gross Revenue of the Janitorial Service calculated on the basis of your Gross Revenue for the immediately preceding month, which will be expended in accordance with Section 5.7. OpenWorks will deduct the Advertising Fund contribution from its monthly remittance of Gross Revenue to you. OpenWorks shall have the sole right to enforce your obligations and all other franchisees of the System who are obligated to contribute to the Advertising Fund, and neither you nor any other franchisee of the System who shall be obligated to contribute to the Advertising Fund shall be deemed a third-party beneficiary with respect to said Advertising Fund or have any right to enforce any obligation to contribute thereto.

**6.5    Payment of Royalties and Advertising Fund Contributions.** Your obligations to pay ongoing monthly royalties and monthly Advertising Fund contributions begin on the Effective Date of this Agreement, as defined above. Your obligation to pay your fees to OpenWorks is not excused by your failure or delay in returning any agreement or paperwork to OpenWorks.

**6.6    Inspection of Records.** Upon reasonable notice to OpenWorks, you will have the right during normal working hours to inspect the books and records of OpenWorks pertaining to billings and collections for the Accounts assigned to you.

**6.7    OpenWorks' Right to Audit Your Records.** You agree to keep and maintain for a period of three years (even if this Agreement is terminated) true, original, and accurate records of your business, including, without limitation, accounts, books, licenses, data, contracts and product supplier invoices, and not to engage in activities in violation of your Franchise Agreement, in particular direct billing of Accounts or provision of services to Accounts, without reporting them to OpenWorks. Furthermore, you agree to keep your books and records open to examination, copying and audit by OpenWorks. Upon OpenWorks' request, you shall prepare and produce all of your business/personal records, bank statements, financial statements, tax returns, financial statistics and any other relevant document or data for OpenWorks to verify that all fees due to it are paid by you. Any such information provided to OpenWorks pursuant to this Section shall belong to OpenWorks and may be used and published by OpenWorks in connection with the System. Upon OpenWorks' request, you shall furnish OpenWorks with a copy of each of your reports and reimbursement of sales, use and gross receipt taxes and complete copies of any federal or state income tax returns covering the operation of the Janitorial Service, all of which you shall certify as true and correct.

14

**A - 0023**

If an examination or audit by OpenWorks discloses that you have directly billed Accounts or provided services to Accounts without reporting them to OpenWorks, or that you have underreported your Gross Revenues to OpenWorks in any other manner, the total amount of all fees and charges due hereunder as a percentage of such Gross Revenues shall be immediately due and payable to OpenWorks, together with interest on late payments as provided in Section 6.11 of this Agreement. In addition, you must pay OpenWorks all reasonable costs, expenses and overhead incurred by OpenWorks in connection with its examination and/or audit.

**6.8     Marketing Fee.**

**6.8.1     Amount and Payment.**  You must pay OpenWorks a Marketing Fee for OpenWorks' services in locating Additional Accounts for you.  Currently, the Marketing Fee is determined as follows and summarized in the chart below.  OpenWorks reserves the right to increase the Marketing Fee at any time, in its sole discretion, by providing 30 days advanced written notice to you or by amending the Manual.

(a)     If the gross monthly billing of the Additional Accounts located by OpenWorks for you is $5,000 or less, the Marketing Fee shall be 3 times one month's gross billing of the Additional Accounts.

(b)     If the gross monthly billing of the Additional Accounts located by OpenWorks for you is between $5,001 and $10,000, the Marketing Fee shall be 2.7 times one month's gross billing of the Additional Accounts.

(c)     If the gross monthly billing of the Additional Accounts located by OpenWorks for you is greater than $10,000, the Marketing Fee shall be 2.2 times one month's gross billing of the Additional Accounts.

**The Marketing Fee applicable to any Purchase Contract may be altered at any time before signing of the Purchase Contract, depending on changes in market conditions or industry standards or on the type of Account to be offered.**

If you pay the Marketing Fee in full immediately, you will receive a 10% discount.  The Marketing Fee may be partially or entirely financed in OpenWorks' sole discretion, considering the size of the transaction, other debt service payable by you to OpenWorks and others, your credit history, and your anticipated cash flow.  Any portion of the Marketing Fee that is financed will be memorialized by a promissory note substantially similar to Exhibit D of the Franchise Disclosure Document.  The terms of financing shall be one payment equivalent to a down payment if you do not make the down payment at the time you contract for the Additional Accounts, and 24, 30, 36 or 48 equal monthly payments of the principal balance due plus annual interest of 12%.  OpenWorks will deduct the Marketing Fee from its monthly remittance of Gross Revenue to you.  The down payment (or first note payment) and the number of monthly payments are determined as follows:

15

| Monthly Billing | | Marketing Fee (as a multiple of the full monthly billing) | Down Payment or First Note Payment (as a percentage of the full monthly billing) | Financing Terms | | Discount (if paid in full at the time of acceptance) |
| From | To | | | Number of Additional Monthly Payments | Interest Rate | |
|---|---|---|---|---|---|---|
| $0 | $5,000 | 3 | 30% | 24 | 12% | 10% |
| $5,001 | $10,000 | 2.7 | 15% | 24-30 | 12% | 10% |
| $10,001 | No Limit | 2.2 | 5% | 36-48 | 12% | 10% |

**6.8.2   Refunds.** The Marketing Fee will be refunded to you on a proportionate basis if OpenWorks does not offer the requested Additional Account Volume to you within 120 days after signing of the Purchase Contract or another fulfillment period specified in the Purchase Contract. The fulfillment period may be extended when you refuse an Account you are offered, as described in Section 5.2.3 of this Agreement. Additionally, if you refuse the Additional Account under Section 5.2.3 of this Agreement, any down payment you have made will be either refunded to you by the end of the month after the month in which you refuse the Account or will be credited towards a different Additional Account if you accept a replacement Additional Account. The Marketing Fee is not refundable under any other circumstances. Specifically, the Marketing Fee is not refundable, and OpenWorks has no obligation to offer you replacement Accounts, if an assigned Account is transferred at the request of the Account, or the Account cancels the assigned Account, in either case because of your wrongful act, omission, negligence or nonprofessional interaction with an Account, for the Account satisfaction reasons stated in Section 7.2.5, for any reason that you or your employees, agents or Affiliates could have controlled, or for any violation of the Maintenance Agreement or work schedule, this Agreement or the Manual.

**6.9      Extended Account Guarantee Fee.**

**6.9.1   Guarantee and Replacement of Accounts.**   When selected Accounts are assigned to you, OpenWorks may offer you, at its sole discretion, the opportunity to purchase an extended Account guarantee on that Account as additional protection to you in case that Account is cancelled. If you accept the offer, and the Maintenance Agreement is terminated by an Account for any reason other than as stated in paragraphs (a) through (i) inclusive of Section 7.2.5 of this Agreement on account satisfaction, then OpenWorks will offer you a replacement Account within 150 days. The replacement Account will be the same or greater monthly billing magnitude as the Account that it replaces. If the monthly billing volume of the replacement Account is greater than the canceled Account, OpenWorks may assess a Marketing Fee from you that is based on the overage. OpenWorks is also not obligated to offer you an extended Account guarantee fee on the replacement account. You must accept the offer and sign the current form (an example of which is attached to this Agreement as Attachment 5).

**6.9.2   Payment.**   You must pay OpenWorks a monthly extended Account guarantee fee, which is a percentage of the monthly Gross Revenue of the Janitorial Service, calculated on the basis of your Gross Revenue for the immediately preceding month. OpenWorks has the right to change this percentage for new Accounts being offered to you but once you purchase an extended Account guarantee, the percentage will not change for as long as you have the guarantee on the Account. OpenWorks will deduct the extended Account guarantee fee from its monthly remittance of Gross Revenue to you.

**6.9.3   Transfer and Termination.**   The extended Account guarantee will continue as long as you are servicing the selected Account. If the extended Account guarantee is terminated by you or OpenWorks as provided below, you will not receive any refund of the fees paid for the guarantee. You may terminate the extended Account guarantee upon 30 days written notice to OpenWorks. If you transfer or sell the Account then the extended Account guarantee is terminated without further notice as of

16

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0025**

the date of your transfer or sale.  OpenWorks may, but is not obligated to, offer an extended Account guarantee to the transferee upon such a transfer or sale.  If OpenWorks terminates your Account for any of the reasons stated in paragraphs (a) through (i) inclusive of Section 7.2.5 of this Agreement, then the extended Account guarantee will be terminated without further notice.

**6.10    Account Transfer Fee and Franchise Transfer Fee.**  As a condition of Transfer of an Account or this franchise, you must pay to OpenWorks an Account Transfer fee of $50 per Account for the Transfer of one or more (but less than substantially all) of the Accounts you service, and a Franchise Transfer Fee of $2,000 for all other Transfers.

**6.11    Interest on Late Payments.**  Any payment not received by OpenWorks when due will bear interest at 21% per year or at the highest rate allowed by applicable law from the date when payment is due, whichever is less.  Interest charges on late payments are intended to partially compensate OpenWorks for loss of use of the funds and for internal administrative costs resulting from late payments, which would otherwise be difficult to measure with precision.  The fact that such charges are imposed should not be construed as a waiver of the right to timely payment.

**6.12    Account Charges.**  If you fail to turn over to OpenWorks all Account keys, security codes and cards immediately when you discontinue services to an Account, you must pay OpenWorks all charges assessed by any Account plus $500 per day until the Account's keys, codes and cards are delivered to OpenWorks.

**6.13    Cancellation Charges.**  You must pay OpenWorks a cancellation charge of $50 if you fail to keep any appointment with OpenWorks or an Account (including but not limited to an appointment for a quality control inspection) unless you give at least 24 hours advance notice that you are canceling the appointment.  You must pay OpenWorks a cancellation charge of $50 if you, any of your owners, your Designated Manager or any of your employees fails to attend any training class for which you, he or she is scheduled.

**6.14    Minimum Account Service Fee.**  If you are not actively engaged in providing Janitorial Services for a period of one full calendar month ("**Inactive Month**"), then you must pay OpenWorks a "**Minimum Account Service Fee**" of $75 per Inactive Month until you either begin providing Janitorial Services or request in writing that OpenWorks terminate your franchise.  OpenWorks will bill you directly for this Minimum Account Service Fee.  The Minimum Account Service Fee is due and payable on or before the 10th day of each month following each Inactive Month.  If you accept an account after any Minimum Account Service Fee is due, OpenWorks may deduct the Minimum Account Service Fee from its monthly remittance of Gross Revenue to you.  If you remain inactive for three or more calendar months, even though you have paid the Minimum Service Fee for those months, OpenWorks may terminate your franchise in accordance with Section 10.2.1 of this Agreement.  The Minimum Account Service Fee is waived during the fulfillment period.

**6.15    Background Check Fee.**  Upon the signing of this Agreement and at any time you finance any Marketing Fee, OpenWorks will evaluate your credit history and charge you its background check fee.

**6.16    Document Preparation Fee.**  If you request the preparation of customized documents for marketing or other purposes, you will be assessed a $250 preparation fee due upon request for preparation.

**6.17    Manual Check Fee.**  If you elect to have payments due to you made pursuant to a manual check in lieu of a direct deposit into a designated account, you will be assessed a fee of up to $25 per manual check.

17

**6.18    Equipment and Supplies.**  OpenWorks provides you with an equipment and supply Starter Kit in accordance with Section 5.3.  Once you have exhausted your equipment and supplies from the Starter Kit, you must purchase ongoing equipment and supplies only from OpenWorks' designated and approved suppliers.  If you purchase equipment or supplies through OpenWorks, OpenWorks will deduct amounts owed to OpenWorks from funds OpenWorks is obligated to pay to you.  OpenWorks reserves the right to require you to pay OpenWorks directly at the time you order any equipment or supplies from OpenWorks.

**6.19    Trouble Call Fee.**  If OpenWorks is required to investigate or resolve a customer complaint on your behalf, you must pay OpenWorks a Trouble Call Fee of $50 per occurrence plus reimburse OpenWorks for any service OpenWorks provides to your customer at the current hourly rate set forth in the Manual.  OpenWorks has the right to deduct the Trouble Call Fee and any reimbursable charges from funds OpenWorks is obligated to pay you.

**6.20    Lost Document Fee.**  If you have damaged, lost or otherwise misplaced any document relating to the franchise relationship and request a replacement of such document, OpenWorks will charge you $25 for a replacement copy of each such document.

**6.21    Legal Entity Fee.**  The parties acknowledge and agree that in the event you fail to complete the Required Transfer within 90 days of the Effective Date, it will be difficult to quantify the time and cost OpenWorks will incur in enforcing your compliance with the Required Transfer obligation.  Therefore, if you fail to complete the Required Transfer within 90 days of the Effective Date, you agree to pay OpenWorks a fee of $500 per month until such Required Transfer is complete, which the parties agree is a reasonable estimate of OpenWorks' time and cost in enforcing your compliance with the Required Transfer obligation.  The requirement to pay this fee is not an election of remedies, and at any time after 90 days of the Effective Date and before you complete the Required Transfer, OpenWorks may terminate your franchise in accordance with <u>Section 10.2.1</u> of this Agreement.

**7.    YOUR OBLIGATIONS.**

**7.1    Use of Trade Name and Marks.**

**7.1.1    Context.**  You will use the Trade Names and Marks only in the operation of your Janitorial Service.  You will not use any other trade names or marks in connection with your Janitorial Service.  You cannot use the Trade Name or Marks as part of your legal business name, or with other words, designs or symbols.  You may not use the Trade Name or Marks in connection with the sale of unauthorized products or services, or in any manner not authorized by OpenWorks.  You will not represent in any manner that you have acquired any ownership rights in the Trade Names or Marks.  You acknowledge OpenWorks' ownership in the Trade Names and Marks.  Any goodwill associated with the System and identified by the Trade Names and Marks (including all future distinguishing characteristics, improvements and additions to or associated with the System) is OpenWorks' property and shall inure directly and exclusively to the benefit of OpenWorks.  Upon the expiration or Termination of this Agreement for any reason, no monetary amount shall be assigned as attributable to any goodwill associated with your use of the Trade Names or Marks.

**7.1.2    Changes in Trade Names and Marks.**  OpenWorks has invested substantial time, energy and money in the promotion and protection of its Trade Names and Marks as they exist on the date this Agreement is signed.  It has no present intention of altering them.  However, OpenWorks and you both recognize that rights in intangible property such as the Trade Names and Marks are often difficult to establish and defend and that changes in the cultural and economic environment within which the System operates may make changes in the Trade Names and Marks desirable or necessary.  You understand that OpenWorks therefore reserves the right to change any of its Trade Names and Marks and

18

the specifications for each when it believes that such changes will benefit the Franchise Network. You agree that you will promptly conform, at your own expense, to any such changes.

**7.1.3   Advertising**. You agree to submit to OpenWorks copies of all advertising materials that you propose to use at least two weeks before the first time they are distributed, broadcast or published. All advertising must conform to the standards set out in the Manual. OpenWorks will review the materials and notify you within ten business days whether it approves or rejects them. Silence or failure to respond will not be deemed consent. OpenWorks will not withhold its approval unreasonably. For purposes of this Section, advertising materials that differ from previously approved materials only in such variables as date, price or names of products will be considered to be previously approved. However, even if OpenWorks has approved specified materials, it may later withdraw its approval if it reasonably believes it necessary to make the advertising conform to changes in the System or to correct unacceptable features, including, but not limited to, any misrepresentation in the advertising material, whether or not intentional. You may not engage in telemarketing in connection with your Janitorial Service.

**7.1.4   Legal Protection**. You agree to notify OpenWorks immediately in writing if you become aware of any unauthorized use of its Trade Names, Marks or System. You will promptly notify OpenWorks in writing of any claim, demand or suit against you or against your principals based upon or arising in connection with your use of the Trade Names, Marks or System. In any action or proceeding arising from or in connection with any such claim, demand or suit, you agree that OpenWorks may select legal counsel and has the right to control the proceedings, including the right to compromise, negotiate and settle, in its discretion, such claims, demands or suits. You may not initiate any communication or respond with any information on any infringement or challenge with any person other than your legal counsel, OpenWorks, our affiliates, or our counsel. If OpenWorks undertakes the defense or prosecution of any litigation or proceedings relating to the Trade Names or Marks, you will execute any and all documents and do such acts and things as may, in the opinion of OpenWorks' legal counsel, be reasonably necessary to carry out such defense or prosecution.

**7.2   Quality Control**.

**7.2.1   Opening**. You may not begin to operate the Janitorial Service until OpenWorks certifies in writing that you and your Designated Manager have satisfactorily completed initial training.

**7.2.2   Compliance With Manual**. You must operate your Janitorial Service in complete compliance with the standards and specifications set out in the Manual. OpenWorks may make changes in these standards and specifications, when, in its reasonable discretion, change is needed for the continued success and development of the System and the Franchise Network. Such changes may necessitate the purchase of equipment (including a computer system), supplies or other goods, completion of additional training by your employees, or other cost to you. You will promptly conform to the modified standards and specifications at your own expense. You must at all times keep your copy of the Manual current by inserting in it revised pages and other changes given to you by OpenWorks and deleting superseded pages. You must also protect its confidentiality by allowing access only by employees with a need to know its contents and by establishing and enforcing procedures to safeguard the Manual in a secure location when it is not in use. If there is any dispute as to the requirements of the Manual at any point in time, the terms of the master copy of the Manual maintained by OpenWorks will control.

**7.2.3   Your Performance**. You will provide Janitorial Services to your Accounts in a workmanlike and professional manner. Great weight will be given to the Accounts' opinions as to what is workmanlike and professional. You will carefully safeguard and protect the keys to your Accounts' buildings and will never give custody of the keys to any person not directly associated with the Janitorial

INT _____ / INT _____
Unit Janitorial Franchise Agreement

**A - 0028**

Service or for any unauthorized purpose.  You will diligently follow any instructions or warnings made by any Account as to the security of the Account's premises or as to how, when and where you may perform Janitorial Services.  Failure to adhere strictly to these requirements will be considered grounds for immediate termination of your right to serve a particular Account.  If violation of this Section occurs repeatedly, OpenWorks may terminate this Agreement.

      **7.2.4   Services Offered**.  You will offer and sell all the services and only the services that OpenWorks has authorized you to provide.  You may purchase products that are to be used in the Janitorial Service from any source, as long as the supplier meets the standards established by OpenWorks and the products meet the specifications set out in the current version of the Manual.  If you wish to use any product not previously certified by OpenWorks to meet its specifications or which is sold by a supplier not previously approved by OpenWorks, you will advise OpenWorks of this fact and, upon its request, will give OpenWorks product specifications, sample products, and/or information about the supplier.  OpenWorks will communicate either its approval or its reasons for withholding its approval to you within ten business days.  Silence may not be construed as consent.  As a condition of approving a supplier or product, OpenWorks will require you to reimburse it for any expenses reasonably incurred by OpenWorks in inspecting the supplier's premises, checking the supplier's credentials, or testing the product.  As a condition of approving a supplier of any product that bears the Trade Names or Marks, OpenWorks may require that the supplier sign a license agreement.  OpenWorks may withdraw its approval of a supplier or product if either or both no longer meet its standards or specifications.

      **7.2.5   Account Satisfaction**.  OpenWorks may, at its sole discretion terminate your right to serve and to Transfer a particular Account, and may assign the Account to another franchisee, upon the occurrence of one of the following events:

(a)    You have repeatedly failed to perform Janitorial Services to an Account's satisfaction and/or in accordance with the Maintenance Agreement or Manual and/or OpenWorks' standards;

(b)    An Account has lodged an oral or written complaint with OpenWorks regarding you, your service or your employees; OpenWorks has notified you of the substance of the complaint, and the Account remains dissatisfied for more than five days from the date of the notice;

(c)    OpenWorks receives an oral or written request from an Account that the Account be serviced by a different franchisee;

(d)    You provide Janitorial Service to an Account in a capacity other than that of an OpenWorks franchisee;

(e)    You abandon or fail to provide service to an Account as scheduled or the Account notifies OpenWorks that it is dissatisfied on any two days within a period of 60 consecutive days;

(f)    You cancel or fail to keep appointments with OpenWorks or an Account for quality control inspections on any two occasions within a period of 60 consecutive days;

(g)    OpenWorks receives an oral or written request from an Account that its Maintenance Agreement be terminated;

(h)    If you or your Designated Manager are not Fluent in English;

(i)     You fail to maintain an adequate staff of employees sufficient to provide service to an Account; or

(j)     You no longer wish to service an Account.

You waive any claim or right to payment for services performed for an Account, and agree to Transfer such an Account after OpenWorks terminates your services to the Account under this Section. You agree that you will not be entitled to any payment upon OpenWorks' assignment of the Account to another franchisee, or to any refund or reduction of fees paid or promised to OpenWorks by reason of the termination of your service to any Account under this Section. You agree to successfully assist OpenWorks' managers in the transition or termination of an Account. OpenWorks may also terminate your franchise for events in subsections (a) through (i) inclusive of this Section (see Section 10.2).

    7.2.6    **Inspections**. OpenWorks may conduct periodic quality control inspections of your Janitorial Service operation during normal business hours. You must attend each of these inspections with OpenWorks or pay OpenWorks a cancellation charge of $50. OpenWorks will give you advance notice of the inspections. If there are repeated cancellations or absenteeism, OpenWorks has the right to terminate your services to an Account and/or terminate your Agreement. OpenWorks may also make quality control inspections without prior notice for which you will not have to attend. Alternatively, OpenWorks may require you to conduct such inspections, and promptly provide OpenWorks with written reports of such inspections in the format specified by OpenWorks from time to time. You must promptly correct any deficiencies in your operation, which you discover or which are brought to your attention by OpenWorks. If you do not take immediate, effective steps to bring your operation up to OpenWorks' standards, your failure to do so will constitute a material breach of this Agreement. If a deficiency is discovered at any time, during an inspection or following a complaint, OpenWorks has the right to correct the deficiency and charge you $50 for doing so.

    7.2.7    **Notification of Complaints**. You will notify OpenWorks promptly if you are served with a complaint in any legal proceeding that is in any way related to the Janitorial Service or if you become aware that you are the subject of any complaint to or investigation by a governmental licensing authority or consumer protection agency.

    7.2.8    **Employees**. You will maintain a staff of available and trained employees sufficient to operate the Janitorial Service in compliance with OpenWorks' standards.

    7.2.9    **Uniforms and Professional Attire**. Your staff of employees must wear a uniform when the employees are on an Account's premises. The uniform must meet the standards set forth in the Manual. You or your Designated Manager must be in professional attire or in business casual attire with an OpenWorks polo shirt with the OpenWorks logo when on the Account's premises during normal business hours. If you are performing the Janitorial Services after normal business hours, then you may choose to be in a uniform, professional business attire or business casual attire with an OpenWorks logo shirt when performing those services.

    7.2.10    **Best Efforts**. You must use your best efforts and devote all of your productive time and effort to the management and operation of your franchise business on a full-time basis. You must promote OpenWorks in all your actions.

    7.2.11    **Designated Manager**. If a corporation or other legal entity, you agree that a specific individual will be the Designated Manager. If you are an individual, then you may be the Designated Manager or you may appoint another Designated Manager. The Designated Manager must use his or her best efforts and personally be responsible for management of the janitorial service business on a day-to-day basis, and you must carefully monitor and be responsible for the performance of any

21

INT _PtPtb_ / INT_____
Unit Janitorial Franchise Agreement

**A - 0030**

Designated Manager. The appointment or change of a Designated Manager is subject to the prior written approval of OpenWorks. You designate the person listed in Section 1 as the Designated Manager, and OpenWorks approves such person (subject to such Designated Manager's satisfactory completion of training in Section 5.1). OpenWorks has the right to rely upon instructions from the Designated Manager on matters relating to the franchise until OpenWorks receives a written notification from you changing the Designated Manager. You shall notify OpenWorks in writing of any proposed change in a Designated Manager before the change occurs. OpenWorks will review the request and shall use commercially reasonable efforts to approve or disapprove of the change within 10 business days of its receipt of the request. If OpenWorks does not disapprove of the change within 10 business days then the change is deemed to be approved. OpenWorks has the right to demand that you promptly remove a Designated Manager if the Designated Manager violates any provision of this Agreement or any other agreement with OpenWorks, including but not limited to, provisions in Section 7.2.5 that addresses, among other actions, failure to adequately provide janitorial service, comply with OpenWorks' standards and to be Fluent in English. Upon termination of employment of a Designated Manager, you are required to appoint a successor within 10 days and (if you are an individual) take on the role of Designated Manager until OpenWorks approves the proposed Designated Manager and that person is qualified to take over.

**7.2.12 English Language.** You and your Designated Manager must be able to read, speak and write clearly and with proficiency ("**Fluent in English**") in order to adequately communicate with Accounts and to maintain OpenWorks' professional image. OpenWorks, in its sole discretion, shall determine if you and/or your Designated Manager are Fluent in English.

**7.2.13 Social Media Policy.** We have the right to control all use of URL's, domain names, websites, addresses, metatags, links, email addresses and other means of electronic identification or origin ("e-names") related to the Janitorial Business and System. We also have the right to approve and limit your use of the Internet, Intranet, World Wide Web, wireless technology, digital cable, use of e-names, email, websites, home pages, bulletin boards, chat rooms, email, linking, framing, on-line purchasing cooperatives, marketplaces, barter exchanges, and related technologies, methods, techniques, registrations, networking, and any electronic communication, commerce, computations, or any means of interactive electronic documents contained in a network of computers or similar devices linked by communications software (collectively, "e-commerce"). Without our prior written consent, you will observe OpenWorks' policy on and will not register a domain name, create, maintain or establish an internet website or electronic mail address, blog, bulletin board, chat room, barter exchange, home page, marketplace, Facebook page, MySpace, Twitter YouTube, LinkedIn, account or any other electronic media form (collectively, "website") advertising the Janitorial Business, or using our Marks, or any similar mark, in a website, in a web address, in a uniform resource locator or in any manner on the internet such as meta-tags, key words, linking or framing. You agree that we own all right, title and interest in and to, any and all websites and e-names we use or permit you to use in connection with the System or which bear our Marks or any similar marks. You agree that we also own all rights in any data collected via e-commerce related to the System, including any customer data, click-stream data, cookies, user data and hits and that such information is also included in our Confidential Information. You acknowledge that you may not mention or discuss the Janitorial Service, OpenWorks or the System without OpenWorks' prior written consent. Any and all photographs and other media approved by us that you have posted to any social media platform must comply with all applicable laws, including federal and state laws governing copyright. You agree and acknowledge that OpenWorks has the right to review all on-line e-commerce content involving the Marks or the System, and to require you to remove any content or usage, in OpenWorks' sole discretion.

**7.3 Insurance and Bond.** You will be required to comply with the following policies regarding insurance and janitorial service bonds:

- You must purchase and maintain a policy or policies of comprehensive public liability insurance, including product liability coverage, covering all Janitorial Service assets, personnel and activities on an occurrence basis with a combined single limit for bodily injury, death or property damage of not less than $4,000,000.

- In some instances an Account may request additional insurance, which you will have to additionally purchase.

- You must buy a janitorial service bond in the amount of $25,000 covering you and your employees and OpenWorks and its officers and directors must be named as an additional insured.

- You must obtain hired and non-hired auto insurance with a minimum of $25,000 - $50,000 liability coverage on all vehicles involved in the OpenWorks business.

- You must carry casualty insurance in a minimum amount equal to the replacement value of your interest in the Janitorial Service supplies, vehicles and equipment.

- You must maintain workers compensation policies for your employees.

- You must maintain policies of disability insurance and any other types of insurance required by applicable law.

- OpenWorks may increase the minimum coverage requirements set forth in this <u>Section 7.3</u> annually if necessary to reflect inflation or other changes in circumstances.

- Each insurance policy that is required under this <u>Section 7.3</u> must contain a provision that the policy cannot be canceled without 10 days' written notice to OpenWorks; it must be issued by an insurance company of recognized responsibility, designate OpenWorks and its officers and directors as an additional named insured, and be satisfactory to OpenWorks in form, substance and coverage. You must deliver a certificate of the issuing insurance company evidencing each policy or bond to OpenWorks within ten days after the policy is issued or renewed.

- If you fail to purchase the required general liability insurance, any additional insurance and bond, OpenWorks may enroll you in any insurance program it sponsors or purchase the insurance and/or bond for your benefit and deduct the premiums and other related costs from your monthly Gross Revenue. Failure to maintain the bond or the required amounts and types of insurance set forth in any subsection of this <u>Section 7.3</u>, or any other insurance required by applicable law, may result in a loss of Accounts or termination of your franchise.

**7.4     Financial and Legal Responsibility.**

     **7.4.1     Compliance with Law.** You must comply with all federal, state and local laws and regulations pertaining, directly or indirectly, to the Janitorial Service, including, but not limited to, Occupational Safety and Health Administration regulations. You must keep current all licenses, permits, bonds and deposits made to or required by any government agency in connection with the operation of the Janitorial Service. You must implement all administrative, physical and technical safeguards necessary to be in accordance with applicable law and best industry practices to protect any information that can be used to identify an individual, including names, addresses, telephone numbers, email addresses, social security numbers, employee identification numbers, signatures, passwords, financial information, credit cards information, vehicle identification numbers, account numbers, biometric or health data,

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0032**

government-issued identification numbers and credit-report information ("Personal Identifiable Information" or "PII"). It is your responsibility to confirm that the safeguards you use to protect Personal Identifiable Information comply with all applicable laws and industry best practices related to the collection, access, use, storage, disposal and disclosure of PII even if OpenWorks provides you with any suggestions or guidance. If you become aware of any suspected or actual breach of security or unauthorized access involving Personal Identifiable Information, you will immediately notify OpenWorks and provide specifics on the Personal Identifiable Information was compromised or disclosed. Upon OpenWorks' reasonable request, you agree to permit OpenWorks, its affiliates, and any third party vendors OpenWorks designates to have independent unlimited access to all information generated by your computer system. If you have a third party vendor for your computer system, you agree to send your vendor a written notice granting OpenWorks unlimited access to your data in the event of an actual or suspected data breach. You specifically agree to comply with any state required employment verification programs and any federal employment verification programs such as E-Verify.

      **7.4.2    Payment of Indebtedness.** You must pay promptly when due all taxes and debts that you incur in the conduct of your business.

      **7.5    Pre-Existing Accounts.** If you have an existing commercial janitorial or other facility services business prior to entering into this Agreement, the commercial accounts serviced by that business ("**Existing Accounts**") must be identified in <u>Attachment 2</u> to this Agreement. You shall have two months from the date of this Agreement to convert the Existing Accounts to OpenWorks Accounts for which OpenWorks will provide billing and collection services as provided for in <u>Section 5.4.1</u> of this Agreement, after which time OpenWorks will have the right (whether or not conversion has been completed) to begin charging royalties and other applicable fees or charges. You must also immediately cease soliciting any commercial janitorial or other facilities services business, except as an OpenWorks Franchisee.

      **7.6    Variances.** OpenWorks may from time to time approve exceptions or changes from the uniform standards of the System that OpenWorks, in its sole absolute discretion, believes necessary or desirable under particular circumstances. Franchisee understands that it has no right to object to or automatically obtain such variances, and that any exception or change must be approved in advance by OpenWorks in writing. Franchisee also understands that some franchisees may operate under different forms of agreements due to annual updates and program revisions, and consequently the rights and obligations of such franchisees may differ materially from those of Franchisee.

      **7.7    Computer System.** You must have a computer system that meets the requirements specified in the Manual, as may be revised from time to time. In order to communicate with OpenWorks you must also have Internet and email access. You must inform OpenWorks of any changes in the email account address listed in <u>Article 1</u> before the change occurs.

      **7.8    Certificate of Tax Compliance.** Franchisee must, within ten days of each one year anniversary of the Effective Date of this Agreement, deliver to OpenWorks a certificate signed by one of Franchisee's officers, certifying, on behalf of Franchisee, that as of the date such certificate is delivered to Franchisee, Franchisee has complied with all laws of the state of its formation or incorporation relating to taxes and reporting of employees.

**8.    RELATIONSHIP OF PARTIES.**

      **8.1    Interest in Marks and System.** You will not at any time do or cause to be done anything contesting or impairing OpenWorks' interest in its Trade Names, Marks or System. You acquire no rights in any of these things except for your right to use them in accordance with the express terms of

2622019.2 03/16

INT _____ / INT _____
Unit Janitorial Franchise Agreement

**A - 0033**

this Agreement. OpenWorks retains the right to grant other franchises or licenses to use the Trade Names, Marks and System upon any terms that OpenWorks wishes both within and without the Territory.

**8.2    Independent Status.** Whether you are an individual or an independent legal entity, you will make this fact clear in your dealings with suppliers, lessors, government agencies, employees, Accounts and others. You will rely on your own knowledge and judgment in making business decisions, subject only to the requirements of this Agreement and the Manual. You may not expressly or impliedly hold yourself out as an employee, partner, shareholder, joint venturer, representative or general agent of OpenWorks, nor may you expressly or impliedly state or suggest that you have the right or power to bind OpenWorks or to incur any liability on its behalf. If you are a corporation, partnership or other form of legal entity, you will not use the Trade Names as part of your entity's name. We have no right to control your employment policies, including hiring, scheduling, pay rates, discipline or termination of your employees, except that you must adhere to our System standards in your Janitorial Business.

**8.3    Display of Disclaimer.** Business cards, stationery, purchase order forms, invoices, leases, tax returns and other documents used by you in your business dealings with suppliers, lessors, government agencies, employees and Accounts must clearly identify you as an independent legal entity.

**8.4    Indemnification.** You agree to indemnify, hold harmless and promptly reimburse OpenWorks and its Affiliates, and their directors, officers, employees and agents, harmless from and against all expenses, costs, claims, actions, proceedings, damages, liabilities and other losses (including, without limitation, attorneys' and accountants' costs and fees) of any kind arising from or in any way connected to any of your or your Affiliates' activities or your or your Affiliates' operation of the Janitorial Service. If OpenWorks or any other indemnified party is made a party to a legal proceeding in connection with an action of yours or your Affiliates, OpenWorks or the other indemnified party may hire counsel to protect its interests and you must promptly pay all costs and expenses they incur.

**8.5    Confidential Information.**

**8.5.1    Ownership.** You acknowledge that OpenWorks is the sole owner of all the Confidential Information; that the Confidential Information is being imparted to you in trust and confidence; and that the Confidential Information is not generally known to the trade or public and is not known to you except by reason of such disclosure. You further acknowledge that you will acquire no interest in the Confidential Information other than the right to utilize it in connection with the performance of your obligations hereunder and the operations of the Janitorial Service. In addition, you acknowledge that the use, duplication or disclosure of the Confidential Information except as expressly permitted by this Agreement will constitute an unfair method of competition and that OpenWorks will suffer irreparable injury thereby.

**8.5.2    Work Product.** You agree that all documents, papers, notes and other material and work product containing or derived from the Confidential Information or connected with your conduct of the Janitorial Service business shall be Confidential Information. You agree that you will have no proprietary interest in any work product developed or used by you and related to this Agreement. You agree, from time to time, as may be requested by OpenWorks, to do all things that may be necessary to establish or document OpenWorks' ownership of any such work product, including without limitation execution of assignments.

**8.5.3    Confidentiality.** All of the Confidential Information and all other information and knowledge about the System, which is not in the public domain, and such other information and material as OpenWorks may designate as confidential shall be deemed Confidential Information for purposes of this Agreement. You acknowledge that the Confidential Information is disclosed to you solely on the condition that you agree, and you hereby do agree, that you: (a) will use the Confidential

25

Information in strict accordance with the instructions and directions given by OpenWorks from time to time; (b) will not use the Confidential Information, directly or indirectly, in any other business or capacity; (c) will not, at any time, in any manner or form, directly or indirectly, disclose, duplicate, license, sell, reveal, divulge, publish or communicate the Confidential Information, or any portion thereof, to any person or entity other than your authorized employees or consultants who need to have such information in connection with their jobs; (d) will not copy any materials containing the Confidential Information, including without limitation the System manuals, without OpenWorks' prior written consent; (e) will observe and implement all reasonable procedures imposed from time to time by OpenWorks to prevent the unauthorized use and disclosure of the Confidential Information; (f) will keep all System manuals and other written materials containing any portion of the Confidential Information in a secure manner and place; and (g) if you are legally compelled to disclose any of the Confidential Information, will do so only if you have used your best efforts to afford OpenWorks the opportunity of obtaining appropriate protective orders or other assurances of confidentiality satisfactory to OpenWorks.

> **8.5.4   Return of Confidential Material.** Upon the termination, expiration or cessation and non-renewal of this Agreement for any reason, you must immediately (but in any event within five days of such termination, cessation or expiration) return to OpenWorks all copies of any materials containing the Confidential Information (whether in original or duplicate form) and all property and equipment belonging to OpenWorks, in your or your Affiliates' possession, custody or control, including any of such items produced or prepared by you.   To the maximum extent permitted by the law, OpenWorks reserves the right to deduct the cost of unreturned or damaged property, equipment or information from amounts otherwise due to you or your Affiliates.

**8.6   Noncompetition.**

> **8.6.1   Covenant.**  You recognize that: (a) the commercial janitorial and other facility services business is very competitive; (b) the System is operated in multiple states and is intended to expand into other geographical areas; (c) by virtue of the performance of this Agreement, you will have access to the Confidential Information and will have close contacts with OpenWorks' Accounts for the purpose of maintaining and further developing the business and goodwill of the System; (d) you will have the attendant ability to divert customer trade; and (e) OpenWorks has strong legitimate interests in obtaining the covenant in this Section 8.6 for the protection of the goodwill of the System. You therefore agree that, without the express prior written consent of OpenWorks, which OpenWorks may withhold in its sole and absolute discretion, you will not, during the Time Period (as defined below), directly or indirectly, whether personally or as an agent, employee, partner, representative, affiliate or in any other capacity on behalf of any person or entity, engage in, render services to, or provide financing to, or have any interest in, in any manner whatsoever, any Competitive Business (as defined below) located or conducting business within the Area (as defined below).

> **8.6.2   Time Period.**  For the purposes of Section 8.6.1 of this Agreement, the term **"Time Period"** shall mean (a) for the period of time that this Agreement is in effect; and (b) beginning when this Agreement is no longer in effect, for a period of 24 months thereafter.  In the event a court of competent jurisdiction determines that 24 months from the date this Agreement is no longer in effect is unenforceable, the Time Period will be 18 months.  If a court of competent jurisdiction determines that 18 months is unenforceable, the Time Period will be 12 months.   If a court of competent jurisdiction determines that 12 months is unenforceable, the Time Period will be six months.

> **8.6.3   Competitive Business.**  For the purposes of Section 8.6.1 of this Agreement, the term **"Competitive Business"** shall mean any business providing janitorial services to commercial customers, or any other services that you are or were providing as part of your Janitorial Service business.

26

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0035**

8.6.4    **Area.**  For the purposes of <u>Section 8.6.1</u> of this Agreement, the term "**Area**" shall mean (a) the geographical area in which you provide or provided services to Accounts, and (b) a radius of 75 miles from the regional office through which you conduct or conducted your Janitorial Service business, and (c) a radius of 75 miles from any other regional office operated by OpenWorks or any of its master franchisees in the state where you conduct or conducted your Janitorial Service business, and (d) a radius of 75 miles from any other regional office operated by OpenWorks or any of its master franchisees in any other state.

**8.7    Non-Solicitation.**

8.7.1    **Employees.**  You agree never to employ or solicit for employment any person who is at the time employed by OpenWorks or any other franchisee in the System, and you agree not to directly or indirectly induce any such person to leave their employment with OpenWorks or any other franchisee in the System.

8.7.2    **Customers.**  You agree that while this Agreement is in effect, all solicitations you make relating to janitorial and other facility services will be made on behalf of your Janitorial Service business.  You agree that after the expiration and non-renewal or the termination of this Agreement for any reason, you will not solicit as a customer for commercial janitorial or other facility services: (a) any Account you serviced as a franchisee of OpenWorks, or (b) any other Account of OpenWorks or any of its master franchisees serviced by others during the period this Agreement was in effect, or (c) any prospective customers to whom OpenWorks or any of its master franchisees had proposals or bids outstanding at the time this Agreement ended.

**8.8    Modification.**  The covenants set forth in <u>Sections 8.1</u> through <u>8.7</u> inclusive of this Agreement shall each be construed as independent of any other covenant or provision of any other agreement.  OpenWorks may reduce the scope of the obligations under the covenants of <u>Sections 8.1</u> through <u>8.7</u> inclusive of this Agreement unilaterally and without the consent of any other person or entity, effective upon giving notice to you.

**8.9    Lack of Prior Conflict.**  You represent and acknowledge that none of you (if you are an individual), any person who owns any interest in your business nor your Designated Manager is bound by any post-employment covenant with a third-party that would restrict the fulfillment of your obligations or duties under this Agreement.  To the extent any such person is bound by any such post-employment covenants, you represent and warrant that you have provided OpenWorks with a copy of the applicable written covenant.

**8.10    Notification.**  During the Time Period, you shall notify any new employer or business associate, prior to entering into the employment or business relationship, of the existence of this Agreement and will provide such new employer or business associate with a copy of this Agreement.  You further agree and authorize OpenWorks to notify others, including customers of OpenWorks and your future employers or business associates of your obligations under this Agreement.

**8.11    Tolling of Time Periods.**  The running of the Time Period or any period of time specified in <u>Section 8.6.1</u> or <u>Section 8.6.2</u> of this Agreement will be tolled and suspended for any period of time in which you are found by a court of competent jurisdiction to have been in violation of any restrictive covenant contained therein.  You further agree that the existence of any claim you may have against OpenWorks, whether or not arising from this Agreement, shall not constitute a defense to OpenWorks' enforcement of the covenants contained in this Agreement.

**8.12    Non-Disclosure and Non-Competition Agreements.**  You must obtain written non-disclosure and non-competition agreements, in the form of <u>Attachment 4</u> to this Agreement, signed by

27

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0036**

each of the individuals who owns 5% or more of your business, and by the officers, directors, managers and other employees or consultants, including, but not limited to, your Designated Manager, who have or are likely to have access to the Confidential Information, and promptly send OpenWorks a copy of each such agreement.

**9.    TRANSFER.**

   **9.1    Purpose of Conditions for Approval of Transfer.** OpenWorks' grant of this franchise to operate a Janitorial Service is made in reliance upon your integrity, ability, experience and financial resources and OpenWorks' investigation thereof. You may not make a Transfer (as defined in Section 3.21 of this Agreement) unless you have first obtained OpenWorks' written consent, which will not be unreasonably withheld if you comply with this Article 9. In order to ensure that no Transfer jeopardizes the Trade Names, the Marks, or OpenWorks' interest in the successful operation of the Janitorial Service, OpenWorks will consent to a Transfer only if you comply with all of the applicable provisions of this Article 9. You must obtain our commercially reasonable consent to any broker or transfer agent that you wish to use. You must not use any of the Marks in any listing for sale or transfer without our prior written approval. You must obtain our prior written approval of any advertising for any Transfer.

   **9.2    Notice of Proposed Transfer.** If you wish to make a Transfer (including the Required Transfer), you must submit to OpenWorks (a) the form of franchise purchase application currently in use by OpenWorks completed by the prospective transferee; and (b) a written notice, setting forth all the terms and conditions of the proposed Transfer.

   **9.3    Consent by OpenWorks.** OpenWorks must respond to your written notice within 15 days after receipt of the notice, or, if it requests additional information, within the later date of 15 days after receipt of the additional information or the final day of the original 15-day period. OpenWorks may either consent to the Transfer or state its reason for refusing to consent. Silence will not be construed as consent. If OpenWorks consents to the Transfer, then you may Transfer the interest described in the notice only to the named transferee and only upon the terms and conditions set forth in the notice and OpenWorks' consent. Consent by OpenWorks to a particular Transfer will not constitute consent to any other or subsequent Transfer. You acknowledge that OpenWorks' consent to the Transfer is not a representation to you that any transferred Account will continue as an OpenWorks' Account or that the Account will use your services. OpenWorks has no obligation to you to disclose any concerns, complaints or Maintenance Agreement negotiations it had in the past or might have in the future with respect to any transferred Account. You understand that there is no assurance that any Account will renew or extend its Maintenance Agreement with OpenWorks.

   **9.4    Conditions for Consent to Transfer.** Unless a waiver in Section 9.5 applies to some or all of the conditions set forth below in this Section 9.4, every Transfer is subject to all of the following requirements:

      (a)    Transferee must be a legal entity;

      (b)    OpenWorks' satisfaction that the proposed transferee meets all of the criteria of character, business experience, financial resources and other standards that OpenWorks customarily applies to new franchisees at the time of Transfer; and if the Transfer is to an existing OpenWorks franchisee, the franchisee must be in Good Standing and fully capable, in OpenWorks' sole reasonable judgment, of servicing the additional business;

      (c)    Payment of all your outstanding debts to OpenWorks;

(d)   Cure of all defaults under the Franchise Agreement, any other agreement between OpenWorks and you, and the Manual;

(e)   Signing by the transferee of the then-current form of franchise agreement, which may contain terms substantially different from those in this Agreement, but in any event amended to waive payment of an initial fee by the proposed transferee; to shorten the term to the remainder of your current term; to provide that no supplies will be provided by OpenWorks; to state that that no training is provided unless the $250 training fee is paid; to identify whether OpenWorks has fulfilled its obligations on the Initial Account Volume or to state the remaining Initial Account Volume that OpenWorks is obligated to provide; and to clarify any remaining obligations of OpenWorks;

(f)   Providing OpenWorks with (i) the names and residential addresses of the owners and the officers or managers of any entity to whom a Transfer is being proposed, and their relative percentages of ownership; and (ii) the address where the entity will keep its business records;

(g)   Payment of the Transfer fee of $2,000, or if only one or more (but not substantially all) of your Accounts are being transferred, a Transfer fee of $50 for each transferred Account;

(h)   Completion by the transferee's owners and Designated Manager of OpenWorks' initial training program to its satisfaction, and payment of the $250 training fee to OpenWorks;

(i)   Signing of a Non-Disclosure and Non-Competition Agreement substantially in the form of <u>Attachment 4</u> to this Agreement by each entity to whom a Transfer is made and each of transferee's 5% owners, officers, directors, managers and other employees and consultants, including, but not limited to, transferee's Designated Manager, that have or may have access to Confidential Information;

(j)   Signing of a Personal Guaranty substantially in the form of <u>Attachment 3</u> to this Agreement by each 5% owner of the entity to whom a Transfer is made (and by each such owner's spouse in a community property state);

(k)   Signing of a general release of claims by you in favor of OpenWorks; and

(l)   Offering OpenWorks a first right of refusal to acquire the assets and/or interests that are subject to the Transfer, as provided in <u>Section 9.6</u> of this Agreement.

In no event will OpenWorks' consent to a Transfer of any of your interest or any of your assets constitute a waiver of claims OpenWorks may have against you or the individual transferring party, nor shall it be deemed a waiver of OpenWorks' right to demand exact compliance with any terms of this Agreement by the transferee.

**9.5    Waivers of Some Conditions Upon Certain Types of Transfers.**

**9.5.1    Accounts.**  In the event of a Transfer of one or more (but not substantially all) of your Accounts, OpenWorks waives the requirements of parts (e), (f), (h), (i) and (j) of <u>Section 9.4</u>.

**9.5.2    Incorporation.**  In the event of a Transfer to a transferee where the beneficial ownership of the transferee immediately following the assignment is the same and in the same proportions as the beneficial ownership of Franchisee immediately before the assignment, then provided that the original party remains fully obligated under this Agreement, OpenWorks waives all of the

29

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0038**

requirements of parts (b), (c), (e), (h), (i) and (l) of <u>Section 9.4</u>. In lieu of part (g), the Transfer fee is $500. The legal entity to which the Janitorial Service or franchise rights were transferred may not participate in or undertake any business venture or activities other than operating the Janitorial Service.

        **9.5.3    Transfer of Partial Interest Between Co-Owners.** In the event of a Transfer of a partial ownership interest in Franchisee to an existing co-owner, OpenWorks waives all of the requirements of parts (b), (c), (e), (g), (h), (i), (j) and (l) of <u>Section 9.4</u>; *except that* if the co-owner who will be acquiring a greater ownership interest has not successfully completed OpenWorks' initial training program and will have a controlling interest or will be active in the business, then part (g) of <u>Section 9.4</u> must be satisfied.

        **9.5.4    Required Transfer.** In connection with the Required Transfer, OpenWorks waives all of the requirements of parts (b), (e), (g), (h) and (l) of <u>Section 9.4</u>.

        **9.5.5    Transfer of Minority Interest to a Third Party.** In the event of a Transfer of less than 50% of the ownership interests in the Janitorial Service business of Franchisee to anyone who does not already have an ownership interest in Franchisee, OpenWorks waives all of the requirements of parts (e), and (l) of <u>Section 9.4</u>. In lieu of part (g), the Transfer fee is $1,000.

        **9.5.6    Employee Stock Options.** In the event of a Transfer to any of your employees under any employee stock option plan or stock purchase plan, then provided that the cumulative total amount of such actual and optional ownership interests does not exceed 33% of the current or the possible future ownership interests in your corporation, and that any share certificate distributed under such a plan is marked with a legend describing the restrictions and conditions of Transfer required by this Agreement, OpenWorks waives all of the requirements of parts (b), (c), (e), (f), (g), (h), (i), (j) and (l) of <u>Section 9.4</u>.

        **9.5.7    Death or Substantial Disability.** If you die, or become substantially and permanently disabled (whether physically or mentally as reasonably determined by an independent, qualified third-party) while this Agreement is in effect and prior to the Required Transfer, your heirs or representative will have 60 days within which to demonstrate to OpenWorks' satisfaction that they meet all of the criteria of character, business experience, financial responsibility, net worth and other standards that OpenWorks requires of new franchisees at that time. If OpenWorks approves your heirs or representative as transferees, OpenWorks will waive the requirement of part (g) of <u>Section 9.4</u>. If OpenWorks advises your heirs or representative in writing that it will not approve them as transferees of the franchise, or if OpenWorks fails to approve or disapprove the Transfer within 60 days following your death or disability, your heirs or representative will have 120 additional days from the date of disapproval of the Transfer within which to find and notify OpenWorks of a proposed Transfer to a qualified transferee in conformity with the provisions of <u>Sections 9.2</u>, <u>9.3</u>, <u>9.4</u> and <u>9.5</u> of this Agreement. If your heirs or representative do not advise OpenWorks of a qualified transferee within the specified period, the franchise will automatically terminate at the end of the period unless a written extension of time has been granted by OpenWorks.

        **9.6    OpenWorks' Right of First Refusal.** Except as otherwise provided in <u>Section 9.5</u> above, if you wish to make a Transfer, you must first give OpenWorks written notice of all the terms of the proposed Transfer, which must be a bona fide offer from a bona fide source, and all available information about the proposed transferee, together with copies of all documentation including any written offer. Within 15 days after receipt of the notice and documentation, OpenWorks may, at its option, elect to become (or have its nominee become) the transferee. The exercise of the option shall be upon the terms specified in the notice and documents, subject to a set off for all amounts you and your Affiliates owe to OpenWorks. If OpenWorks declines to exercise its option within the time specified, you may thereafter make the Transfer to an approved transferee (but not on more favorable terms that those offered to OpenWorks) provided that all of the requirements of <u>Section 9.4</u> (subject to the waivers

30

**A - 0039**

provided for in Section 9.5) are satisfied.  If the Transfer is not made within six months from the date of the notice to OpenWorks, then you must give OpenWorks another notice and option as provided in this Section 9.6 before you make any Transfer.

**9.7    Assignment by OpenWorks.**  OpenWorks may assign this Agreement or any rights or obligations created by it, in whole or in part, at any time to any third-party, including without limitation, to any of your competitors or an OpenWorks master franchisee who will have exclusive rights to administer the OpenWorks Cleaning Systems regional office for your franchised business.  Such an assignment may be made without your consent upon condition that the assignee expressly agrees in writing to assume OpenWorks' obligations under this Agreement.

**9.8    Legend.**  Any certificates representing shares or interests in Franchisee, whether already or hereafter issued by Franchisee, shall, from and after the date hereof, bear a legend sufficient under applicable law to constitute notice of the restrictions on such shares or interest contained in this Agreement and to allow such restrictions to be enforceable.  Such legend shall appear in substantially the following form:

> "The sale, transfer, pledge or hypothecation of [this stock/these interests/these units] is restricted pursuant to Article 9 of a Franchise Agreement dated 09/12/2016 between OpenWorks and the issuer of these securities."

## 10.    TERMINATION OF FRANCHISE.

**10.1    Termination by Consent of the Parties.**  This Agreement may be terminated at any time upon the mutual written consent of the parties.

**10.2    Termination by OpenWorks.**  In addition to OpenWorks' rights to terminate this Agreement as provided elsewhere in this Agreement, OpenWorks may terminate this Agreement as provided in this Section 10.2.

**10.2.1  Acts of Default.**  Upon the single occurrence of **any** one of the following defaults by you or your Affiliates and after notice and an opportunity to cure (as provided in Section 10.2.2), if any, OpenWorks, at its option, may terminate this Agreement:

(a)    If you or any of your owners or Affiliates has any direct or indirect interest in the ownership or operation of any business that provides commercial janitorial or other facility services to customers;

(b)    If you or your Affiliates fail to submit to OpenWorks in a timely manner any information you are required to submit under this Agreement;

(c)    If you or your Affiliates fail to begin operation of a Janitorial Service by the date required in this Agreement, or if you fail to operate a Janitorial Service in accordance with this Agreement and the Manual;

(d)    If you or your Affiliates act without prior written approval or consent of OpenWorks in regard to a matter for which its prior written approval or consent is expressly required by this Agreement;

(e)    If you or your Affiliates default in the performance of any material obligation under this Agreement or any other agreement with OpenWorks;

31

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0040**

(f)     If you or your Affiliates are not actively engaged in providing the Janitorial Service, unless: (i) operations are suspended for a period of no more than three months and you have paid the Minimum Account Service Fee due under Section 6.14, or (ii) the suspension was caused by fire, condemnation, or act of God;

(g)     If you or your Affiliates misuse the Trade Names, Marks or the System or engage in conduct which reflects materially and unfavorably upon the goodwill associated with them, or if you use any names, marks, systems, logotypes or symbols that OpenWorks has not authorized you to use in connection with your Janitorial Service;

(h)     If you or your Affiliates have made any material misrepresentation in connection with the assignment of an Account, or to induce OpenWorks to enter into this Agreement;

(i)     If you or your Affiliates fail to permanently correct a breach of this Agreement or to meet the standards set out in the Manual after being twice requested in writing by OpenWorks to correct the problem in any 12 month period;

(j)     If OpenWorks makes a reasonable determination that the operation of the Janitorial Service poses a threat to public health or safety;

(k)     If you or your Affiliates fail to make any payment when due under this Agreement or any other agreement between you and OpenWorks or an Affiliate of OpenWorks;

(l)     Except as otherwise required by the United States Bankruptcy Code, if you become insolvent, are adjudicated as bankrupt, or file or have filed against you a petition in bankruptcy, reorganization or similar proceeding;

(m)     If you or your Affiliates attempt to assign your rights under this Agreement in any manner not authorized by this Agreement;

(n)     If you or your Affiliates are convicted of a felony or any criminal misconduct or offense (even if not a crime) that is reasonably likely, in the sole opinion of OpenWorks, to have a material adverse effect to the System, the Trade names or the Marks, or the goodwill associated with any of the foregoing;

(o)     If you or your Affiliates commit any of the defaults described above and have twice previously, within a 12-month period, been given notice by OpenWorks of the same type of default, whether or not the prior defaults were cured;

(p)     If you or your Affiliates have taken such action that would permit OpenWorks to terminate your right to service an Account under paragraphs (a) through (i) inclusive of Section 7.2.5. of this Agreement;

(q)     If you fail to maintain policies of workers compensation insurance required in Section 7.3, disability insurance or any other types of insurance required by law; or

(r)     If you or your Affiliates willfully make or have made any material false statement or report to OpenWorks or its Affiliates in connection with this Agreement, any other agreement between you and OpenWorks or its Affiliates, or any applications presented to OpenWorks or its Affiliates that has a material adverse effect on OpenWorks, its Affiliates or the System.

32

**10.2.2  Notice of Default**.  Termination will be effective automatically 30 days after written notice of default is given to you, specifying any of the defaults described in subsections (b) through (j) inclusive of <u>Section 10.2.1</u>, if the default has not been cured within the 30-day period.  For a monetary default described in subsection (k), termination will be effective automatically five days after written notice specifying amounts due to OpenWorks is given to you, if the default is not cured within the 5-day period.  Termination will be effective immediately upon written notice to you if any of the defaults described above in subsections (a) or (l) through (r) inclusive occurs.

**10.3     Termination by You.**  You may terminate this Agreement upon 90 days' written notice to OpenWorks if the conditions of <u>Section 10.4</u> of this Agreement are met in full within the specified time periods.

**10.4     Rights and Obligations After Termination**.  Upon the Termination of this Agreement by either party for any reason, all of your Accounts shall automatically revert to OpenWorks and the parties will have the following rights and obligations:

(a)     OpenWorks will have no further obligations under this Agreement except to settle up with you with respect to payments due and owed prior to the Termination under <u>Section 5.4</u> and <u>Article 6</u> of this Agreement;

(b)     You must pay OpenWorks, within 30 days after Termination, all payments due to OpenWorks;

(c)     You must immediately and permanently cease the use of the Trade Names and Marks or any confusingly similar names or marks, the System, and advertising, signs, stationery and forms that bear identifying marks or colors that might give others the impression that you are associated with the System;

(d)     You must immediately deliver to OpenWorks the Manual, all Accounts' keys, security codes and cards, and any other proprietary material belonging to OpenWorks or any Account which is in your possession or the possession of your employees and otherwise comply with <u>Section 8.5.4</u>;

(e)     You must immediately provide OpenWorks with a list of all Accounts and customers and facilities you or your Affiliates are servicing or had serviced at any date during the 12 months preceding the date of Termination;

(f)     You must assign to OpenWorks or its designee any Accounts obtained by you that do not have an existing Maintenance Agreement with OpenWorks;

(g)     You will take such action as may be required by OpenWorks to transfer and assign to OpenWorks or its designee or to disconnect and forward all telephone numbers, white and yellow page telephone references and advertisements, and all trade and similar name registrations and business licenses, and to cancel any interest that Franchisee may have in the same; and

(h)     You must, without any consideration, cancel or assign to OpenWorks all right, title and interest in any Internet and web site home pages, domain name listings, and registration that contain the Trade Names or Marks, or any of them, in whole or in part, and shall notify the applicable domain name registrars and all listing agencies, upon the termination or expiration hereof, of the termination of your right to use any domain name,

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0042**

web page and other Internet device associated with OpenWorks, and authorize and
instruct their cancellation or transfer to OpenWorks, as directed by OpenWorks.

If the franchise granted in this Agreement is terminated because of your default, the rights of
OpenWorks described above will not necessarily be its exclusive remedies, but will instead supplement
any other equitable or legal remedies available to OpenWorks. If this Agreement is terminated because of
your material default, nothing in this Section will be construed to deprive OpenWorks of the right to
recover damages as compensation for lost profits. Termination of this Agreement will not extinguish any
obligation of either party that has accrued prior to Termination. All obligations of the parties, which by
their terms or by reasonable implication are to be performed in whole or in part after Termination, will
survive Termination.

## 11.   MISCELLANEOUS PROVISIONS.

**11.1    Construction of Contract.** Section headings in this Agreement are for reference
purposes only and will not in any way modify the statements contained in any Section of this Agreement.
Each word in this Agreement will be deemed to include any number or gender that the context requires.
If there is any conflict between this Agreement and the Manual, this Agreement will control.

**11.2    Governing Law.** Except for matters relating solely to <u>Sections 8.4</u>, <u>8.6</u>, <u>8.7</u> and <u>8.8</u> and
<u>Attachment 4</u> of this Agreement, which are governed by the laws of the state in which the Territory is
located and except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15
U.S.C. § 1051 et seq), this Agreement and all matters relating to it, shall be governed by and interpreted
by the laws of the State of Arizona; *provided, however,* that if any of the provisions of this Agreement
would not be enforceable under the laws of Arizona, then such provisions shall be governed by the laws
of the state in which the Territory is located; *and provided further* that the Franchise Disclosure
Document delivered to you contains a State Law Addendum, which is hereby incorporated into this
Agreement, referencing and summarizing certain existing local laws of other jurisdictions, and the
application of Arizona law shall not abrogate or reduce any of your rights provided for under such
existing local laws which by their terms apply and supersede Arizona law (unless local law conflicts with
federal law and is preempted).

**11.3    Notices.** Each party to this Agreement shall direct any notice to the other party to the
address in <u>Article 1</u> of this Agreement, or at another address if advised in writing that the address has
been changed. Notice may be delivered by facsimile (with simultaneous posting of a copy by first class
mail), commercial courier, or first class mail. Notice by facsimile will be deemed delivered upon
transmission; by courier, upon delivery; and by first class mail, three days after posting.

**11.4    Amendments.** This Agreement may be amended only by a document signed by all of the
parties to this Agreement or by their authorized agents.

**11.5    Waiver.** Waiver of any breach of this Agreement will not be interpreted as a waiver of
any subsequent breach.

**11.6    Integration.** This Agreement, any exhibits or attachments to it, and the Franchise
Disclosure Document that has been provided to you, constitute the entire agreement between the parties
concerning the franchise granted under this Agreement, and supersede all prior and contemporaneous
agreements and representations concerning the subject matter hereof; provided, however, that nothing
herein is intended to disclaim the representations made in the Franchise Disclosure Document furnished
to you.

INT _____ / INT _____
Unit Janitorial Franchise Agreement

**11.7    Modification.** The parties to this Agreement recognize that carrying out the overarching purpose of this Agreement, the creating of an effective, up-to-date, competitive consumer-oriented System under OpenWorks' name and Marks, and enhancing the potential value of that System for both OpenWorks and franchise owners as a group, requires flexibility in establishing and modifying standards for performance and operation under this Agreement, and may involve OpenWorks' development of other business activities not encompassed by the terms of this Agreement, taking particular account of the fact that business conditions and other circumstances are likely to change during the stated term of this agreement. The parties have addressed the prospect for such developments by the express provisions of this Agreement, including in particular, the provisions hereof defining the nature and scope of this Agreement and your obligation to observe the requirements of OpenWorks' Manual as it may, from time to time, be amended by OpenWorks to address efforts to maintain the long-term viability of OpenWorks' name, trademarks and other intellectual property rights, and/or its overall franchised System, among other things. No provision of this Agreement is to be read as creating a limitation on the right of OpenWorks to take such action except as the provision clearly and expressly establishes such a limitation.

**11.8    Arbitration.** Any dispute or claim (a "**Claim**") arising out of or in connection with this Agreement shall be resolved by arbitration; provided, however, that OpenWorks shall not be required to arbitrate any Claim with respect to the ownership or use of its Trade Names or Marks, all of which issues will be submitted to a court within the State of Arizona. The parties expressly consent to personal jurisdiction in the State where our principal place of business is located, currently the State of Arizona and agree that the state and federal court(s) will have exclusive jurisdiction over any such issues not subject to arbitration. The arbitration shall be held where our principal place of business is located, currently the City of Phoenix, Arizona, governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16, and conducted by one or more independent arbitrators who are experienced in franchise matters and have no past or present relationship with either party, appointed as set forth in this Section 11.7. This arbitration clause will not deprive either party of any right it may otherwise have to seek provisional injunctive relief from a court of competent jurisdiction. If there is any question as to whether a Claim is subject to arbitration, then the decider of the first open action shall decide this issue such that if an arbitration was the first action to have been filed, the arbitrator shall make such determination and if a party has first sought provisional injunctive relief from a court of competent jurisdiction, then that court shall decide if a claim is subject to arbitration. If proper notice of any hearing has been given, the arbitrator will have full power to proceed to take evidence or to perform any other acts necessary to arbitrate the matter in the absence of any party who fails to appear. Any Claims shall be decided on an individual and not a class-wide basis. You waive any rights you may have to demand trial by jury or to seek punitive damages from OpenWorks or its Affiliates. The arbitrator will have no power to (i) stay the effectiveness of any pending Termination of this Agreement; (ii) assess punitive damages; or (iii) make any award that modifies or suspends any lawful provision of this Agreement. All expenses of arbitration must be paid by the party against whom the arbitrator renders a decision. The award made by the arbitrator shall be final, binding and conclusive on all parties to the arbitration for all purposes. Judgment upon any award and/or enforcing any order of the arbitrator may be entered by any court of competent jurisdiction.

**11.8.1    Initiation of Arbitration.** In order to initiate an arbitration hereunder, the party wishing to make a Claim (the "**Initiator**") shall give a written notice of demand for arbitration hereunder (the "**Initial Notice**") to the other party (the "**Respondent**").

**11.8.2    Initial Notice.** To be valid, the Initial Notice must include the following:  (i) a statement of the Claim; (ii) a proposed resolution ("**Initial Resolution**") of the Claim; (iii) the address and phone and facsimile numbers of the Initiator; (iv) the date of the Initial Notice; and (v) the signature of the Initiator. The Initial Notice may include other matters as shall be deemed appropriate by the Initiator, but it may not contain any conditions to the effectiveness of the Initial Notice nor any other matter which affects the validity of the Initial Notice.

35

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0044**

**11.8.3  The Response**. The Respondent is bound to respond to the Initial Notice in writing within 30 days of the Initial Notice (the "**Response**") or suffer the consequences, as hereinafter defined. If the Respondent fails to timely respond with a valid Response, the Initial Resolution shall become effective as an arbitration award hereunder. A valid Response must contain the following: (i) A statement of the Response, including the factual disputes with the Initial Notice, and other facts supporting the Respondent's position; (ii) a proposed resolution ("**Second Resolution**") of the Claim, such as alternative amounts of payment or damages or alternative resolutions of the claim; (iii) the address and phone and facsimile numbers of the Respondent; (iv) the date of the Response; and (v) the signature of the Respondent. The Response may include other matters as shall be deemed appropriate by the Respondent, including claims of the Respondent, but it may not contain any conditions to the effectiveness of the Response nor any other matter which affects the validity of the Response. If the Respondent fails to timely give a valid Response, as provided above, or if the Respondent gives a notice of acceptance of the Initial Resolution, the arbitrator shall enter the award adopting the Initial Resolution.

**11.8.4  Designation of Arbitrator.** The Claim shall be decided by a single arbitrator determined as follows: OpenWorks shall propose 3 candidates to you and you must choose the arbitrator within 10 days after the date of OpenWorks' proposal. Upon determination, the arbitrator shall commence the arbitration process. The arbitrator shall make an award of the Initial Resolution or the Second Resolution or such other award as the arbitrator decides is just under the facts and applicable law, subject to the terms of this Agreement.

**11.8.5  Counterclaim.** The Respondent may include a "**Counterclaim**" in the Response. If the Respondent makes a Counterclaim, the Initiator shall be obligated to respond in the same time and in the same fashion as required of the Respondent.

**11.8.6  Discovery.** We both agree that, in any arbitration arising as described in this Section, requests for documents shall be limited to documents (including electronic documents) that are directly relevant to significant issues in the case or to the case's outcome, shall be restricted in terms of time frame, subject matter and persons or entities to which the requests pertain, and shall not include broad phraseology such as "all documents directly or indirectly related to." For electronic document discovery requests, we both agree that: (a) The production of electronic documents will be made on the basis of generally available technology in a searchable format which is convenient and economical for the party producing the documents and also usable by the party receiving the documents, (b) Unless there is a showing of compelling need, as determined by the arbitrator, the parties are not required to produce metadata, with the exception that the header fields of email correspondence may be produced; (c) Production of electronic documents need only be from sources used in the ordinary course of business. No documents shall be required to be produced from back-up servers, tapes or other media; (d) Only individuals whose electronic documents are reasonably expected to contain evidence that is material to the dispute shall be named as custodians and requested to provide such electronic documents; and (e) When the costs and burdens of electronic discovery are disproportionate to the nature of the dispute or to the amount in controversy, or to the relevance of the materials requested, the arbitrator shall either deny such requests or order disclosure on the condition that the requesting party advance the reasonable cost of production to the providing side. Such production costs may be part of the allocation of the costs in the final arbitration award.

**11.9     Injunctive Remedy for Breach**. You recognize that you are a member of a Franchise Network and that your acts and omissions may have a positive or negative effect on the success of other businesses operating under OpenWorks' Trade Names and in substantial association with its Marks. Your failure to comply with the terms of this Agreement is likely to cause irreparable damage to OpenWorks and to some or all of the other franchisees of OpenWorks. For this reason, you agree that if OpenWorks can demonstrate to a court of competent jurisdiction that there is a substantial likelihood of a breach or threatened breach of any of the terms of this Agreement by you, OpenWorks will be entitled,

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0045**

without posting a bond, to a temporary restraining order or preliminary injunction enjoining the breach and/or to a decree of specific performance, without showing or proving any actual damage, until a final determination is made by an arbitrator. Any question on whether a dispute or claim is subject to an injunctive remedy shall be determined as stated in Section 11.8 above.

**11.10    Limitation of Actions.** No action or arbitration proceeding may be maintained by you against OpenWorks unless (a) written notice of any claim alleged to exist is delivered by you to OpenWorks within 1 year after the event complained of becomes known to you and (b) an arbitration proceeding is commenced by you within 90 days after such notice.

**11.11    Attorneys' Fees and Costs.** If legal action, including any action on appeal, or arbitration is initiated to enforce the terms and conditions of this Agreement, the prevailing party will be entitled to recover reasonable compensation for preparation, investigation and court and/or arbitration costs (including but not limited to, expert witness fees, hearing transcription fees, arbitration fees, arbitrator's compensation, copying costs, delivery expenses and charges) and reasonable attorneys' fees, as fixed by a court of competent jurisdiction or by the arbitrator.

**11.12    Severability.** Each provision of this Agreement will be considered severable. If, for any reason, any provision is determined to be invalid or in conflict with any existing or future law or regulation, that provision will not impair the operation of the remaining provisions of this Agreement. The invalid provisions will be deemed not to be a part of this Agreement. However, if OpenWorks determines that the finding of illegality adversely affects the basic consideration for its performance under this Agreement, OpenWorks may, at its option, terminate it.

**11.13    Approval and Guarantees.** If you are a corporation, all officers and shareholders with a 5% or greater interest in you, or if you are a partnership, all your general partners, or if you are a limited liability company, all your managers and managing members and all members with a 5% or greater interest in you and in each of the foregoing cases, the spouses of each person, must approve this Agreement, permit you to furnish the financial information required by OpenWorks, and agree to the restrictions placed on them, including restrictions on the transferability of their interests in the franchise and Janitorial Service and limitations on their rights to compete, and sign separately written guarantees of your and their payments and performance in the form of Attachment 3 to this Agreement. Your spouse (if you are an individual who has not yet completed the Required Transfer), or the spouse(s) of an owner of a 5% or greater interest in Franchisee, must sign the spousal consent in the form of Attachment 6 to this Agreement.

**11.14    Acceptance by OpenWorks.** This Agreement will not be binding on OpenWorks unless and until it has been signed by an authorized officer of OpenWorks.

**11.15    Indulgences, Not Waivers.** Neither the failure nor any delay on the part of either party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.

**11.16    Execution in Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of the parties reflected hereon as the signatories. Any photographic or xerographic copy of this Agreement, with all signatures reproduced on one or more sets of signature pages, shall be considered for

37

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0046**

all purposes as if it were an executed counterpart of this Agreement.  Signatures may be given by facsimile or other electronic transmission, and such signatures shall be fully binding on the party sending the same.

**11.17   Time of Essence.**  Time is of the essence of this Agreement.

**11.18   Franchisor Limited Liability.**  You agree that there shall be no liability on the part of OpenWorks to you or any other person by reason of any approval given or withheld by OpenWorks to you or by reason of your complying with the Standards and Policies and requirements of OpenWorks or the provisions of this Agreement.  OpenWorks shall not be liable to you if you adopt any suggestions or requirements of OpenWorks, or if OpenWorks delays or fails to furnish any approval, or if OpenWorks provides to mortgagee(s) or lender(s) (actual or prospective) at its or your request, information regarding the status of the Agreement and/or your obligations hereunder.  OpenWorks is not obligated for any reason to do any act or to furnish anything to you except as expressly set forth in this Agreement, and you acknowledge that OpenWorks is not required to provide services that produce any particular level of results.

[This space left intentionally blank]

2622019.2 03/16

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0047**

**11.19   Disclaimer of Representations.**

---

**YOU HEREBY REPRESENT AND WARRANT TO OPENWORKS THAT:**

NO REPRESENTATIONS OR PROMISES OF ANY KIND HAVE BEEN MADE BY OPENWORKS TO INDUCE YOU TO SIGN THIS AGREEMENT EXCEPT THOSE SPECIFICALLY SET FORTH IN THIS AGREEMENT AND IN THE UNIFORM FRANCHISE DISCLOSURE DOCUMENT THAT HAS BEEN DELIVERED TO YOU.   Initial_____

YOU ACKNOWLEDGE THAT NEITHER OPENWORKS NOR ANY OTHER PERSON HAS GUARANTEED THAT YOU WILL SUCCEED IN THE OPERATION OF THE FRANCHISED BUSINESS OR HAS PROVIDED ANY SALES OR INCOME PROJECTIONS OF ANY KIND TO YOU EXCEPT AS STATED IN THE UNIFORM FRANCHISE DISCLOSURE DOCUMENT PROVIDED TO YOU.   Initial_____

YOU HAVE MADE AN INDEPENDENT INVESTIGATION OF ALL IMPORTANT ASPECTS OF THE FRANCHISED BUSINESS.   Initial_____

YOU UNDERSTAND THAT OPENWORKS IS NOT A FIDUCIARY AND HAS NO SPECIAL RESPONSIBILITIES TO YOU BEYOND THE NORMAL RESPONSIBILITIES OF A SELLER IN A BUSINESS TRANSACTION.   Initial_____

YOU UNDERSTAND AND ACKNOWLEDGE THAT THE BUSINESS CONTEMPLATED BY THIS AGREEMENT AND THE UNIFORM FRANCHISE DISCLOSURE DOCUMENT PROVIDED TO YOU INVOLVES BUSINESS RISKS MAKING THE SUCCESS OF THE VENTURE LARGELY DEPENDENT UPON YOUR BUSINESS ACUMEN AND ABILITIES, YOUR ACTIVE PARTICIPATION AND YOUR EFFORTS AS AN INDEPENDENT BUSINESS OPERATOR.   Initial_____

YOU ACKNOWLEDGE THAT OPENWORKS OR ITS AGENT HAS PROVIDED YOU WITH A UNIFORM FRANCHISE DISCLOSURE DOCUMENT 14 CALENDAR DAYS BEFORE THE EXECUTION OF THIS AGREEMENT OR PAYMENT OF ANY CONSIDERATION. YOU FURTHER ACKNOWLEDGE THAT YOU HAVE READ SUCH UNIFORM FRANCHISE DISCLOSURE DOCUMENT AND UNDERSTAND ITS CONTENTS. Initial_____

YOU ACKNOWLEDGE THAT OPENWORKS OR ITS AGENT HAS PROVIDED YOU WITH A COPY OF THIS AGREEMENT AND ALL RELATED DOCUMENTS, FULLY COMPLETED, AT LEAST FIVE BUSINESS DAYS PRIOR TO YOUR EXECUTION HEREOF. Initial_____

YOU ACKNOWLEDGE THAT YOU HAVE HAD AMPLE OPPORTUNITY TO CONSULT WITH YOUR OWN ATTORNEYS, ACCOUNTANTS AND ADVISORS AND THAT OPENWORKS' ATTORNEYS HAVE NOT ADVISED OR REPRESENTED YOU WITH RESPECT TO THIS AGREEMENT OR THE RELATIONSHIP CREATED HEREBY. Initial_____

---

INT_____ / INT_____
Unit Janitorial Franchise Agreement

A - 0048

IN WITNESS TO THE PROVISIONS OF THIS FRANCHISE AGREEMENT, the undersigned have signed this Franchise Agreement on the date set forth in <u>Article 1</u>.

**FRANCHISOR:**
**O.P.E.N. AMERICA, INC.**

By:_____

Officer:_____

**FRANCHISEE:**

Entity Name: Ruth Mark

Signature: _____

Printed Name: RUTH MARK

Title: FRANCHISE OWNER

Name: Ruth Mark

Sign: _____

Name:_____

Sign:_____

The above Franchise Agreement was executed on the date stated above, by the above named parties and in my presence as a witness.

_____        residing at Denver , CO
　　　　　　Name　　　　　　　　　　　　　　　　　　City　　　State

2622019.2  03/16

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0049**

# ATTACHMENT 1

# Current

**Business Starter Packages**

**Included in the Franchise Packages**

> From time to time, OpenWorks may substitute different brand names or change the exact specifications of the supplies and equipment provided to you in your starter kit. Any substitutions will be at equal or greater value and/or quality.

## Starter Kit Equipment and Chemical Supplies

| DESCRIPTION | U/M | QTY |
|---|---|---|
| Enzymatic Luster Creme Cleanser Pumice | QT | 1 |
| Scouring Stick | CS | 1 |
| 60" Wood Thread Handle | EA | 1 |
| Toy Corn Broom | EA | 1 |
| Little Dipper Bowl Mop | EA | 1 |
| #360 Flex Lambswool 33-60" Duster | EA | 1 |
| 12" Plastic Dust Pan | EA | 1 |
| 12" Brass Channel with Rubber | EA | 1 |
| 4203 1 1/2" Hard Putty Knife | EA | 1 |
| 8', 2 section, Extension Handle | EA | 1 |
| W#63 nylon scrubbing pad with sponge backing, 20/cs | CS | 1 |
| 20" Floor Machine | EA | 1 |
| 20" 1500 RPM Burnisher with Pad Driver | EA | 1 |
| 8 gl Wet/Dry Vacuum | EA | 1 |
| ProTeam Super Coach Vac HEPA with Tool Kit | EA | 1 |
| Super Loop Wet Mop | EA | 2 |
| Super Finish Mop | EA | 1 |
| 84 Fiberglass & Speed Change Handle | EA | 2 |
| #324 Big Mo Dust Mop Head | EA | 1 |
| #324F Big Mo Frame | EA | 1 |
| 60" Wood Snap-on Handle | EA | 1 |
| 18" Blue Microfiber Looped Wet Mop Pad | EA | 1 |
| 18" Red Microfiber Looped Wet Mop Pad | EA | 1 |
| WaveBrake™ SidePress Combo | EA | 1 |
| Yellow 25" Caution Wet Floor Sign | EA | 1 |
| Round Brute Dolly, 2640, Fits 20-55 gal Brutes, Black | EA | 1 |
| Yellow Wrap Around Caddy Bag | EA | 1 |
| Grey 44 GL Round Brute Can | EA | 1 |
| Blue Microfiber Terry Cloths | DZ | 1 |
| Yellow Microfiber Terry Cloths | DZ | 1 |
| Red Microfiber Terry Cloths | DZ | 1 |
| Green Microfiber Terry Cloths | DZ | 1 |
| 8448 Gloves, Yellow, Medium (8-8.5) | DZ | 1 |
| 7321 Safety Goggles | EA | 1 |
| Trigger Sprayer | EA | 4 |
| 32-oz Plastic Bottle | EA | 4 |
| Pump Dispenser | EA | 1 |
| Emergency Clean-Up Kit | BX | 1 |
| 20" Black Strip Pads, 5/cs | CS | 1 |
| 20" Red Buff Pads, 5/cs | CS | 1 |
| 3M 20" Pink Eraser Floor Pads | CS | 1 |
| BRUTE BUCKET-ROUND-10 QT-GRAY | EA | 1 |
| 20" Perma Grip Pad Holder with brush plate | EA | 1 |
| Fast Glide 18" Mopping System | EA | 1 |
| BUCKETLESS HANDLE 32 OZ REPLACEMENT BOTTLES | EA | 1 |
| Round Shaped Bowl Brush | EA | 1 |
| SMARTDOSE STRIDE CITRUS HC NEUTRAL GP CLEANER 2X1.4L | CS | 1 |
| SMARTDOSE PER DIEM GENERAL PURPOSE CLEANER 2X1.4L | CS | 1 |
| Crew NA Non Acid Bath Disinfectant SmartDose 2x1.4 | CS | 1 |
| Diversey Virex II 256 One-Step Disinfectant Cleaner 1.4L | CS | 1 |
| Diversey Glance NA Glass Cleaner 1.4L SD | CS | 1 |
| Green Cleaner Degreaser | GL | 2 |

ATTACHMENT 1, PAGE 2

INT _____ / INT _____
Unit Janitorial Franchise Agreement

A - 0051

**ATTACHMENT 2**

**TERMS**

| Package | Initial Monthly Account Volume | Franchise Fee | 10% Discount For Cash or Veterans | OPENWORKS FINANCING PROGRAMS | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | STANDARD PROGRAM | | | VETERANS PROGRAM | | | |
| | | | | Down Payment | Amount Financed | Monthly Payment | 10% Discounted Fee | Amount of Down Payment | Amount Financed | Monthly Payment |
| OW 3 | 3,000 | 15,200 | 1,520 | 7,000 | 8,200 | 386.00 | 13,680 | 7,000 | 6,680 | 314.45 |
| OW 5 | 5,000 | 18,500 | 1,850 | 9,000 | 9,500 | 447.20 | 16,650 | 9,000 | 7,650 | 360.11 |
| OW 7 | 7,000 | 24,850 | 2,485 | 14,850 | 10,000 | 470.33 | 22,365 | 12,425 | 7,515 | 353.76 |
| OW 10 | 10,000 | 33,000 | 3,300 | 23,000 | 10,000 | 470.33 | 29,700 | 16,500 | 6,700 | 315.39 |
| OW 15 | 15,000 | 45,000 | 4,500 | 35,000 | 10,000 | 470.73 | 40,500 | 35,000 | 5,000 | 258.90 |
| OW 20 | 20,000 | 58,500 | 5,850 | 48,500 | 10,000 | 470.73 | 52,650 | 48,600 | 4,150 | 195.35 |
| OW 25 | 25,000 | 72,000 | 7,200 | 62,000 | 10,000 | 470.73 | 64,800 | 62,000 | 2,800 | 131.81 |

Your selected package:  __OW-3__

Standard Program ☒  or Veteran's Program ☐

Discount: Applicable ☐    Not Applicable ☒

If you elected to purchase additional account volume more than the OW 10 package, the following apply:
- Initial Account Monthly Volume_____
- Initial franchisee fee: _____
- Down payment: _____
- Amount Financed: _____
- Monthly Payment: _____
- Fulfillment Period: _____

**Pre-Existing Accounts.**  You have the following pre-existing accounts to provide commercial janitorial or other facility services to the following customers which will be converted to OpenWorks accounts, according to Section 7.5 of this Agreement:

Signature:  _____

Date: __09/12/2016_____

2622019.2 03/16

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0052**

# ATTACHMENT 3

## PERSONAL GUARANTY

    1.  In consideration of, and in order to induce O.P.E.N. America, Inc. ("**OpenWorks**") to enter into a franchise agreement as of even date with this Guaranty (the "**Agreement**"), each of the undersigned ("**Guarantor**"), jointly and severally, unconditionally guarantees to OpenWorks that the Franchisee will fully, promptly and faithfully perform and discharge all of its obligations, duties and conditions under the Agreement, and under any and all instruments, documents or other evidence of indebtedness, executed in connection with the Agreement and all related obligations and undertakings, including obligations of payment when due, whether by acceleration or otherwise, of any and all liability of Franchisee or its Affiliates or to OpenWorks (the "**Guaranteed Obligations**"), together with all interest upon these liabilities and all attorneys' fees, costs and expenses of collection incurred by OpenWorks in enforcing any of these liabilities.

    2.  OpenWorks, its successors and assigns, may from time to time, without notice to the undersigned (a) resort to the undersigned for payment or satisfaction of any of the Guaranteed Obligations of Franchisee, whether or not it or its successors have resorted to any property securing any of the Guaranteed Obligations or proceeded against any other of the undersigned or any party or parties or primarily or secondarily liable on any of the Guaranteed Obligations, (b) release or compromise any liability of any of the undersigned hereunder or any liability of any party or parties primarily or secondarily liable on any of the Guaranteed Obligations, and (c) extend, renew or credit any of the Guaranteed Obligations for any period (whether or not longer than the original period); alter, amend or exchange any of the Guaranteed Obligations; or give any other form of indulgence, whether under the Agreement or not.

    3.  Each of the undersigned agrees to comply with and abide by the restrictive covenants and nondisclosure provisions contained in <u>Sections 8.5</u>, <u>8.6</u> and <u>8.7</u> of the Agreement, as well as the provisions in the Agreement relating to the Marks and Transfers, to the same extent as and for the same period of time as Franchisee is required to comply with and abide by such covenants and provisions, except to the extent otherwise required by the Agreement.  These obligations of the undersigned shall survive any expiration or termination of the Agreement or this Guaranty. This Guaranty will remain effective despite any renewal, modification, or waiver by OpenWorks of any of the Guaranteed Obligations under this Guaranty, and no such modification, renewal or waiver will operate to defeat this Guaranty.

    4.  This Guaranty is a continuing one and all liabilities to which it applies or may apply under the terms of this Guaranty will be conclusively presumed to have been created in reliance on it.

    5.  Any and all rights and claims of Franchisee or Guarantor or any of their respective property, arising by reason of any payment by the undersigned to OpenWorks under the provisions of this Guaranty, will be subordinate and subject in right of payment to the prior payment in full of all liabilities of Franchisee or Guarantor to OpenWorks.

    6.  Guarantor waives the right of trial by jury in the event of any litigation between the parties to this Guaranty in respect of any matter arising under this Guaranty and agrees that, should OpenWorks bring any judicial proceeding or arbitration in relation to any such matter, Guarantor will not interpose any counterclaim or set off of any nature.

    7.  Each of the undersigned further waives presentment, demand, notice of dishonor, protest, nonpayment and all other notices whatsoever, including without limitation: notice of acceptance hereof; notice of all contracts and commitments; notice of the existence or creation of any liabilities under this Guaranty and the Agreement and of the amount and terms thereof; and notice of all defaults, disputes or controversies between Franchisee and OpenWorks resulting from such Guaranty or Agreement or otherwise, and the settlement, compromise or adjustment thereof.

**ATTACHMENT 3, PAGE 1**

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0053**

8. The undersigned agrees to pay all expenses paid or incurred by OpenWorks in enforcing the Agreement and this Guaranty against Franchisee and against the undersigned and in collecting or attempting to collect any amounts due thereunder and hereunder, including reasonable attorneys' fees and costs if such enforcement or collection is by or through an attorney-at-law. Any waiver, extension of time or other indulgence granted from time to time by OpenWorks, its agents, its successors or assigns, with respect to the Agreement, shall in no way modify or amend this Guaranty, which shall be continuing, absolute, unconditional and irrevocable.

9. If more than one person has executed the Guaranty, the term "the undersigned," as used herein shall refer to each such person, and the liability of each of the undersigned hereunder shall be joint and several and primary.

10. The provisions of the Agreement providing that Arizona law shall govern, and requiring binding arbitration in Phoenix, Arizona shall also apply to this Guaranty and each Guarantor.

Date: SEPTEMBER 12 , 20 16

Name: RUTH MARK

Sign: _____

Spouse's Name:_____

Sign:_____

Name:_____

Sign:_____

Spouse's Name:_____

Sign:_____

**ATTACHMENT 3, PAGE 2**

INT _____ / INT _____
Unit Janitorial Franchise Agreement

A - 0054

# ATTACHMENT 4

## NON-DISCLOSURE AND NON-COMPETITION AGREEMENT

This Non-Disclosure and Non-Competition Agreement (this **"Agreement"**) is made as of this __12__ day of __SEPTEMBER____, 20__16__ by and between:

__RUTH MARK_____    (**"Franchisee"**),    an OpenWorks Janitorial Franchisee under the janitorial Franchise Agreement between Franchisee and O.P.E.N. America, Inc. (**"OpenWorks"**) of even date herewith and to which this Agreement was attached (the **"Franchise Agreement"**); and

the undersigned (**"Recipient"**), who owns 5% or more of the ownership interests in Franchisee, and/or holds or has been offered a position as an employee or consultant of Franchisee (any such current and future interest or position held by Recipient is hereinafter referred to as the **"Position"**).

Recipient acknowledges that Franchisee is entering into this Agreement for itself and for the benefit of OpenWorks pursuant to the requirements of the Franchise Agreement. Any capitalized terms not otherwise defined will have such meaning as ascribed to them in the Franchise Agreement.

### BACKGROUND TO THE AGREEMENT

In connection with their Position, Recipient will have access to, generate, or otherwise come into contact with certain proprietary and/or confidential information and trade secrets of Franchisee, OpenWorks or System, including without limitation training materials, programs, methods, techniques, specifications, standards, systems, procedures, sales and marketing programs and strategies, manuals, financial data, knowledge of specifications for and suppliers of equipment, supplies and services, bidding, pricing and billing methods, existing and prospective customer lists and information about them and their service contracts, at any time existing or under consideration, for the operation of OpenWorks' regional offices and commercial janitorial and other facility service businesses (the **"Confidential Information"**).

Recipient, Franchisee and OpenWorks desire to prevent the dissemination or misuse of such Confidential Information. For these and other reasons, and the fact that there are many other employment opportunities available to Recipient if his/her Position shall terminate, Recipient is in full and complete agreement that the following restriction covenants are fair and reasonable and are freely, voluntarily and knowingly entered into. FURTHER, RECIPIENT HAS BEEN GIVEN THE OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL COUNSEL BEFORE ENTERING INTO THIS AGREEMENT.

### AGREEMENT

As an inducement to OpenWorks to enter into the Franchise Agreement with Franchisee, or to approve a transfer to or appointment of Recipient, and/or in consideration of Recipient's employment or continued employment by Franchisee, Recipient and Franchisee (on behalf of both Franchisee and OpenWorks) agree as follows:

2622019.2 03/16

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0055**

## 1.   Confidential Information.

**1.1.   Ownership.** Recipient acknowledges that OpenWorks and/or Franchisee is/are the sole owner of all the Confidential Information; that the Confidential Information is being imparted to Recipient in trust and confidence and only by reason of Recipient's Position; and that the Confidential Information is not generally known to the trade or public and is not known to Recipient except by reason of such disclosure. Recipient further acknowledges that Recipient shall acquire no interest in the Confidential Information, other than the right to utilize it in connection with the performance of duties associated with Recipient's Position. In addition, Recipient acknowledges that the use, duplication or disclosure of the Confidential Information except as expressly permitted by this Agreement shall constitute an unfair method of competition and that OpenWorks and Franchisee shall suffer irreparable injury thereby.

**1.2.   Work Product.** Recipient agrees that all documents, papers, notes and other material and work product containing or derived from the Confidential Information or connected with Recipient's Position with Franchisee shall be Confidential Information. Recipient agrees that he will have no proprietary interest in any work product developed or used by him and arising out of his Position with Franchisee. Recipient will, from time to time, as may be requested by Franchisee or OpenWorks, do all things which may be necessary to establish or document Franchisee's or OpenWorks' ownership of any such work product, including without limitation execution of assignments.

**1.3.   Confidentiality.** All of the Confidential Information and all information and knowledge about the System, which is not in the public domain and such other information and material as OpenWorks or Franchisee may designate as confidential shall be deemed Confidential Information for purposes of this Agreement. Recipient acknowledges that the Confidential Information is disclosed to Recipient solely on the condition that Recipient agree, and Recipient hereby does agree, that Recipient: (a) will use the Confidential Information in strict accordance with the instructions and directions given by Franchisee or OpenWorks from time to time; (b) will not use the Confidential Information, directly or indirectly, in any other business or capacity; (c) will not, at any time, while holding any Position with Franchisee or thereafter, in any manner or form, directly or indirectly, disclose, duplicate, license, sell, reveal, divulge, publish or communicate the Confidential Information, or any portion thereof, to any person or entity other than Franchisee, or authorized employees or consultants of Franchisee or OpenWorks who need to have such information in connection with their jobs; (d) will not copy any materials containing the Confidential Information, including without limitation the System manuals, without OpenWorks' prior written consent; (e) will observe and implement all reasonable procedures imposed from time to time by OpenWorks and/or Franchisee to prevent the unauthorized use and disclosure of the Confidential Information; (f) will keep all System manuals and other written materials containing any portion of the Confidential Information in a secure manner and place; and (g) if Recipient is legally compelled to disclose any of the Confidential Information, will do so only if Recipient has used his or her best efforts to afford OpenWorks and Franchisee the opportunity of obtaining appropriate protective orders or other assurances of confidentiality satisfactory to OpenWorks and Franchisee.

**1.4.   Return of Confidential Material.** Upon termination or cessation of his or her Position with Franchisee for any reason, Recipient shall immediately (but in any event within five days of such termination or cessation) return to Franchisee all copies of any materials containing the Confidential Information (whether in original or duplicate form) and all property or equipment belonging to Franchisee and OpenWorks, or either of them, in Recipient's possession, custody or control, including any of such items produced or prepared by Recipient. To the maximum extent of the law, OpenWorks reserves the right to deduct the cost of unreturned or damaged property, equipment or information from Recipient's compensation.

2.     **Noncompetition.**

      2.1.     **Covenant.** Recipient recognizes that (a) the commercial janitorial and other facility services business is very competitive; (b) the System is intended to expand to be national in scope; (c) Recipient by virtue of his or her Position will have access to the Confidential Information and will have close contacts with OpenWorks customers for the purpose of maintaining and further developing the business and goodwill of the System; (d) the Position provides Recipient with the attendant ability to divert customer trade; and (e) OpenWorks and Franchisee each have strong legitimate interests in obtaining the covenant herein for the protection of the goodwill of the System. Recipient therefore agrees that, without the express prior written consent of OpenWorks and Franchisee, which either may withhold in its sole and absolute discretion, Recipient shall not, during the Time Period (as defined below), directly or indirectly, whether personally or as an agent, employee, partner, representative, affiliate or in any other capacity on behalf of any person or entity, engage in, render services to, provide financing to, or have any interest in, in manner whatsoever any Competitive Business (as defined below) located or conducting business within the Area (as defined below). It is agreed and understood that the purpose of this covenant is not to deprive Recipient of a means of livelihood and will not do so but is rather to protect the goodwill and interest of Franchisee, OpenWorks and the System.

      2.2.     **Time Period.** For the purposes of Section 2.1 of this Agreement, the term "Time Period" shall mean (a) for the period while Recipient holds a Position with Franchisee; and (b) after the Recipient no longer holds a Position with Franchisee, for a period of 24 months thereafter; *provided, however,* that in no event shall the Time Period continue beyond the period that this same covenant of noncompetition remains in effect for the Franchisee. In the event a court of competent jurisdiction determines that 24 months is unenforceable, the Time Period will be 18 months. If a court of competent jurisdiction determines that 18 months is unenforceable, the Time Period will be 12 months. If a court of competent jurisdiction determines that 12 months is unenforceable, the Time Period will be six months.

      2.3.     **Competitive Business.** For the purposes of Section 2.1 of this Agreement, the term "Competitive Business" shall mean any business providing janitorial services to commercial customers or any other services that Franchisee provides or provided to its customers while Recipient held a Position with Franchisee.

      2.4.     **Area.** For the purposes of Section 2.1 of this Agreement, the term "Area" shall mean (a) the geographical area in which Franchisee services or serviced OpenWorks customers, and (b) a radius of 75 miles from the regional office through which Franchisee conducts or conducted its OpenWorks business, and (c) a radius of 75 miles from any other OpenWorks regional office operated by OpenWorks or any of its master franchisees in the state where Franchisee conducts or conducted its OpenWorks business, and (d) a radius of 75 miles from any other OpenWorks regional office operated by OpenWorks or any of its master franchisees in any other state.

3.     **No Solicitation.**

      3.1.     **Employees.** Recipient agrees never to employ or solicit for employment any person who is at the time employed by OpenWorks, Franchisee or any other franchisee in the OpenWorks System, and Recipient agrees not to directly or indirectly induce any such person to leave their employment with OpenWorks, Franchisee or any other franchisee in the OpenWorks System.

      3.2.     **Customers.** Recipient agrees that during the time Recipient holds a Position with Franchisee, and after Recipient's Position with Franchisee ends, except for solicitations Recipient makes on behalf of Franchisee, Recipient will never solicit as a customer for commercial janitorial or other facility services: (a) any OpenWorks customers serviced by Franchisee during the period Recipient held a Position with Franchisee, or (b) any other persons or entities who were OpenWorks customers

INT _____ / INT _____
Unit Janitorial Franchise Agreement

**A - 0057**

serviced by others during the period Recipient held a Position with Franchisee. Recipient also agrees that after Recipient no longer holds any Position with Franchisee, Recipient will not thereafter solicit as a customer for commercial janitorial or other facility services any prospective customers to whom OpenWorks had proposals or bids outstanding at the time Recipient's Position with Franchisee ended.

 3.3. **Lack of Prior Conflict.** Recipient represents and acknowledges that they are not bound by any post-employment covenant with a third-party that would restrict the fulfillment of the Recipient's Position or the duties Recipient performs on behalf of the Franchisee. To the extent Recipient is bound by any such post-employment covenants, Recipient represents and warrants that they have provided Franchisee with a copy of the applicable written covenant.

 3.4. **Notification.** During the Time Period, Recipient shall notify any new employer or business associate, prior to entering into the employment or business relationship, of the existence of this Agreement and will provide such new employer or business associate with a copy of this Agreement. Recipient further agrees and authorizes Franchisee and OpenWorks to notify others, including customers of Franchisee or OpenWorks and Recipient's future employers or business associates of Recipient's obligations under this Agreement.

 3.5. **Tolling of Time Periods.** The running of the Time Period or any period of time specified in Section 2 or Section 3 of this Agreement will be tolled and suspended for any period of time in which the Recipient is found by a court of competent jurisdiction to have been in violation of any restrictive covenant contained therein. Recipient further agrees that the existence of any claim it may have against Franchisee or OpenWorks whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Franchisee or OpenWorks of the covenants contained in this Agreement.

 4. **Modification.** The covenants set forth in this Agreement shall each be construed as independent of any other covenant or provision of any other agreement. OpenWorks may reduce the scope of the obligations under the covenants of this Agreement unilaterally and without the consent of any other person or entity, effective upon giving notice thereof to Franchisee and Recipient.

 5. **Remedies.**

 5.1. **Recipient's Acknowledgements.** Recipient acknowledges and agrees that in the event of the termination of Recipient's Position with Franchisee, Recipient's experience and capabilities are such that the Recipient can obtain employment and engage in business activities which are of a different or non-competing nature from those of the Position; and that the enforcement of a remedy of injunction will not prevent Recipient from earning a reasonable living. Recipient further acknowledges and agrees that the covenants contained in this Agreement are necessary for the protection of Franchisee's and OpenWorks' legitimate business interests and are reasonable in scope and in content.

 5.2. **Injunctive Relief.** In the event of an actual or threatened breach by Recipient of any of the provisions of this Agreement, Franchisee and OpenWorks, or either of them, or their agents, shall immediately be entitled to injunctive relief restraining Recipient from the breach or threatened breach without having to show any actual damage. It is specifically agreed that Franchisee and OpenWorks, or either of them, may incur incalculable and irreparable damage from any such violation, and that Franchisee and OpenWorks, or either of them, have no adequate remedy at law and are entitled to injunctive relief, without bond, for any such actual or threatened violation. Nothing herein shall be construed as prohibiting Franchisee and OpenWorks, or either of them, from pursuing any other available remedies for such breach.

 5.3. **At-Will Employment.** If Recipient is an employee, nothing in this Agreement shall affect Recipient's status as an employee at will. Employment of Recipient by the Franchisee may be

ATTACHMENT 4, PAGE 4

INT _____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0058**

terminated by either Recipient or Franchisee for any lawful reason at any time with or without cause. Any representation to the contrary is unauthorized and not valid.

      **5.4.**   **Authority to Contract.** Unless otherwise specified in writing, Recipient shall have no power to, and Recipient shall not, obligate the Franchisee or OpenWorks in any manner whatsoever to any contract, agreement, undertaking, commitment or other obligation, unless specifically authorized and directed to do so, in advance and in writing by the Franchisee. Further, Recipient shall not, without specific approval of and direction by the Franchisee, borrow on behalf of the Franchisee or OpenWorks, purchase capital equipment, or sell any capital assets of Franchisee or OpenWorks.

      **5.5.**   **Enforceability.** Franchisee's or OpenWorks' failure to enforce any provisions of this Agreement shall not constitute a waiver of the Franchisee's or OpenWorks' right to pursue any prior or subsequent breach, violation or default of the Agreement.

      **6.**   **Survival.** The provisions of this Agreement shall survive the expiration or termination of any agreement or relationship between Franchisee and Recipient or OpenWorks and Franchisee for any reason, in accordance with the terms hereof and shall be enforceable notwithstanding the existence of any claim or cause of action of Recipient against Franchisee and OpenWorks, or either of them, predicated on any contract or other basis whatsoever.

      **7.**   **Severability.** In the event any term or provision of this Agreement is declared to be invalid or unenforceable for any reason, the provision shall be modified to the extent necessary to make it enforceable, or if it cannot be so modified, then severed, and the remaining terms of this Agreement shall remain in full force and effect, and it is hereby declared the intention of the parties that they would have executed the Agreement as so modified.

      **8.**   **Notice.** Any notice to be given to Recipient under this Agreement will be sufficient and deemed delivered if it is in writing and delivered to the U.S. Post Office to be sent prepaid by certified or registered mail addressed to Recipient at his or her residential address as provided below, or to such other residential address as Recipient shall have provided in writing to both Franchisee and OpenWorks.

      **9.**   **General.** Except as otherwise expressly stated herein, this Agreement contains the entire understanding between the parties with respect to the subjects hereof, and supersedes all prior oral and written negotiations and agreements. Except as provided in Section 4 of this Agreement, this Agreement may be amended only by an instrument in writing signed by Franchisee and Recipient and approved in writing by OpenWorks. The waiver of any breach or violation of this Agreement shall not be deemed to amend this Agreement and shall not constitute a waiver of any other or subsequent breach. Headings are for convenience and shall not limit or control interpretation. Words in this Agreement shall be deemed to refer to whatever number and gender the context requires. This Agreement shall be governed by the laws of the state in which Franchisee's OpenWorks business is conducted. Any claim or dispute arising out of or in connection with this Agreement shall be resolved by arbitration held in the City of Phoenix, Arizona, governed by the United States Arbitration Act 9 U.S.C. § 1-16, and conducted by one or more independent arbitrators who are experienced in franchise matters and have no past or present relationship with any party. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns. OpenWorks shall be a third party beneficiary of this Agreement and entitled to enforce it as though OpenWorks were a signatory.

*[Signatures on following page]*

ATTACHMENT 4, PAGE 5

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0059**

**RECIPIENT:**

_____
(Full Legal Name of Recipient)


By:_____
(Signature)


_____
(Name Printed or Typed)

_____
(Position/Title)

_____
(Residential Street Address)

_____
(City, State, Zip Code)

_____
(Date)


**FRANCHISEE**, accepting for itself and for its Franchisor, O.P.E.N. America, Inc.:

RUTH MARK_____
(Full Legal Name of Franchisee)


By: _____
(Signature)


RUTH MARK_____
(Name Printed or Typed)

FRANCHISE OWNER_____
(Position/Title)

2360 S. QUEBEC ST, APT 205_____
(Residential Street Address)

DENVER, CO  80231_____
(City, State, Zip Code)

09/12/2016_____
(Date)


**ATTACHMENT 4, PAGE 6**

INT_____ / INT_____
Unit Janitorial Franchise Agreement

**A - 0060**

## ATTACHMENT 5

TRADEMARKS

OpenWorks has the following trademarks that it uses in its janitorial cleaning services. You must use the trademarks in accordance with the terms of the Franchise Agreement and the Manual. These trademarks may be revised by OpenWorks in accordance with the Franchise Agreement.



| OpenWorks® |
| Give your facility the works® |
| TotalWorks™ |
| FirstWorks® |
| BusinessWorks™ |
| TechWorks™ |
| SkillWorks™ |

ATTACHMENT 5, PAGE 1

# EXHIBIT 2

# EXHIBIT 2

# FRANCHISE DISCLOSURE DOCUMENT



**O.P.E.N. America, Inc.**
an Arizona corporation
dba OpenWorks
4742 North 24th Street
Suite 450
Phoenix, Arizona  85016
Telephone:  (602) 224-0440
Fax:  (602) 468-3788
Email: info@openworksweb.com
**Web Address: www.openworksweb.com**

The franchisee will offer commercial janitorial services under the name OpenWorks.

The total investment necessary to begin operation of an OpenWorks franchise ranges from $17,000 to $124,450.  This includes $15,250 to $72,000 that must be paid to the franchisor or its affiliate.

The disclosure document summarizes certain provisions of your franchise agreement and other information in plain English.  Read this disclosure document and all accompanying agreements carefully.  You must receive this disclosure document at least 14 calendar days before you sign a binding agreement or make any payment to the franchisor or an affiliate in connection with the proposed franchise sale.  **Note, however, that no governmental agency has verified the information contained in this document.**

You may wish to receive your disclosure document in another format that is more convenient for you.  To discuss the availability of disclosures in different formats, contact O.P.E.N. America, Inc. at 4742 North 24th Street, Suite 450, Phoenix, Arizona  85016 and (602) 224-0440.

The terms of your contract will govern your franchise relationship.  Don't rely on the disclosure document alone to understand your contract.  Read all of your contract carefully.  Show your contract and this disclosure document to an advisor, like a lawyer or an accountant.

Buying a franchise is a complex investment.  The information in this disclosure document can help you make up your mind.  More information on franchising such as "*A Consumer's Guide to Buying a Franchise*," which can help you understand how to use this disclosure document, is available from the Federal Trade Commission.  You can contact the FTC at 1-877-FTC-HELP or by writing to the FTC at 600 Pennsylvania Avenue, NW, Washington, D.C. 20580.  You can also visit the FTC's home page at *www.ftc.gov* for additional information.  Call your state agency or visit your public library for other sources of information on franchising.

There may also be laws on franchising in your state.  Ask your state agencies about them.

Issuance Date: February 29, 2016

## STATE COVER PAGE

Your state may have a franchise law that requires a franchisor to register or file with a state franchise administrator before offering or selling in your state. REGISTRATION OF A FRANCHISE BY A STATE DOES NOT MEAN THAT THE STATE RECOMMENDS THE FRANCHISE OR HAS VERIFIED THE INFORMATION IN THIS DISCLOSURE DOCUMENT.

Call the state franchise administrator listed in **Exhibit A** for information about the franchisor or about franchising in your state.

MANY FRANCHISE AGREEMENTS DO NOT ALLOW YOU TO RENEW UNCONDITIONALLY AFTER THE INITIAL TERM EXPIRES. YOU MAY HAVE TO SIGN A NEW AGREEMENT WITH DIFFERENT TERMS AND CONDITIONS IN ORDER TO CONTINUE TO OPERATE YOUR BUSINESS. BEFORE YOU BUY, CONSIDER WHAT RIGHTS YOU HAVE TO RENEW YOUR FRANCHISE, IF ANY, AND WHAT TERMS YOU MIGHT HAVE TO ACCEPT IN ORDER TO RENEW.

Please consider the following RISK FACTORS before you buy this franchise:

1. THE FRANCHISE AGREEMENT REQUIRES YOU TO RESOLVE DISPUTES WITH US BY ARBITRATION ONLY IN ARIZONA. OUT-OF-STATE ARBITRATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST YOU MORE TO ARBITRATE WITH US IN ARIZONA THAN IN YOUR OWN STATE.

2. THE FRANCHISE AGREEMENT STATES THAT ARIZONA LAW GOVERNS THE AGREEMENT, AND THIS LAW MAY NOT PROVIDE THE SAME PROTECTION AND BENEFITS AS LOCAL LAW. YOU MAY WANT TO COMPARE THESE LAWS.

3. THE FRANCHISOR HAS HAD LAWSUITS FILED AGAINST IT FOR FAILURE TO PROVIDE FRANCHISEES WITH ACCOUNTS SATISFYING THE INITIAL MONTHLY ACCOUNT VOLUME PROMISED. PLEASE REVIEW ITEM 3 CAREFULLY. PLEASE ALSO REVIEW ITEM 5 AND THE FRANCHISE AGREEMENT SECTION 6.1 CAREFULLY REGARDING YOUR ELIGIBILITY TO RECEIVE A PARTIAL REFUND OF YOUR INITIAL FRANCHISE FEE. YOU WAIVE YOUR RIGHT TO A PARTIAL REFUND IF YOU DO NOT MAKE A WRITTEN REFUND REQUEST WITHIN 30 DAYS OF OPENWORKS' DEADLINE TO PROVIDE YOU WITH A CERTAIN AMOUNT OF INITIAL MONTHLY ACCOUNT VOLUME BUT OPENWORKS REMAINS OBLIGATED TO OFFER YOU THE REMAING INITIAL ACCOUNT VOLUME FOR THE PACKAGE YOU PURCHASED OVER THE TERM OF THE FRANCHISE.

4. IF A BUSINESS ENTITY IS BUYING THIS FRANCHISE EACH OWNER AND HIS/HER SPOUSE MUST PERSONALLY GUARANTEE ALL OBLIGATIONS OF THE FRANCHISE AGREEMENT THEREBY PLACING MARITAL AND PERSONAL ASSETS AT RISK.

5. THERE MAY BE OTHER RISKS CONCERNING THIS FRANCHISE.

Effective Date:  See the next page for state effective dates.

**STATE EFFECTIVE DATES**

The following states require that the Franchise Disclosure Document be registered or filed with the state or be exempt from registration:   California, Connecticut, Florida, Hawaii, Illinois, Indiana, Kentucky, Maryland, Michigan, Minnesota, Nebraska, New York, North Dakota, Rhode Island, South Dakota, Texas, Virginia, Washington and Wisconsin.

This Franchise Disclosure Document is registered, on file or exempt from registration in the following states having franchise registration and disclosure laws, with the following effective dates:

| | |
|---|---|
| California: | April 1, 2016 |
| Florida: | December 2, 2015 |
| Illinois: | March 24, 2016 |
| Nebraska: | July 7, 2015 |
| Texas: | November 13, 1988 |

| ITEM 1 | THE FRANCHISOR, AND ANY PARENTS, PREDECESSORS AND AFFILIATES | 1 |
|---|---|---|
| ITEM 2 | BUSINESS EXPERIENCE | 2 |
| ITEM 3 | LITIGATION | 3 |
| ITEM 4 | BANKRUPTCY | 4 |
| ITEM 5 | INITIAL FEES | 5 |
| ITEM 6 | OTHER FEES | 7 |
| ITEM 7 | ESTIMATED INITIAL INVESTMENT | 9 |
| ITEM 8 | RESTRICTIONS ON SOURCES OF PRODUCTS AND SERVICES | 12 |
| ITEM 9 | FRANCHISEE'S OBLIGATIONS | 16 |
| ITEM 10 | FINANCING | 17 |
| ITEM 11 | FRANCHISOR'S ASSISTANCE, ADVERTISING,  COMPUTER SYSTEM, AND TRAINING | 19 |
| ITEM 12 | TERRITORY | 26 |
| ITEM 13 | TRADEMARKS | 27 |
| ITEM 14 | PATENTS, COPYRIGHTS AND PROPRIETARY INFORMATION | 28 |
| ITEM 15 | OBLIGATION TO PARTICIPATE IN THE ACTUAL OPERATION OF THE FRANCHISE BUSINESS | 29 |
| ITEM 16 | RESTRICTIONS ON WHAT THE FRANCHISEE MAY SELL | 29 |
| ITEM 17 | RENEWAL, TERMINATION, TRANSFER AND DISPUTE RESOLUTION | 30 |
| ITEM 18 | PUBLIC FIGURES | 32 |
| ITEM 19 | FINANCIAL PERFORMANCE REPRESENTATIONS | 32 |
| ITEM 20 | OUTLETS AND FRANCHISEE INFORMATION | 34 |
| ITEM 21 | FINANCIAL STATEMENTS | 38 |
| ITEM 22 | CONTRACTS | 38 |
| ITEM 23 | RECEIPT | 39 |

**Exhibits**

| | | |
|---|---|---|
| Exhibit A | - | List of State Franchise Administrators |
| Exhibit B | - | State-Specific Addenda |
| Exhibit C | - | Franchise Agreement and Attachments |

                    Attachment 1 – Business Starter Packages
                    Attachment 2 – Terms
                    Attachment 3 – Personal Guaranty
                    Attachment 4 – Non-Disclosure and Non-Competition Agreement
                    Attachment 5 – Trademarks
                    Attachment 6 – Spousal Consent
                    Attachment 7 – Illinois Addendum

| | | |
|---|---|---|
| Exhibit D | - | Promissory Note |
| Exhibit E | - | Agreement for Account Assignment or Increase |
| Exhibit F | - | Equipment Purchase Agreement |
| Exhibit G | - | Table of Contents of the Operations and Safety Manual |
| Exhibit H | - | List of Current Franchisees |
| Exhibit I | - | List of Former Franchisees |
| Exhibit J | - | Financial Statements |
| Exhibit K | - | List of Agents for Service of Process |
| Exhibit L | - | Renewal Amendment to Franchise Agreement |
| Exhibit M | - | Extended Account Guarantee Agreement |
| Exhibit N | - | Insurance and Bond Applications |
| Exhibit O | - | Background Check Release and Authorization |
| Exhibit P | - | Assignments of Franchise Rights |
| Exhibit Q | - | Receipts |

APPLICABLE STATE LAW MAY REQUIRE ADDITIONAL DISCLOSURES REGARDING THE INFORMATION IN THIS FRANCHISE DISCLOSURE DOCUMENT OR STATE SPECIFIC AMENDMENTS TO THE FRANCHISE AGREEMENT.  THESE ADDITIONAL DISCLOSURES OR STATE SPECIFIC AMENDMENTS TO THE FRANCHISE AGREEMENT, IF ANY, APPEAR IN THE STATE ADDENDA AT **EXHIBIT B** OR THE STATE SPECIFIC AMENDMENTS TO FRANCHISE AGREEMENT IN **EXHIBIT C**.

# ITEM 1
## THE FRANCHISOR, AND ANY PARENTS, PREDECESSORS AND AFFILIATES

To simplify the language in this Disclosure Document, we will refer to O.P.E.N. America, Inc., the franchisor, as "OpenWorks," "we," or "us," and the person or company that buys a janitorial franchise from OpenWorks as "you". If you are a corporation or limited liability company, "you" includes your officers, directors and owners individually. If you are an individual, you must form an entity and assign your interest in the Franchise Agreement to it within 90 days after you sign the Franchise Agreement or you will be charged a fee of $500 per month. To fully understand all of your and our rights and obligations to each other, you must still carefully review the actual agreements that you will sign. These will control if there is any dispute between you and us.

## OpenWorks' Business

OpenWorks is in the business of granting franchises for commercial janitorial service businesses. OpenWorks enters into janitorial service contracts with commercial clients. These accounts may then be "packaged" with other similar contracts to cumulate at one of seven levels of a gross monthly dollar amount (also called the "initial monthly account volume" in the Franchise Agreement), and assigned to OpenWorks franchisees, who receive exclusive rights to service the contracts under OpenWorks' trademarks and system. OpenWorks bills each client on a monthly basis and, after deducting fees and charges owed by you to OpenWorks under the Franchise Agreement, remits to you the balance of the gross monthly dollar amount for the franchise package you purchase. After you meet our preopening requirements, OpenWorks will start to offer you cleaning accounts whose gross monthly dollar amount will add up to the initial monthly account volume you have purchased. OpenWorks has a certain number of days in which to offer you these cleaning accounts depending on the franchise package you select. This time period is called a "fulfillment period." If OpenWorks does not offer you enough accounts to reach the promised gross monthly dollar amount within the fulfillment period, then you may request a refund of a portion of your initial franchise fee. You must make this request within 30 days after the end of the fulfillment period. If you do not, OpenWorks is still obligated to offer you the remaining gross monthly dollar amount over the course of the franchise term but you will have waived your right to a refund. See Item 5. You may refuse up to three accounts but those refusals will extend the fulfillment time in which OpenWorks has to find other accounts by 30 days or may reduce the gross monthly dollar amount OpenWorks is required to provide to you by the dollar amount of the account that you refused. Your refusals will not alter your payment obligations to OpenWorks. See Item 11. You may have the option to request or be required to have additional accounts under certain circumstances. See Item 11. You are encouraged to procure janitorial client accounts on your own behalf. If you do so, you will pay the same fees except that you are not required to pay marketing fees. OpenWorks will also serve as your billing and collection agent for those accounts. See Item 11. If your cleaning accounts terminate their maintenance agreements with OpenWorks, OpenWorks will replace that account under certain circumstances. See Item 11. Your Franchise Agreement explains the franchise program in more detail. OpenWorks currently plans to add the following services to its business: integrated facility services, landscape maintenance, handyman services, green practices and consulting. OpenWorks does not currently franchise nor plans to franchise these services. These services may be similar or complementary to those provided by you.

## OpenWorks and Its Business Experience

OpenWorks was incorporated in Arizona on June 5, 1987, and also did business under the names O.P.E.N. America, O.P.E.N. Cleaning Systems, O.P.E.N. of Arizona, O.P.E.N. of California and O.P.E.N. of Washington. In March 2000, OpenWorks began doing business under the name OpenWorks. Its principal business office is located at 4742 North 24th Street, Suite 450, Phoenix, Arizona 85016. OpenWorks' agents for service of process are listed in

**Exhibit K**.  OpenWorks began operating the type of business being franchised on January 1, 1999 and began offering franchises through a former subsidiary beginning in 1988.  OpenWorks offered janitorial franchises under the name O.P.E.N. Cleaning Systems for a brief period in 1995, and resumed offering janitorial franchises in the first quarter of 1998.  OpenWorks offered master franchises between 1987 and 1995 under the name O.P.E.N. Cleaning Systems.  OpenWorks offered master franchises from 1998 to 2004 and from 2013 to the present.  OpenWorks has never offered any other type of franchise.

OpenWorks does not have a parent company or any affiliates.

## Your OpenWorks Franchised Business

OpenWorks will provide you with a starter kit of equipment and supplies at no charge other than the initial franchise fee.  You will provide janitorial services for commercial entities under contracts which you accept from OpenWorks.  You are also encouraged to generate additional accounts.  OpenWorks will offer marketing advice and pricing information to assist you in these efforts.  OpenWorks provides the same administrative support and receives the same ongoing fees for accounts you obtain yourself as it does for accounts it obtains, but it will not assess a marketing fee in connection with accounts you get for yourself.

You will not have an option to purchase additional franchises.  However, you may request that OpenWorks provide you with additional accounts to be serviced under your existing franchise for a marketing fee, as described in Items 6, 8 and 11.  You will execute an amendment to your Franchise Agreement for the additional account purchase, and if you qualify and decide to finance the marketing fee, you will have to execute a promissory note.  Whether the accounts will be provided will depend on whether OpenWorks has the ability to locate more accounts in your area and whether OpenWorks believes you are able to service more accounts.

To effectively operate an OpenWorks franchise you will need to hire personnel.  You will be responsible for your employees' wages and insurance, and for processing payrolls for them.

The market for janitorial services is well developed and consists primarily of commercial enterprises that need regularly scheduled, high-quality janitorial services performed by independent contractors.  This market segment includes factories, manufacturing centers, office buildings, medical buildings, and other similar facilities.   You will compete with other established providers of commercial janitorial services.

There are no government regulations specific to OpenWorks' industry.  However, your janitorial service business will be subject to all of the federal, state and local laws that apply to businesses generally, including minimum-age and minimum-wage laws, environmental, and occupational health and safety laws.   These laws vary from place to place.   You should investigate these matters further and consult with local authorities and your attorney and other advisors about them.

**ITEM 2**
**BUSINESS EXPERIENCE**

## President, Treasurer and Director:  ERIC ROUDI (SHAHROUZ ZAYANDEROUDI)

Eric Roudi has been the President, Treasurer and a Director of OpenWorks since June 1987.   Mr. Roudi was also the President, Treasurer and a Director of O.P.E.N. of Washington from December 1990 through December 1998, of O.P.E.N. of California from April 1989 through March 1999, and of O.P.E.N. of Arizona from November 1983 through December 1998.

**Chief Financial Officer:  JULIE McCOLLUM**

Julie McCollum has been the Chief Financial Officer for OpenWorks since October 2014.  Before joining OpenWorks, Ms. McCollum was a partner in the firm of McGladrey LLP in Phoenix, Arizona from March, 2012 until July 2012.

**Executive Vice President: DAVID BOSLEY**

David Bosley has been the Executive Vice President for OpenWorks since September 2014.  Prior to that, Mr. Bosley served as Division Vice President for OpenWorks from June 2013 to September 2014.  Before joining OpenWorks, Mr. Bosley served as a Sales Executive with ADP from August 2012 to June 2013.  Before that, from September 2007 to August 2012, he was General Sales Manager for AT&T.

**Divisional Vice President:  STEPHEN MOORE**

Stephen Moore has been the Divisional Vice President for OpenWorks since January 2016. From April 2015 to January 2016 he was Regional Vice President for OpenWorks. Prior to that, he was Regional Vice President for Corinthian College, Inc., located in Seattle, Washington from December 2013 until January 2015.  From March 2011 until December 2013 Mr. Moore was self-employed as a consultant.  Prior to that, he served as a Senior Area Vice President for Westwood College in Denver, Colorado from September 2005 to March 2011.

**Vice President of Operations: J. ANTHONY HOBSON**

J. Anthony Hobson has been the Vice President of Operations for OpenWorks since January 2011.

**Franchise Manager:  SHERRIE HOLLOWAY**

Sherrie Holloway has been the Franchise Manager for OpenWorks since January 2016. From October 2009 to January 2016, she was the Inside Sales Manager/Franchise Specialist for OpenWorks.

**Divisional Vice President: SPENCER STEVENS**

Spencer Stevens has been a Divisional Vice President for OpenWorks since January 2016.  From September 2014 to January 2016 he was Arizona Regional Director for OpenWorks. Prior to that, he was a District Manager for OpenWorks from July 2013 to September 2014. From January 2011 to July 2013 Mr. Spencer was self-employed.

**Northern California Regional Director:  NATHAN WILKENS**

Nathan Wilkens has been the Northern California Regional Director for OpenWorks since August 2015.  Before that, from July 2014 to July 2015, Mr. Wilkens was an Account Executive with Peak Performance in Calabasas, California. From July 2013 until July 2014 he was a Manager, Territory Sales for Grainger in Chicago, Illinois.   Before that, from July 2012 until July 2013 he was a Sales Manager for Unifirst in Boston, Massachusetts.  From July 1998 until July 2012 he was an Area Manager for Enterprise Rental Car in Southern California and Arizona.

<u>Southern California Regional Director: JO ANN MIYA</u>

Jo Ann Miya has been the Southern California Regional Director for OpenWorks since April 2014. Before that, from February 1999 to August 2013, Ms. Miya served as Regional Director for Coverall North America in Orange County, California.

<u>Colorado Regional Director: KATRINA HUGHES</u>

Katrina Hughes has been the Colorado Regional Director for OpenWorks since October, 2015. Before that, from January 2015 to October 2015, Ms. Hughes was the Area Vice President for talentReef in Denver, Colorado. From March 2014 to November 2014, she was a Regional Sales Manager for HotSchedules/Red Book Connect in Denver, Colorado. Before that, she was a Sales Manager for Sprint in Denver, Colorado from June 2008 until November 2013.

<u>Florida Regional Director: CLIFFORD D'AMICO</u>

Clifford D'Amico has been the Florida Regional Director for OpenWorks since February 2016. Before that, from September 2015 to February 2016, Mr. D'Amico was the owner of Rental Car Consulting in Tampa, Florida. From February 2011 until September 2015 he was the General Manager for Marine Max in Tampa, Florida.

<u>Illinois Regional Director: PATRICK TUMILTY</u>

Patrick Tumilty has been the Illinois Regional Director for OpenWorks since August 2015. Before that, from April 2014 to August 2015, Mr. Tumilty was a Regional Account Manager for Utility Service Partners in Rosemont, Illinois. From February 2013 to April 2014 he was National Head Scout for National Collegiate Scouting Association in Chicago, Illinois. Before that, from June 2007 to February 2013, he as a Manager for Enterprise Rental Car at O'Hare Airport in Chicago, Illinois.

<u>Divisional Vice President: MATTHEW HAMILTON</u>

Matthew Hamilton has been a Divisional Vice President for OpenWorks since January 2016. From January 2014 to January 2016 he was Texas Regional Director for OpenWorks. Before that, from February 2013 to December 2013, Mr. Hamilton was the Dallas Sales Manager for Web.com. From October 2012 to February 2013, he was the District Manager for TMX Finance in Dallas. Before that, he was the Area Manager for Northwest DFW at Enterprise Holdings from July 2003 until September 2012.


ITEM 3
LITIGATION

<u>Pending Actions</u>

There are no pending actions required to be disclosed against OpenWorks or the persons disclosed in Item 2.

<u>Concluded Actions</u>

<u>Doby Strashilova v. O.P.E.N. AMERICA, INC. d/b/a OPENWORKS an Arizona Corporation</u> (Civil Action, Case No. 09-2-40126-8SEA). This case was filed in the Superior Court of Washington in and for King County on or about January 28, 2010 alleging unfair business practices-consumer protection, violation of the Washington Franchise Investment

Protection Act, breach of contract, duty of good faith and fair dealing and unconscionability, in relation to a down payment of $9,500 made by the plaintiff and a signed promissory note in the amount of $9,000. The plaintiff sought general damages and treble damages, as well as attorney's fees and costs. This matter was settled effective January 2011 with OpenWorks paying the plaintiff $23,000.00 and forgiving $4,532.06 in debt in return for plaintiff's release.

Asha Mohamed v. O.P.E.N. America, Inc., dba OpenWorks (Civil Action, Case No. 12-2-06943-3 SEA). This case was filed in the Superior Court of Washington in and for King County on or about February 24, 2012. The plaintiff, a franchisee, alleged that OpenWorks failed to perform under the franchise agreement by failing to deliver to plaintiff paying accounts to service within 180 days of the date of the franchise agreement and made certain misrepresentations and omissions of material fact. The plaintiff sought rescission of the parties' agreements, damages, exemplary damages and attorney's fees and costs. This matter was settled on May 4, 2012 with OpenWorks paying the plaintiff $12,232.00 in return for plaintiff's release.

Rosendo Selifis v. O.P.E.N. America, Inc., dba OpenWorks (Civil Action, Case No. 12-2-07653-7 SEA). This case was originally filed in the Superior Court of Washington in and for King County on March 2, 2012. The plaintiff, a franchisee, alleged that OpenWorks (i) violated the Washington Franchise Investment Protection Act by making untrue statements and misrepresentations regarding the income plaintiff would receive from the franchise, selling a franchise for other than a fair and reasonable price and failing to deal with plaintiff in good faith, (ii) engaged in deceptive business practices and unfair methods of competition in violation of Washington law, (iii) breached its contract with plaintiff and (iv) committed fraud, all in relation to OpenWorks' alleged failure to provide plaintiff with accounts satisfying the initial monthly account volume promised. The plaintiff sought general and special damages and treble damages, as well as attorney's fees and costs. This matter was settled effective November 2013 with OpenWorks paying the plaintiff $15,000 and forgiving $9,742.99 in debt in return for the plaintiff's release.

Franco, et al. v. O.P.E.N. America, Inc., Shahrouz Zayanderoudi aka Eric Roudi, and Christina Arner (JAMS Reference No. 1160018958). This case was originally filed in the Superior Court of Washington in and for King County on May 16, 2012 (Civil Action, Case No. 12-2-17440-7). The plaintiffs, OpenWorks franchisees, alleged (i) violation of the Washington Franchise Investment Protection Act and the Washington Consumer Protection Act, (ii) breach of contract and (iii) fraud, in connection with initial account volumes. The plaintiffs sought general damages and exemplary and treble damages, as well as attorney's fees and costs. This matter was settled effective November 2013 with OpenWorks paying the plaintiffs $185,000 and forgiving $107,868.97 in return for plaintiff's release.

Jinhua Li v. O.P.E.N. America, Inc., dba OpenWorks (Civil Action, Case No. 12-2-30734-2). This case was filed in the Superior Court of Washington in and for King County on September 20, 2012. The plaintiff, a franchisee, alleged that OpenWorks violated common law contract principles, the Franchise Investment Protection Act and the Consumer Protection Act, all in relation to OpenWorks' alleged failure to provide the franchisee accounts with the promised per month dollar volume. The plaintiff sought such amount of damages as would put plaintiff in as good a position as she would have been had OpenWorks performed under the contract and an order that the franchise agreement not be enforced against plaintiff, as well attorney's fees and costs. This matter was settled on September 20, 2013 with OpenWorks paying the plaintiff $11,000 and forgiving $9,000 in debt in return for plaintiff's release.

Other than these actions, no litigation is required to be disclosed in this Item.

# ITEM 4
# BANKRUPTCY

No bankruptcy is required to be disclosed in this Item.

# ITEM 5
# INITIAL FEES

You must pay OpenWorks an initial fee, determined as described in the chart below.  The initial fee or down payment portion of the initial fee is due when you sign your Franchise Agreement.

Standard Financing Program

| OpenWorks Package | Initial Monthly Account Volume (Note 1) | Franchise Fee | 10% Discount For Cash (Note 1) | OPENWORKS FINANCING PROGRAMS | | |
|---|---|---|---|---|---|---|
| | | | | STANDARD PROGRAM | | |
| | | | | Down Payment | Amount Financed | Monthly Payment – 24 months (Note 2) |
| OW 3 | 3,000 | 15,200 | 1,520 | 7,000 | 8,200 | 386.00 |
| OW 5 | 5,000 | 18,500 | 1,850 | 9,000 | 9,500 | 447.20 |
| OW 7 | 7,000 | 24,850 | 2,485 | 14,850 | 10,000 | 470.73 |
| OW 10 | 10,000 | 33,000 | 3,300 | 23,000 | 10,000 | 470.73 |
| OW 15 | 15,000 | 45,000 | 4,500 | 35,000 | 10,000 | 470.73 |
| OW 20 | 20,000 | 58,500 | 5,850 | 48,500 | 10,000 | 470.73 |
| OW 25 | 25,000 | 72,000 | 7,200 | 62,000 | 10,000 | 470.73 |

Notes:

1.      The initial Monthly Account Volume is the amount of the gross monthly dollar volume of the cleaning accounts that are packaged together for the franchise level you purchase. Your monthly account volume may increase if you add additional cleaning accounts.  If your cleaning accounts terminate their maintenance agreements, OpenWorks will replace that account under certain circumstances.  See Section 5 of the Franchise Agreement.  If you pay the franchise fee in full when you sign your Franchise Agreement, you will receive a 10% discount.

2.      Principal and 12% annual interest (unless reduced in OpenWorks' discretion) to be paid in 24 as shown or 36 equal monthly payments if you qualify.  See Item 10.

Veterans Financing Program.

For veterans, OpenWorks will offer a 10% discount off the amount financed for the initial franchise fee.

| OpenWorks Package | Initial Monthly Account Volume (Note 1) | Franchise Fee | 10% Discount For cash or veterans (Note 1) | OPENWORKS FINANCING PROGRAMS | | | |
|---|---|---|---|---|---|---|---|
| | | | | VETERANS PROGRAM | | | |
| | | | | Discounted fee (10%) | Down Payment | Amount Financed | Monthly Payment (Note 2) |
| OW 3 | 3,000 | 15,200 | 1,520 | 13,680 | 7,000 | 6,680 | 314.45 |
| OW 5 | 5,000 | 18,500 | 1,850 | 16,650 | 9,000 | 7,650 | 360.11 |
| OW 7 | 7,000 | 24,850 | 2,485 | 22,365 | 14,850 | 7,515 | 353.76 |
| OW 10 | 10,000 | 33,000 | 3,300 | 29,700 | 23,000 | 6,700 | 315.39 |
| OW 15 | 15,000 | 45,000 | 4,500 | 40,500 | 35,000 | 5,500 | 258.90 |
| OW 20 | 20,000 | 58,500 | 5,850 | 52,650 | 48,500 | 4,150 | 195.35 |
| OW 25 | 25,000 | 72,000 | 7,200 | 64,800 | 62,000 | 2,800 | 131.81 |

Notes:

1.    The initial Monthly Account Volume is the amount of the gross monthly dollar volume of the cleaning accounts that are packaged together for the franchise level you purchase. Your monthly account volume may increase if you add additional cleaning accounts. If your cleaning accounts terminate their maintenance agreements, OpenWorks will replace that account under certain circumstances. See Section 5 of the Franchise Agreement. If you pay the franchise fee in full when you sign your Franchise Agreement, you will receive a 10% discount.

2.    Principal and 12% annual interest (unless reduced in OpenWorks' discretion) to be paid in 24 equal monthly payments if you qualify. See Item 10.

Both programs

       The fee schedule does not include sales tax which is your responsibility.

       The initial franchise fee and terms of payment shown in the chart above are uniform for all franchisees. During our fiscal year ended December 31, 2015, we adopted several incentive programs to recruit franchisees. The actual range of initial franchise fees collected from franchisees during our fiscal year ended December 31, 2015 was $11,880 to $58,500. We may do so again in the future. Incentive programs may involve discounted initial franchise fees, additional financing or gift card programs. The initial franchise fee does not apply to franchisees signing a renewal agreement.

       Higher franchise levels with increased account volume may available in your area. If so, then the additional account volume would be offered in additional $5,000 increments from the levels at OW 10. The franchise fee would be calculated as the OW 25 franchise fee of $72,000 plus a multiplier of 3 times the increased volume amount. For example, for a $5,000 increase from a $10,000 account volume to a $15,000 account volume, the initial fee would be calculated as $72,000 + ($5,000 * 3) or $87,000. The amount financed under the standard program would remain at $10,000 for each additional account volume and the down payment would be calculated as the franchise fee less the $10,000 financed. The veteran's program would have the same down payment for each franchise level as the standard program but a 10% discount would be deducted from the amount financed. See Item 10.

The initial franchise fee is non-refundable unless OpenWorks has been unable to offer a sufficient gross monthly dollar volume of accounts to you for the package you purchased within the fulfillment period specified in the Franchise Agreement. See Item 11 for the time periods in which OpenWorks must offer accounts to you. The fulfillment periods range from 120 days for the OW 3 package after you successfully complete training to 780 days for the OW 25 package after you successfully complete training. For packages over OW 25, the fulfillment period is an additional 150 days for each additional $5,000 in account volume. If OpenWorks does not offer you the volume of accounts within the time period required, your sole remedy is a partial refund, as described below. OpenWorks can reduce the amount of accounts at any time by refunding the applicable portion of your initial fee. See Item 19 for further information about OpenWorks' past fulfillment performance and refunds.

If OpenWorks is unable to offer the gross monthly dollar volume for the initial monthly account volume franchise package you purchased during the fulfillment period, then you will receive a reduction of your note or a partial refund instead of waiting for the additional account volume. The credit or refund will be an amount equal to the difference between the initial monthly account volume of the package you purchased and the actual account volume of the account(s) actually provided, multiplied by the package multiplier applicable to the package that was purchased. The package multipliers are as follows:

| OpenWorks Package | Multiplier |
|---|---|
| OW3 | 3.73 |
| OW5 | 2.90 |
| OW7 | 2.71 |
| OW10 and above | 2.56 |

OpenWorks has the right to offset any amounts you owe it at the time of any refund against the amount of the refund. If you receive a full refund, you must return the equipment and supplies you received from OpenWorks.

The following is an example of the calculation of a credit or refund:

> *You purchase OpenWorks Package OW5 for $18,500, with $9,500 down and $9,000 financed. This Package should generate $5,000 per month. However, OpenWorks offers you accounts that generate only $4,000 per month within the fulfillment period. To calculate your refund, the first step is to subtract the actual account volume from the initial account volume for the package purchased, as follows: $5,000 - $4,000 = $1,000. The difference is then multiplied by the multiplier for OpenWorks Package OW5: $1,000 X 2.9 = $2,900. However, since you have an outstanding note balance of $9,000 payable to OpenWorks (assuming no payments were made), the $2,900 refund will apply to that balance. Therefore, in this case the promissory note is reduced from $9,000 to $6,100 ($9,000 - $2,900 = $6,100) and no actual cash refund is given.*

The reason why the net cost to you of the accounts provided to you in the above example is less than it would have been if you had purchased the smaller package in the first place is that the cost per dollar of initial account volume decreases as the size of the package increases. If OpenWorks fails to provide you with the initial account volume for the package you purchase, your initial franchise fee is still calculated at the same lower cost per dollar of initial account volume as the package that you purchased.

OpenWorks will verify your credit and conduct a background check on you. You must pay a background check fee of $50.00.

## ITEM 6
## OTHER FEES

| Type of Fee | Amount (Note 1) | Due Date | Remarks |
|---|---|---|---|
| Royalties | 15% of Gross Revenue (Note 2) | Monthly | Deducted from funds OpenWorks remits to you. |
| Advertising Fund Fee | Up to 1% of Gross Revenue | Monthly | Deducted from funds OpenWorks remits to you. |
| Marketing Fees | A multiple of one month's billing on a new account or on the increase in an existing account (Note 3) | Upon contracting for new business unless financed | We reserve the right to increase the Marketing Fees at any time by providing you with 30 days advanced written notice or by amending the Manual. |
| Background Check Fee | Currently $50 | Upon request for background check | OpenWorks will verify your credit and perform a background check again if requested by a client. |
| Extended Account Guarantee Fee | Specified percentage of the Gross Revenue from that Account (currently 6.5%) | Monthly | For certain accounts selected by OpenWorks, you may purchase a guarantee against cancellation of that Account. |
| Special Project Fee | 0% or 15% or 30% of Gross Revenue from job | Monthly | Percentage depends on whether you or OpenWorks obtained and/or priced the job. Deducted from funds OpenWorks remits to you. (Note 4) |
| Initial Training Fee | $250 per group | At completion of training | No charge for first group trained before you begin business. |
| Continuing Training Classes | $0 to $150 per class | At beginning of class | Classes may be optional or mandatory. |
| Cancellation Charge | $50 | Upon missing appointment | For any training class, inspection or appointment with OpenWorks or a customer that you schedule and fail to attend. |
| Account Transfer Fee | $50 per Account | Upon approval of transfer by OpenWorks | Applies to transfer of one or more, but less than substantially all, of your Accounts. |
| Franchise Transfer Fee | $0 to $2,000 | Before transfer | No fee for transfer of a partial interest to an existing co-owner unless the co-owner will have a controlling interest and has not completed training; $500 transfer fee for transfer by an individual to a legal entity; $1,000 transfer fee of less than 50% ownership to a new owner. |
| Document Preparation Fee | $250 | Upon request for preparation | Payable only if you request the preparation of customized documents for marketing or other purposes. |

| Type of Fee | Amount (Note 1) | Due Date | Remarks |
|---|---|---|---|
| Trouble Call Fee | $50 per occurrence, plus current hourly charge if work performed | When service rendered | Compensates OpenWorks for investigating and fixing customer complaint; current charge of $50 is subject to change. |
| Minimum Account Service Fee | $75 per month | By the 10th day of the month | Due the month following a full month in which you do not provide janitorial services; waived during the fulfillment period. |
| Insurance | Currently 1.37% to 3.6% of Gross Revenue (minimum $85/month) | Monthly | Payable if you fail to maintain required insurance and OpenWorks enrolls you in its insurance program.  See Item 8. |
| Workers' Compensation Insurance | Varies based on state of operation | Monthly | This fee is payable to us only if you do not carry your own Workers' Compensation Insurance. |
| Bond | Currently $6 per month | Monthly | Payable if you obtain a $25,000 janitorial services bond through the OpenWorks insurance program. |
| Supplier Evaluation | OpenWorks' expenses (estimated to range from $100 to $5,000) | Upon demand | If you request evaluation of a new supplier, you must reimburse OpenWorks' expenses for inspections, investigations and testing. |
| Customer Charges | Amount customer charges plus $500/day | Upon demand | Payable only if customer keys and codes are not turned over to OpenWorks immediately when you discontinue services to a customer. |
| Indemnification | Amount of OpenWorks' liabilities | As incurred | Covers claims and liabilities incurred by OpenWorks relating to your operation of your business. |
| Audit Costs | OpenWorks' expenses ($100 to $5,000) | Upon demand | Payable if you do not report all your Gross Revenue to OpenWorks. |
| Attorney's Fees | Amount incurred by OpenWorks | As incurred | Attorneys' fees and costs for enforcing your agreements. |
| Interest on Unreimbursed Advances | 12% per year | Beginning on the 91st day after an advance is not repaid | Payable on amounts OpenWorks advances to you before your customers pay, if your customers don't pay and you don't reimburse OpenWorks within 90 days. |
| Interest on Late Payments | Lesser of 21% per year or highest rate allowed by law | Upon demand | |
| Manual Check Fee | Up to $25 per manual check | Upon request for manual check | You may, at your option, elect to have payments due to you made pursuant to a manual check in lieu of a direct deposit into a designated account. |
| Lost Document Fee | $25 per replacement copy | Upon request for copy of lost document | Payable if you request a replacement of any damaged, lost or otherwise misplaced document relating to the franchise relationship. |

| Type of Fee | Amount (Note 1) | Due Date | Remarks |
|---|---|---|---|
| Legal Entity Fee | $500 per month | Monthly | You must pay this fee if you are an individual and you fail to form a legal entity and assign your interest in the Franchise Agreement to it within 90 days after you sign the Franchise Agreement. |

**Notes:**

1.     All amounts referred to in this chart are payable to OpenWorks and are non-refundable and uniformly imposed.

2.     Gross Revenue is the total amount paid by a customer for your services within an accounting period. There is no reduction for taxes or any other purpose.

3.     The current marketing fee ranges from 2.2 to 3.0 times the additional monthly billing, depending on the gross dollar volume of accounts you have previously purchased, the size of the accounts being purchased, and whether you pay the entire fee immediately or finance it. See Items 10 and 11.

4.     Applies to any one-time, non-recurring job that you perform, such as carpet cleaning for which OpenWorks prices and/or solicits the job, regardless of who originally obtained the customer. If you obtain and price the job, the special project fee is zero. If you obtain the job, but OpenWorks prices the job, the special project fee is 15% of the total contract price. If OpenWorks obtains the job, but you price the job, the special project fee is 15%. If OpenWorks obtains and prices the job, the special project fee is 30%.

## ITEM 7
## ESTIMATED INITIAL INVESTMENT

| Your Estimated Initial Investment | | | | |
|---|---|---|---|---|
| Type of Expenditure | Amount | Method of Payment | When Due | To Whom Payment is to be Made |
| Initial Franchise Fee (Note 1) | $15,200 to $72,000 | Lump sum or installments | At signing or monthly | OpenWorks |
| Background Check Fee (Note 2) | $50 | Lump sum | At signing | OpenWorks |
| Expenses During Training (Note 3) | $0 to $500 | As incurred | As incurred | Vendors |
| Uniforms (Note 4) | $0 to $400 | As incurred | When purchased | OpenWorks or supplier |

| Your Estimated Initial Investment | | | | |
|---|---|---|---|---|
| Type of Expenditure | Amount | Method of Payment | When Due | To Whom Payment is to be Made |
| Computer (Note 5) | $0 to $1,500 | As incurred | When purchased | Vendors |
| Additional Supplies (Note 6) | $0 to $500 | As incurred | When purchased | OpenWorks or supplier |
| Additional Equipment (Note 6) | $0 to $5,000 | As incurred | When purchased or leased | OpenWorks or supplier |
| Organizational Costs (Note 7) | $500 to $3,000 | As incurred | As arranged | Attorney, accountant |
| Insurance (Note 8) | $1,000 to $3,000 | Lump sums | Before opening | Carriers |
| Lease (Note 9) | $250 to $1,000 | Cash or check | As required by your lease | Landlord |
| Construction and remodeling (Note 9) | $0 to $5,000 | As requested by landlord | As requested | Landlord or Contractor |
| Furnishings (Note 9) | $0 to $7,500 | Cash or financing | As requested | Various Suppliers |
| Additional Operating Funds for 3 Months (Note 10) | $0 to $25,000 | As incurred | Varies | Employees, others |
| **Total** | $17,000 to $124,450 | | | |

Your estimated initial investment before you begin operating your business and for your first three months of operations are shown on this chart. Except for the initial franchise fee, all figures are estimates and payments to OpenWorks are nonrefundable. If you have an existing commercial janitorial or other facility services business, you may convert that existing business into an OpenWorks account and you may not have to incur expenses for additional supplies, additional equipment, organizational costs or insurance.

**Notes:**

1.      The initial franchise fee is non-refundable unless OpenWorks has been unable to offer a sufficient gross dollar volume of accounts to you, in which case you may elect to receive

a partial refund.  See Item 5.  You may choose to finance a portion of the initial franchise fee as described in Item 10.

2.  You will pay OpenWorks a background check fee for verifying your credit history and conducting a background check.  The fee is currently $50.  You will execute the Background Check Release and Authorization Form attached to this Disclosure Document at **Exhibit O**.

3.  Most trainees live at home and commute to training, but you may have costs for travel and meals during training.

4.  If you hire cleaning crews, then all members of the cleaning crew must be in uniforms previously approved by OpenWorks.  Uniforms for your cleaning crews consist of an OpenWorks shirt.  During all business hour visits to the customer, you or your designated manager if you have one, must be in professional business attire or in business casual attire with an OpenWorks polo shirt with the OpenWorks logo.  The range shown is the initial purchase cost of uniforms for one to 20 people.  OpenWorks will provide you with two t-shirts as part of your initial package for all gross monthly dollar volume levels.  The cost of t-shirts currently ranges from $6 to $11, the cost of polo shirts ranges from $19 to $24.  All prices are determined by outside vendors and are subject to change.

5.  You must have a computer system for you to access the Internet and e-mail.

6.  You may elect to purchase additional supplies or purchase or lease additional equipment in addition to those supplied by OpenWorks.

7.  The amount for organizational costs will include the cost to form an entity and obtain advice from independent advisors.

8.  Premiums for the first three months for general liability and workers' compensation insurance and a janitorial services bond.  You may elect to purchase certain insurance through the insurance program we sponsor.  You may also elect to purchase your bond through our bonding program.

9.  This is designed as a home-based business.  No retail or commercial location will be required, nor will any significant improvement to your home be required.  OpenWorks provides some administrative support from its offices, such as billing and customer service support. Factors that should be considered when selecting an office location for your OpenWorks business should include:  quality of neighborhood and area, overall need for leasehold improvement and/or fixtures and rental square footage rate for the area. All of the above factors are relative to one another.  If you need to acquire office space to accommodate your OpenWorks business, you may need to make certain improvements to your office space.  The cost of leasehold improvements will vary based upon size, condition and location of the premises, local wage rates and material costs.  You may have to purchase or lease office furniture if you do not currently have office furniture.  We do not recommend you begin operating your business from an outside location.  Past and current franchisees have chosen to operate out of their homes.

10.  The estimate for additional operating funds includes amounts required to cover operating shortfalls and cash flow shortages during your first three months of operation.  OpenWorks relied on its own experience and that of its former subsidiaries in estimating this amount.  This figure DOES NOT include anything for your salary or living expenses.  OpenWorks does not guarantee that you will not have greater start-up expenses than these estimates, or that you will not need more operating funds than these estimates.  Your actual investment and expenses will vary according to region, the time of year, the

number of accounts you are servicing, and other factors.  OpenWorks does not imply or guarantee that you will "break even" by any particular time.

You should review these figures carefully in light of local conditions and the economy, and consult a business advisor if necessary.  These numbers do not include debt service for any financing you may obtain.  See Item 10 for a description of the financing that OpenWorks offers to qualified franchisees.

## ITEM 8
## RESTRICTIONS ON SOURCES OF PRODUCTS AND SERVICES

### Required Purchases from OpenWorks

OpenWorks provides you with routine billing and collection services which you are required to use.  For one-time special projects, OpenWorks charges a special project fee of 15% or 30% of the Gross Revenues from the project.  See Item 11 for a detailed description of these services, and Item 6 for more information about the calculation of these fees.  These fees are deducted from the money collected by OpenWorks and remitted to you.

There are no other goods or services that you must purchase from OpenWorks as of the date the Disclosure Document was issued, although OpenWorks may require you to do so in the future.  Other than OpenWorks itself, there is no supplier in which an officer or director of OpenWorks owns an interest.

### Optional Purchases and Leases from OpenWorks

#### Marketing Services for Additional Accounts

You may request OpenWorks to provide you with additional accounts, or OpenWorks may offer you such accounts or increased billings under accounts you are already servicing.  See Item 11 for a description of these services.  If you ask OpenWorks to provide you with additional accounts, or if you accept any additional or increased accounts, you must pay OpenWorks a marketing fee.  The current marketing fee ranges from 2.2 to 3.0 times the monthly additional account volume, depending on the monthly billing for the new or increased accounts, and whether you pay in full immediately.  OpenWorks may finance all or a portion of the marketing fee if you meet OpenWorks' conditions and qualifications.  You must sign an Agreement for Account Assignment or Increase, which is attached as **Exhibit E** to this Disclosure Document, for each account you agree to service.

#### Extended Account Guarantee

You may purchase an extended account guarantee on certain accounts that OpenWorks selects as additional protection to you in case that account is cancelled.  If you accept the offer, and the account is cancelled by the client for any reason other than your failure to properly provide janitorial services to the account, then OpenWorks will offer you a replacement account within 150 days.  OpenWorks is not obligated to offer you an extended account guarantee on the replacement account.

If you purchase an extended account guarantee, then you will pay OpenWorks a monthly fee.  The monthly fee is calculated as the current extended account guarantee percentage at the time OpenWorks offers the guarantee to you times the monthly gross revenue from that account.  The current extended account guarantee percentage is 6.5% as of the date this Disclosure Document was issued.  The guarantee percentage will not change once you purchase the guarantee.  OpenWorks will deduct the extended account guarantee fee from its monthly remittance to you.  The guarantee must be in place before you start servicing the account.

The extended account guarantee will continue as long as you are servicing the selected account.  You will not receive any refund of the fees previously paid for the extended account guarantee if the guarantee is terminated.  You may terminate the extended account guarantee upon 30 days written notice to OpenWorks.  If you transfer or sell the account then the extended account guarantee is terminated.  If OpenWorks terminates your account based on your failure to properly provide janitorial cleaning services to the account, then the guarantee is also terminated.  See the form of Extended Account Guarantee Agreement attached as **Exhibit M** to this Disclosure Document.

### Equipment and Supplies

OpenWorks itself is an approved supplier of equipment which you may buy from OpenWorks if you wish.  See the Equipment Purchase Agreement form attached as **Exhibit F** to this Disclosure Document.  OpenWorks expects to sell this equipment at its cost, plus a mark-up of up to 40%.

### Insurance and Janitorial Service Bond

You will be subject to the following requirements and policies regarding insurance and janitorial service bonds for your franchise:

- You must purchase and maintain a policy or policies of comprehensive public liability insurance, including product liability coverage, covering all janitorial service assets, personnel and activities on an occurrence basis with a combined single limit for bodily injury, death or property damage of not less than $4,000,000.

- In some instances an Account may request additional insurance, which you will have to additionally purchase.

- You must buy a janitorial service bond in the amount of $25,000 covering you and your employees and OpenWorks and its officers and directors must be named as an additional insured.

- You must obtain hired and non-hired auto insurance with a minimum of $25,000 - $50,000 liability coverage on all vehicles involved in the OpenWorks business.

- You must carry casualty insurance in a minimum amount equal to the replacement value of your interest in the Janitorial Service supplies, vehicles and equipment.

- You must maintain workers' compensation policies for your employees.

- You must maintain policies of disability insurance and any other types of insurance required by applicable law.

- OpenWorks may increase the minimum coverage requirements set forth in this Disclosure Document annually if necessary to reflect inflation or other changes in circumstances.

- Each insurance policy that is required under this Disclosure Document must contain a provision that the policy cannot be canceled without 10 days' written notice to OpenWorks; it must be issued by an insurance company of recognized responsibility, designate OpenWorks and its officers and directors as an additional named insured, and be satisfactory to OpenWorks in form, substance and coverage.  You must deliver a certificate of the issuing insurance company

evidencing each policy or bond to OpenWorks within ten days after the policy is issued or renewed.

- If you fail to purchase the required general liability insurance, any additional insurance and janitorial service bond, OpenWorks may enroll you in any insurance program it sponsors or purchase the insurance and/or bond for your benefit and deduct the premiums and other related costs from your monthly Gross Revenue. Failure to maintain the bond or the required amounts and types of insurance set forth in this Disclosure Document, or any other insurance required by applicable law, may result in a loss of Accounts or termination of your franchise.

## Approved Suppliers and Specifications for Goods and Services

In order to build acceptance of the OpenWorks network for delivery of uniform, quality service, OpenWorks requires that you obtain all the office supplies, uniforms, forms, cleaning materials and supplies that you use from suppliers that OpenWorks designates or approves. OpenWorks will give you, in the Manual or otherwise in writing, a list of names and addresses of suppliers of goods and services that OpenWorks designates or approves. OpenWorks may revise the Manual periodically. See Item 11.

If you wish to use any product that is not previously certified by OpenWorks to meet OpenWorks' specifications or that is sold by a supplier not previously approved by OpenWorks, you must advise OpenWorks of this fact and, upon OpenWorks' request, give OpenWorks product specifications, sample products, and/or information about the supplier. OpenWorks will communicate either its approval or its reasons for withholding its approval to you within 10 business days. Silence may not be construed as consent. The primary criteria considered by OpenWorks in approving suppliers are the consistency and commercial-grade strength of products and the willingness of suppliers to render product support. As a condition of approving a supplier or product, OpenWorks may require you to reimburse it for any expenses reasonably incurred by OpenWorks in inspecting the supplier's premises, investigating the supplier, and testing the product. As a condition of approving a supplier of any product that will bear the Trade Name or Marks, OpenWorks may require that the supplier sign a license agreement with OpenWorks or provide a rebate. OpenWorks may withdraw its approval of a supplier or product if either or both no longer meet OpenWorks' standards or specifications. OpenWorks will notify you in writing if this occurs.

## Revenues from Sales and Leases to Franchisees

In the year ended December 31, 2015, based on the audited financial statements of OpenWorks (**Exhibit J** to this Disclosure Document), the gross revenues of OpenWorks from franchisees' purchases of services and supplies, and purchases and leases of equipment, including interest when any such purchases were financed, were $2,620,871 which was 9.4% of OpenWorks' total revenues of $27,768,003.

In the year ended December 31, 2015, based on the audited financial statements of OpenWorks (**Exhibit J** to this Disclosure Document), the gross amount of deposits for franchisee insurance collected by OpenWorks was $770,993, which was 2.8% of OpenWorks' total revenues. The gross amount of funds collected by OpenWorks for franchisee bonds in 2015 was $16,338, which was less than 0.1% of OpenWorks' total revenues. OpenWorks collected a processing fee of $15,576 from the gross amount, and remitted the $762 to the bonding company.

## Percentages of Franchisee Purchases and Leases

OpenWorks estimates that the costs of the goods and services you purchase and lease from OpenWorks and its approved suppliers, and in accordance with OpenWorks' specifications, will be over 98% of your total purchases and leases in connection with the establishment of your business, and of your total annual purchases and leases thereafter in connection with the on-going operation of your business as of the date this Disclosure Document was issued.

## Purchasing Cooperatives

There are no purchasing or distribution cooperatives for the purchase or lease of goods or services relating to your business as of the date this Disclosure Document was issued.

## Supplier Purchase Arrangements

Except for the insurance and bond programs discussed above, OpenWorks has not negotiated purchasing arrangements on behalf of its franchisees in the past, and OpenWorks does not currently receive any payments or material consideration from your purchases or leases from third party suppliers.  However, OpenWorks or its affiliates may in the future negotiate one or more agreements with suppliers of uniforms, chemicals, equipment or supplies, and receive rebates from such suppliers of 1% to 10% of the amounts of purchases by franchisees.

## Material Benefits

OpenWorks does not provide any material inducements or special benefits (such as renewal or additional franchises) to you based on whether you make purchases or enter into leases with OpenWorks or any approved supplier.

## ITEM 9
## FRANCHISEE'S OBLIGATIONS

**This table lists your principal obligations under the franchise and other agreements.  It will help you find more detailed information about your obligations in these agreements and in other items of this Disclosure Document.**

|  | Obligation | Section in Agreement | Disclosure Document Item |
|---|---|---|---|
| a. | Site selection and acquisition/lease | Not applicable | 7, 8, 11 |
| b. | Pre-opening purchases/leases | Not applicable | 5, 7, 8 |
| c. | Site development and other pre-opening requirements | Not applicable | 5, 7, 12 |
| d. | Initial and ongoing training | 5.1 | 11 |
| e. | Opening | 7.2.1 | 11 |
| f. | Fees | 5.4.2, 6 | 5, 6, 7, 8 |
| g. | Compliance with standards and policies/Operating Manual | 7.2 | 8, 11, 14 |

| Obligation | | Section in Agreement | Disclosure Document Item |
|---|---|---|---|
| h. | Trademarks and proprietary information | 3.7, 3.18, 3.22, 3.25, 7.1, 8.1, 8.5 | 13, 14 |
| i. | Restrictions on products/services offered | 7.2.4 | 16 |
| j. | Warranty and customer service requirements | 7.2.3, 7.2.5 | 16 |
| k. | Territorial development and sales quotas | Not applicable | 12 |
| l. | Ongoing product/service purchases | 5.8 | 8, 10 |
| m. | Maintenance, appearance, and remodeling requirements | Not applicable | 8, 17 |
| n. | Insurance | 7.3 | 6, 8 |
| o. | Advertising | 5.7, 7.1.3 | 6, 8, 11 |
| p. | Indemnification | 8.4 | 6, 13 |
| q. | Owner's participation/ management/staffing | 7.2.8, 7.2.10, 7.2.11 | 7, 15 |
| r. | Records and reports | 5.4 | 6 |
| s. | Inspections and audits | 6.6, 6.7, 7.2.6 | 6 |
| t. | Transfer | 9 | 6, 17 |
| u. | Renewal | 4.2.2 | 17 |
| v. | Post-termination obligations | 5.2.6, 8.5.4, 10.4 | 17 |
| w. | Non-competition covenants | 8.6 | 17 |
| x. | Dispute resolution | 11 | 17 |
| y. | Other: Guaranties, Confidentiality and Non-Competition Agreement; Spousal Consent (Note 2) | 11.13, Attachments 3, 4 and 6 | 6, 10, 22 |

## ITEM 10
## FINANCING

### Initial Franchise Fee or Marketing Fee

You may finance a portion of the initial franchise fee, or all or a portion of any marketing fee, subject to OpenWorks' discretion and approval.  The amount OpenWorks will agree to finance will depend on the size of the transaction, your other debt, your credit history, and your anticipated cash flow.  In order to evaluate your credit history, you must complete a background check authorization form which is attached as **Exhibit O** to this Disclosure Document.  (This form may be revised by the credit agency.)  You will be required to provide your birth date, social security number, driver's license information and current address.  Your execution of this form is your notification that a background check will be ordered on you to evaluate your credit history.

Financing terms are 12% per year (unless reduced at OpenWorks' discretion) or the highest rate permitted by applicable law, whichever is less, over a two year period for the initial franchise fee and over a two to four year period for the marketing fee. The loan will be evidenced by a promissory note in the form of **Exhibit D** to this Disclosure Document. A 10% discount off the amount financed is offered under the veteran's program. For the initial franchise fee, principal and interest will be payable in 24 or 36 equal monthly payments under the standard program. Under the veteran's program, principal and interest will be payable in 24 monthly payments.

For the marketing fee, if the down payment is not paid when the contract is signed, it must be paid as a first installment, and the balance plus interest will be payable in 24, 30, 36 or 48 equal monthly installments. The down payment for the marketing fee is 30% of the additional billing volume for billing volumes up to $5,000, 15% for billing volumes over $5,000 and up to $10,000, and 5% for billing volumes over $10,000.

No collateral is required to secure the note. However, if you are a corporation, partnership or limited liability company, the personal guaranties of the Franchise Agreement signed by its principals and their spouses will also cover the note. A personal guaranty may override the protections given to your personal assets that your ownership interest in a corporation, partnership or limited liability company generally provides. The guaranty includes a provision that you may not bring a counterclaim or setoff to any claim brought by OpenWorks under the note. The note may be prepaid at any time without penalty. There is an acceleration clause that becomes effective upon certain events of default.

If a default occurs under the note, your Franchise Agreement, or any other agreement that you have with OpenWorks, or if OpenWorks determines in its reasonable judgment that your financial condition has become unsatisfactory, OpenWorks can accelerate the entire amount due under the note, collect its costs and attorneys' fees, and terminate your franchise if the note is not paid in full immediately. One of the default provisions is that OpenWorks may accelerate the amount due under the note if you fail to pay, withhold, collect or remit any tax when it is assessed or due. There are other default provisions.

The note includes a waiver of notice. If the particular events of default listed in the note occur, OpenWorks is not required to give you notice of the default before calling the note due under the acceleration clause.

OpenWorks reserves the right to assign your note. OpenWorks has not sold notes in the past, and has no present intention to do so in the future. OpenWorks has pledged its stock to a bank as collateral for a loan, and anticipates continuing to do so. OpenWorks itself remains fully obligated to you to perform all the services for which you give the note and you retain all your defenses against OpenWorks. As a result of the pledge to the bank, however, you may not be able to assert your defenses against the bank if the bank is collecting your payments on the note. In that case, you would have to assert your claims against OpenWorks in a separate action.

## Equipment

OpenWorks has an equipment purchase program to finance purchases of equipment for use in its franchisees' businesses. OpenWorks is the lender in these transactions. It will finance the entire purchase price of the equipment at an annual interest rate of 12%. The agreement requires 12 equal monthly payments.

The equipment itself is the collateral and normally you are the only guarantor. Prepayment in whole or in part may be made at any time without notice or penalty. Should a default occur, then the whole sum of principal, and interest thereon which shall then have accrued but which remains unpaid, shall become immediately due and payable at the option of

OpenWorks, with default interest on the entire unpaid principal and accrued and unpaid interest from the date of such default until paid at the lesser of (i) the rate of one percent (1%) per month, or (ii) the highest rate permitted by applicable laws.

## No Other Financing

OpenWorks does not directly or indirectly offer any other financing to you. OpenWorks does not guarantee any loan, lease or other obligation you may enter into with a third party. OpenWorks does not receive any direct or indirect payments for any financing you may receive from third parties.

**ITEM 11**
**FRANCHISOR'S ASSISTANCE, ADVERTISING,**
**COMPUTER SYSTEM, AND TRAINING**

**Except as listed below, OpenWorks is not required to provide you with any assistance.**

## Pre-Opening Assistance

### Site Selection

This is designed as a home-based business. No retail or commercial location will be required. However, if you decide to work out of a location other than your home, you do not need our approval of the location, provided you stay within your territory. OpenWorks has neither an obligation to help you find a site for your business nor the right to approve it.

### Training Program

Before you begin business, OpenWorks will conduct a training program in the operation of an OpenWorks janitorial service business as more fully discussed below under the caption "Training." (Franchise Agreement § 5.1.1.) No initial training is provided to existing franchisees that renew their franchises. You must arrange for your training and that of your employees. We may provide general recommendations on your hiring but all recommendations are optional and we do not otherwise assist you in hiring your employees.

### Starter Kit

At no additional charge, OpenWorks will provide you with an equipment and supply kit to begin your business. The current starter kit being provided by OpenWorks is described in Attachment 1 to the Franchise Agreement. OpenWorks may substitute certain items listed on Attachment 1 for other items that have equal or greater value or quality. (Franchise Agreement § 5.3.) No starter kit is provided to existing franchisees that renew their franchises.

### Manual

OpenWorks will lend you its Operations and Safety Manual as more fully discussed below under the caption "Manual." (Franchise Agreement §§ 5.6. and 5.8.)

## Assistance After Opening

OpenWorks is not required to offer you any assistance after you begin business that is not described below.

**Initial Accounts**

After you have successfully completed initial training, signed OpenWorks' certificate of completion of initial training, picked up your equipment, delivered to OpenWorks copies of your business license and entity organizational documents and paid the initial franchise fee, OpenWorks will offer you cleaning accounts whose gross monthly dollar volume of cleaning services will be cumulated to reach the initial monthly account volume promised in the Franchise Agreement within the fulfillment period for the franchise package you purchase. OpenWorks' fulfillment periods are as follows for each franchise package:

| OpenWorks Package | Initial Monthly Account Volume | Fulfillment Period (Days) |
|---|---|---|
| OW 3 | 3,000 | 120 |
| OW 5 | 5,000 | 180 |
| OW 7 | 7,000 | 240 |
| OW 10 | 10,000 | 330 |
| OW 15 | 15,000 | 480 |
| OW 20 | 20,000 | 630 |
| OW 25 | 25,000 | 780 |

For packages more than the OW 25  level, the initial monthly account volume is offered in $5,000 increment and may be available depending on your location. The fulfillment period is calculated as an additional 150 days per $5,000 account volume.

If OpenWorks does not offer the promised initial account volume, your sole remedy is a credit or refund of a portion of your initial franchise fee, as described in Item 5. Such a credit or refund will fulfill OpenWorks' obligation to offer the remaining portion of the initial account volume. No initial account volume is provided to existing franchisees that renew their franchises. (Franchise Agreement § 5.2.1.)

You must sign an Agreement for Account Assignment or Increase, which is attached as **Exhibit E** to this Disclosure Document, for each initial and additional account you agree to service. (Franchise Agreement § 5.2.5.)

You may refuse up to three separate new accounts from the initial account volume offered by OpenWorks for any reason whatsoever during the term of the franchise. You may refuse an account when it is initially offered to you or within 30 days after the service for that account is scheduled to start. If you do not respond within the time OpenWorks designates when it offers you an account, you will be deemed to have refused the account. However, each refusal of an account will extend the fulfillment period by an additional 30 days. After three refusals, any account from the initial account volume which you refuse or to which you discontinue service will be counted towards the account volume OpenWorks is obligated to offer and may also, at OpenWorks' option, extend the fulfillment period by an additional 30 days. (Franchise Agreement § 5.2.3.)

If, during the fulfillment period, you commit any default that would justify termination of an account or of your Franchise Agreement (including your failure to properly perform your janitorial service obligations) OpenWorks may, at its option, suspend the fulfillment period until the default is cured instead of terminating your service to an account or terminating the franchise. If OpenWorks determines that you cannot or will not cure the default, OpenWorks may require you to repeat the initial training course. Once you have either cured the default or successfully

completed retraining, as applicable, the prior fulfillment period will be cancelled and a new fulfillment period will begin.  (Franchise Agreement § 5.2.1.)

**Billing and Collection**

OpenWorks will provide billing and collection services for you.  You must use this service and may not bill accounts yourself or have a third party do it.  Within two business days after the end of each month, you must send OpenWorks a statement of all services rendered by you during that month.  Within 45 days after the end of each month, OpenWorks will send you your Gross Revenue for that month, after deduction of any sums currently due and payable by you to OpenWorks, and any amounts you have authorized OpenWorks to pay to third parties on your behalf.  OpenWorks may adjust the deadlines for reporting by you and payment by OpenWorks if it determines these adjustments are necessary because of the payment practices of customers.  You will be notified of any such adjustments.  (Franchise Agreement § 5.4.1.)

**Limited Cash Flow Protection Service**

At the time of sending your monthly Gross Revenue to you, OpenWorks will advance you a sum equal to any delinquent payments that should have been, but were not, received by OpenWorks from any customers you serviced if all of the following requirements are met:

- The customer was not delinquent in the immediately preceding month;

- OpenWorks had not previously instructed you to terminate service to the customer;

- The customer was originally provided by OpenWorks; and

- You submitted to OpenWorks the monthly statement of all services rendered by you, including services rendered to the delinquent customer, in a timely manner and in the form prescribed by OpenWorks.

Any such sums advanced to you by OpenWorks must be repaid to OpenWorks within 90 days after the date upon which payment was due from the customer.  You must repay OpenWorks or OpenWorks may deduct amounts you owe it for these advances from any and all money collected by OpenWorks on your behalf.  You must pay OpenWorks interest at 12% per year on any advances for which OpenWorks has not been reimbursed within 90 days.  (Franchise Agreement § 5.4.2.)

OpenWorks is entitled to recover from you any costs OpenWorks incurs in collecting money owed by customers you serviced.  OpenWorks may apply any money you pay OpenWorks or that is paid by any such customers to collection costs.  (Franchise Agreement § 5.4.3.)

**Additional Accounts**

You will not have the option to purchase additional franchises.  However, you may request additional accounts from OpenWorks.  Additional accounts are accounts offered to you by OpenWorks over and above the initial account volume, under the following scenarios:

- You may request OpenWorks to provide you with additional accounts;

- OpenWorks may offer additional accounts to you on its own and you may accept;

- OpenWorks, in conjunction with a proposed increase in an account you are servicing, may require you to purchase the increase in the dollar account volume of that account, in which case OpenWorks may assess a marketing fee from you that is proportionate to the increase; or

- OpenWorks, in conjunction with assigning an account to you under a previous obligation, may require you to purchase the overage if the acceptance of an account would cause the gross dollar volume to exceed the amount OpenWorks is obligated to provide.

You must execute an amendment to the Franchise Agreement signifying an additional account purchase and pay the appropriate marketing fee. If you finance the marketing fee, you must execute a promissory note. See Item 10. OpenWorks may have outstanding obligations to offer accounts under more than one contract at a time. Assignment of a given account, if of sufficient monthly billing magnitude, may help to fulfill OpenWorks' obligations to offer accounts under more than one contract. (Franchise Agreement § 5.2.4.)

OpenWorks is under no obligation to provide you with additional accounts and may agree to do so solely at its own discretion.

### Replacement of Accounts

If any of your initial accounts terminate their service agreements within one year, OpenWorks will offer you replacement accounts within 150 days. If any of your additional accounts terminate their contracts within six months, OpenWorks will offer you replacement accounts within 150 days. These obligations do not apply to accounts that are terminated as a result of your wrongful act or any nonprofessional interaction with the account, including theft, breakage, failure to reset alarm systems, being argumentative with the account and your failure to properly provide janitorial services. OpenWorks has the sole discretion to determine if you have acted improperly. OpenWorks is not obligated to replace any account you lose because of the customer's request that service be provided by another franchisee. OpenWorks is not obligated to replace replacement accounts. (Franchise Agreement § 5.2.4.)

Replacement accounts will be of the same or greater monthly billing magnitude as the terminated accounts they replace. If the gross dollar volume billed per month under replacement accounts exceed the terminated accounts, OpenWorks may assess a marketing fee based on the overage. (Franchise Agreement § 5.2.4.)

### Extended Account Guarantee

OpenWorks may offer to you, at its sole discretion, the opportunity to purchase an extended account guarantee on a particular account. If you purchase an extended account guarantee and that account is cancelled by the client for any reason other than for your failure to adequately provide janitorial cleaning services, then OpenWorks will offer you a replacement account within 150 days. OpenWorks is also not obligated to offer you an extended account guarantee on the replacement account. (Franchise Agreement § 6.10 and **Exhibit M**.) See the detailed discussion in Item 8.

### Consultation

Upon your request, OpenWorks will use commercially reasonable efforts to make its personnel available to you at no charge for consultation regarding the operation of your janitorial services business. (Franchise Agreement § 5.5.)

## Advertising

### Advertising Fund

All OpenWorks janitorial franchisees must contribute up to 1% of their monthly Gross Revenue to the Advertising Fund each month.  OpenWorks currently contributes to the Advertising Fund in excess of franchisee contributions for its commercial accounts; however, it reserves the right to decrease its contribution amounts in the future.  In addition, OpenWorks currently subsidizes additional contributions on behalf of franchisees.  (Franchise Agreement §5.7.1.)

The Advertising Fund may be used to pay for market research, development, branding, advertising materials (including marketing materials), media space and time (print, direct mail, electronic and broadcast media), for promotion or public relations programs, for quality assurance, for a national or regional advertising program, a referral program, or any combination of them.  Advertising will usually be developed by outside agencies, although OpenWorks has the right to use OpenWorks' in-house marketing department.  OpenWorks will give preference to Advertising Fund projects that are national or regional in scope, and may also make allocations of Advertising Fund money to regional groups of franchisees or individual franchisees when desirable.  There is no requirement that any of the money be spent in your area.  Because the benefits of advertising and promotion are difficult to measure with precision, OpenWorks reserves the unqualified right to determine how Advertising Fund money will be spent; the sole condition is that the Fund money must be used in a manner that is reasonably related to the promotion of the OpenWorks' brand, trade names and marks. The Fund money may be used to compensate OpenWorks for overhead and other expenses incurred in connection with its administration of the Fund.  If all advertising money is not spent in the year in which it is collected, it will remain in the Advertising Fund for spending in the following years.  In the event OpenWorks' expenditures for advertising in any fiscal year shall exceed the total amount contributed to the Advertising Fund during that fiscal year, OpenWorks shall have the right to be reimbursed to the extent of such excess contributions from any amounts subsequently contributed to the Advertising Fund or to use such excess as a credit against its future contributions. OpenWorks does not make expenditures from the Advertising Fund to solicit new franchise sales.  (Franchise Agreement § 5.7.2.)

OpenWorks will administer any Advertising Fund, which will be administratively segregated on its books and records.  Any payments to the Advertising Fund may be deposited in OpenWorks' general operating account and may be commingled with OpenWorks' general operating funds; subject, however, to OpenWorks' obligation to expend the monies in the Advertising Fund in accordance with its specified terms.  OpenWorks will prepare an annual summary of the manner in which the money was spent by percentages in general categories similar to the percentages listed below.  The summary will be available to you upon your written request.  (Franchise Agreement § 5.7.3.)  The Advertising Fund's books will not be separately audited from OpenWorks' other accounts.

During the last fiscal year, which ended December 31, 2015, OpenWorks allocated such expenditures from the Fund as follows:

| | |
|---|---|
| Production/PR Research | 41.8% |
| Media Placement | 52.0% |
| Administrative Expenses | 62.0% |
| Total Used from Fund | 100.0% |

**Your Advertising**

You are not required to conduct your own local advertising program.  If you do conduct your own advertising, you must submit copies of all advertising materials that you propose to use to OpenWorks at least two weeks before the first time they are broadcast or published. OpenWorks will review the materials and notify you within 10 business days whether it approves or rejects them.  OpenWorks will not withhold its approval unreasonably.  Advertising materials that differ from previously approved materials only in such variables as date, price, or names of products will be considered to be previously approved.  However, even if OpenWorks has approved specified materials, it may later withdraw its approval if it believes that is necessary to make the advertising conform to changes in the system or to correct any misrepresentation.  You may not engage in telemarketing.  (Franchise Agreement § 7.1.3.)

OpenWorks has no plans to establish advertising councils.  There is no requirement that you participate in a local or regional advertising cooperative.

## Computer System

OpenWorks requires you to have a computer system from which you can access the Internet and maintain an email account.  You must buy a computer system if you do not already have one, or upgrade your current computer system to meet OpenWorks' minimum specifications.  You are required to have a computer system that is capable of running up-to-date operating systems and that is capable of receiving e-mails.  We estimate the cost of purchasing the computer system will range from $150 to $1,200.

The approximate cost of basic single user software is estimated to be $40.  OpenWorks will not have independent access to any information maintained on your computer system.

OpenWorks will not assist you in obtaining or setting up your computer system, and will not provide you with any training or support for your computer system.  You must maintain your computer system and make updates and upgrades at your expense as OpenWorks requires (as specified in the Manual).  You may pay up to $500 annually for optional maintenance, updating, upgrading or support contracts for the computer system.  (Franchise Agreement §§ 5.6, 7.2.2 & 7.7.)  There are no contractual limitations on the frequency or cost of required updates and upgrades, although OpenWorks has no current plans to change its requirements.  Although you must maintain, repair and upgrade your computer system hardware and any software you use, neither OpenWorks nor any third party is obligated to provide such maintenance, repairs or upgrades for you.

## Manual

OpenWorks will lend you its Operations and Safety Manual containing information on operational methods, safety, rules and policies, marketing, names of approved suppliers, and other information that OpenWorks believes will be necessary or helpful to you.  OpenWorks will revise the Manual periodically to conform to the changing needs of the OpenWorks network and will distribute updates to you verbally or in writing. (Franchise Agreement § 5.6.)

A copy of the table of contents of OpenWorks' Manual current as of the date this Disclosure Document was issued is attached as **Exhibit G** to this Disclosure Document.  The Manual has a total of 485 pages.  The table of contents shows the number of pages devoted to each subject.

**Opening**

The length of time between signing of the Franchise Agreement or payment of the initial franchise fee and commencement of your business may range between one day and four months, depending on your readiness and the availability of client accounts.

**Training**

Before the opening of your business, OpenWorks will conduct an initial training program in the operation of a Janitorial Service business under OpenWorks' system for you and any of your employees who wish to attend at the same time at no charge to you. The name of OpenWorks' initial training program is TotalWorks™ and the categories of training are called FirstWorks™, BusinessWorks™, TechWorks™ and SkillWorks™. No initial training is provided for existing franchisees that renew their franchises. You must complete the initial training program to OpenWorks' satisfaction before you can start operating your franchise. Upon successful completion of the program and the receipt of your certification, you are open for business and ready to service customers. The initial training program will be offered once or twice a month and will have to be completed by you within 45 days of the signing of your Franchise Agreement. Failure to successfully complete the training course within the allotted time is a violation of the Franchise Agreement. The initial training program is summarized in the following chart:

## TRAINING PROGRAM

| Subject | Hours of Classroom Training | Hours of On-the-Job Training | Location |
|---|---|---|---|
| Orientation and Policies | 1.50 | 0.00 | See Note 1 |
| General Office Cleaning | 2.25 | 5.50 | See Note 1 |
| Restroom Cleaning | 1.25 | 5.25 | See Note 1 |
| Floor Care – Hard floors | 3.25 | 2.25 | See Note 1 |
| Floor Care - Carpets | 3.50 | 3.50 | See Note 1 |
| Hazard Communication Standard and Bloodborne Pathogens | 3.50 | 0.00 | See Note 1 |
| General Safety | 1.00 | 0.00 | See Note 1 |
| Servicing Your Accounts | 5.25 | 0.00 | See Note 1 |
| Healthcare Cleaning and Infection Control | 1.00 | 0.00 | See Note 1 |
| Management Skills and Customer Service | 4.75 | 2.75 | See Note 1 |
| **Total Hours:** | 27.25 | 19.25 | |

Training consists of several sessions, including classroom lectures, video training, live demonstration and hands-on training. Instructors will generally have at least one year of experience in their fields.

**Note 1:** Training is normally conducted at the OpenWorks' regional office that services your territory or at the offices of customers of other franchisees and at OpenWorks' suppliers' facilities. OpenWorks determines the location and sequence of training.

If you hire new employees in the future who must be trained, OpenWorks will provide the initial training program for them at $250 per group. If you have performance issues and are required to re-attend training, then OpenWorks' fulfillment obligations will be deferred until you

successfully complete training.  If you are not able to successfully completely the training course during your fulfillment time, OpenWorks' fulfillment obligations will cease.

OpenWorks also may offer continuing education classes, on an optional or mandatory basis, and may charge you for such classes.  (Franchise Agreement § 5.1.2.)  The current charges for such classes range from nothing to $150 per class.  Classes are normally several hours in duration and taught by instructors who have at least five years of experience.  If you are scheduled to attend a class and fail to appear, you must pay a $50 cancellation charge.

Instructional material will consist of videos and various manuals, and other written material, all of which will be lent to you at no additional charge.

You must pay for transportation, meals and other incidental expenses incurred during training.  Neither you nor your employees will be compensated by OpenWorks for any work performed during training.

## ITEM 12
## TERRITORY

Under the Franchise Agreement, OpenWorks grants you the right to operate a janitorial services business within a designated territory using OpenWorks' trade names, marks and system.  The territory is usually the county in which you reside in and which is serviced by the OpenWorks regional office where you purchased your franchise.  If you live close to the border of two counties, then your territory may be both counties or either county, depending on the location of accounts within each county.  The territory is specified in Article 1 of your Franchise Agreement.  You will not receive an exclusive territory.  You may face competition from other franchisees, from outlets that we own, or from other channels of distribution or competitive brands that we control.  As there may be multiple franchisees in a territory, other franchisees and OpenWorks can and do compete there.  You may seek new business within your territory but you are not allowed to solicit business from existing OpenWorks customers or prospects where an active OpenWorks bid (within the last six months) exists.  OpenWorks will not bid against you itself.  You are restricted as to the area within which you may solicit business and as to the principal places of business of your customers.  Both must be within the territory.  In addition, you may not service prospects located outside of your territory, even if you did not solicit their business.

OpenWorks does not compete with you under different tradenames or trademarks within the territory (and it has no current plans to do so), but it does reserve the right to do so in the future.

You will not have an option to purchase additional franchises.  However, you may request that OpenWorks provide you with additional accounts to be serviced under your existing franchise for a marketing fee, as described in Items 8 and 11.  To purchase additional accounts, you must sign an amendment to your Franchise Agreement, and if you finance the marketing fee, you must sign a promissory note.  Whether the accounts will be provided will depend on whether OpenWorks has the ability to locate more accounts in your area and whether OpenWorks believes you are able to service more accounts.  Several factors that OpenWorks considers when determining your ability to locate more accounts or determining whether you are able to service more accounts include market conditions, your past service record and your current capabilities as compared with the requirements of the account with respect to labor, experience and resources.

OpenWorks reserves the right to use other channels of distribution such as the Internet, catalog sales and direct mail to make sales in your territory.  OpenWorks need not compensate you for soliciting or accepting accounts from inside your territory.

We have the right to control all electronic names and electronic commerce for our system.  You may not establish an account or participate in any social networking sites (including, without limitation, Facebook, MySpace, Twitter, YouTube, LinkedIn or any other social or professional networking blog, bulliten board or chat room) or mention or discuss the franchise or OpenWorks without OpenWorks' prior written consent.  If OpenWorks does consent, it has the right to review all on-line content on social media sites, blogs, in electronic communications and on other on-line sites on which OpenWorks' trademarks are used to protect the reputation and high quality associated with OpenWorks' trademarks.  OpenWorks may require you to remove any questionable usage or content involving its trademarks.  OpenWorks may also require you to cease using its trademarks at all such sites.  We also own any electronic names and any data collected in electronic commerce regarding our system and our trademarks.

There are no conditions under which the territory might be modified while your Franchise Agreement is in effect.  This includes relocations.  You may purchase an additional franchise in a new territory and continue operating the franchise in your original territory.  You may also sell your existing franchise and if you wish, purchase a new one in a new territory.  All approval processes, transfer fees and initial franchise fees are applicable.

## ITEM 13
## TRADEMARKS

OpenWorks is the owner of each of the following principal trademarks, which are registered on the principal register of the U.S. Patent and Trademark Office ("USPTO"), and which are being licensed to you:

| Trademark | Registration (Serial) Number | Registration Date |
|---|---|---|
| OpenWorks | 75869986 | October 10, 2000 |
|  | 77956757 | February 8, 2011 |

| Trademark | Registration (Serial) Number | Registration Date |
|---|---|---|
|  | 77956729 | October 26, 2010 |
| Give your facility the works® | 76096319 | May 21, 2002 |
| FirstWorks® | 78729283 | September 5, 2006 |
|  | 4870026 | December 15, 2015 |
|  | 4880147 | January 5, 2016 |

As of the date this Disclosure Document was issued, OpenWorks has filed all required affidavits and renewals for the trademarks with the USPTO. A list of additional trademarks is included as Attachment 5 to the Franchise Agreement in **Exhibit C**.

There were no currently effective determinations of the USPTO, the Trademark Trial and Appeal Board or any state trademark administrator or court, nor any pending infringement, opposition or cancellation proceeding, involving the trademarks as of the date this Disclosure Document was issued.

There were no pending material federal or state court litigation regarding OpenWorks use or ownership rights in the trademarks as of the date this Disclosure Document was issued.

No currently effective agreements significantly limit the rights of OpenWorks to use or license the use of its principal trademarks in a manner material to the franchise.

You cannot use the OpenWorks trademarks as part of your legal business name, or with other words, designs or symbols. You may not use our trademarks in connection with the sale of unauthorized products or services, or in any manner not authorized by us.

OpenWorks has invested substantial time, energy, and money in the promotion and protection of the trademarks. There is no present intention of altering them. However, changes in the trademarks may become desirable or necessary. Under the Franchise Agreement, therefore, OpenWorks reserves the right to change the trademarks and the specifications for each. You are obligated to conform, at your own expense, to any such changes.

You must notify OpenWorks immediately in writing if you become aware of any unauthorized use of OpenWorks' trademarks. You must promptly notify OpenWorks in writing of any claim against you relating to your use of the OpenWorks trademarks. In any proceeding relating to such a claim, OpenWorks may select legal counsel and has the sole right to control any administrative proceedings or litigation involving the trademarks. OpenWorks is not contractually obligated to indemnify or defend you in such a proceeding or litigation. Although OpenWorks is not contractually obligated to defend its trademarks against infringers, it intends to do so.

OpenWorks is not aware of any superior prior rights to, or infringing uses of its principal trademarks that could materially affect your use of them.

## ITEM 14
## PATENTS, COPYRIGHTS AND PROPRIETARY INFORMATION

OpenWorks has not registered any patents or copyrights. It claims common law copyrights for its advertising materials, contracts and the Manual. You will be permitted to use the copyrighted materials. OpenWorks has no contractual obligation to protect its copyrights. Nevertheless, it intends to do so.

There are no current material determinations of the USPTO, the United States Copyright Office or a court regarding any copyright owned by OpenWorks. There is no material proceeding in the United States Patent and Trademark Office or any court concerning any such copyright.

You must notify OpenWorks immediately in writing if you become aware of any unauthorized use of OpenWorks' copyrighted materials. You must promptly notify OpenWorks in writing of any claim against you relating to your use of OpenWorks' copyrighted materials. In any proceeding relating to such a claim, OpenWorks may select legal counsel and has the right to control the proceedings. OpenWorks is not contractually obligated to indemnify or defend you in such a proceeding. OpenWorks is not contractually obligated to defend its copyrights.

OpenWorks considers the information contained in the Manual to be confidential. OpenWorks will disclose to you, during and after training, specified trade secrets subject to explicit non-disclosure provisions in the Franchise Agreement. In particular, OpenWorks considers its customer lists and information, the Manual and pricing methods to be valuable trade secrets. Each person having a 5% or greater ownership interest in you, and each person who will receive initial training from OpenWorks or have access to OpenWorks' trade secrets, must sign the Non-Disclosure and Non-Competition Agreement which is Attachment 4 to the Franchise Agreement (which is **Exhibit C** to this Disclosure Document).

## ITEM 15
## OBLIGATION TO PARTICIPATE IN THE ACTUAL OPERATION
## OF THE FRANCHISE BUSINESS

You or your designated manager must use your best efforts in the daily operation of the franchised business and devote all your productive time and effort to the management and operation of your franchised business on a full time basis.  There is no requirement that any designated manager have an equity interest in your business.  You and your designated manager must be fluent in English in order to adequately communicate with clients.

You must receive OpenWorks' approval of any proposed change in designated managers before implementing such a change.  OpenWorks has the right to approve or disapprove any persons responsible for the day-to-day management of the franchised business.  If OpenWorks, in its sole discretion, determines that your designated manager is not properly performing his or her duties or has violated any Franchise Agreement provision, OpenWorks will require that you immediately remove the designated manager.  Upon the termination of employment of a designated manager, you are required to take on a role of designated manager yourself until OpenWorks approves your proposed designated manager and the successor is qualified to take over.  Any successor designated manager must successfully complete the initial training program conducted by OpenWorks before starting work in your business.

## ITEM 16
## RESTRICTIONS ON WHAT THE FRANCHISEE MAY SELL

You are obligated to offer and sell all the services and only the services that OpenWorks authorizes you to provide.  There is no restriction as to which customers you may serve as long as they are not customers of another OpenWorks franchisee and are located within the territory.

You must operate your business in complete compliance with the standards and specifications set out in the Manual.  OpenWorks may make changes in these standards and specifications, when, in its reasonable discretion, change is needed for the continued success and development of the OpenWorks network.  These changes may necessitate the purchase of equipment, supplies, furnishings or other goods, completion of additional training by your employees, or other cost to you.  You must promptly conform to the modified standards and specifications at your expense.

The only limitation on OpenWorks' right to make changes in the types of services you offer is that it may not change the terms of the Franchise Agreement itself without a written amendment signed by both OpenWorks and you.

# ITEM 17
## RENEWAL, TERMINATION, TRANSFER AND DISPUTE RESOLUTION

**This table lists important provisions of the franchise and related agreements.  You should read these provisions in the agreements attached to this Disclosure Document.**

### THE FRANCHISE RELATIONSHIP

| Provision | Section in Franchise or other Agreement | Summary |
|---|---|---|
| a.  Length of the franchise | 4.2.1 | 10 years. |
| b.  Renewal or extension of the term | 4.2.2 | Your successor franchise right permits you to remain as a franchise after the initial term of your Franchise Agreement expires.  If you wish to do so, and you satisfy the pre-conditions to obtaining a successor franchise, we will offer you the right to obtain two additional terms of 10 years each.  You must sign our then-current Franchise Agreement for the successor term, and this new Franchise Agreement may have different terms and conditions (including, e.g. higher royalty and advertising contributions) from the Franchise Agreement that covered your original term. |
| c.  Requirements for franchisee to renew or extend | 4.2.2 | Be in good standing, six months' notice to OpenWorks, and sign new agreement and release.  You may be asked to sign an agreement with materially different terms and conditions than your original agreement. |
| d.  Termination by franchisee | 10.3 | On 90 days' notice, if you de-identify, pay all debts to OpenWorks, and return proprietary items. |
| e.  Termination by franchisor without cause | 10.1 | OpenWorks cannot terminate without cause unless you agree. |
| f.  Termination by franchisor with cause | 10.2 | OpenWorks can terminate only if you default. |
| g.  "Cause" defined – curable defaults | 10.2.1 (b)-(j), 10.2.2 | You have 30 days to cure violations of failure to submit information on time, failure to begin business within required time, misuse of marks, misrepresentations, or threats to public health or safety; you have five days to cure failure to pay money. |
| h.  "Cause" defined - non-curable defaults | 10.2.1 (a), (k)-(q), 10.2.2 | Non-curable defaults include interests in a competing business, felony conviction, unapproved transfer, insolvency, more than two defaults within a 12 month period, service problems that would permit termination of your right to service an account for your fault, failure to maintain insurance required by law and material misrepresentations resulting in a material adverse effect. |

| Provision | Section in Franchise or other Agreement | Summary |
|---|---|---|
| i. Franchisee's obligations on termination/ nonrenewal | 10.4 | De-identification, payment of amounts due, return of proprietary items and customer keys and security codes, assignment of any janitorial cleaning account agreements if executed by you, provision of a list of all accounts and customers you serviced, and assignment of any telephone numbers and websites. |
| j. Assignment of contract by Franchisor | 9.7 | May assign to company that assumes obligations, including assignment to OpenWorks master franchisee with exclusive rights to administer the regional office for your janitorial services business. |
| k. "Transfer" by franchisee – definition | 3.26 | Includes any transfer of your Franchise Agreement, substantially all of your business assets, or more than a 33% change of ownership. |
| l. Franchisor approval of your transfer | 9.1 - 9.6 | OpenWorks has the right to evaluate and decide whether to approve all transfers.  Approval is not a representation that accounts transferred will remain OpenWorks' accounts. |
| m. Conditions for franchisor approval of transfer | 9.2 - 9.6 | New franchisee qualifies and completes training, you pay OpenWorks all money owed, defaults cured, transfer fee paid, purchase agreement approved, release signed by you, new franchisee signs current Franchise Agreement with initial fee, training and fulfillment obligations amended, OpenWorks granted right of first refusal.  New franchisee must be a legal entity.  You must obtain our consent before using our trademarks in any listing. |
| n. Franchisor right of first refusal to acquire franchisee's business | 9.6 | OpenWorks has 15 days to notify you that it will buy under the same terms. |
| o. Franchisor's option to purchase franchisee's business | None | OpenWorks has no option to buy your business unless you want to sell.  See n above. |
| p. Death or disability of franchisee | 9.5.7 | No transfer fee for heirs who qualify; otherwise six months to sell to qualified buyer; heirs must take ownership through a legal entity. |
| q. Non-competition covenants during term of franchise | 8.6 | No involvement by you or your designated manager in any commercial janitorial business within the area you service and 75 miles of any OpenWorks regional office; no solicitation of OpenWorks employees. |

| Provision | Section in Franchise or other Agreement | Summary |
|---|---|---|
| r.  Non-competition covenants after franchise is terminated or expires | 8.6 | No involvement by you in any commercial janitorial business within the area you serviced and 75 miles of any OpenWorks regional office, for 24 months; no solicitation of OpenWorks employees or customers. |
| s.  Modification of the agreement | 7.2.2, 8.8, 11.2, 11.4, 11.7 | OpenWorks may change Manual and reduce scope of non-compete; otherwise modification only by agreement of parties or as required by law. |
| t.  Integration/ merger clause | 11.6 | Only the terms of the franchise agreement are binding (subject to state law). Any representations or promises outside of the disclosure document and franchise agreement may not be enforceable. |
| u.  Dispute resolution by arbitration or mediation | 11.8 | Except for certain claims, all disputes must be arbitrated. |
| v.  Choice of forum | 11.8 | Principal place of business, currently, Phoenix, Arizona (subject to applicable state law). |
| w.  Choice of law | 11.2 | Arizona law, subject to state law, except that confidentiality, non-competition and non-solicitation are governed by the law in the state where you operate your business. |

# ITEM 18
## PUBLIC FIGURES

OpenWorks does not use any public figure to promote its franchise.

# ITEM 19
## FINANCIAL PERFORMANCE REPRESENTATIONS

The FTC's Franchise Rule permits a franchisor to disclose information about the actual or potential financial performance of its franchised and/or franchisor-owned outlets, if there is a reasonable basis for the information, and the information is included in the disclosure document. Financial performance information that differs from that included in Item 19 may be given only if:  (1) a franchisor provides the actual records of an existing outlet you are considering buying; or (2) a franchisor supplements the information provided in this Item 19, for example, by providing information about performance at a particular location or under particular circumstances.

Depending on the package you select, OpenWorks is obligated to offer you a specified initial account volume ranging from $3,000 to $25,000 per month.  See the chart in Item 5.  See Item 11 for the time periods within which OpenWorks must offer accounts.  If OpenWorks does not offer you the required accounts within the fulfillment period set by your Franchise

Agreement, you are entitled to a credit or refund of a portion of your initial franchise fee if you request it in writing within 30 days after the end of the fulfillment period. The credit will reduce the amount you owe OpenWorks under any promissory note, or you will receive a cash refund. If you do not make a written request for a credit or refund within 30 days after the end of the fulfillment period, you waive your rights to a refund, but OpenWorks will remain obligated to offer you the remaining portion of the initial account volume.

The ability of OpenWorks to offer accounts and its payment of refunds during 2015 is shown on the following chart for all franchises that were sold in 2015 in the Arizona, California, Colorado, Illinois, Texas and Washington regional offices. Additionally, the following table shows the number of franchisees who were offered the required initial account volume within the fulfillment period, the number of franchisees for whom the fulfillment period deadline was not applicable, and the number of franchisees for whom the fulfillment requirement was not met during the fulfillment period. The number and percentage of franchisees in each category is portrayed as well. There were 69 franchises sold in 2015. The actual fulfillment information for 69 franchisees is stated below.

## 2015 FULFILLMENT OF INITIAL ACCOUNT VOLUME OBLIGATIONS

| | | Monthly Initial Account Volume Purchased | | | | | | Total Franchises Sold | |
| | | $3,000 | $5,000 | $7,000 | $10,000 | $15,000 | $20,000 to $25,000 | | |
| Fulfillment period (days): | | 120 | 180 | 240 | 330 | 480 | 630 to 780 | No. | % |
| REQUIREMENT MET WITHIN FULFILLMENT PERIOD | Number of franchisees offered required initial account volume within fulfillment period | 12 | 3 | 0 | 0 | 0 | 0 | 15 | 22% |
| FULFILLMENT PERIOD DEADLINE NOT APPLICABLE | Number of franchisees to whom offers ceased because of their unacceptable performance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% |
| | Number of franchisees currently in fulfillment period | 9 | 16 | 4 | 2 | 0 | 1 | 32 | 46% |
| | *Subtotals (2 rows above)* | **9** | **16** | **4** | **2** | **0** | **0** | **32** | **46%** |

| | | Monthly Initial Account Volume Purchased | | | | | | Total Franchises Sold | |
| | | $3,000 | $5,000 | $7,000 | $10,000 | $15,000 | $20,000 to $25,000 | | |
|---|---|---|---|---|---|---|---|---|---|
| REQUIREMENT NOT MET WITHIN FULFILLMENT PERIOD | Number of franchises who accepted delayed performance | 15 | 5 | 2 | 0 | 0 | 0 | 22 | 32% |
| | Number of franchises given credit or refunds | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% |
| | *Subtotals (2 rows above)* | 15 | 5 | 2 | 0 | 0 | 0 | 22 | 32% |
| Total Number of Franchises Sold: | | **36** | **24** | **6** | **2** | **0** | **1** | **69** | **100%** |

The franchisor has fulfilled this account volume for franchises in the past.   Your individual results may vary.   There is no assurance that the franchisor will be able to supply accounts as it has in the past.

Substantiation of the data used in preparing the earnings claim set out above will be made available to you upon reasonable request.   This written substantiation is available for inspection at OpenWorks' corporate headquarters.

## ITEM 20
## OUTLETS AND FRANCHISEE INFORMATION

### Systemwide Outlet Summary
### For Years 2013 to 2015

| Outlet Type | Year | Outlets at the Start of the Year | Outlets at the End of the Year | Net Change |
|---|---|---|---|---|
| Franchise | 2013 | 303 | 300 | -3 |
| | 2014 | 300 | 327 | +27 |
| | 2015 | 327 | 343 | +16 |
| Company-Owned | 2013 | 5 | 5 | 0 |
| | 2014 | 5 | 5 | 0 |
| | 2015 | 5 | 7 | +2 |
| Total Outlets | 2013 | 308 | 305 | -3 |
| | 2014 | 305 | 332 | +27 |
| | 2015 | 332 | 350 | +18 |

**Transfers of Outlets from Franchisees to New Owners**
**(Other than the Franchisor)**
**For Years 2013 to 2015**

| State | Year | Number of Transfers |
|-------|------|---------------------|
| Arizona | 2013 | 0 |
|  | 2014 | 0 |
|  | 2015 | 1 |
| California | 2013 | 1 |
|  | 2014 | 0 |
|  | 2015 | 2 |
| Illinois | 2013 | 0 |
|  | 2014 | 0 |
|  | 2015 | 1 |
| Texas | 2013 | 0 |
|  | 2014 | 0 |
|  | 2015 | 0 |
| Washington | 2013 | 3 |
|  | 2014 | 1 |
|  | 2015 | 1 |
| Totals | 2013 | 4 |
|  | 2014 | 1 |
|  | 2015 | 5 |

**Status of Franchised Outlets**
**For Years 2013 to 2015**

| State | Year | Outlets at Start of the Year | Outlets Opened | Terminations | Non-Renewals | Reacquired by Franchisor | Ceased Operations-Other Reasons | Outlets at End of the Year |
|-------|------|------------------------------|----------------|--------------|--------------|--------------------------|---------------------------------|----------------------------|
| Arizona | 2013 | 109 | 12 | 19 | 0 | 0 | 0 | 102 |
|  | 2014 | 102 | 14 | 2 | 0 | 0 | 0 | 114 |
|  | 2015 | 114 | 19 | 20 | 0 | 0 | 0 | 113 |

| State | Year | Outlets at Start of the Year | Outlets Opened | Terminations | Non-Renewals | Reacquired by Franchisor | Ceased Operations-Other Reasons | Outlets at End of the Year |
|---|---|---|---|---|---|---|---|---|
| California | 2013 | 44 | 14 | 6 | 0 | 0 | 0 | 52 |
| | 2014 | 52 | 10 | 5 | 0 | 0 | 0 | 57 |
| | 2015 | 57 | 15 | 13 | 0 | 0 | 0 | 59 |
| Colorado | 2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2015 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| Illinois | 2013 | 7 | 8 | 0 | 0 | 0 | 0 | 15 |
| | 2014 | 15 | 9 | 0 | 0 | 0 | 0 | 24 |
| | 2015 | 24 | 11 | 6 | 0 | 0 | 0 | 29 |
| Texas | 2013 | 18 | 6 | 5 | 0 | 0 | 0 | 19 |
| | 2014 | 19 | 7 | 2 | 0 | 0 | 0 | 24 |
| | 2015 | 24 | 9 | 6 | 0 | 0 | 0 | 27 |
| Washington | 2013 | 125 | 20 | 32 | 0 | 0 | 1 | 112 |
| | 2014 | 112 | 7 | 10 | 1 | 0 | 0 | 108 |
| | 2015 | 108 | 14 | 8 | 0 | 0 | 0 | 114 |
| Total Outlets | 2013 | 303 | 60 | 62 | 0 | 0 | 1 | 300 |
| | 2014 | 300 | 47 | 19 | 1 | 0 | 0 | 327 |
| | 2015 | 327 | 69 | 53 | 0 | 0 | 0 | 343 |

## Status of Company-Owned Outlets

## For Years 2013 to 2015

| State | Year | Outlets at Start of the Year | Outlets Opened | Outlets Reacquired From Franchisee | Outlets Closed | Outlets Sold to Franchisee | Outlets at End of the Year |
|---|---|---|---|---|---|---|---|
| Arizona | 2013 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2014 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2015 | 1 | 0 | 0 | 0 | 0 | 1 |
| California | 2013 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2014 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2015 | 1 | 1 | 0 | 0 | 0 | 2 |

| State | Year | Outlets at Start of the Year | Outlets Opened | Outlets Reacquired From Franchisee | Outlets Closed | Outlets Sold to Franchisee | Outlets at End of the Year |
|---|---|---|---|---|---|---|---|
| Colorado | 2013 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2014 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2015 | 0 | 1 | 0 | 0 | 0 | 1 |
| Illinois | 2013 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2014 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2015 | 1 | 0 | 0 | 0 | 0 | 1 |
| Texas | 2013 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2014 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2015 | 1 | 0 | 0 | 0 | 0 | 1 |
| Washington | 2013 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2014 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 2015 | 1 | 0 | 0 | 0 | 0 | 1 |
| Total Outlets | 2013 | 5 | 0 | 0 | 0 | 0 | 5 |
| | 2014 | 5 | 0 | 0 | 0 | 0 | 5 |
| | 2015 | 5 | 2 | 0 | 0 | 0 | 7 |

## Projected Openings as of December 31, 2015

| State | Franchise Agreements Signed But Outlet Not Opened | Projected New Franchised Outlets in the Next Fiscal Year | Projected New Company-Owned Outlets in the Next Fiscal Year |
|---|---|---|---|
| Arizona | 0 | 8 | 0 |
| California | 0 | 11 | 0 |
| Colorado | 0 | 4 | 0 |
| Florida | 0 | 3 | 1 |
| Georgia | 0 | 2 | 1 |
| Illinois | 0 | 6 | 0 |
| Texas | 0 | 6 | 0 |
| Washington | 0 | 8 | 0 |
| Totals | 0 | 48 | 2 |

A list of the names of all franchisees and the addresses and telephones numbers of their businesses are provided in Exhibit H to this Disclosure Document.

The name, city, state and current business telephone number (or if unknown, the last known home telephone number) of every franchisee who had a business terminated, cancelled, not renewed or otherwise voluntarily or involuntarily ceased to do business under the Franchise Agreement during the most recently completed fiscal year or who has not communicated with us within 10 weeks of the issuance date of this disclosure document are listed on Exhibit I to this Disclosure Document. **If you buy this franchise, your contact information may be disclosed to other buyers when you leave the franchise system.**

During the last three fiscal years, we have not had any franchisees sign confidentiality provisions that would restrict their ability to speak openly about their experience with the franchise system.

There are no trademark-specific organizations formed by our franchisees that are associated with the system which have asked to be included in this disclosure document.

## ITEM 21
## FINANCIAL STATEMENTS

Attached to this Disclosure Document in **Exhibit J** are the audited financial statements for OpenWorks for the years ended December 31, 2015, December 31, 2014 and December 31, 2013.

## ITEM 22
## CONTRACTS

Attached as Exhibits to this Disclosure Document are copies of the following agreements relating to the offer of a franchise:

| Exhibit | Name | Notes |
|---------|------|-------|
| C | Franchise Agreement and its Attachments | Each of your principals will be required to sign a personal guaranty of your obligations to OpenWorks under the Franchise Agreement.  A copy of the Personal Guaranty is Attachment 3 to the Franchise Agreement.  Any individual who owns more than 5% of you and each person who will receive initial training will be required to sign a Non-Disclosure and Non-Competition Agreement.  A copy of this Agreement is Attachment 4 to the Franchise Agreement. |
| D | Promissory Note | You must execute a promissory note if you finance your initial franchise fee, or any marketing fee. |
| E | Account Assignment Agreement | You must sign an Account Assignment Agreement for each customer account you agree to service. |
| F | Equipment Purchase Agreement | You must sign an Equipment Purchase Agreement if you purchase any additional equipment from OpenWorks. |

| Exhibit | Name | Notes |
|---------|------|-------|
| L | Renewal Amendment | If you renew your Franchise Agreement, you must sign a Renewal Amendment. |
| M | Extended Account Guarantee Agreement | You must execute an Extended Account Guarantee Agreement on each account that you purchase an extended account guarantee. |
| N | Insurance and Bond Applications | You must complete an application if you elect to participate in OpenWorks' insurance or bond program. |
| O | Background Check Release and Authorization Form | You must complete the background check form if you finance your initial franchise fee or any marketing fee. |
| P | Assignment of Franchise Rights | If you transfer your franchise, you and the transferee must execute an Assignment of Franchise Rights. There are two forms of assignment included. The form you will execute depends on whether you transfer all of your franchise rights or if you transfer only a majority of your franchise rights. |

**ITEM 23**
**RECEIPT**

Exhibit Q contains detachable documents acknowledging your receipt of this disclosure document.

**EXHIBIT A**
**STATE AGENCIES EXHIBIT**

| | |
|---|---|
| California | Commissioner of Business Oversight<br>320 W. 4th Street, Suite 750<br>Los Angeles, California  90013-2344<br>213/576-7505<br>Toll Free1- 866/275-2677<br><br>1515 K Street, Suite 200<br>Sacramento, California  95814-4052<br>916/445-7205<br>Toll Free1- 866/275-2677<br><br>1350 Front Street, Room 2034<br>San Diego, California  92101-3697<br>619/525-4233<br>Toll Free 1-866/275-2677<br><br>One Sansome Street, #600<br>San Francisco, California  94104<br>415/972-8559<br>Toll Free 1-866/275-2677 |
| Connecticut | Securities and Business Investment Division<br>Connecticut Department of Banking<br>260 Constitutional Plaza<br>Hartford, Connecticut  06103<br>860/240-8299 |
| Florida | Department of Agriculture and Consumer Services<br>Division of Consumer Services<br>2005 Apalachee Parkway<br>Tallahassee, Florida  32399-6500<br>850/488-2221 |
| Hawaii | Commissioner of Securities of the State of Hawaii<br>Hawaii Department of Commerce and Consumer Affairs<br>Business Registration Division<br>Securities Compliance Branch<br>335 Merchant Street, Room 203<br>Honolulu, Hawaii  96813<br>808/586-2722 |
| Illinois | Illinois Attorney General<br>500 South Second Street<br>Springfield, Illinois  62706<br>217/782-4465 |
| Indiana | Securities Commissioner<br>Indiana Securities Division<br>302 West Washington Street, Room E-111<br>Indianapolis, Indiana  48933<br>317/232-6681 |

| | |
|---|---|
| Iowa | Iowa Securities Bureau<br>340 E. Maple Street<br>Des Moines, Iowa  50319-0066<br>515/281-4441 |
| Maryland | Office of the Attorney General<br>Securities Division<br>200 St. Paul Place<br>Baltimore, Maryland  21202<br>410/576-6360 |
| Michigan | Franchise Administrator<br>670 Law Building<br>525 West Ottawa Street<br>Lansing, Michigan  48913<br>517/373-7117 |
| Minnesota | Deputy Commissioner<br>Minnesota Department of Commerce<br>85 7th Place East, Suite 500<br>St. Paul, Minnesota  55101-2198<br>651/539-1600 |
| Nebraska | Nebraska Department of Banking and Finance<br>Bureau of Securities/Financial Institutions Division<br>1526 K Street, Suite 300<br>Lincoln, Nebraska 68508-2732<br>P.O. Box 95006<br>Lincoln, Nebraska  68509-5006<br>402/471-2171 |
| New York | New York State Department of Law<br>120 Broadway, 23rd Floor<br>New York, New York 10271<br>212/416-8211 |
| North Dakota | North Dakota Securities Department<br>600 East Boulevard Avenue<br>State Capitol – 5th Floor<br>Bismarck, North Dakota  58505-0510<br>701/328-2910 |
| Oregon | Department of Consumer and Business Services<br>Division of Finance and Corporate Securities<br>Labor and Industries Building<br>Salem, Oregon 97310<br>503/378-4387 |

| | |
|---|---|
| Rhode Island | Associate Director and<br>Superintendent of Securities<br>Division of Securities<br>1511 Pontiac Avenue<br>John O. Pastore Complex - Building 69-1<br>Cranston, RI 02920<br>401/462-9527 |
| South Dakota | Franchise Administrator<br>The Department of Labor and Regulation<br>Division of Securities<br>124 South Euclid, Suite 104<br>Pierre, South Dakota 57501<br>605/773-4823 |
| Texas | Secretary of State<br>1019 Brazos Street [Zip 78701]<br>P. O. Box 12887<br>Austin, Texas  78711-2887<br>512/475-1769 |
| Utah | Department of Commerce<br>Division of Consumer Protection<br>160 E. 300 South<br>SM Box 146704<br>Salt Lake City, Utah  84114-6704<br>801/530-6601 |
| Virginia | State Corporation Commission<br>Division of Securities and Retail Franchising<br>1300 East Main Street<br>9th Floor<br>Richmond, Virginia  23219<br>804/371-9051 |
| Washington | Administrator<br>Department of Financial Institutions<br>Securities Division<br>150 Israel Road SW<br>P. O. Box 9033 [Zip 98501-9033]<br>Tumwater, Washington  98501<br>360/902-8760 |
| Wisconsin | Administrator<br>DFI, Division of Securities<br>345 W. Washington Avenue<br>P.O. Box 1768 [Zip 53701]<br>Madison, Wisconsin 53703<br>608/261-9555 |

# EXHIBIT B

## STATE-SPECIFIC ADDENDA

## ADDENDUM

## TO THE FRANCHISE DISCLOSURE DOCUMENT OF
## O.P.E.N. AMERICA, INC. DBA OPENWORKS
## REQUIRED BY THE STATE OF CALIFORNIA

THE CALIFORNIA FRANCHISE INVESTMENT LAW REQUIRES THAT A COPY OF ALL PROPOSED AGREEMENTS RELATING TO THE SALE OF THE FRANCHISE BE DELIVERED TOGETHER WITH THE DISCLOSURE DOCUMENT.

Section 31125 of the California Corporations Code requires us to give you a disclosure document, in a form containing the information that the commissioner may by rule or order require, before a solicitation of a proposed material modification of an existing franchise.

Item 3.  Neither the franchisor, any person or franchise broker in Item 2 of the Disclosure Document is subject to any currently effective order of any national securities association or national securities exchange, as defined in the Securities Exchange Act of 1934, 15 U.S.C.A. 78a et seq., suspending or expelling these persons from membership in this association or exchange.

Item 5.  All initial fees and costs, including fees or costs related to any services rendered, any equipment and/or inventory delivered or any other costs related to the franchise, will be deposited into an escrow account at Wells Fargo Bank until OpenWorks' pre-opening obligations to you are complete and you begin operating the business.  OpenWorks' pre-opening obligations consist of providing training, a starter equipment and supply kit and the Operation and Safety Manual.  You must sign a statement after OpenWorks completes these obligations and you begin operations.

Item 7.  The initial fee or the down payment portion of the initial fee and the background check fee deposited in an escrow account at Wells Fargo Bank and released when OpenWorks has completed its pre-opening obligations to you and you begin operations.

Item 10.  OpenWorks will comply with all appropriate laws governing any direct financing offered by us to you, including, if applicable, the California Finance Lenders Law.

Item 11.  OpenWorks is dedicated to collecting amounts due on the cleaning services you provide.  It closely monitors the billing and collection process and, if necessary it may utilize collection agencies and attorneys

California Business and Professions Code Sections 20000 through 20043 provide rights to the franchisee concerning termination, transfer or non-renewal of a franchise.  If the franchise agreement contains a provision that is inconsistent with the law, the law will control.

The franchise agreement provides for termination upon bankruptcy.  This provision may not be enforceable under federal bankruptcy law (11 U.S.C.A. Sec. 101 et seq.).

The franchise agreement contains a covenant not to compete which extends beyond the termination of the franchise.  This provision may not be enforceable under California law.

The franchise agreement requires binding arbitration.  The arbitration will occur at Phoenix, Arizona with the costs being borne by the party against whom the arbitrator renders a decision.  Prospective franchisees are encouraged to consult private legal counsel to determine the applicability of California and federal laws (such as Business and Professions Code Section 20040.5, Code of Civil Procedure Section 1281, and the Federal Arbitration act) to any provisions of a franchise agreement restricting venue to a forum outside the State of California.

The franchise agreement requires application of the laws of Arizona.  This provision may not be enforceable under California law.

OUR WEBSITE HAS NOT BEEN REVIEWED OR APPROVED BY THE CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT.  ANY COMPLAINTS CONCERNING THE CONTENT OF THIS WEBSITE MAY BE DIRECTED TO THE CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT AT www.dbo.ca.gov.

The provisions of this Addendum only apply if the jurisdictional requirements of the California Franchise Investment Law are met independently without reference to this Addendum and to the extent they are then valid requirements of the statute.

**ADDENDUM**

**TO THE FRANCHISE DISCLOSURE DOCUMENT OF**
**O.P.E.N. AMERICA, INC. DBA OPENWORKS**
**REQUIRED BY THE STATE OF ILLINOIS**

1.      The conditions under which your franchise can be terminated and your rights upon non-renewal may be affected by Illinois law, 815 ILCS 705/19 and 705/20.

2.      <u>Cover Page</u>.  Risk factor 1 indicates that local law may supersede the Franchise Agreement.  As noted in Paragraph 3 below, the Illinois law does supersede the Franchise Agreement and applies to Illinois franchisees.

3.      <u>Item 17</u>.  The following language is added to Items 17v and 17w:  "Provided that Illinois law will govern franchises granted to residents of Illinois and franchises located in the State of Illinois when the offer was made or accepted in Illinois."

4.      <u>Item 17v</u>.  Illinois law provides that any provision in a franchise agreement that designates jurisdiction or venue in a forum outside of Illinois is void provided that a franchise agreement may provide for arbitration in a forum outside of Illinois.

The provisions of this Addendum only apply if the jurisdictional requirements of the Illinois Franchise Disclosure Act are met independently without reference to this Addendum and to the extent they are then valid requirements of the statute.

**ADDENDUM**

## TO THE FRANCHISE DISCLOSURE DOCUMENT OF
## O.P.E.N. AMERICA, INC. DBA OPENWORKS
## REQUIRED BY THE STATE OF WASHINGTON

The state of Washington has a statute, RCW 19.100.180 which may supersede the franchise agreement in your relationship with the franchisor including the areas of termination and renewal of your franchise.  There may also be court decisions which may supersede the franchise agreement in your relationship with the franchisor including the areas of termination and renewal of your franchise. In any arbitration involving a franchise purchased in Washington, the arbitration site shall be either in the state of Washington, or in a place mutually agreed upon at the time of the arbitration, or as determined by the arbitrator.

In the event of a conflict of laws, the provisions of the Washington Franchise Investment Protection Act, Chapter 19.100 RCW shall prevail.

A release or waiver of rights executed by a franchisee shall not include rights under the Washington Franchise Investment Protection Act except when executed pursuant to a negotiated settlement after the agreement is in effect and where the parties are represented by independent counsel.  Provisions such as those which unreasonably restrict or limit the statute of limitations period for claims under the Act, rights or remedies under the Act such as a right to a jury trial may not be enforceable.

Transfer fees are collectable to the extent they reflect the franchisor's reasonable estimated or actual costs in effecting a transfer.

In any arbitration involving a franchise purchased in Washington, the arbitration site shall be either in the state of Washington, or in a place mutually agreed upon at the time of the arbitration, or as determined by the arbitrator.

The provisions of this Addendum only apply if the jurisdictional requirements of the Washington Franchise Investment Protection Act are met independently without reference to this Addendum and to the extent they are then valid requirements of the statute.

The undersigned does hereby acknowledge receipt of this Addendum.

Dated this _____ day of _____, 20__.

**FRANCHISOR:**                                    **PROSPECTIVE FRANCHISEE:**

**O.P.E.N. America, Inc.**                         _____

By:_____                       By:_____

Title:_____                      Title:_____

# EXHIBIT C
# OPENWORKS

## JANITORIAL FRANCHISE AGREEMENT

# TABLE OF CONTENTS

**Section**                                                                                                      **Page**

1. PARTIES ............................................................................................................................... 1

2. RECITALS ............................................................................................................................ 2

   2.1 Ownership of System ................................................................................................ 2

   2.2 Definition of Reasonable Business Judgment ........................................................... 2

   2.3 Nature of OpenWorks' Business ............................................................................... 2

   2.4 Objectives of Parties ................................................................................................. 2

3. DEFINITIONS ...................................................................................................................... 2

4. GRANT OF FRANCHISE ................................................................................................... 5

   4.1 Granting Clause ........................................................................................................ 5

   4.2 Term and Renewal .................................................................................................... 5

5. SERVICES TO YOU ............................................................................................................ 6

   5.1 Training ..................................................................................................................... 6

   5.2 Offering Accounts ..................................................................................................... 6

   5.3 Starter Kit .................................................................................................................. 9

   5.4 Billing, Collection and Payment ............................................................................. 10

   5.5 Consultation ............................................................................................................ 10

   5.6 Manual ..................................................................................................................... 10

   5.7 Advertising .............................................................................................................. 11

   5.8 Suggested Suppliers ................................................................................................ 12

6. PAYMENTS BY YOU ....................................................................................................... 12

   6.1 Initial Fee ................................................................................................................ 12

   6.2 Royalties .................................................................................................................. 13

   6.3 Special Project Fees ................................................................................................ 13

   6.4 Advertising Fund Contributions .............................................................................. 13

   6.5 Payment of Royalties and Advertising Fund Contributions ................................... 14

   6.6 Inspection of Records ............................................................................................. 14

   6.7 OpenWorks' Right to Audit Your Records ............................................................ 14

   6.8 Marketing Fee ......................................................................................................... 14

   6.9 Extended Account Guarantee Fee ........................................................................... 16

   6.10 Account Transfer Fee and Franchise Transfer Fee ................................................. 16

   6.11 Interest on Late Payments ....................................................................................... 16

   6.12 Account Charges ..................................................................................................... 16

   6.13 Cancellation Charges .............................................................................................. 16

i

| 6.14 | Minimum Account Service Fee | 17 |
| 6.15 | Background Check Fee | 17 |
| 6.16 | Document Preparation Fee | 17 |
| 6.17 | Manual Check Fee | 17 |
| 6.18 | Equipment and Supplies | 17 |
| 6.19 | Trouble Call Fee | 17 |
| 6.20 | Lost Document Fee | 17 |
| 6.21 | Legal Entity Fee | 17 |
| 7. | YOUR OBLIGATIONS | 18 |
| 7.1 | Use of Trade Name and Marks | 18 |
| 7.2 | Quality Control | 19 |
| 7.3 | Insurance and Bond | 22 |
| 7.4 | Financial and Legal Responsibility | 23 |
| 7.5 | Pre-Existing Accounts | 23 |
| 7.6 | Variances | 23 |
| 7.7 | Computer System | 24 |
| 7.8 | Certificate of Tax Compliance | 24 |
| 8. | RELATIONSHIP OF PARTIES | 24 |
| 8.1 | Interest in Marks and System | 24 |
| 8.2 | Independent Status | 24 |
| 8.3 | Display of Disclaimer | 24 |
| 8.4 | Indemnification | 24 |
| 8.5 | Confidential Information | 24 |
| 8.6 | Noncompetition | 25 |
| 8.7 | Non-Solicitation | 26 |
| 8.8 | Modification | 26 |
| 8.9 | Lack of Prior Conflict | 26 |
| 8.10 | Notification | 27 |
| 8.11 | Tolling of Time Periods | 27 |
| 8.12 | Non-Disclosure and Non-Competition Agreements | 27 |
| 9. | TRANSFER | 27 |
| 9.1 | Purpose of Conditions for Approval of Transfer | 27 |
| 9.2 | Notice of Proposed Transfer | 27 |
| 9.3 | Consent by OpenWorks | 27 |
| 9.4 | Conditions for Consent to Transfer | 28 |

ii

9.5 Waivers of Some Conditions Upon Certain Types of Transfers ..................................... 29

9.6 OpenWorks' Right of First Refusal ...................................................................... 30

9.7 Assignment by OpenWorks ................................................................................. 30

9.8 Legend ............................................................................................................. 30

10. TERMINATION OF FRANCHISE .............................................................................. 30

10.1 Termination by Consent of the Parties ............................................................... 30

10.2 Termination by OpenWorks .............................................................................. 30

10.3 Termination by You ......................................................................................... 32

10.4 Rights and Obligations After Termination ........................................................... 32

11. MISCELLANEOUS PROVISIONS ............................................................................ 33

11.1 Construction of Contract .................................................................................. 33

11.2 Governing Law ............................................................................................... 33

11.3 Notices .......................................................................................................... 33

11.4 Amendments ................................................................................................... 33

11.5 Waiver ........................................................................................................... 34

11.6 Integration ..................................................................................................... 34

11.7 Modification ................................................................................................... 34

11.8 Arbitration ..................................................................................................... 34

11.9 Injunctive Remedy for Breach .......................................................................... 35

11.10 Limitation of Actions ..................................................................................... 35

11.11 Attorneys' Fees and Costs .............................................................................. 36

11.12 Severability ................................................................................................... 36

11.13 Approval and Guarantees ................................................................................ 36

11.14 Acceptance by OpenWorks ............................................................................. 36

11.15 Indulgences, Not Waivers ............................................................................... 36

11.16 Execution in Counterparts ............................................................................... 36

11.17 Time of Essence ............................................................................................ 36

11.18 Franchisor Limited Liability ........................................................................... 36

11.19 Disclaimer of Representations ......................................................................... 38

ATTACHMENTS
Attachment 1:     Business Starter Packages
Attachment 2:     Terms
Attachment 3:     Personal Guaranty
Attachment 4:     Non-Disclosure and Non-Competition Agreement
Attachment 5:     Trademarks
Attachment 6:     Spousal Consent
Attachment 7:     Illinois Addendum

iv

## INDEX OF DEFINED TERMS

| Term | Section of Agreement Where Defined |
|---|---|
| Account Assignment Agreement | 5.2.5 |
| Account | 3.1 |
| Account Volume | 3.2 |
| Additional Account Volume | 3.4 |
| Additional Accounts | 5.2.2 |
| Advertising Fund | 5.7.1 |
| AdVol | 5.2.2 |
| Affiliate | 3.5 |
| Agreement | 3.6, Attachments 3 & 4 |
| Area | 8.6.4, Attachment 4 |
| Claim | 11.8 |
| Competitive Business | 8.6.3, Attachment 4 |
| Confidential Information | 3.7, Attachment 4 |
| Counterclaim | 11.8.4 |
| Designated Manager | 3.8 |
| Effective Date | 3.9 |
| Existing Account | 7.5 |
| Fluent in English | 7.2.12 |
| Franchisee | 1, Attachments 3 & 4 |
| Franchise Network | 3.11 |
| Franchise Package | 3.12 |
| Good Standing | 3.13 |
| Gross Revenue | 3.14 |
| Inactive Month | 6.14 |
| Initial Notice | 11.8.1 |
| Initial Resolution | 11.8.2 |
| Initiator | 11.8.1 |
| Janitorial Service | 3.15 |
| Maintenance Agreements | 3.16 |
| Manual | 3.17 |
| Marks | 3.18 |
| Minimum Account Service Fee | 6.14 |
| OpenWorks | 1, 3.20 and Attachment 3 |
| Purchase Contract | 5.2.2 |
| Reasonable Business Judgment | 2.2 |
| Required Transfer | 1 |
| Respondent | 11.8.1 |
| Response | 11.8.3 |
| Second Notice | 11.8.3a |
| Second Resolution | 11.8.3a |
| Special Project Fee | 6.3 |
| Substantial Interest | 3.5 |
| System | 3.22 |
| Termination | 3.23 |
| Territory | 3.24 |
| Time Period | 8.6.2, Attachment 4 |
| Trade Names | 3.25 |
| Transfer | 3.26 |
| You | 1, 3.27 |

v

## OPENWORKS FRANCHISE AGREEMENT

### 1.  PARTIES

      This Agreement is signed on _____, 20__, ("**Effective Date**") by and between O.P.E.N. America, Inc., an Arizona corporation doing business as OpenWorks ("**OpenWorks**"), with its principal office located at 4742 North 24th Street, Suite 450, Phoenix, Arizona 85016, and

_____,
hereinafter referred to singularly or collectively as "**You**" or "**Franchisee**," a:

[   ]  Corporation,   [   ]  Limited Liability Company, under the laws of the State of _____. If you are an individual, you agree to Transfer all of your rights and obligations under this Agreement to a legal entity of which you beneficially own 100% of the equity within 90 days after the Effective Date (the "**Required Transfer**"). If you fail to complete the Required Transfer within 90 days of the Effective Date, you agree to pay OpenWorks a fee of $500 per month until such Required Transfer is complete as required by <u>Section 6.21</u>.

### Address, Telephone, Social Security # and/or Federal Tax I.D.:

      The information below is to be completed for you, if you are an individual, or for each individual partner of the partnership, or for each shareholder of the corporation, or for each member of the limited liability company, as indicated above. You are required to maintain an active telephone number and e-mail address and to notify OpenWorks of any changes. The Franchisee represents that the following information is true and complete:

| <u>Name</u> | <u>Residential  Address</u> | <u>Telephone</u> | <u>E-Mail</u> | <u>Federal Tax ID or Social Security #</u> |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Federal Tax I.D. if a partnership, corporation or limited liability company:**
**Designated Manager Name:** _____.

### FRANCHISE  SUMMARY

**Franchise Package:**                                **Down Payment: $**

**Territory:**                                    **Amount Financed:  $_____  (Interest 12%)**

**Initial Monthly Account Volume:**           **Terms (months):**

**Fulfillment Period (Days):**                  **Monthly Installments: $**

**Date Franchisee received UFDD (should be same date as on Receipt page):**

**Date of Franchisee first personal meeting with OpenWorks rep to discuss purchase of franchise:**

**Date Franchisee received complete executable copy of Franchise Agreement:**

1

**Date Franchisee signed this Agreement:**

**Date Franchisee delivered any down payment, deposit or other payment:**

**2.     RECITALS**

**2.1     Ownership of System.**  OpenWorks is the owner of certain intellectual property rights, including its Trade Names and the Marks, the distinctiveness and value of which you acknowledge. OpenWorks has spent a considerable amount of time, effort and money to devise, and continues to develop, business methods, technical knowledge and marketing concepts including, but not limited to, trade secrets, commercial ideas, advertising materials, marketing strategies, information on sources of supply, administrative procedures, business forms, and employee training techniques that, taken together, comprise a proprietary System for the operation of Janitorial Services that offer commercial janitorial and other facility services to Accounts pursuant to Maintenance Agreements, all of which are designed to enhance the reputation and goodwill with the public of the services offered pursuant to the System. OpenWorks may, from time to time, add to, amend, modify, delete or enhance any portion of the System (including any of the Trade Names and Marks) as may be necessary in OpenWorks' Reasonable Business Judgment (as defined below) to change, maintain or enhance the System, TradeNames, Marks or reputation, efficiency, competitiveness and/or quality of the System, or to adapt it to new conditions, materials or technology, or to better serve the public.  You will fully comply, at your own expense, with all such additions or modifications reasonably designated as applicable to then existing franchise owners similarly situated.

**2.2     Definition of Reasonable Business Judgment**.  OpenWorks agrees to use "Reasonable Business Judgment" in the exercise of its rights, obligations and discretion under this Agreement except where otherwise indicated in this Agreement.  "Reasonable Business Judgment" means that OpenWorks' determination shall prevail even in cases where other alternatives are also reasonable so long as OpenWorks is intending to benefit or is acting in a way that could benefit the System by enhancing the value of the Marks, increasing customer satisfaction, or minimizing possible customer brand or location confusion.  OpenWorks shall not be required to consider your particular economic or other circumstances when exercising its Reasonable Business Judgment.  At no time are you or any third party (including, but not limited to any third party acting as a trier of fact) entitled to substitute your or its judgment for a judgment that has been made by or on behalf of OpenWorks and that meets the definition of Reasonable Business Judgment in recognition of the fact that the long-term goals of a franchised system, and the long-term interests of both OpenWorks and all franchise owners, taken together, require that OpenWorks have the latitude to exercise Reasonable Business Judgment.

**2.3     Nature of OpenWorks' Business**.  OpenWorks is in the business of franchising other parties to operate businesses using OpenWorks' Trade Names, Marks and System.

**2.4     Objectives of Parties**.  OpenWorks wishes to grant you and you wish to accept from OpenWorks a franchise to engage in the Janitorial Services described in this Agreement, using the Trade Names, Marks and System, upon the terms and conditions set forth in this Agreement.

**3.     DEFINITIONS**.  For purposes of this Agreement, when any of the following terms begin with capital letters, their meanings are as defined in this Article 3 or elsewhere in this Agreement where the term appears in bold type and quotation marks:

**3.1     "Account"** means a customer who has entered into a Maintenance Agreement with OpenWorks for the performance of janitorial and/or other facility services at the customer's premises.

2

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0124**

**3.2** "**Account Volume**" means the gross dollar volume per month that should be generated by the Accounts assigned to you by OpenWorks.

**3.3** "**Additional Accounts**" has the meaning ascribed to it in <u>Section 5.2.2</u>.

**3.4** "**Additional Account Volume**" means the gross dollar volume per month that should be generated by the Additional Accounts that you purchased the rights to service from OpenWorks.

**3.5** "**Affiliate**" means people and companies associated with OpenWorks or you, as the context indicates, including, but not limited to, spouses, members of your household, owners, general partners, limited partners owning a Substantial Interest in OpenWorks or you, shareholders owning a Substantial Interest in OpenWorks or you, corporations in which OpenWorks or you have a Substantial Interest, corporations in which any person or entity owning a Substantial Interest in you also has a Substantial Interest, or officers, directors, employees or agents of OpenWorks or you.  As used in this paragraph, the phrase "**Substantial Interest**" means the right to 10% or more of the capital or earnings of a partnership or limited liability company, or alternatively, ownership of 10% or more of the voting stock of a corporation.

**3.6** "**Agreement**" means this Franchise Agreement, together with its attachments and all amendments hereto.

**3.7** "**Confidential Information**" means proprietary and/or confidential information and trade secrets of OpenWorks and the System, including without limitation training materials, programs, methods, techniques, specifications, standards, systems, procedures, sales and marketing programs and strategies, manuals, financial data, knowledge of specifications for and suppliers of equipment, supplies and services, bidding, pricing and billing methods, existing and prospective customer lists and information about them and their service contracts, at any time existing or under consideration, for the operation of OpenWorks regional offices and commercial janitorial and other facility service businesses.

**3.8** "**Designated Manager**" means the specific individual who will be responsible for the day-to-day management of the Janitorial Services.

**3.9** "**Effective Date**" means the date of the Agreement as set forth in <u>Article 1</u>.

**3.10** "**Fluent in English**" has the meaning ascribed to it in <u>Section 7.2.12</u>.

**3.11** "**Franchise Network**" means the interdependent network composed of OpenWorks, all OpenWorks franchisees, OpenWorks' Affiliates, and any other people or business entities that it has licensed to use the Trade Names, Marks, System or any of them.

**3.12** "**Franchise Package**" means one of four different programs offered by OpenWorks, each generating a different amount of Initial Account Volume.

**3.13** "**Good Standing**" means timely compliance by you and your Affiliates with all provisions of this Agreement, the Manual and any other agreement with OpenWorks, specifically including, but not limited to, provisions for timely payment of amounts owed by you to OpenWorks or its Affiliates and for any Account's satisfaction with your Janitorial Service.

**3.14** "**Gross Revenue**" means the total amount of money received by OpenWorks and its Affiliates or you or your Affiliates from Accounts for all services rendered by you or your Affiliates within an accounting period.

3

**3.15**    "**Janitorial Service**" means the business of providing commercial janitorial and other facility services that OpenWorks has authorized you to conduct under the Trade Names, Marks and System pursuant to this Agreement.

**3.16**    "**Maintenance Agreements**" means written contracts between OpenWorks and customers for the provision of commercial janitorial and other facility services at the customer premises.

**3.17**    "**Manual**" means the Operations Manual, instructions and other correspondence that OpenWorks will lend or communicate to you during the term of this Agreement, covering the operation of the franchised business, as each may be amended and/or supplemented from time to time. The Manual contains forms and requirements for the establishment, promotion and operation of a Janitorial Service and for use of OpenWorks' Trade Name and Marks.

**3.18**    "**Marks**" means the word mark "OpenWorks," the design mark "OpenWorks and design," and other selected trademarks, service marks, trade dress, logotypes, slogans and other commercial symbols licensed by OpenWorks to you under this Agreement from time to time. A list of additional trademarks is included as Attachment 5 to this Agreement.

**3.19**    "**Franchise Disclosure Document**" means the Uniform Franchise Disclosure Document to which this Agreement was attached and which was previously or contemporaneously provided to you.

**3.20**    "**OpenWorks**" means O.P.E.N. America, Inc., an Arizona corporation, or any person or entity to which OpenWorks allocates all or part of its rights and obligations under this Agreement.

**3.21**    "**Purchase Contract**" has the meaning set forth in Section 5.2.2.

**3.22**    "**System**" means the Confidential Information, and the other business methods, technical knowledge and marketing concepts licensed by OpenWorks to you under this Agreement, including, but not limited to, the right to use OpenWorks' processes, purchasing arrangements, commercial ideas, advertising materials, information on sources of supply, administrative procedures and business forms.

**3.23**    "**Termination**" means the expiration and non-renewal of this Agreement, the early termination of this Agreement under any circumstances, and the cessation of your rights to use the Trade Names, Marks and System.

**3.24**    "**Territory**" means the geographic boundaries of the county as identified in Article 1, within which you will operate your Janitorial Service.

**3.25**    "**Trade Names**" means the commercial names "OpenWorks," "OpenWorks of [name of state or other geographic designation]," and other selected trade names licensed by OpenWorks to you under this Agreement from time to time.

**3.26**    "**Transfer**" means any sale, gift, or other change in ownership of all or any part of the rights and obligations of this Agreement or of all or substantially all of the assets of the Janitorial Service (including without limitation, Accounts), or of an ownership interest in you (if you are a corporation or other legal entity) of a magnitude at least as great as that described in this Section. If you are a partnership or limited liability company, then one or more transactions (regardless of whether or not they are related) in which there is a cumulative change in the rights to 34% or more of your capital, profits, or distributions of profits will be considered to be a Transfer. If you are a corporation, then one or more transactions (regardless of whether or not they are related) in which there is a cumulative change in beneficial ownership of 34% or more of your voting stock will be considered to be a Transfer.

4

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0126**

3.27   **"You"** means the person or entity that is named as you in <u>Article 1</u> of this Agreement and your Designated Manager, as the context requires.  "You" means, in addition, all people or entities that succeed to the interest of the original you by Transfer or operation of law.

## 4.   GRANT OF FRANCHISE.

### 4.1   Granting Clause.

4.1.1   **Non-exclusive Territory.** Subject to all the terms and conditions set forth in this Agreement, OpenWorks grants to you and you accept from OpenWorks a non-exclusive franchise to operate the Janitorial Service described in this Agreement solely within the Territory using the Trade Names, Marks and System in accordance with the terms of this Agreement.  OpenWorks reserves all rights in the Trade Names, Marks and System not expressly granted in this Agreement.  Your right to operate within the Territory is not exclusive.  Other franchisees may compete there as there may be multiple franchisees in a territory.  OpenWorks may compete with you in your Territory, including through alternative methods of distribution.  You may, and OpenWorks encourages you to, solicit new business within your Territory, but may not solicit business from existing OpenWorks customers or prospects where an active OpenWorks or other franchisee bid (within the previous six (6) months) exists.  OpenWorks will not bid against you itself.  You may only solicit business within your Territory and only from prospects with their principal place of business located within your Territory.  You may not service prospects located outside of your Territory, even if you did not solicit the business.  OpenWorks reserves the right to compete with you under other tradenames or trademarks and offer services that are similar or complimentary to those provided by your franchise.

4.1.2   **Additional Accounts.**  You will not have an option to purchase additional franchises.  However, you may request that OpenWorks provide you with additional accounts to be serviced under your existing franchise for a marketing fee.  Such approval will be made in OpenWorks' sole discretion.  To purchase additional accounts, you must execute an amendment to this Agreement, and if you finance the marketing fee, you must execute a promissory note.

### 4.2   Term and Renewal.

4.2.1   **Initial Term.**  The initial term of the franchise will begin on the Effective Date and will continue for a period of ten years unless terminated earlier pursuant to <u>Article 10</u>.

4.2.2   **Renewal.**  You will have the right to renew the franchise for your Janitorial Service for two additional ten year terms on the same terms and conditions as those on which OpenWorks is customarily granting new franchises at the time of renewal, if at the time of each renewal the following conditions are fulfilled:

(a)   You and your Affiliates are in Good Standing under this Agreement, any other agreement between OpenWorks or its Affiliates and you, and the Manual;

(b)   You have notified OpenWorks in writing at least 180 days before the expiration date of the then current agreement of your desire to renew;

(c)   You and any Affiliates that have signed this Agreement have signed a copy of the new franchise agreement not less than 30 days prior to the expiration of the then current agreement or 150 days after you receive a copy of the new Franchise Agreement from OpenWorks, whichever is later; and

5

(d)     You and any Affiliates that are parties to this Agreement have signed a general release of claims in a form satisfactory to OpenWorks with respect to past dealings with OpenWorks and its Affiliates.

You understand that the terms of the standard franchise agreement in use by OpenWorks at the times of renewal may contain materially different terms than those contained in this Agreement, including, but not limited to (i) increased royalties and Advertising Fund contributions, (ii) different performance standards and (iii) execution of a general release in a form satisfactory to OpenWorks of any and all claims against OpenWorks or its Affiliates.

**5.     SERVICES TO YOU**.  OpenWorks agrees to perform the following services for you, at locations selected by OpenWorks, provided that you are, at the time when service is to be rendered, in Good Standing under this Agreement, any other agreement with OpenWorks or its Affiliates, and the Manual:

**5.1     Training**.

**5.1.1     Initial Training**.  Before the opening of your Janitorial Service business, OpenWorks will conduct an initial training program in the operation of the Janitorial Service under OpenWorks' System for you and any of your employees who wish to attend at the same time, at no charge to you.  You must attend and successfully complete the initial training program to the satisfaction of OpenWorks, as evidenced by a Certificate of Completion of Initial Training awarded by OpenWorks, before you may start operating your Franchise.  The initial training program is offered once a month.  You must complete the program within 45 days of signing your Franchise Agreement.  Any Designated Manager of your Janitorial Service business must also attend and successfully complete the initial training program to the satisfaction of OpenWorks.  OpenWorks will charge you a fee for any initial training provided to anyone after the first initial training program.

**5.1.2     Continuing Education**.  OpenWorks may offer continuing education programs on matters related to the operation or promotion of the Janitorial Service on an optional or mandatory basis, as it considers appropriate.  OpenWorks may charge you up to $150 per class for these programs.  OpenWorks reserves the right to adjust this fee at any time in OpenWorks discretion.

**5.2     Offering Accounts**.

**5.2.1     Initial Accounts**.  After you have successfully completed the initial training, signed OpenWorks' Certificate of Completion of Initial Training, picked up your equipment, delivered a copy of your business license and entity/organizational documents, and paid the initial franchise fee, OpenWorks will offer you the initial Account Volume promised in Section 6.1 of this Agreement within the fulfillment period for the Franchise Package you purchase.  OpenWorks will contact you by the method it chooses (e.g., by telephone or e-mail) and give you a certain amount of time to accept or refuse the Account.  If you do not respond during that time period, you will be deemed to have refused the Account.  OpenWorks' fulfillment periods are as follows for each Franchise Package:

| Package | Initial Monthly Account Volume | Fulfillment Period (Days) |
|---|---|---|
| OW 3 | 3,000 | 120 |
| OW 5 | 5,000 | 180 |
| OW 7 | 7,000 | 240 |

6

| Package | Initial Monthly Account Volume | Fulfillment Period (Days) |
|---------|-------------------------------|---------------------------|
| OW 10 | 10,000 | 330 |
| OW 15 | 15,000 | 480 |
| OW 20 | 20,000 | 630 |
| OW 25 | 25,000 | 780 |

If you and OpenWorks agree to an initial monthly account volume greater than $25,000, the additional account volume will be offered in increments of 5,000 and increments of 150 days in the fulfillment period.

If OpenWorks does not offer Accounts having the promised initial Account Volume within the required fulfillment period, you will be entitled upon written request to a refund of a portion of your initial franchise fee, as described in <u>Section 6.1</u> of this Agreement. Such a refund will fulfill OpenWorks' obligation to offer the remaining portion of the initial Account Volume. If you do not make a written request for a refund within 30 days after the end of the fulfillment period, you will be deemed to have waived your right to a refund, but OpenWorks will remain obligated to offer you the remaining portion of the initial Account Volume for the franchise package you selected.

If, during the fulfillment period, you commit any default that would justify termination of an Account or of this Agreement (including but not limited to the performance and noncompliance issues set forth in the Account Satisfaction provisions at <u>Section 7.2.5</u>) OpenWorks may, at its option, suspend the fulfillment period until the default is cured instead of terminating your service to an Account or terminating this Agreement. If it appears, in OpenWorks' Reasonable Business Judgment, that you cannot or will not cure the default, OpenWorks may require you to repeat the initial training course. OpenWorks' fulfillment obligations to you are suspended until you successfully complete training. If you fail to successfully complete the initial training course during your original fulfillment period, then OpenWorks' fulfillment obligations to you will cease. Once you have cured the default or have successfully completed retraining course within the required time frame, the prior fulfillment period will be cancelled and a new fulfillment period will begin to run.

   **5.2.2   Additional Accounts**. You will not have the option to purchase additional franchises. However, you may request Additional Accounts from OpenWorks. "**Additional Accounts**" are new Accounts, or an increase in the dollar Account Volume of an existing Account you are already servicing (through increased occupancy, additional services, or for any other reason), offered to you by OpenWorks over and above the Initial Account Volume ("**AdVol**"), under any of the following scenarios:

   (a)      You may request OpenWorks to provide you with Additional Accounts;

   (b)      OpenWorks may offer Additional Accounts to you on its own;

   (c)      OpenWorks, in conjunction with a proposed increase in an Account you are servicing, will require you to purchase an increase in the dollar Account Volume of that Account, and OpenWorks will assess a Marketing Fee (as defined in <u>Section 6.8</u>) from you that is based on the increase; or

   (d)      OpenWorks, in conjunction with assigning an Account to you under a previous obligation (Purchase Contract or replacement Account), will require you to purchase the overage if the acceptance of that Account would cause the gross dollar volume under that Purchase Contract to exceed the contract amount.

7

In each of these cases, you are required to execute an amendment to the Franchise Agreement (a "**Purchase Contract**"), signifying the purchase of the right to service one or more Additional Accounts, and to pay the appropriate Marketing Fee as provided in Section 6.8.1 of this Agreement. You are deemed to have accepted the AdVol after you have serviced the account three times, regardless of when the Purchase Contract is executed and after the third service time OpenWorks will impose any applicable Marketing Fee as of the date that you first serviced the account. OpenWorks may have outstanding obligations to offer you Accounts under more than one Purchase Contract at a time. Assignment of a given Account, if of sufficient monthly billing magnitude, may help to fulfill OpenWorks' obligations to offer you Accounts under more than one Purchase Contract.

You agree that OpenWorks is under no obligation to provide you with Additional Accounts and may do so solely at its own discretion.

      **5.2.3    Trial Period**. You may refuse up to three separate new Accounts from the initial Account Volume offered (whether offered telephonically or otherwise and whether or not accompanied by an actual assignment) by OpenWorks for any reason whatsoever during the term of this Agreement. However, each refusal of an offered Account (whether offered telephonically or otherwise and whether or not accompanied by an actual assignment) from the initial Account Volume will extend the fulfillment period by an additional 30 days. After three refusals (whether orally or in writing), any Account offer from the initial Account Volume, that is initially refused by you or to which you discontinue services after accepting an Account will reduce the Account Volume OpenWorks is obligated to offer you by the amount of the Account offered and will also, at OpenWorks' sole discretion, extend the fulfillment period by an additional 30 days.

You have a trial period of 30 days from the date that service under the Maintenance Agreement for the Account is scheduled to commence to refuse an Account. Your refusal of any Account (whether orally or in writing) will not relieve you of any payment obligations to OpenWorks, including without limitation your obligations under promissory notes for installments of your initial franchise fee or any Marketing Fee. OpenWorks must actually receive a notice of refusal (whether orally or in writing) within the 30-day period in order for it to be effective. If you fail to give a notice of refusal, or if OpenWorks does not actually receive it within the 30-day period, you will have waived your right to refuse the Account. You will lose your right to refuse an Account if at any time that you are obligated to service the Account you fail to do so in accordance with the Maintenance Agreement, work schedule, and the Manual.

If you refuse an offered Account during the 30-day trial period, OpenWorks will use commercially reasonable efforts to locate another franchisee to service the Account. **You must continue servicing the Account in good faith until the earlier of (i) the commencement of services by another franchisee, or (ii) 30 days after OpenWorks actually received your notice refusing the Account.**

      **5.2.4    Replacement of Accounts**. If any of OpenWorks' initial Accounts terminate their Maintenance Agreements within one year after the Maintenance Agreements commence, OpenWorks will offer you replacement Accounts within 150 days, subject to the conditions set out in this Section. If any of your Additional Accounts terminate their Maintenance Agreements within six months after their Maintenance Agreements commence, OpenWorks will offer you replacement Accounts within 150 days, subject to the conditions set out in this Section. The foregoing guarantees do not apply to Accounts that are terminated as a result of any wrongful act, omission, negligence or nonprofessional interaction with the Account by you or your agents or Affiliates, including but not limited to, theft or breakage of property, failure to reset security alarm systems, duplication of Account keys, being argumentative with the Account and violations of Section 7.2.5 of this Agreement pertaining to an Account's satisfaction with your Janitorial Service. OpenWorks is not obligated to replace any Account lost by you because of the Account's dissatisfaction or request that service be provided by another

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0130**

franchisee.  OpenWorks may act in its sole discretion in determining if the Account has been terminated due to your or your agents' or Affiliates' wrongful act, omission, negligence or nonprofessional interaction with an Account or the Account's dissatisfaction.  OpenWorks is not obligated to replace replacement Accounts.

Replacement Account(s) will be the same or a greater monthly billing magnitude as the Account(s) they replace.  If the monthly billing volume of the replacement Account(s) is greater than the terminated Account(s), OpenWorks may assess a Marketing Fee from you that is based on the overage.

**5.2.5    Account Assignment Agreement**.  Each assignment to you of a new Account or an increase in an existing Account, beginning with the assignments of Accounts to fulfill your Initial Account Volume, will be made pursuant to a separate Agreement for Account Assignment or Increase (an "**Account Assignment Agreement**"), which will have its own date, Account information, and if applicable, Marketing Fee.  By accepting the new Account or increase in an existing Account and performing services, you agree to all of the applicable terms set forth in this Agreement and in each Account Assignment Agreement as of the date of acceptance, regardless of the date of which you sign the Account Assignment Agreement, which are hereby incorporated herein by reference, including without limitation, the following:

(a)    You acknowledge receiving a copy of the Maintenance Agreement and work schedule for the assigned Account.

(b)    You agree to service the Account and comply strictly with the terms of the Maintenance Agreement and work schedule for the assigned Account, all according to the Manual and the standards, procedures and policies established by OpenWorks from time to time.

(c)    You certify that you have sufficient resources to service the assigned Account, including working capital to purchase all needed supplies and equipment, and to meet all expected payrolls for the first 45 days.

(d)    If any portion of the assigned Account is an Additional Account (additional business in excess of the Initial Account Volume or replacement Account volume OpenWorks is required to provide you), then you agree to pay OpenWorks the Marketing Fee stated in the Account Assignment Agreement.

(e)    You acknowledge that OpenWorks has made no representations to you about how long the Account will use your services except as expressly stated in the Maintenance Agreement.  You understand that there is no assurance that the Account will renew or extend the Maintenance Agreement.  OpenWorks retains all rights as the contracting party with the Account.

(f)    If you discontinue services for the assigned Account at any time for any reason, you agree to immediately turn over to OpenWorks the Account's keys, security codes and cards in your possession or the possession of your employees.  If you do not do so, you agree to pay OpenWorks all charges assessed by the Account plus $500 a day until the Account's keys, codes and cards are delivered to OpenWorks.

**5.2.6    Accounts Obtained by You**.  You are encouraged to solicit and procure janitorial client Accounts on your own behalf.  You must conduct all marketing activities in strict conformity with the guidelines, policies and procedures set forth in the Manual.  OpenWorks must sign a Maintenance Agreement with these Accounts and will provide the same administrative services to support these Accounts as it does to support Accounts it procures for you.  You will pay all the same types of fees

in regard to these Accounts as you do in regard to Accounts procured by OpenWorks for you except that you will not be required to pay a Marketing Fee to OpenWorks for Accounts you obtain solely as the result of your own efforts. OpenWorks will impose the fees as of the date you begin servicing the Account unless we agree in writing that certain service calls or services are specifically excluded. Upon the Termination of this Agreement, Accounts you have procured must be assigned to OpenWorks if these Accounts do not already have a signed Maintenance Agreement with OpenWorks. In furtherance of this requirement, upon Transfer or Termination, you will immediately provide OpenWorks with a list of all Accounts and customers and facilities you are servicing or had serviced at any date during the 12 months preceding the date of such Transfer or Termination.

**5.3    Starter Kit**. At no additional charge, OpenWorks will provide you with an equipment and supply kit to commence your Janitorial Service. The current starter kit being provided by OpenWorks is described in <u>Attachment 1</u>. OpenWorks may substitute different brand names or make changes in specifications, but any substituted or changed item will be of equal or greater value and/or quality.

**5.4    Billing, Collection and Payment**.

**5.4.1    Billing and Collection Service**. OpenWorks will provide billing and collection service for you. You must use this service and may not bill Accounts yourself. No later than the 2nd business day of each month, you must send to OpenWorks a statement of all services rendered by you during that month in the form currently prescribed by OpenWorks. Within 45 days after the end of each month, OpenWorks will send you your Gross Revenue for that month, after deduction of any sums currently due and payable by you to OpenWorks under this Agreement. OpenWorks may adjust the deadlines for reporting by you and payment by OpenWorks if, in its sole discretion, such adjustments are made necessary by general changes in the payment practices of Accounts in the area. You will be notified in writing of any such adjustments.

**5.4.2    Limited Cash Flow Protection Service**. At the time of sending your monthly Gross Revenue to you, OpenWorks will advance you a sum equal to any delinquent payments that should have been, but were not, received by OpenWorks from any Accounts you serviced during the month for which payment is made if the following four requirements are met:

(a)    The Account was not delinquent in the immediately preceding month;

(b)    OpenWorks had not previously instructed you to terminate service to the Account;

(c)    The Account was originally provided by OpenWorks; and

(d)    You submitted to OpenWorks the monthly statement of all services rendered by you, including services rendered to the delinquent Account, in a timely manner and in the form prescribed by OpenWorks.

**5.4.3    Cost of Collection**. OpenWorks is entitled to recover from you any costs it incurs, including but not limited to attorneys' and accountants' costs and fees, filing fees, delivery and photocopying charges, and costs of discovery, in collecting monies owed you by Accounts for your services. OpenWorks may apply to this obligation any monies paid to OpenWorks by you or for your Account.

Any such sums advanced to you by OpenWorks must be paid to OpenWorks within 90 days after the date upon which payment was due from the Account whose payment was delinquent. Thereafter, you must repay OpenWorks or it may deduct amounts owed to it by you for such advances from any and all money

10

collected by OpenWorks on your behalf.  You must pay OpenWorks interest at the rate of 12% per year on any advances for which OpenWorks has not been reimbursed within 90 days after the date upon which payment was due from the Account.

      **5.5**    **Consultation**.  Upon your request, OpenWorks will use commercially reasonable efforts to make its personnel available to you for consultation regarding operation of the Janitorial Service.

      **5.6**    **Manual**.  OpenWorks will lend you a Manual containing information on operational methods, safety, rules and policies, marketing, names of approved suppliers, and other information that OpenWorks believes will be necessary or helpful to you in your operation of the Janitorial Service. OpenWorks may revise the Manual periodically to conform to the changing needs of the Franchise Network and will distribute updates to you verbally, on the Internet, by email or in the form of memoranda containing these revisions.  You are required to operate your Janitorial Service in accordance with the Manual and any of its revisions.  In the event of any dispute regarding the Manual, the terms of the master copy maintained by OpenWorks shall be controlling.

      **5.7**    **Advertising**.

      **5.7.1**    **Advertising Fund**.  OpenWorks has established an advertising fund (an "**Advertising Fund**") to pool advertising monies of OpenWorks and each of its franchisees so as to achieve greater benefits for all in promoting the OpenWorks brand and its Trade Names and Marks. OpenWorks may, at its option, establish additional Advertising Funds.  You must pay to OpenWorks as a contribution to the Advertising Fund up to 1% of your Gross Revenue, payable at the same times and in the same manner as royalties.  OpenWorks currently contributes to the Advertising Fund in excess of franchisee contributions for its commercial accounts; however, OpenWorks reserves the right to decrease its contribution amounts in the future.  OpenWorks shall administratively segregate all contributions to the Advertising Fund on its books and records.  However, any payments to the Advertising Fund may, at OpenWorks' discretion, be deposited in OpenWorks' general operating account; may be commingled with OpenWorks' general operating funds; and may be deemed an asset of OpenWorks, subject, however, to OpenWorks' obligation to expend the monies in the Advertising Fund in accordance with the terms hereof.  OpenWorks may, in its sole discretion, elect to accumulate monies in the Advertising Fund for such periods of time as it deems necessary or appropriate, with no obligation to expend all monies received in any fiscal year during such fiscal year.  From time to time, OpenWorks' expenditures for advertising in any fiscal year may exceed the total amount contributed to the Advertising Fund during such fiscal year.  In such event, OpenWorks shall have the right to be reimbursed to the extent of such excess contributions from any amounts subsequently contributed to the Advertising Fund or to use such excess as a credit against its future contributions.  The parties do not intend that the Advertising Fund be deemed a trust.

      **5.7.2**    **Use of Funds**.  The Advertising Fund may be used to pay for market research, development, branding, quality assurance, advertising materials, promotion or public relations programs, media placement for a national or regional advertising program, a referral program, or any combination of them, as OpenWorks, in its sole discretion, may deem necessary or appropriate to advertise or promote OpenWorks and to assure and enhance the name, goodwill, reputation and quality of the System and OpenWorks' brand, Trade Names and Marks.  OpenWorks shall direct all such programs and activities, with sole discretion over the methods, types of support (including without limitation, training, account quality visits and written materials), creative concepts, materials, endorsements and media used, and the timing, placement and allocation thereof.  You agree that the Advertising Fund may be used to meet any and all costs of maintaining, administering, developing, creating, directing and preparing national, regional or local research, development, quality assurance, advertising and promotion materials, branding programs, advertising programs and activities, including without limitation, the costs of creating, preparing and conducting test marketing, surveys, direct mail/distribution, couponing, television, radio,

11

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0133**

magazine, bill board, newspaper and other media programs and activities, training and inspection programs, updated Manuals and the costs of hiring others to assist OpenWorks.  OpenWorks may initiate Advertising Fund projects that are national or regional in scope and may also make allocations of Advertising Fund monies to local groups of franchisees or individual franchisees when OpenWorks considers it desirable.  Because the benefits of advertising and promotion are difficult to measure with precision, OpenWorks reserves the unqualified right to determine, in its sole discretion, how Advertising Fund monies will be spent; provided that the monies must be used in a manner that is described above. You understand and acknowledge that the Advertising Fund is intended to maximize general public recognition and acceptance of the Trade Names and Marks for the benefit of the System as a whole and that OpenWorks undertakes no obligation in administering the Advertising Fund to ensure that any particular franchisee benefits directly or pro rata from the Advertising Fund.  OpenWorks reserves the right to terminate the Advertising Fund, but in such event will spend or use all remaining Advertising Fund assets for advertising in accordance with this Section.

      **5.7.3    Reports**.  OpenWorks will prepare an annual summary of the percentages spent on production, media placement, administrative expenses and other categories as appropriate from the Advertising Fund in the prior year.  This summary will be made available to you at OpenWorks' regional office within 10 business days from OpenWorks' receipt of your written request.

      **5.8    Suggested Suppliers**.  OpenWorks will give you, in the Manual or otherwise in writing, a list of names and addresses of suppliers of goods and services that currently meet its standards and specifications.  In advising you of suppliers that meet its standards and specifications, OpenWorks expressly disclaims any warranties or representations as to the condition of the goods or services sold by such suppliers, including, but not limited to, expressed or implied warranties as to merchantability or fitness for any intended purpose.  You agree to look solely to the manufacturer of goods or the supplier of services for the remedy for any defect in the goods or services.  You may request that OpenWorks approve additional or alternate suppliers by providing OpenWorks with the required information for each proposed supplier in accordance with the Manual.  OpenWorks will evaluate the proposed supplier and give you a written response to your request within sixty (60) days of the date OpenWorks receives the last piece of information from you.  You must also reimburse OpenWorks for all costs incurred by OpenWorks in investigating and inspecting the proposed supplier and in testing the proposed supplier's product.  OpenWorks has the right to deduct these fees from monies that are due to you from OpenWorks.

**6.    PAYMENTS BY YOU**.

      **6.1    Initial Fee**.  You are required to pay OpenWorks in cashier's check or certified check payable to "O.P.E.N. America, Inc." or other form of payment acceptable to OpenWorks, an initial fee determined in accordance with <u>Attachment 2</u> of this Agreement.

      Higher franchise levels with increased account volume more than OW 25 may available in your area.  If so, then the additional account volume would be offered in additional $5,000 increments from the levels at OW 25 stated in <u>Attachment 2</u>..  The franchise fee would be calculated as the OW 25 franchise fee of $33,000 plus a multiplier of 3 times the increased volume amount.  For example, for a $5,000 increase from a $25,000 account volume to a $30,000 account volume, the initial fee would be calculated as $72,000 + ($5,000 * 3) or $87,000.  The amount financed under the standard program would remain at $10,000 for each additional account volume and the down payment would be calculated as the franchise fee less the $10,000 financed.  The veteran's program would have the same down payment for each franchise level as the standard program but a 10% discount would be deducted from the amount financed.

      You have selected the Franchise Package as stated in <u>Article 1</u> of this Agreement.

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0134**

The fee schedule in Attachment 2 of this Agreement does not include sales tax, which, if applicable, must be paid by you.

If the franchise fee is paid in full before beginning operation, a 10% discount off the franchise fee will be applied. The exact amounts for the franchise packages are stated in Attachment 2.

If you wish to finance a portion of the franchise fee, OpenWorks will offer financing at 12% per year or at the highest rate permitted by applicable law, whichever is less, over a two year period. The loan will be memorialized by a promissory note in substantially the form of Exhibit D to the Franchise Disclosure Document.

The initial franchise fee is non-refundable, unless OpenWorks has been unable to offer a sufficient dollar volume of Accounts to you for the package purchased by you within the fulfillment period specified in Section 5.2.1 of this Agreement. If the dollar volume of Accounts offered to you within the fulfillment period falls short of the amount specified in Section 5.2.1 of this Agreement, then your sole remedy is to receive a partial refund from OpenWorks, calculated as follows: The partial refund will be an amount equal to the difference between the Initial Account Volume of the package and the Account volume of the Account(s) actually offered, multiplied by the package multiplier applicable to the package that was purchased. The package multipliers are as follows:

| PKG. | MULTIPLIER |
|------|-----------|
| OW 3 | 3.73 |
| OW 5 | 2.90 |
| OW 7 | 2.71 |
| OW 10 | 2.56 |
| OW 15 | 2.56 |
| OW 20 | 2.56 |
| OW 25and greater | 2.56 |

At any time after the fulfillment period, OpenWorks, in its sole discretion, may elect to provide you with a partial refund in accordance with the above calculation in full satisfaction of all of its obligations to provide you with Accounts.

OpenWorks has the right to offset any amounts owed to it by you or your Affiliate against the amount of the refund.

The following is an example of recalculations of the initial franchise fee:

*You purchase Package OW 5 for $18,500, with $9,500 down and $9,000 financed. This Package should generate $5,000 per month. However, OpenWorks offers to you Accounts that generate only $4,000 per month within the fulfillment period. To calculate your refund, the first step is to subtract the actual Account Volume from the Initial Account Volume for the package purchased, as follows: $5,000 - $4,000 = $1,000. The difference is then multiplied by the multiplier for Package OW 5: $1,000 X 2.9 = $2,900. However, since you have an outstanding note balance of $9,000 payable to OpenWorks (assuming no payments were made), the $2,900 refund will apply to that balance. Therefore, in this case the promissory note is reduced from $9,000 to $6,100 ($9,000 - $2,900 = $6,100) and no actual cash refunds are given.*

The reason why the net cost to you of the Accounts provided to you in the example, above, is less than it would have been if you had purchased the smaller package in the first place is that the cost per

dollar of Initial Account Volume decreases as the size of the package increases.  If OpenWorks fails to offer you the requisite Initial Account Volume for the package purchased, your initial franchise fee is still calculated at the same lower cost per dollar of Initial Account Volume as the package that you purchased.

6.2     **Royalties**.  OpenWorks will deduct from your Gross Revenue a monthly royalty of 15% of the monthly Gross Revenues of the Janitorial Service, calculated on the basis of your Gross Revenue for the immediately preceding month.

6.3     **Special Project Fees**.  You agree to pay OpenWorks a "**Special Project Fee**" of a specified percentage of the total contract price for the job, before deduction of royalty fees, of each one-time, non-recurring Account service job, such as a carpet cleaning, performed by you for which OpenWorks obtained and/or priced the job (regardless of who originally obtained the Account).  If you obtained the job, but OpenWorks priced it, the Special Project Fee is 15% of the total contract price for the job; if OpenWorks obtained the job, but you priced it, the Special Project Fee is 15% of the total contract price for the job; if OpenWorks obtained and priced the job, the Special Project Fee is 30% of the total contract price for the job.  If you obtained and priced the job, the Special Project Fee is zero.  OpenWorks will deduct the Special Project Fee for assistance rendered during the preceding month from its monthly remittance of Gross Revenue to you.

6.4     **Advertising Fund Contributions**.  You must pay a monthly contribution to the Advertising Fund of up to 1% of the monthly Gross Revenue of the Janitorial Service calculated on the basis of your Gross Revenue for the immediately preceding month, which will be expended in accordance with Section 5.7.  OpenWorks will deduct the Advertising Fund contribution from its monthly remittance of Gross Revenue to you.  OpenWorks shall have the sole right to enforce your obligations and all other franchisees of the System who are obligated to contribute to the Advertising Fund, and neither you nor any other franchisee of the System who shall be obligated to contribute to the Advertising Fund shall be deemed a third-party beneficiary with respect to said Advertising Fund or have any right to enforce any obligation to contribute thereto.

6.5     **Payment of Royalties and Advertising Fund Contributions**.  Your obligations to pay ongoing monthly royalties and monthly Advertising Fund contributions begin on the Effective Date of this Agreement, as defined above.  Your obligation to pay your fees to OpenWorks is not excused by your failure or delay in returning any agreement or paperwork to OpenWorks.

6.6     **Inspection of Records**.  Upon reasonable notice to OpenWorks, you will have the right during normal working hours to inspect the books and records of OpenWorks pertaining to billings and collections for the Accounts assigned to you.

6.7     **OpenWorks' Right to Audit Your Records**.  You agree to keep and maintain for a period of three years (even if this Agreement is terminated) true, original, and accurate records of your business, including, without limitation, accounts, books, licenses, data, contracts and product supplier invoices, and not to engage in activities in violation of your Franchise Agreement, in particular direct billing of Accounts or provision of services to Accounts, without reporting them to OpenWorks.  Furthermore, you agree to keep your books and records open to examination, copying and audit by OpenWorks.  Upon OpenWorks' request, you shall prepare and produce all of your business/personal records, bank statements, financial statements, tax returns, financial statistics and any other relevant document or data for OpenWorks to verify that all fees due to it are paid by you.  Any such information provided to OpenWorks pursuant to this Section shall belong to OpenWorks and may be used and published by OpenWorks in connection with the System.  Upon OpenWorks' request, you shall furnish OpenWorks with a copy of each of your reports and reimbursement of sales, use and gross receipt taxes and complete copies of any federal or state income tax returns covering the operation of the Janitorial Service, all of which you shall certify as true and correct.

If an examination or audit by OpenWorks discloses that you have directly billed Accounts or provided services to Accounts without reporting them to OpenWorks, or that you have underreported your Gross Revenues to OpenWorks in any other manner, the total amount of all fees and charges due hereunder as a percentage of such Gross Revenues shall be immediately due and payable to OpenWorks, together with interest on late payments as provided in <u>Section 6.11</u> of this Agreement.  In addition, you must pay OpenWorks all reasonable costs, expenses and overhead incurred by OpenWorks in connection with its examination and/or audit.

**6.8    Marketing Fee**.

**6.8.1    Amount and Payment**.  You must pay OpenWorks a Marketing Fee for OpenWorks' services in locating Additional Accounts for you.  Currently, the Marketing Fee is determined as follows and summarized in the chart below.  OpenWorks reserves the right to increase the Marketing Fee at any time, in its sole discretion, by providing 30 days advanced written notice to you or by amending the Manual.

(a)    If the gross monthly billing of the Additional Accounts located by OpenWorks for you is $5,000 or less, the Marketing Fee shall be 3 times one month's gross billing of the Additional Accounts.

(b)    If the gross monthly billing of the Additional Accounts located by OpenWorks for you is between $5,001 and $10,000, the Marketing Fee shall be 2.7 times one month's gross billing of the Additional Accounts.

(c)    If the gross monthly billing of the Additional Accounts located by OpenWorks for you is greater than $10,000, the Marketing Fee shall be 2.2 times one month's gross billing of the Additional Accounts.

**The Marketing Fee applicable to any Purchase Contract may be altered at any time before signing of the Purchase Contract, depending on changes in market conditions or industry standards or on the type of Account to be offered.**

If you pay the Marketing Fee in full immediately, you will receive a 10% discount.  The Marketing Fee may be partially or entirely financed in OpenWorks' sole discretion, considering the size of the transaction, other debt service payable by you to OpenWorks and others, your credit history, and your anticipated cash flow.  Any portion of the Marketing Fee that is financed will be memorialized by a promissory note substantially similar to <u>Exhibit D</u> of the Franchise Disclosure Document.  The terms of financing shall be one payment equivalent to a down payment if you do not make the down payment at the time you contract for the Additional Accounts, and 24, 30, 36 or 48 equal monthly payments of the principal balance due plus annual interest of 12%.  OpenWorks will deduct the Marketing Fee from its monthly remittance of Gross Revenue to you.  The down payment (or first note payment) and the number of monthly payments are determined as follows:

| Monthly Billing | | Marketing Fee (as a multiple of the full monthly billing) | Down Payment or First Note Payment (as a percentage of the full monthly billing) | Financing Terms | | Discount (if paid in full at the time of acceptance) |
| From | To | | | Number of Additional Monthly Payments | Interest Rate | |
|---|---|---|---|---|---|---|
| $0 | $5,000 | 3 | 30% | 24 | 12% | 10% |
| $5,001 | $10,000 | 2.7 | 15% | 24-30 | 12% | 10% |
| $10,001 | No Limit | 2.2 | 5% | 36-48 | 12% | 10% |

       **6.8.2**    **Refunds**.  The Marketing Fee will be refunded to you on a proportionate basis if OpenWorks does not offer the requested Additional Account Volume to you within 120 days after signing of the Purchase Contract or another fulfillment period specified in the Purchase Contract.  The fulfillment period may be extended when you refuse an Account you are offered, as described in Section 5.2.3 of this Agreement.  Additionally, if you refuse the Additional Account under Section 5.2.3 of this Agreement, any down payment you have made will be either refunded to you by the end of the month after the month in which you refuse the Account or will be credited towards a different Additional Account if you accept a replacement Additional Account.  The Marketing Fee is not refundable under any other circumstances.  Specifically, the Marketing Fee is not refundable, and OpenWorks has no obligation to offer you replacement Accounts, if an assigned Account is transferred at the request of the Account, or the Account cancels the assigned Account, in either case because of your wrongful act, omission, negligence or nonprofessional interaction with an Account, for the Account satisfaction reasons stated in Section 7.2.5, for any reason that you or your employees, agents or Affiliates could have controlled, or for any violation of the Maintenance Agreement or work schedule, this Agreement or the Manual.

       **6.9**      **Extended Account Guarantee Fee**.

       **6.9.1**    **Guarantee and Replacement of Accounts**.  When selected Accounts are assigned to you, OpenWorks may offer you, at its sole discretion, the opportunity to purchase an extended Account guarantee on that Account as additional protection to you in case that Account is cancelled.  If you accept the offer, and the Maintenance Agreement is terminated by an Account for any reason other than as stated in paragraphs (a) through (i) inclusive of Section 7.2.5 of this Agreement on account satisfaction, then OpenWorks will offer you a replacement Account within 150 days.  The replacement Account will be the same or greater monthly billing magnitude as the Account that it replaces.  If the monthly billing volume of the replacement Account is greater than the canceled Account, OpenWorks may assess a Marketing Fee from you that is based on the overage.  OpenWorks is also not obligated to offer you an extended Account guarantee fee on the replacement account.  You must accept the offer and sign the current form (an example of which is attached to this Agreement as Attachment 5).

       **6.9.2**    **Payment**.  You must pay OpenWorks a monthly extended Account guarantee fee, which is a percentage of the monthly Gross Revenue of the Janitorial Service, calculated on the basis of your Gross Revenue for the immediately preceding month.  OpenWorks has the right to change this percentage for new Accounts being offered to you but once you purchase an extended Account guarantee, the percentage will not change for as long as you have the guarantee on the Account.  OpenWorks will deduct the extended Account guarantee fee from its monthly remittance of Gross Revenue to you.

       **6.9.3**    **Transfer and Termination**.  The extended Account guarantee will continue as long as you are servicing the selected Account.  If the extended Account guarantee is terminated by you or OpenWorks as provided below, you will not receive any refund of the fees paid for the guarantee.  You may terminate the extended Account guarantee upon 30 days written notice to OpenWorks.  If you transfer or sell the Account then the extended Account guarantee is terminated without further notice as of

16

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0138**

the date of your transfer or sale.  OpenWorks may, but is not obligated to, offer an extended Account guarantee to the transferee upon such a transfer or sale.  If OpenWorks terminates your Account for any of the reasons stated in paragraphs (a) through (i) inclusive of <u>Section 7.2.5</u> of this Agreement, then the extended Account guarantee will be terminated without further notice.

      **6.10**    **Account Transfer Fee and Franchise Transfer Fee**.  As a condition of Transfer of an Account or this franchise, you must pay to OpenWorks an Account Transfer fee of $50 per Account for the Transfer of one or more (but less than substantially all) of the Accounts you service, and a Franchise Transfer Fee of $2,000 for all other Transfers.

      **6.11**    **Interest on Late Payments**.  Any payment not received by OpenWorks when due will bear interest at 21% per year or at the highest rate allowed by applicable law from the date when payment is due, whichever is less.  Interest charges on late payments are intended to partially compensate OpenWorks for loss of use of the funds and for internal administrative costs resulting from late payments, which would otherwise be difficult to measure with precision.  The fact that such charges are imposed should not be construed as a waiver of the right to timely payment.

      **6.12**    **Account Charges**.  If you fail to turn over to OpenWorks all Account keys, security codes and cards immediately when you discontinue services to an Account, you must pay OpenWorks all charges assessed by any Account plus $500 per day until the Account's keys, codes and cards are delivered to OpenWorks.

      **6.13**    **Cancellation Charges**.  You must pay OpenWorks a cancellation charge of $50 if you fail to keep any appointment with OpenWorks or an Account (including but not limited to an appointment for a quality control inspection) unless you give at least 24 hours advance notice that you are canceling the appointment.  You must pay OpenWorks a cancellation charge of $50 if you, any of your owners, your Designated Manager or any of your employees fails to attend any training class for which you, he or she is scheduled.

      **6.14**    **Minimum Account Service Fee**.  If you are not actively engaged in providing Janitorial Services for a period of one full calendar month ("**Inactive Month**"), then you must pay OpenWorks a "**Minimum Account Service Fee**" of $75 per Inactive Month until you either begin providing Janitorial Services or request in writing that OpenWorks terminate your franchise.  OpenWorks will bill you directly for this Minimum Account Service Fee.  The Minimum Account Service Fee is due and payable on or before the 10th day of each month following each Inactive Month.  If you accept an account after any Minimum Account Service Fee is due, OpenWorks may deduct the Minimum Account Service Fee from its monthly remittance of Gross Revenue to you.  If you remain inactive for three or more calendar months, even though you have paid the Minimum Service Fee for those months, OpenWorks may terminate your franchise in accordance with <u>Section 10.2.1</u> of this Agreement.  The Minimum Account Service Fee is waived during the fulfillment period.

      **6.15**    **Background Check Fee**.  Upon the signing of this Agreement and at any time you finance any Marketing Fee, OpenWorks will evaluate your credit history and charge you its background check fee.

      **6.16**    **Document Preparation Fee**.  If you request the preparation of customized documents for marketing or other purposes, you will be assessed a $250 preparation fee due upon request for preparation.

      **6.17**    **Manual Check Fee**.  If you elect to have payments due to you made pursuant to a manual check in lieu of a direct deposit into a designated account, you will be assessed a fee of up to $25 per manual check.

**6.18**    **Equipment and Supplies**.  OpenWorks provides you with an equipment and supply Starter Kit in accordance with Section 5.3.  Once you have exhausted your equipment and supplies from the Starter Kit, you must purchase ongoing equipment and supplies only from OpenWorks' designated and approved suppliers.  If you purchase equipment or supplies through OpenWorks, OpenWorks will deduct amounts owed to OpenWorks from funds OpenWorks is obligated to pay to you.  OpenWorks reserves the right to require you to pay OpenWorks directly at the time you order any equipment or supplies from OpenWorks.

**6.19**    **Trouble Call Fee**.  If OpenWorks is required to investigate or resolve a customer complaint on your behalf, you must pay OpenWorks a Trouble Call Fee of $50 per occurrence plus reimburse OpenWorks for any service OpenWorks provides to your customer at the current hourly rate set forth in the Manual.  OpenWorks has the right to deduct the Trouble Call Fee and any reimbursable charges from funds OpenWorks is obligated to pay you.

**6.20**    **Lost Document Fee**.  If you have damaged, lost or otherwise misplaced any document relating to the franchise relationship and request a replacement of such document, OpenWorks will charge you $25 for a replacement copy of each such document.

**6.21**    **Legal Entity Fee**.  The parties acknowledge and agree that in the event you fail to complete the Required Transfer within 90 days of the Effective Date, it will be difficult to quantify the time and cost OpenWorks will incur in enforcing your compliance with the Required Transfer obligation.  Therefore, if you fail to complete the Required Transfer within 90 days of the Effective Date, you agree to pay OpenWorks a fee of $500 per month until such Required Transfer is complete, which the parties agree is a reasonable estimate of OpenWorks' time and cost in enforcing your compliance with the Required Transfer obligation.  The requirement to pay this fee is not an election of remedies, and at any time after 90 days of the Effective Date and before you complete the Required Transfer, OpenWorks may terminate your franchise in accordance with <u>Section 10.2.1</u> of this Agreement.

**7.**    **YOUR OBLIGATIONS**.

**7.1**    **Use of Trade Name and Marks**.

**7.1.1**    **Context**.  You will use the Trade Names and Marks only in the operation of your Janitorial Service.  You will not use any other trade names or marks in connection with your Janitorial Service.  You cannot use the Trade Name or Marks as part of your legal business name, or with other words, designs or symbols.  You may not use the Trade Name or Marks in connection with the sale of unauthorized products or services, or in any manner not authorized by OpenWorks.  You will not represent in any manner that you have acquired any ownership rights in the Trade Names or Marks.  You acknowledge OpenWorks' ownership in the Trade Names and Marks.  Any goodwill associated with the System and identified by the Trade Names and Marks (including all future distinguishing characteristics, improvements and additions to or associated with the System) is OpenWorks' property and shall inure directly and exclusively to the benefit of OpenWorks.  Upon the expiration or Termination of this Agreement for any reason, no monetary amount shall be assigned as attributable to any goodwill associated with your use of the Trade Names or Marks.

**7.1.2**    **Changes in Trade Names and Marks**.  OpenWorks has invested substantial time, energy and money in the promotion and protection of its Trade Names and Marks as they exist on the date this Agreement is signed.  It has no present intention of altering them.  However, OpenWorks and you both recognize that rights in intangible property such as the Trade Names and Marks are often difficult to establish and defend and that changes in the cultural and economic environment within which the System operates may make changes in the Trade Names and Marks desirable or necessary.  You understand that OpenWorks therefore reserves the right to change any of its Trade Names and Marks and

18

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0140**

the specifications for each when it believes that such changes will benefit the Franchise Network. You agree that you will promptly conform, at your own expense, to any such changes.

       **7.1.3   Advertising**. You agree to submit to OpenWorks copies of all advertising materials that you propose to use at least two weeks before the first time they are distributed, broadcast or published. All advertising must conform to the standards set out in the Manual. OpenWorks will review the materials and notify you within ten business days whether it approves or rejects them. Silence or failure to respond will not be deemed consent. OpenWorks will not withhold its approval unreasonably. For purposes of this Section, advertising materials that differ from previously approved materials only in such variables as date, price or names of products will be considered to be previously approved. However, even if OpenWorks has approved specified materials, it may later withdraw its approval if it reasonably believes it necessary to make the advertising conform to changes in the System or to correct unacceptable features, including, but not limited to, any misrepresentation in the advertising material, whether or not intentional. You may not engage in telemarketing in connection with your Janitorial Service.

       **7.1.4   Legal Protection**. You agree to notify OpenWorks immediately in writing if you become aware of any unauthorized use of its Trade Names, Marks or System. You will promptly notify OpenWorks in writing of any claim, demand or suit against you or against your principals based upon or arising in connection with your use of the Trade Names, Marks or System. In any action or proceeding arising from or in connection with any such claim, demand or suit, you agree that OpenWorks may select legal counsel and has the right to control the proceedings, including the right to compromise, negotiate and settle, in its discretion, such claims, demands or suits. You may not initiate any communication or respond with any information on any infringement or challenge with any person other than your legal counsel, OpenWorks, our affiliates, or our counsel. If OpenWorks undertakes the defense or prosecution of any litigation or proceedings relating to the Trade Names or Marks, you will execute any and all documents and do such acts and things as may, in the opinion of OpenWorks' legal counsel, be reasonably necessary to carry out such defense or prosecution.

    **7.2   Quality Control**.

       **7.2.1   Opening**. You may not begin to operate the Janitorial Service until OpenWorks certifies in writing that you and your Designated Manager have satisfactorily completed initial training.

       **7.2.2   Compliance With Manual**. You must operate your Janitorial Service in complete compliance with the standards and specifications set out in the Manual. OpenWorks may make changes in these standards and specifications, when, in its reasonable discretion, change is needed for the continued success and development of the System and the Franchise Network. Such changes may necessitate the purchase of equipment (including a computer system), supplies or other goods, completion of additional training by your employees, or other cost to you. You will promptly conform to the modified standards and specifications at your own expense. You must at all times keep your copy of the Manual current by inserting in it revised pages and other changes given to you by OpenWorks and deleting superseded pages. You must also protect its confidentiality by allowing access only by employees with a need to know its contents and by establishing and enforcing procedures to safeguard the Manual in a secure location when it is not in use. If there is any dispute as to the requirements of the Manual at any point in time, the terms of the master copy of the Manual maintained by OpenWorks will control.

       **7.2.3   Your Performance**. You will provide Janitorial Services to your Accounts in a workmanlike and professional manner. Great weight will be given to the Accounts' opinions as to what is workmanlike and professional. You will carefully safeguard and protect the keys to your Accounts' buildings and will never give custody of the keys to any person not directly associated with the Janitorial

Service or for any unauthorized purpose.  You will diligently follow any instructions or warnings made by any Account as to the security of the Account's premises or as to how, when and where you may perform Janitorial Services.  Failure to adhere strictly to these requirements will be considered grounds for immediate termination of your right to serve a particular Account.  If violation of this Section occurs repeatedly, OpenWorks may terminate this Agreement.

> **7.2.4    Services Offered**.  You will offer and sell all the services and only the services that OpenWorks has authorized you to provide.  You may purchase products that are to be used in the Janitorial Service from any source, as long as the supplier meets the standards established by OpenWorks and the products meet the specifications set out in the current version of the Manual.  If you wish to use any product not previously certified by OpenWorks to meet its specifications or which is sold by a supplier not previously approved by OpenWorks, you will advise OpenWorks of this fact and, upon its request, will give OpenWorks product specifications, sample products, and/or information about the supplier.  OpenWorks will communicate either its approval or its reasons for withholding its approval to you within ten business days.  Silence may not be construed as consent.  As a condition of approving a supplier or product, OpenWorks will require you to reimburse it for any expenses reasonably incurred by OpenWorks in inspecting the supplier's premises, checking the supplier's credentials, or testing the product.  As a condition of approving a supplier of any product that bears the Trade Names or Marks, OpenWorks may require that the supplier sign a license agreement.  OpenWorks may withdraw its approval of a supplier or product if either or both no longer meet its standards or specifications.

> **7.2.5    Account Satisfaction**.  OpenWorks may, at its sole discretion terminate your right to serve and to Transfer a particular Account, and may assign the Account to another franchisee, upon the occurrence of one of the following events:

(a)    You have repeatedly failed to perform Janitorial Services to an Account's satisfaction and/or in accordance with the Maintenance Agreement or Manual and/or OpenWorks' standards;

(b)    An Account has lodged an oral or written complaint with OpenWorks regarding you, your service or your employees; OpenWorks has notified you of the substance of the complaint, and the Account remains dissatisfied for more than five days from the date of the notice;

(c)    OpenWorks receives an oral or written request from an Account that the Account be serviced by a different franchisee;

(d)    You provide Janitorial Service to an Account in a capacity other than that of an OpenWorks franchisee;

(e)    You abandon or fail to provide service to an Account as scheduled or the Account notifies OpenWorks that it is dissatisfied on any two days within a period of 60 consecutive days;

(f)    You cancel or fail to keep appointments with OpenWorks or an Account for quality control inspections on any two occasions within a period of 60 consecutive days;

(g)    OpenWorks receives an oral or written request from an Account that its Maintenance Agreement be terminated;

(h)    If you or your Designated Manager are not Fluent in English;

20

INT_____/ INT_____
Unit Janitorial Franchise Agreement
**A - 0142**

(i)     You fail to maintain an adequate staff of employees sufficient to provide service to an Account; or

(j)     You no longer wish to service an Account.

You waive any claim or right to payment for services performed for an Account, and agree to Transfer such an Account after OpenWorks terminates your services to the Account under this Section. You agree that you will not be entitled to any payment upon OpenWorks' assignment of the Account to another franchisee, or to any refund or reduction of fees paid or promised to OpenWorks by reason of the termination of your service to any Account under this Section. You agree to successfully assist OpenWorks' managers in the transition or termination of an Account. OpenWorks may also terminate your franchise for events in subsections (a) through (i) inclusive of this Section (see Section 10.2).

**7.2.6    Inspections**. OpenWorks may conduct periodic quality control inspections of your Janitorial Service operation during normal business hours. You must attend each of these inspections with OpenWorks or pay OpenWorks a cancellation charge of $50. OpenWorks will give you advance notice of the inspections. If there are repeated cancellations or absenteeism, OpenWorks has the right to terminate your services to an Account and/or terminate your Agreement. OpenWorks may also make quality control inspections without prior notice for which you will not have to attend. Alternatively, OpenWorks may require you to conduct such inspections, and promptly provide OpenWorks with written reports of such inspections in the format specified by OpenWorks from time to time. You must promptly correct any deficiencies in your operation, which you discover or which are brought to your attention by OpenWorks. If you do not take immediate, effective steps to bring your operation up to OpenWorks' standards, your failure to do so will constitute a material breach of this Agreement. If a deficiency is discovered at any time, during an inspection or following a complaint, OpenWorks has the right to correct the deficiency and charge you $50 for doing so.

**7.2.7    Notification of Complaints**. You will notify OpenWorks promptly if you are served with a complaint in any legal proceeding that is in any way related to the Janitorial Service or if you become aware that you are the subject of any complaint to or investigation by a governmental licensing authority or consumer protection agency.

**7.2.8    Employees**. You will maintain a staff of available and trained employees sufficient to operate the Janitorial Service in compliance with OpenWorks' standards.

**7.2.9    Uniforms and Professional Attire**. Your staff of employees must wear a uniform when the employees are on an Account's premises. The uniform must meet the standards set forth in the Manual. You or your Designated Manager must be in professional attire or in business casual attire with an OpenWorks polo shirt with the OpenWorks logo when on the Account's premises during normal business hours. If you are performing the Janitorial Services after normal business hours, then you may choose to be in a uniform, professional business attire or business casual attire with an OpenWorks logo shirt when performing those services.

**7.2.10    Best Efforts**. You must use your best efforts and devote all of your productive time and effort to the management and operation of your franchise business on a full-time basis. You must promote OpenWorks in all your actions.

**7.2.11    Designated Manager**. If a corporation or other legal entity, you agree that a specific individual will be the Designated Manager. If you are an individual, then you may be the Designated Manager or you may appoint another Designated Manager. The Designated Manager must use his or her best efforts and personally be responsible for management of the janitorial service business on a day-to-day basis, and you must carefully monitor and be responsible for the performance of any

21

Designated Manager.  The appointment or change of a Designated Manager is subject to the prior written approval of OpenWorks.  You designate the person listed in <u>Section 1</u> as the Designated Manager, and OpenWorks approves such person (subject to such Designated Manager's satisfactory completion of training in <u>Section 5.1</u>).  OpenWorks has the right to rely upon instructions from the Designated Manager on matters relating to the franchise until OpenWorks receives a written notification from you changing the Designated Manager.  You shall notify OpenWorks in writing of any proposed change in a Designated Manager before the change occurs.  OpenWorks will review the request and shall use commercially reasonable efforts to approve or disapprove of the change within 10 business days of its receipt of the request.  If OpenWorks does not disapprove of the change within 10 business days then the change is deemed to be approved.  OpenWorks has the right to demand that you promptly remove a Designated Manager if the Designated Manager violates any provision of this Agreement or any other agreement with OpenWorks, including but not limited to, provisions in <u>Section 7.2.5</u> that addresses, among other actions, failure to adequately provide janitorial service, comply with OpenWorks' standards and to be Fluent in English.  Upon termination of employment of a Designated Manager, you are required to appoint a successor within 10 days and (if you are an individual) take on the role of Designated Manager until OpenWorks approves the proposed Designated Manager and that person is qualified to take over.

       **7.2.12   English Language**.  You and your Designated Manager must be able to read, speak and write clearly and with proficiency ("**Fluent in English**") in order to adequately communicate with Accounts and to maintain OpenWorks' professional image.  OpenWorks, in its sole discretion, shall determine if you and/or your Designated Manager are Fluent in English.

       **7.2.13   Social Media Policy**.  We have the right to control all use of URL's, domain names, websites, addresses, metatags, links, email addresses and other means of electronic identification or origin ("e-names") related to the Janitorial Business and System.  We also have the right to approve and limit your use of the Internet, Intranet, World Wide Web, wireless technology, digital cable, use of e-names, email, websites, home pages, bulletin boards, chat rooms, email, framing, on-line purchasing cooperatives, marketplaces, barter exchanges, and related technologies, methods, techniques, registrations, networking, and any electronic communication, commerce, computations, or any means of interactive electronic documents contained in a network of computers or similar devices linked by communications software (collectively, "e-commerce").  Without our prior written consent, you will observe OpenWorks' policy on and will not register a domain name, create, maintain or establish an internet website or electronic mail address, blog, bulletin board, chat room, barter exchange, home page, marketplace, Facebook page, MySpace, Twitter YouTube, LinkedIn, account or any other electronic media form (collectively, "website") advertising the Janitorial Business, or using our Marks, or any similar mark, in a website, in a web address, in a uniform resource locator or in any manner on the internet such as meta-tags, key words, linking or framing.  You agree that we own all right, title and interest in and to, any and all websites and e-names we use or permit you to use in connection with the System or which bear our Marks or any similar marks.  You agree that we also own all rights in any data collected via e-commerce related to the System, including any customer data, click-stream data, cookies, user data and hits and that such information is also included in our Confidential Information.  You acknowledge that you may not mention or discuss the Janitorial Service, OpenWorks or the System without OpenWorks' prior written consent.  Any and all photographs and other media approved by us that you have posted to any social media platform must comply with all applicable laws, including federal and state laws governing copyright.  You agree and acknowledge that OpenWorks has the right to review all on-line e-commerce content involving the Marks or the System, and to require you to remove any content or usage, in OpenWorks' sole discretion.

       **7.3     Insurance and Bond**.  You will be required to comply with the following policies regarding insurance and janitorial service bonds:

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0144**

- You must purchase and maintain a policy or policies of comprehensive public liability insurance, including product liability coverage, covering all Janitorial Service assets, personnel and activities on an occurrence basis with a combined single limit for bodily injury, death or property damage of not less than $4,000,000.

- In some instances an Account may request additional insurance, which you will have to additionally purchase.

- You must buy a janitorial service bond in the amount of $25,000 covering you and your employees and OpenWorks and its officers and directors must be named as an additional insured.

- You must obtain hired and non-hired auto insurance with a minimum of $25,000 - $50,000 liability coverage on all vehicles involved in the OpenWorks business.

- You must carry casualty insurance in a minimum amount equal to the replacement value of your interest in the Janitorial Service supplies, vehicles and equipment.

- You must maintain workers compensation policies for your employees.

- You must maintain policies of disability insurance and any other types of insurance required by applicable law.

- OpenWorks may increase the minimum coverage requirements set forth in this Section 7.3 annually if necessary to reflect inflation or other changes in circumstances.

- Each insurance policy that is required under this Section 7.3 must contain a provision that the policy cannot be canceled without 10 days' written notice to OpenWorks; it must be issued by an insurance company of recognized responsibility, designate OpenWorks and its officers and directors as an additional named insured, and be satisfactory to OpenWorks in form, substance and coverage.  You must deliver a certificate of the issuing insurance company evidencing each policy or bond to OpenWorks within ten days after the policy is issued or renewed.

- If you fail to purchase the required general liability insurance, any additional insurance and bond, OpenWorks may enroll you in any insurance program it sponsors or purchase the insurance and/or bond for your benefit and deduct the premiums and other related costs from your monthly Gross Revenue.  Failure to maintain the bond or the required amounts and types of insurance set forth in any subsection of this Section 7.3, or any other insurance required by applicable law, may result in a loss of Accounts or termination of your franchise.

**7.4**     **Financial and Legal Responsibility**.

      **7.4.1**     **Compliance with Law**.  You must comply with all federal, state and local laws and regulations pertaining, directly or indirectly, to the Janitorial Service, including, but not limited to, Occupational Safety and Health Administration regulations.  You must keep current all licenses, permits, bonds and deposits made to or required by any government agency in connection with the operation of the Janitorial Service.  You must implement all administrative, physical and technical safeguards necessary to be in accordance with applicable law and best industry practices to protect any information that can be used to identify an individual, including names, addresses, telephone numbers, email addresses, social security numbers, employee identification numbers, signatures, passwords, financial information, credit cards information, vehicle identification numbers, account numbers, biometric or health data,

government-issued identification numbers and credit-report information ("Personal Identifiable Information" or "PII"). It is your responsibility to confirm that the safeguards you use to protect Personal Identifiable Information comply with all applicable laws and industry best practices related to the collection, access, use, storage, disposal and disclosure of PII even if OpenWorks provides you with any suggestions or guidance. If you become aware of any suspected or actual breach of security or unauthorized access involving Personal Identifiable Information, you will immediately notify OpenWorks and provide specifics on the Personal Identifiable Information was compromised or disclosed. Upon OpenWorks' reasonable request, you agree to permit OpenWorks, its affiliates, and any third party vendors OpenWorks designates to have independent unlimited access to all information generated by your computer system. If you have a third party vendor for your computer system, you agree to send your vendor a written notice granting OpenWorks unlimited access to your data in the event of an actual or suspected data breach. You specifically agree to comply with any state required employment verification programs and any federal employment verification programs such as E-Verify.

> **7.4.2    Payment of Indebtedness**. You must pay promptly when due all taxes and debts that you incur in the conduct of your business.

**7.5    Pre-Existing Accounts**. If you have an existing commercial janitorial or other facility services business prior to entering into this Agreement, the commercial accounts serviced by that business ("**Existing Accounts**") must be identified in Attachment 2 to this Agreement. You shall have two months from the date of this Agreement to convert the Existing Accounts to OpenWorks Accounts for which OpenWorks will provide billing and collection services as provided for in Section 5.4.1 of this Agreement, after which time OpenWorks will have the right (whether or not conversion has been completed) to begin charging royalties and other applicable fees or charges. You must also immediately cease soliciting any commercial janitorial or other facilities services business, except as an OpenWorks Franchisee.

**7.6    Variances**. OpenWorks may from time to time approve exceptions or changes from the uniform standards of the System that OpenWorks, in its sole absolute discretion, believes necessary or desirable under particular circumstances. Franchisee understands that it has no right to object to or automatically obtain such variances, and that any exception or change must be approved in advance by OpenWorks in writing. Franchisee also understands that some franchisees may operate under different forms of agreements due to annual updates and program revisions, and consequently the rights and obligations of such franchisees may differ materially from those of Franchisee.

**7.7    Computer System**. You must have a computer system that meets the requirements specified in the Manual, as may be revised from time to time. In order to communicate with OpenWorks you must also have Internet and email access. You must inform OpenWorks of any changes in the email account address listed in Article 1 before the change occurs.

**7.8    Certificate of Tax Compliance**. Franchisee must, within ten days of each one year anniversary of the Effective Date of this Agreement, deliver to OpenWorks a certificate signed by one of Franchisee's officers, certifying, on behalf of Franchisee, that as of the date such certificate is delivered to Franchisee, Franchisee has complied with all laws of the state of its formation or incorporation relating to taxes and reporting of employees.

**8.    RELATIONSHIP OF PARTIES**.

**8.1    Interest in Marks and System**. You will not at any time do or cause to be done anything contesting or impairing OpenWorks' interest in its Trade Names, Marks or System. You acquire no rights in any of these things except for your right to use them in accordance with the express terms of

this Agreement.  OpenWorks retains the right to grant other franchises or licenses to use the Trade Names, Marks and System upon any terms that OpenWorks wishes both within and without the Territory.

**8.2     Independent Status**.  Whether you are an individual or an independent legal entity, you will make this fact clear in your dealings with suppliers, lessors, government agencies, employees, Accounts and others.  You will rely on your own knowledge and judgment in making business decisions, subject only to the requirements of this Agreement and the Manual.  You may not expressly or impliedly hold yourself out as an employee, partner, shareholder, joint venturer, representative or general agent of OpenWorks, nor may you expressly or impliedly state or suggest that you have the right or power to bind OpenWorks or to incur any liability on its behalf.  If you are a corporation, partnership or other form of legal entity, you will not use the Trade Names as part of your entity's name.  We have no right to control your employment policies, including hiring, scheduling, pay rates, discipline or termination of your employees, except that you must adhere to our System standards in your Janitorial Business.

**8.3     Display of Disclaimer**.  Business cards, stationery, purchase order forms, invoices, leases, tax returns and other documents used by you in your business dealings with suppliers, lessors, government agencies, employees and Accounts must clearly identify you as an independent legal entity.

**8.4     Indemnification**.  You agree to indemnify, hold harmless and promptly reimburse OpenWorks and its Affiliates, and their directors, officers, employees and agents, harmless from and against all expenses, costs, claims, actions, proceedings, damages, liabilities and other losses (including, without limitation, attorneys' and accountants' costs and fees) of any kind arising from or in any way connected to any of your or your Affiliates' activities or your or your Affiliates' operation of the Janitorial Service.  If OpenWorks or any other indemnified party is made a party to a legal proceeding in connection with an action of yours or your Affiliates, OpenWorks or the other indemnified party may hire counsel to protect its interests and you must promptly pay all costs and expenses they incur.

**8.5     Confidential Information**.

**8.5.1     Ownership**.  You acknowledge that OpenWorks is the sole owner of all the Confidential Information; that the Confidential Information is being imparted to you in trust and confidence; and that the Confidential Information is not generally known to the trade or public and is not known to you except by reason of such disclosure.  You further acknowledge that you will acquire no interest in the Confidential Information other than the right to utilize it in connection with the performance of your obligations hereunder and the operations of the Janitorial Service.  In addition, you acknowledge that the use, duplication or disclosure of the Confidential Information except as expressly permitted by this Agreement will constitute an unfair method of competition and that OpenWorks will suffer irreparable injury thereby.

**8.5.2     Work Product**.  You agree that all documents, papers, notes and other material and work product containing or derived from the Confidential Information or connected with your conduct of the Janitorial Service business shall be Confidential Information. You agree that you will have no proprietary interest in any work product developed or used by you and related to this Agreement.  You agree, from time to time, as may be requested by OpenWorks, to do all things that may be necessary to establish or document OpenWorks' ownership of any such work product, including without limitation execution of assignments.

**8.5.3     Confidentiality**.  All of the Confidential Information and all other information and knowledge about the System, which is not in the public domain, and such other information and material as OpenWorks may designate as confidential shall be deemed Confidential Information for purposes of this Agreement.  You acknowledge that the Confidential Information is disclosed to you solely on the condition that you agree, and you hereby do agree, that you:  (a) will use the Confidential

Information in strict accordance with the instructions and directions given by OpenWorks from time to time; (b) will not use the Confidential Information, directly or indirectly, in any other business or capacity; (c) will not, at any time, in any manner or form, directly or indirectly, disclose, duplicate, license, sell, reveal, divulge, publish or communicate the Confidential Information, or any portion thereof, to any person or entity other than your authorized employees or consultants who need to have such information in connection with their jobs; (d) will not copy any materials containing the Confidential Information, including without limitation the System manuals, without OpenWorks' prior written consent; (e) will observe and implement all reasonable procedures imposed from time to time by OpenWorks to prevent the unauthorized use and disclosure of the Confidential Information; (f) will keep all System manuals and other written materials containing any portion of the Confidential Information in a secure manner and place; and (g) if you are legally compelled to disclose any of the Confidential Information, will do so only if you have used your best efforts to afford OpenWorks the opportunity of obtaining appropriate protective orders or other assurances of confidentiality satisfactory to OpenWorks.

**8.5.4     Return of Confidential Material**.  Upon the termination, expiration or cessation and non-renewal of this Agreement for any reason, you must immediately (but in any event within five days of such termination, cessation or expiration) return to OpenWorks all copies of any materials containing the Confidential Information (whether in original or duplicate form) and all property and equipment belonging to OpenWorks, in your or your Affiliates' possession, custody or control, including any of such items produced or prepared by you.  To the maximum extent permitted by the law, OpenWorks reserves the right to deduct the cost of unreturned or damaged property, equipment or information from amounts otherwise due to you or your Affiliates.

**8.6     Noncompetition**.

**8.6.1     Covenant**.  You recognize that: (a) the commercial janitorial and other facility services business is very competitive; (b) the System is operated in multiple states and is intended to expand into other geographical areas; (c) by virtue of the performance of this Agreement, you will have access to the Confidential Information and will have close contacts with OpenWorks' Accounts for the purpose of maintaining and further developing the business and goodwill of the System; (d) you will have the attendant ability to divert customer trade; and (e) OpenWorks has strong legitimate interests in obtaining the covenant in this Section 8.6 for the protection of the goodwill of the System.  You therefore agree that, without the express prior written consent of OpenWorks, which OpenWorks may withhold in its sole and absolute discretion, you will not, during the Time Period (as defined below), directly or indirectly, whether personally or as an agent, employee, partner, representative, affiliate or in any other capacity on behalf of any person or entity, engage in, render services to, or provide financing to, or have any interest in, in any manner whatsoever, any Competitive Business (as defined below) located or conducting business within the Area (as defined below).

**8.6.2     Time Period**.  For the purposes of Section 8.6.1 of this Agreement, the term "**Time Period**" shall mean (a) for the period of time that this Agreement is in effect; and (b) beginning when this Agreement is no longer in effect, for a period of 24 months thereafter.  In the event a court of competent jurisdiction determines that 24 months from the date this Agreement is no longer in effect is unenforceable, the Time Period will be 18 months.  If a court of competent jurisdiction determines that 18 months is unenforceable, the Time Period will be 12 months.  If a court of competent jurisdiction determines that 12 months is unenforceable, the Time Period will be six months.

**8.6.3     Competitive Business**.  For the purposes of Section 8.6.1 of this Agreement, the term "**Competitive Business**" shall mean any business providing janitorial services to commercial customers, or any other services that you are or were providing as part of your Janitorial Service business.

26

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0148**

**8.6.4   Area**.  For the purposes of <u>Section 8.6.1</u> of this Agreement, the term "**Area**" shall mean (a) the geographical area in which you provide or provided services to Accounts, and (b) a radius of 75 miles from the regional office through which you conduct or conducted your Janitorial Service business, and (c) a radius of 75 miles from any other regional office operated by OpenWorks or any of its master franchisees in the state where you conduct or conducted your Janitorial Service business, and (d) a radius of 75 miles from any other regional office operated by OpenWorks or any of its master franchisees in any other state.

**8.7   Non-Solicitation**.

**8.7.1   Employees**.  You agree never to employ or solicit for employment any person who is at the time employed by OpenWorks or any other franchisee in the System, and you agree not to directly or indirectly induce any such person to leave their employment with OpenWorks or any other franchisee in the System.

**8.7.2   Customers**.  You agree that while this Agreement is in effect, all solicitations you make relating to janitorial and other facility services will be made on behalf of your Janitorial Service business.  You agree that after the expiration and non-renewal or the termination of this Agreement for any reason, you will not solicit as a customer for commercial janitorial or other facility services: (a) any Account you serviced as a franchisee of OpenWorks, or (b) any other Account of OpenWorks or any of its master franchisees serviced by others during the period this Agreement was in effect, or (c) any prospective customers to whom OpenWorks or any of its master franchisees had proposals or bids outstanding at the time this Agreement ended.

**8.8   Modification**.  The covenants set forth in <u>Sections 8.1</u> through <u>8.7</u> inclusive of this Agreement shall each be construed as independent of any other covenant or provision of any other agreement.  OpenWorks may reduce the scope of the obligations under the covenants of <u>Sections 8.1</u> through <u>8.7</u> inclusive of this Agreement unilaterally and without the consent of any other person or entity, effective upon giving notice to you.

**8.9   Lack of Prior Conflict**.  You represent and acknowledge that none of you (if you are an individual), any person who owns any interest in your business nor your Designated Manager is bound by any post-employment covenant with a third-party that would restrict the fulfillment of your obligations or duties under this Agreement.  To the extent any such person is bound by any such post-employment covenants, you represent and warrant that you have provided OpenWorks with a copy of the applicable written covenant.

**8.10   Notification**.  During the Time Period, you shall notify any new employer or business associate, prior to entering into the employment or business relationship, of the existence of this Agreement and will provide such new employer or business associate with a copy of this Agreement.  You further agree and authorize OpenWorks to notify others, including customers of OpenWorks and your future employers or business associates of your obligations under this Agreement.

**8.11   Tolling of Time Periods**.  The running of the Time Period or any period of time specified in <u>Section 8.6.1</u> or <u>Section 8.6.2</u> of this Agreement will be tolled and suspended for any period of time in which you are found by a court of competent jurisdiction to have been in violation of any restrictive covenant contained therein.  You further agree that the existence of any claim you may have against OpenWorks, whether or not arising from this Agreement, shall not constitute a defense to OpenWorks' enforcement of the covenants contained in this Agreement.

**8.12   Non-Disclosure and Non-Competition Agreements**.  You must obtain written non-disclosure and non-competition agreements, in the form of <u>Attachment 4</u> to this Agreement, signed by

27

each of the individuals who owns 5% or more of your business, and by the officers, directors, managers and other employees or consultants, including, but not limited to, your Designated Manager, who have or are likely to have access to the Confidential Information, and promptly send OpenWorks a copy of each such agreement.

**9.     TRANSFER**.

      **9.1     Purpose of Conditions for Approval of Transfer**.  OpenWorks' grant of this franchise to operate a Janitorial Service is made in reliance upon your integrity, ability, experience and financial resources and OpenWorks' investigation thereof.  You may not make a Transfer (as defined in Section 3.21 of this Agreement) unless you have first obtained OpenWorks' written consent, which will not be unreasonably withheld if you comply with this Article 9.  In order to ensure that no Transfer jeopardizes the Trade Names, the Marks, or OpenWorks' interest in the successful operation of the Janitorial Service, OpenWorks will consent to a Transfer only if you comply with all of the applicable provisions of this Article 9.  You must obtain our commercially reasonable consent to any broker or transfer agent that you wish to use.  You must not use any of the Marks in any listing for sale or transfer without our prior written approval.  You must obtain our prior written approval of any advertising for any Transfer.

      **9.2     Notice of Proposed Transfer**.  If you wish to make a Transfer (including the Required Transfer), you must submit to OpenWorks (a) the form of franchise purchase application currently in use by OpenWorks completed by the prospective transferee; and (b) a written notice, setting forth all the terms and conditions of the proposed Transfer.

      **9.3     Consent by OpenWorks**.  OpenWorks must respond to your written notice within 15 days after receipt of the notice, or, if it requests additional information, within the later date of 15 days after receipt of the additional information or the final day of the original 15-day period.  OpenWorks may either consent to the Transfer or state its reason for refusing to consent.  Silence will not be construed as consent.  If OpenWorks consents to the Transfer, then you may Transfer the interest described in the notice only to the named transferee and only upon the terms and conditions set forth in the notice and OpenWorks' consent.  Consent by OpenWorks to a particular Transfer will not constitute consent to any other or subsequent Transfer.  You acknowledge that OpenWorks' consent to the Transfer is not a representation to you that any transferred Account will continue as an OpenWorks' Account or that the Account will use your services.  OpenWorks has no obligation to you to disclose any concerns, complaints or Maintenance Agreement negotiations it had in the past or might have in the future with respect to any transferred Account.  You understand that there is no assurance that any Account will renew or extend its Maintenance Agreement with OpenWorks.

      **9.4     Conditions for Consent to Transfer**.  Unless a waiver in Section 9.5 applies to some or all of the conditions set forth below in this Section 9.4, every Transfer is subject to all of the following requirements:

      (a)     Transferee must be a legal entity;

      (b)     OpenWorks' satisfaction that the proposed transferee meets all of the criteria of character, business experience, financial resources and other standards that OpenWorks customarily applies to new franchisees at the time of Transfer; and if the Transfer is to an existing OpenWorks franchisee, the franchisee must be in Good Standing and fully capable, in OpenWorks' sole reasonable judgment, of servicing the additional business;

      (c)     Payment of all your outstanding debts to OpenWorks;

(d)     Cure of all defaults under the Franchise Agreement, any other agreement between OpenWorks and you, and the Manual;

(e)     Signing by the transferee of the then-current form of franchise agreement, which may contain terms substantially different from those in this Agreement, but in any event amended to waive payment of an initial fee by the proposed transferee; to shorten the term to the remainder of your current term; to provide that no supplies will be provided by OpenWorks; to state that that no training is provided unless the $250 training fee is paid; to identify whether OpenWorks has fulfilled its obligations on the Initial Account Volume or to state the remaining Initial Account Volume that OpenWorks is obligated to provide; and to clarify any remaining obligations of OpenWorks;

(f)     Providing OpenWorks with (i) the names and residential addresses of the owners and the officers or managers of any entity to whom a Transfer is being proposed, and their relative percentages of ownership; and (ii) the address where the entity will keep its business records;

(g)     Payment of the Transfer fee of $2,000, or if only one or more (but not substantially all) of your Accounts are being transferred, a Transfer fee of $50 for each transferred Account;

(h)     Completion by the transferee's owners and Designated Manager of OpenWorks' initial training program to its satisfaction, and payment of the $250 training fee to OpenWorks;

(i)     Signing of a Non-Disclosure and Non-Competition Agreement substantially in the form of Attachment 4 to this Agreement by each entity to whom a Transfer is made and each of transferee's 5% owners, officers, directors, managers and other employees and consultants, including, but not limited to, transferee's Designated Manager, that have or may have access to Confidential Information;

(j)     Signing of a Personal Guaranty substantially in the form of Attachment 3 to this Agreement by each 5% owner of the entity to whom a Transfer is made (and by each such owner's spouse in a community property state);

(k)     Signing of a general release of claims by you in favor of OpenWorks; and

(l)     Offering OpenWorks a first right of refusal to acquire the assets and/or interests that are subject to the Transfer, as provided in Section 9.6 of this Agreement.

In no event will OpenWorks' consent to a Transfer of any of your interest or any of your assets constitute a waiver of claims OpenWorks may have against you or the individual transferring party, nor shall it be deemed a waiver of OpenWorks' right to demand exact compliance with any terms of this Agreement by the transferee.

**9.5     Waivers of Some Conditions Upon Certain Types of Transfers**.

**9.5.1     Accounts**.  In the event of a Transfer of one or more (but not substantially all) of your Accounts, OpenWorks waives the requirements of parts (e), (f), (h), (i) and (j) of Section 9.4.

**9.5.2     Incorporation**.  In the event of a Transfer to a transferee where the beneficial ownership of the transferee immediately following the assignment is the same and in the same proportions as the beneficial ownership of Franchisee immediately before the assignment, then provided that the original party remains fully obligated under this Agreement, OpenWorks waives all of the

requirements of parts (b), (c), (e), (h), (i) and (l) of <u>Section 9.4</u>. In lieu of part (g), the Transfer fee is $500. The legal entity to which the Janitorial Service or franchise rights were transferred may not participate in or undertake any business venture or activities other than operating the Janitorial Service.

   **9.5.3 Transfer of Partial Interest Between Co-Owners**. In the event of a Transfer of a partial ownership interest in Franchisee to an existing co-owner, OpenWorks waives all of the requirements of parts (b), (c), (e), (g), (h), (i), (j) and (l) of <u>Section 9.4</u>; *except that* if the co-owner who will be acquiring a greater ownership interest has not successfully completed OpenWorks' initial training program and will have a controlling interest or will be active in the business, then part (g) of <u>Section 9.4</u> must be satisfied.

   **9.5.4 Required Transfer**. In connection with the Required Transfer, OpenWorks waives all of the requirements of parts (b), (e), (g), (h) and (l) of <u>Section 9.4</u>.

   **9.5.5 Transfer of Minority Interest to a Third Party**. In the event of a Transfer of less than 50% of the ownership interests in the Janitorial Service business of Franchisee to anyone who does not already have an ownership interest in Franchisee, OpenWorks waives all of the requirements of parts (e), and (l) of <u>Section 9.4</u>. In lieu of part (g), the Transfer fee is $1,000.

   **9.5.6 Employee Stock Options**. In the event of a Transfer to any of your employees under any employee stock option plan or stock purchase plan, then provided that the cumulative total amount of such actual and optional ownership interests does not exceed 33% of the current or the possible future ownership interests in your corporation, and that any share certificate distributed under such a plan is marked with a legend describing the restrictions and conditions of Transfer required by this Agreement, OpenWorks waives all of the requirements of parts (b), (c), (e), (f), (g), (h), (i), (j) and (l) of <u>Section 9.4</u>.

   **9.5.7 Death or Substantial Disability**. If you die, or become substantially and permanently disabled (whether physically or mentally as reasonably determined by an independent, qualified third-party) while this Agreement is in effect and prior to the Required Transfer, your heirs or representative will have 60 days within which to demonstrate to OpenWorks' satisfaction that they meet all of the criteria of character, business experience, financial responsibility, net worth and other standards that OpenWorks requires of new franchisees at that time. If OpenWorks approves your heirs or representative as transferees, OpenWorks will waive the requirement of part (g) of <u>Section 9.4</u>. If OpenWorks advises your heirs or representative in writing that it will not approve them as transferees of the franchise, or if OpenWorks fails to approve or disapprove the Transfer within 60 days following your death and disability, your heirs or representative will have 120 additional days from the date of disapproval of the Transfer within which to find and notify OpenWorks of a proposed Transfer to a qualified transferee in conformity with the provisions of <u>Sections 9.2</u>, <u>9.3</u>, <u>9.4</u> and <u>9.5</u> of this Agreement. If your heirs or representative do not advise OpenWorks of a qualified transferee within the specified period, the franchise will automatically terminate at the end of the period unless a written extension of time has been granted by OpenWorks.

  **9.6 OpenWorks' Right of First Refusal**. Except as otherwise provided in <u>Section 9.5</u> above, if you wish to make a Transfer, you must first give OpenWorks written notice of all the terms of the proposed Transfer, which must be a bona fide offer from a bona fide source, and all available information about the proposed transferee, together with copies of all documentation including any written offer. Within 15 days after receipt of the notice and documentation, OpenWorks may, at its option, elect to become (or have its nominee become) the transferee. The exercise of the option shall be upon the terms specified in the notice and documents, subject to a set off for all amounts you and your Affiliates owe to OpenWorks. If OpenWorks declines to exercise its option within the time specified, you may thereafter make the Transfer to an approved transferee (but not on more favorable terms that those offered to OpenWorks) provided that all of the requirements of <u>Section 9.4</u> (subject to the waivers

provided for in Section 9.5) are satisfied.  If the Transfer is not made within six months from the date of the notice to OpenWorks, then you must give OpenWorks another notice and option as provided in this Section 9.6 before you make any Transfer.

      **9.7**    **Assignment by OpenWorks**.  OpenWorks may assign this Agreement or any rights or obligations created by it, in whole or in part, at any time to any third-party, including without limitation, to any of your competitors or an OpenWorks master franchisee who will have exclusive rights to administer the OpenWorks Cleaning Systems regional office for your franchised business.  Such an assignment may be made without your consent upon condition that the assignee expressly agrees in writing to assume OpenWorks' obligations under this Agreement.

      **9.8**    **Legend**.  Any certificates representing shares or interests in Franchisee, whether already or hereafter issued by Franchisee, shall, from and after the date hereof, bear a legend sufficient under applicable law to constitute notice of the restrictions on such shares or interest contained in this Agreement and to allow such restrictions to be enforceable.  Such legend shall appear in substantially the following form:

> "The sale, transfer, pledge or hypothecation of [this stock/these interests/these units] is restricted pursuant to Article 9 of a Franchise Agreement dated _____, between OpenWorks and the issuer of these securities."

## 10.    TERMINATION OF FRANCHISE.

      **10.1**    **Termination by Consent of the Parties**.  This Agreement may be terminated at any time upon the mutual written consent of the parties.

      **10.2**    **Termination by OpenWorks**.  In addition to OpenWorks' rights to terminate this Agreement as provided elsewhere in this Agreement, OpenWorks may terminate this Agreement as provided in this Section 10.2.

      **10.2.1**    **Acts of Default**.  Upon the single occurrence of **any** one of the following defaults by you or your Affiliates and after notice and an opportunity to cure (as provided in Section 10.2.2), if any, OpenWorks, at its option, may terminate this Agreement:

(a)    If you or any of your owners or Affiliates has any direct or indirect interest in the ownership or operation of any business that provides commercial janitorial or other facility services to customers;

(b)    If you or your Affiliates fail to submit to OpenWorks in a timely manner any information you are required to submit under this Agreement;

(c)    If you or your Affiliates fail to begin operation of a Janitorial Service by the date required in this Agreement, or if you fail to operate a Janitorial Service in accordance with this Agreement and the Manual;

(d)    If you or your Affiliates act without prior written approval or consent of OpenWorks in regard to a matter for which its prior written approval or consent is expressly required by this Agreement;

(e)    If you or your Affiliates default in the performance of any material obligation under this Agreement or any other agreement with OpenWorks;

(f)     If you or your Affiliates are not actively engaged in providing the Janitorial Service, unless: (i) operations are suspended for a period of no more than three months and you have paid the Minimum Account Service Fee due under <u>Section 6.14</u>, or (ii) the suspension was caused by fire, condemnation, or act of God;

(g)     If you or your Affiliates misuse the Trade Names, Marks or the System or engage in conduct which reflects materially and unfavorably upon the goodwill associated with them, or if you use any names, marks, systems, logotypes or symbols that OpenWorks has not authorized you to use in connection with your Janitorial Service;

(h)     If you or your Affiliates have made any material misrepresentation in connection with the assignment of an Account, or to induce OpenWorks to enter into this Agreement;

(i)     If you or your Affiliates fail to permanently correct a breach of this Agreement or to meet the standards set out in the Manual after being twice requested in writing by OpenWorks to correct the problem in any 12 month period;

(j)     If OpenWorks makes a reasonable determination that the operation of the Janitorial Service poses a threat to public health or safety;

(k)     If you or your Affiliates fail to make any payment when due under this Agreement or any other agreement between you and OpenWorks or an Affiliate of OpenWorks;

(l)     Except as otherwise required by the United States Bankruptcy Code, if you become insolvent, are adjudicated as bankrupt, or file or have filed against you a petition in bankruptcy, reorganization or similar proceeding;

(m)     If you or your Affiliates attempt to assign your rights under this Agreement in any manner not authorized by this Agreement;

(n)     If you or your Affiliates are convicted of a felony or any criminal misconduct or offense (even if not a crime) that is reasonably likely, in the sole opinion of OpenWorks, to have a material adverse effect to the System, the Trade names or the Marks, or the goodwill associated with any of the foregoing;

(o)     If you or your Affiliates commit any of the defaults described above and have twice previously, within a 12-month period, been given notice by OpenWorks of the same type of default, whether or not the prior defaults were cured;

(p)     If you or your Affiliates have taken such action that would permit OpenWorks to terminate your right to service an Account under paragraphs (a) through (i) inclusive of <u>Section 7.2.5.</u> of this Agreement;

(q)     If you fail to maintain policies of workers compensation insurance required in <u>Section 7.3</u>, disability insurance or any other types of insurance required by law; or

(r)     If you or your Affiliates willfully make or have made any material false statement or report to OpenWorks or its Affiliates in connection with this Agreement, any other agreement between you and OpenWorks or its Affiliates, or any applications presented to OpenWorks or its Affiliates that has a material adverse effect on OpenWorks, its Affiliates or the System.

32

**10.2.2  Notice of Default**.  Termination will be effective automatically 30 days after written notice of default is given to you, specifying any of the defaults described in subsections (b) through (j) inclusive of Section 10.2.1, if the default has not been cured within the 30-day period.  For a monetary default described in subsection (k), termination will be effective automatically five days after written notice specifying amounts due to OpenWorks is given to you, if the default is not cured within the 5-day period.  Termination will be effective immediately upon written notice to you if any of the defaults described above in subsections (a) or (l) through (r) inclusive occurs.

**10.3     Termination by You**.  You may terminate this Agreement upon 90 days' written notice to OpenWorks if the conditions of Section 10.4 of this Agreement are met in full within the specified time periods.

**10.4     Rights and Obligations After Termination**.  Upon the Termination of this Agreement by either party for any reason, all of your Accounts shall automatically revert to OpenWorks and the parties will have the following rights and obligations:

(a)     OpenWorks will have no further obligations under this Agreement except to settle up with you with respect to payments due and owed prior to the Termination under Section 5.4 and Article 6 of this Agreement;

(b)     You must pay OpenWorks, within 30 days after Termination, all payments due to OpenWorks;

(c)     You must immediately and permanently cease the use of the Trade Names and Marks or any confusingly similar names or marks, the System, and advertising, signs, stationery and forms that bear identifying marks or colors that might give others the impression that you are associated with the System;

(d)     You must immediately deliver to OpenWorks the Manual, all Accounts' keys, security codes and cards, and any other proprietary material belonging to OpenWorks or any Account which is in your possession or the possession of your employees and otherwise comply with Section 8.5.4;

(e)     You must immediately provide OpenWorks with a list of all Accounts and customers and facilities you or your Affiliates are servicing or had serviced at any date during the 12 months preceding the date of Termination;

(f)     You must assign to OpenWorks or its designee any Accounts obtained by you that do not have an existing Maintenance Agreement with OpenWorks;

(g)     You will take such action as may be required by OpenWorks to transfer and assign to OpenWorks or its designee or to disconnect and forward all telephone numbers, white and yellow page telephone references and advertisements, and all trade and similar name registrations and business licenses, and to cancel any interest that Franchisee may have in the same; and

(h)     You must, without any consideration, cancel or assign to OpenWorks all right, title and interest in any Internet and web site home pages, domain name listings, and registration that contain the Trade Names or Marks, or any of them, in whole or in part, and shall notify the applicable domain name registrars and all listing agencies, upon the termination or expiration hereof, of the termination of your right to use any domain name,

33

web page and other Internet device associated with OpenWorks, and authorize and instruct their cancellation or transfer to OpenWorks, as directed by OpenWorks.

If the franchise granted in this Agreement is terminated because of your default, the rights of OpenWorks described above will not necessarily be its exclusive remedies, but will instead supplement any other equitable or legal remedies available to OpenWorks.  If this Agreement is terminated because of your material default, nothing in this Section will be construed to deprive OpenWorks of the right to recover damages as compensation for lost profits.  Termination of this Agreement will not extinguish any obligation of either party that has accrued prior to Termination.  All obligations of the parties, which by their terms or by reasonable implication are to be performed in whole or in part after Termination, will survive Termination.

## 11.   MISCELLANEOUS PROVISIONS.

**11.1   Construction of Contract**.  Section headings in this Agreement are for reference purposes only and will not in any way modify the statements contained in any Section of this Agreement. Each word in this Agreement will be deemed to include any number or gender that the context requires. If there is any conflict between this Agreement and the Manual, this Agreement will control.

**11.2   Governing Law**.  Except for matters relating solely to Sections 8.4, 8.6, 8.7 and 8.8 and Attachment 4 of this Agreement, which are governed by the laws of the state in which the Territory is located and except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. § 1051 et seq), this Agreement and all matters relating to it, shall be governed by and interpreted by the laws of the State of Arizona; *provided, however*, that if any of the provisions of this Agreement would not be enforceable under the laws of Arizona, then such provisions shall be governed by the laws of the state in which the Territory is located; *and provided further* that the Franchise Disclosure Document delivered to you contains a State Law Addendum, which is hereby incorporated into this Agreement, referencing and summarizing certain existing local laws of other jurisdictions, and the application of Arizona law shall not abrogate or reduce any of your rights provided for under such existing local laws which by their terms apply and supersede Arizona law (unless local law conflicts with federal law and is preempted).

**11.3   Notices**.  Each party to this Agreement shall direct any notice to the other party to the address in Article 1 of this Agreement, or at another address if advised in writing that the address has been changed.  Notice may be delivered by facsimile (with simultaneous posting of a copy by first class mail), commercial courier, or first class mail.  Notice by facsimile will be deemed delivered upon transmission; by courier, upon delivery; and by first class mail, three days after posting.

**11.4   Amendments**.  This Agreement may be amended only by a document signed by all of the parties to this Agreement or by their authorized agents.

**11.5   Waiver**.  Waiver of any breach of this Agreement will not be interpreted as a waiver of any subsequent breach.

**11.6   Integration**.  This Agreement, any exhibits or attachments to it, and the Franchise Disclosure Document that has been provided to you, constitute the entire agreement between the parties concerning the franchise granted under this Agreement, and supersede all prior and contemporaneous agreements and representations concerning the subject matter hereof; provided, however, that nothing herein is intended to disclaim the representations made in the Franchise Disclosure Document furnished to you.

**11.7    Modification**.  The parties to this Agreement recognize that carrying out the overarching purpose of this Agreement, the creating of an effective, up-to-date, competitive consumer-oriented System under OpenWorks' name and Marks, and enhancing the potential value of that System for both OpenWorks and franchise owners as a group, requires flexibility in establishing and modifying standards for performance and operation under this Agreement, and may involve OpenWorks' development of other business activities not encompassed by the terms of this Agreement, taking particular account of the fact that business conditions and other circumstances are likely to change during the stated term of this agreement.  The parties have addressed the prospect for such developments by the express provisions of this Agreement, including in particular, the provisions hereof defining the nature and scope of this Agreement and your obligation to observe the requirements of OpenWorks' Manual as it may, from time to time, be amended by OpenWorks to address efforts to maintain the long-term viability of OpenWorks' name, trademarks and other intellectual property rights, and/or its overall franchised System, among other things.  No provision of this Agreement is to be read as creating a limitation on the right of OpenWorks to take such action except as the provision clearly and expressly establishes such a limitation.

**11.8    Arbitration**.  Any dispute or claim (a "**Claim**") arising out of or in connection with this Agreement shall be resolved by arbitration; provided, however, that OpenWorks shall not be required to arbitrate any Claim with respect to the ownership or use of its Trade Names or Marks, all of which issues will be submitted to a court within the State of Arizona. The parties expressly consent to personal jurisdiction in the State where our principal place of business is located, currently the State of Arizona and agree that the state and federal court(s) will have exclusive jurisdiction over any such issues not subject to arbitration.  The arbitration shall be held where our principal place of business is located, currently the City of Phoenix, Arizona, governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16, and conducted by one or more independent arbitrators who are experienced in franchise matters and have no past or present relationship with either party, appointed as set forth in this Section 11.7.  This arbitration clause will not deprive either party of any right it may otherwise have to seek provisional injunctive relief from a court of competent jurisdiction.  If there is any question as to whether a Claim is subject to arbitration, then the decider of the first open action shall decide this issue such that if an arbitration was the first action to have been filed, the arbitrator shall make such determination and if a party has first sought provisional injunctive relief from a court of competent jurisdiction, then that court shall decide if a claim is subject to arbitration.  If proper notice of any hearing has been given, the arbitrator will have full power to proceed to take evidence or to perform any other acts necessary to arbitrate the matter in the absence of any party who fails to appear.  Any Claims shall be decided on an individual and not a class-wide basis.  You waive any rights you may have to demand trial by jury or to seek punitive damages from OpenWorks or its Affiliates.  The arbitrator will have no power to (i) stay the effectiveness of any pending Termination of this Agreement; (ii) assess punitive damages; or (iii) make any award that modifies or suspends any lawful provision of this Agreement.  All expenses of arbitration must be paid by the party against whom the arbitrator renders a decision.  The award made by the arbitrator shall be final, binding and conclusive on all parties to the arbitration for all purposes. Judgment upon any award and/or enforcing any order of the arbitrator may be entered by any court of competent jurisdiction.

**11.8.1   Initiation of Arbitration**.  In order to initiate an arbitration hereunder, the party wishing to make a Claim (the "**Initiator**") shall give a written notice of demand for arbitration hereunder (the "**Initial Notice**") to the other party (the "**Respondent**").

**11.8.2   Initial Notice**.  To be valid, the Initial Notice must include the following:  (i) a statement of the Claim; (ii) a proposed resolution ("**Initial Resolution**") of the Claim; (iii) the address and phone and facsimile numbers of the Initiator; (iv) the date of the Initial Notice; and (v) the signature of the Initiator.  The Initial Notice may include other matters as shall be deemed appropriate by the Initiator, but it may not contain any conditions to the effectiveness of the Initial Notice nor any other matter which affects the validity of the Initial Notice.

**11.8.3   The Response**.  The Respondent is bound to respond to the Initial Notice in writing within 30 days of the Initial Notice (the "**Response**") or suffer the consequences, as hereinafter defined.  If the Respondent fails to timely respond with a valid Response, the Initial Resolution shall become effective as an arbitration award hereunder.  A valid Response must contain the following:  (i) A statement of the Response, including the factual disputes with the Initial Notice, and other facts supporting the Respondent's position; (ii) a proposed resolution ("**Second Resolution**") of the Claim, such as alternative amounts of payment or damages or alternative resolutions of the claim; (iii) the address and phone and facsimile numbers of the Respondent; (iv) the date of the Response; and (v) the signature of the Respondent.  The Response may include other matters as shall be deemed appropriate by the Respondent, including claims of the Respondent, but it may not contain any conditions to the effectiveness of the Response nor any other matter which affects the validity of the Response.  If the Respondent fails to timely give a valid Response, as provided above, or if the Respondent gives a notice of acceptance of the Initial Resolution, the arbitrator shall enter the award adopting the Initial Resolution.

**11.8.4   Designation of Arbitrator.**  The Claim shall be decided by a single arbitrator determined as follows:  OpenWorks shall propose 3 candidates to you and you must choose the arbitrator within 10 days after the date of OpenWorks' proposal.  Upon determination, the arbitrator shall commence the arbitration process.  The arbitrator shall make an award of the Initial Resolution or the Second Resolution or such other award as the arbitrator decides is just under the facts and applicable law, subject to the terms of this Agreement.

**11.8.5   Counterclaim**.   The Respondent may include a "**Counterclaim**" in the Response.  If the Respondent makes a Counterclaim, the Initiator shall be obligated to respond in the same time and in the same fashion as required of the Respondent.

**11.8.6   Discovery**.  We both agree that, in any arbitration arising as described in this Section, requests for documents shall be limited to documents (including electronic documents) that are directly relevant to significant issues in the case or to the case's outcome, shall be restricted in terms of time frame, subject matter and persons or entities to which the requests pertain, and shall not include broad phraseology such as "all documents directly or indirectly related to."  For electronic document discovery requests, we both agree that: (a) The production of electronic documents will be made on the basis of generally available technology in a searchable format which is convenient and economical for the party producing the documents and also usable by the party receiving the documents, (b) Unless there is a showing of compelling need, as determined by the arbitrator, the parties are not required to produce metadata, with the exception that the header fields of email correspondence may be produced; (c) Production of electronic documents need only be from sources used in the ordinary course of business.  No documents shall be required to be produced from back-up servers, tapes or other media; (d) Only individuals whose electronic documents are reasonably expected to contain evidence that is material to the dispute shall be named as custodians and requested to provide such electronic documents; and (e) When the costs and burdens of electronic discovery are disproportionate to the nature of the dispute or to the amount in controversy, or to the relevance of the materials requested, the arbitrator shall either deny such requests or order disclosure on the condition that the requesting party advance the reasonable cost of production to the providing side.  Such production costs may be part of the allocation of the costs in the final arbitration award.

**11.9   Injunctive Remedy for Breach**.  You recognize that you are a member of a Franchise Network and that your acts and omissions may have a positive or negative effect on the success of other businesses operating under OpenWorks' Trade Names and in substantial association with its Marks.  Your failure to comply with the terms of this Agreement is likely to cause irreparable damage to OpenWorks and to some or all of the other franchisees of OpenWorks.  For this reason, you agree that if OpenWorks can demonstrate to a court of competent jurisdiction that there is a substantial likelihood of a breach or threatened breach of any of the terms of this Agreement by you, OpenWorks will be entitled,

36

without posting a bond, to a temporary restraining order or preliminary injunction enjoining the breach and/or to a decree of specific performance, without showing or proving any actual damage, until a final determination is made by an arbitrator.  Any question on whether a dispute or claim is subject to an injunctive remedy shall be determined as stated in Section 11.8 above.

**11.10   Limitation of Actions**.  No action or arbitration proceeding may be maintained by you against OpenWorks unless (a) written notice of any claim alleged to exist is delivered by you to OpenWorks within 1 year after the event complained of becomes known to you and (b) an arbitration proceeding is commenced by you within 90 days after such notice.

**11.11   Attorneys' Fees and Costs**.  If legal action, including any action on appeal, or arbitration is initiated to enforce the terms and conditions of this Agreement, the prevailing party will be entitled to recover reasonable compensation for preparation, investigation and court and/or arbitration costs (including but not limited to, expert witness fees, hearing transcription fees, arbitration fees, arbitrator's compensation, copying costs, delivery expenses and charges) and reasonable attorneys' fees, as fixed by a court of competent jurisdiction or by the arbitrator.

**11.12   Severability**.  Each provision of this Agreement will be considered severable.  If, for any reason, any provision is determined to be invalid or in conflict with any existing or future law or regulation, that provision will not impair the operation of the remaining provisions of this Agreement.  The invalid provisions will be deemed not to be a part of this Agreement.  However, if OpenWorks determines that the finding of illegality adversely affects the basic consideration for its performance under this Agreement, OpenWorks may, at its option, terminate it.

**11.13   Approval and Guarantees**.  If you are a corporation, all officers and shareholders with a 5% or greater interest in you, or if you are a partnership, all your general partners, or if you are a limited liability company, all your managers and managing members and all members with a 5% or greater interest in you and in each of the foregoing cases, the spouses of each person, must approve this Agreement, permit you to furnish the financial information required by OpenWorks, and agree to the restrictions placed on them, including restrictions on the transferability of their interests in the franchise and Janitorial Service and limitations on their rights to compete, and sign separately written guarantees of your and their payments and performance in the form of Attachment 3 to this Agreement.  Your spouse (if you are an individual who has not yet completed the Required Transfer), or the spouse(s) of an owner of a 5% or greater interest in Franchisee, must sign the spousal consent in the form of Attachment 6 to this Agreement.

**11.14   Acceptance by OpenWorks**.  This Agreement will not be binding on OpenWorks unless and until it has been signed by an authorized officer of OpenWorks.

**11.15   Indulgences, Not Waivers**.  Neither the failure nor any delay on the part of either party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.

**11.16   Execution in Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of the parties reflected hereon as the signatories.  Any photographic or xerographic copy of this Agreement, with all signatures reproduced on one or more sets of signature pages, shall be considered for

37

all purposes as if it were an executed counterpart of this Agreement.  Signatures may be given by facsimile or other electronic transmission, and such signatures shall be fully binding on the party sending the same.

**11.17    Time of Essence**.  Time is of the essence of this Agreement.

**11.18    Franchisor Limited Liability**.  You agree that there shall be no liability on the part of OpenWorks to you or any other person by reason of any approval given or withheld by OpenWorks to you or by reason of your complying with the Standards and Policies and requirements of OpenWorks or the provisions of this Agreement.  OpenWorks shall not be liable to you if you adopt any suggestions or requirements of OpenWorks, or if OpenWorks delays or fails to furnish any approval, or if OpenWorks provides to mortgagee(s) or lender(s) (actual or prospective) at its or your request, information regarding the status of the Agreement and/or your obligations hereunder.  OpenWorks is not obligated for any reason to do any act or to furnish anything to you except as expressly set forth in this Agreement, and you acknowledge that OpenWorks is not required to provide services that produce any particular level of results.

**[This space left intentionally blank]**

2622019.2  03/16

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0160**

**11.19    Disclaimer of Representations**.

---

**YOU HEREBY REPRESENT AND WARRANT TO OPENWORKS THAT:**

NO REPRESENTATIONS OR PROMISES OF ANY KIND HAVE BEEN MADE BY OPENWORKS TO INDUCE YOU TO SIGN THIS AGREEMENT EXCEPT THOSE SPECIFICALLY SET FORTH IN THIS AGREEMENT AND IN THE UNIFORM FRANCHISE DISCLOSURE DOCUMENT THAT HAS BEEN DELIVERED TO YOU.    Initial _____

YOU ACKNOWLEDGE THAT NEITHER OPENWORKS NOR ANY OTHER PERSON HAS GUARANTEED THAT YOU WILL SUCCEED IN THE OPERATION OF THE FRANCHISED BUSINESS OR HAS PROVIDED ANY SALES OR INCOME PROJECTIONS OF ANY KIND TO YOU EXCEPT AS STATED IN THE UNIFORM FRANCHISE DISCLOSURE DOCUMENT PROVIDED TO YOU.    Initial _____

YOU HAVE MADE AN INDEPENDENT INVESTIGATION OF ALL IMPORTANT ASPECTS OF THE FRANCHISED BUSINESS.    Initial _____

YOU UNDERSTAND THAT OPENWORKS IS NOT A FIDUCIARY AND HAS NO SPECIAL RESPONSIBILITIES TO YOU BEYOND THE NORMAL RESPONSIBILITIES OF A SELLER IN A BUSINESS TRANSACTION.    Initial _____

YOU UNDERSTAND AND ACKNOWLEDGE THAT THE BUSINESS CONTEMPLATED BY THIS AGREEMENT AND THE UNIFORM FRANCHISE DISCLOSURE DOCUMENT PROVIDED TO YOU INVOLVES BUSINESS RISKS MAKING THE SUCCESS OF THE VENTURE LARGELY DEPENDENT UPON YOUR BUSINESS ACUMEN AND ABILITIES, YOUR ACTIVE PARTICIPATION AND YOUR EFFORTS AS AN INDEPENDENT BUSINESS OPERATOR.    Initial _____

YOU ACKNOWLEDGE THAT OPENWORKS OR ITS AGENT HAS PROVIDED YOU WITH A UNIFORM FRANCHISE DISCLOSURE DOCUMENT 14 CALENDAR DAYS BEFORE THE EXECUTION OF THIS AGREEMENT OR PAYMENT OF ANY CONSIDERATION. YOU FURTHER ACKNOWLEDGE THAT YOU HAVE READ SUCH UNIFORM FRANCHISE DISCLOSURE DOCUMENT AND UNDERSTAND ITS CONTENTS. Initial _____

YOU ACKNOWLEDGE THAT OPENWORKS OR ITS AGENT HAS PROVIDED YOU WITH A COPY OF THIS AGREEMENT AND ALL RELATED DOCUMENTS, FULLY COMPLETED, AT LEAST FIVE BUSINESS DAYS PRIOR TO YOUR EXECUTION HEREOF. Initial _____

YOU ACKNOWLEDGE THAT YOU HAVE HAD AMPLE OPPORTUNITY TO CONSULT WITH YOUR OWN ATTORNEYS, ACCOUNTANTS AND ADVISORS AND THAT OPENWORKS' ATTORNEYS HAVE NOT ADVISED OR REPRESENTED YOU WITH RESPECT TO THIS AGREEMENT OR THE RELATIONSHIP CREATED HEREBY. Initial _____

---

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0161**

IN WITNESS TO THE PROVISIONS OF THIS FRANCHISE AGREEMENT, the undersigned have signed this Franchise Agreement on the date set forth in <u>Article 1</u>.

**FRANCHISOR:**
**O.P.E.N. AMERICA, INC.**

By:_____

Officer:_____

**FRANCHISEE:**

Entity Name:_____

Signature:_____

Printed Name:_____

Title:_____


Name:_____

Sign:_____


Name:_____

Sign:_____


The above Franchise Agreement was executed on the date stated above, by the above named parties and in my presence as a witness.

_____          residing at _____, _____
                Name                                                    City                    State

40

## ATTACHMENT 1

# Current

**Business Starter Packages**

**Included in the Franchise Packages**

> From time to time, OpenWorks may substitute different brand names or change the exact specifications of the supplies and equipment provided to you in your starter kit. Any substitutions will be at equal or greater value and/or quality.

2387195.2  03/16

INT_____/ INT_____
Unit Janitorial Franchise Agreement
**A - 0163**

## Starter Kit Equipment and Chemical Supplies

| DESCRIPTION | U/M | QTY |
|---|---|---|
| Enzymatic Luster Creme Cleanser Pumice | QT | 1 |
| Scouring Stick | CS | 1 |
| 60" Wood Thread Handle | EA | 1 |
| Toy Corn Broom | EA | 1 |
| Little Dipper Bowl Mop | EA | 1 |
| #360 Flex Lambswool 33-60" Duster | EA | 1 |
| 12" Plastic Dust Pan | EA | 1 |
| 12" Brass Channel with Rubber | EA | 1 |
| 4203 1 ½" Hard Putty Knife | EA | 1 |
| 8', 2 section, Extension Handle | EA | 1 |
| W#63 nylon scrubbing pad with sponge backing, 20/cs | CS | 1 |
| 20" Floor Machine | EA | 1 |
| 20" 1500 RPM Burnisher with Pad Driver | EA | 1 |
| 8 gl Wet/Dry Vacuum | EA | 1 |
| ProTeam Super Coach Vac HEPA with Tool Kit | EA | 1 |
| Super Loop Wet Mop | EA | 2 |
| Super Finish Mop | EA | 1 |
| 84 Fiberglass & Speed Change Handle | EA | 2 |
| #324 Big Mo Dust Mop Head | EA | 1 |
| #324F Big Mo Frame | EA | 1 |
| 60" Wood Snap-on Handle | EA | 1 |
| 18" Blue Microfiber Looped Wet Mop Pad | EA | 1 |
| 18" Red Microfiber Looped Wet Mop Pad | EA | 1 |
| WaveBrake™ Side Press Combo | EA | 1 |
| Yellow 25" Caution Wet Floor Sign | EA | 1 |
| Round Brute Dolly, 2640, Fits 20-55 gal Brutes, Black | EA | 1 |
| Yellow Wrap Around Caddy Bag | EA | 1 |
| Grey 44 GL Round Brute Can | EA | 1 |
| Blue Microfiber Terry Cloths | DZ | 1 |
| Yellow Microfiber Terry Cloths | DZ | 1 |
| Red Microfiber Terry Cloths | DZ | 1 |
| Green Microfiber Terry Cloths | DZ | 1 |
| 8448 Gloves, Yellow, Medium (8-8.5) | DZ | 1 |
| 7321 Safety Goggles | EA | 1 |
| Trigger Sprayer | EA | 4 |
| 32-oz Plastic Bottle | EA | 4 |
| Pump Dispenser | EA | 1 |
| Emergency Clean-Up Kit | BX | 1 |
| 20" Black Strip Pads, 5/cs | CS | 1 |
| 20" Red Buff Pads, 5/cs | CS | 1 |
| 3M 20" Pink Eraser Floor Pads | CS | 1 |
| BRUTE BUCKET-ROUND-10 QT-GRAY | EA | 1 |
| 20" Perma Grip Pad Holder with brush plate | EA | 1 |
| Fast Glide 18" Mopping System | EA | 1 |
| BUCKETLESS HANDLE 32 OZ REPLACEMENT BOTTLES | EA | 1 |
| Round Shaped Bowl Brush | EA | 1 |
| SMARTDOSE STRIDE CITRUS HC NEUTRAL GP CLEANER 2X1.4L | CS | 1 |
| SMARTDOSE PER DIEM GENERAL PURPOSE CLEANER 2X1.4L | CS | 1 |
| Crew NA Non Acid Bath Disinfectant SmartDose 2x1.4 | CS | 1 |
| Diversey Virex II 256 One-Step Disinfectant Cleaner 1.4L | CS | 1 |
| Diversey Glance NA Glass Cleaner 1.4L SD | CS | 1 |
| Green Cleaner Degreaser | GL | 2 |

ATTACHMENT 1, PAGE 2

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0164**

**ATTACHMENT  2**

**TERMS**

| Package | Initial Monthly Account Volume | Franchise Fee | 10% Discount For Cash or Veterans | OPENWORKS FINANCING PROGRAMS | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | STANDARD PROGRAM | | | VETERANS PROGRAM | | | |
| | | | | Down Payment | Amount Financed | Monthly Payment | 10% Discounted Fee | Amount of Down Payment | Amount Financed | Monthly Payment |
| OW 3 | 3,000 | 15,200 | 1,520 | 7,000 | 8,200 | 386.00 | 13,680 | 7,000 | 6,680 | 314.45 |
| OW 5 | 5,000 | 18,500 | 1,850 | 9,000 | 9,500 | 447.20 | 16,650 | 9,000 | 7,650 | 360.11 |
| OW 7 | 7,000 | 24,850 | 2,485 | 14,850 | 10,000 | 470.33 | 22,365 | 12,425 | 7,515 | 353.76 |
| OW 10 | 10,000 | 33,000 | 3,300 | 23,000 | 10,000 | 470.33 | 29,700 | 16,500 | 6,700 | 315.39 |
| OW 15 | 15,000 | 45,000 | 4,500 | 35,000 | 10,000 | 470.73 | 40,500 | 35,000 | 5,000 | 258.90 |
| OW 20 | 20,000 | 58,500 | 5,850 | 48,500 | 10,000 | 470.73 | 52,650 | 48,600 | 4,150 | 195.35 |
| OW 25 | 25,000 | 72,000 | 7,200 | 62,000 | 10,000 | 470.73 | 64,800 | 62,000 | 2,800 | 131.81 |

Your selected package: _____

Standard Program ☐ or Veteran's Program ☐

Discount:  Applicable ☐    Not Applicable ☐

If you elected to purchase additional account volume more than the OW 10 package, the following apply:
- Initial Account Monthly Volume_____
- Initial franchisee fee: _____
- Down payment: _____
- Amount Financed: _____
- Monthly Payment: _____
- Fulfillment Period: _____

**Pre-Existing Accounts.**  You have the following pre-existing accounts to provide commercial janitorial or other facility services to the following customers which will be converted to OpenWorks accounts, according to Section 7.5 of this Agreement:

Signature: _____

Date: _____

2622019.2  03/16

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0165**

## ATTACHMENT 3

## PERSONAL GUARANTY

1.   In consideration of, and in order to induce O.P.E.N. America, Inc. ("**OpenWorks**") to enter into a franchise agreement as of even date with this Guaranty (the "**Agreement**"), each of the undersigned ("**Guarantor**"), jointly and severally, unconditionally guarantees to OpenWorks that the Franchisee will fully, promptly and faithfully perform and discharge all of its obligations, duties and conditions under the Agreement, and under any and all instruments, documents or other evidence of indebtedness, executed in connection with the Agreement and all related obligations and undertakings, including obligations of payment when due, whether by acceleration or otherwise, of any and all liability of Franchisee or its Affiliates or to OpenWorks (the "**Guaranteed Obligations**"), together with all interest upon these liabilities and all attorneys' fees, costs and expenses of collection incurred by OpenWorks in enforcing any of these liabilities.

2.   OpenWorks, its successors and assigns, may from time to time, without notice to the undersigned (a) resort to the undersigned for payment or satisfaction of any of the Guaranteed Obligations of Franchisee, whether or not it or its successors have resorted to any property securing any of the Guaranteed Obligations or proceeded against any other of the undersigned or any party or parties or primarily or secondarily liable on any of the Guaranteed Obligations, (b) release or compromise any liability of any of the undersigned hereunder or any liability of any party or parties primarily or secondarily liable on any of the Guaranteed Obligations, and (c) extend, renew or credit any of the Guaranteed Obligations for any period (whether or not longer than the original period); alter, amend or exchange any of the Guaranteed Obligations; or give any other form of indulgence, whether under the Agreement or not.

3.   Each of the undersigned agrees to comply with and abide by the restrictive covenants and nondisclosure provisions contained in Sections 8.5, 8.6 and 8.7 of the Agreement, as well as the provisions in the Agreement relating to the Marks and Transfers, to the same extent as and for the same period of time as Franchisee is required to comply with and abide by such covenants and provisions, except to the extent otherwise required by the Agreement.   These obligations of the undersigned shall survive any expiration or termination of the Agreement or this Guaranty. This Guaranty will remain effective despite any renewal, modification, or waiver by OpenWorks of any of the Guaranteed Obligations under this Guaranty, and no such modification, renewal or waiver will operate to defeat this Guaranty.

4.   This Guaranty is a continuing one and all liabilities to which it applies or may apply under the terms of this Guaranty will be conclusively presumed to have been created in reliance on it.

5.   Any and all rights and claims of Franchisee or Guarantor or any of their respective property, arising by reason of any payment by the undersigned to OpenWorks under the provisions of this Guaranty, will be subordinate and subject in right of payment to the prior payment in full of all liabilities of Franchisee or Guarantor to OpenWorks.

6.   Guarantor waives the right of trial by jury in the event of any litigation between the parties to this Guaranty in respect of any matter arising under this Guaranty and agrees that, should OpenWorks bring any judicial proceeding or arbitration in relation to any such matter, Guarantor will not interpose any counterclaim or set off of any nature.

7.   Each of the undersigned further waives presentment, demand, notice of dishonor, protest, nonpayment and all other notices whatsoever, including without limitation:  notice of acceptance hereof; notice of all contracts and commitments; notice of the existence or creation of any liabilities under this Guaranty and the Agreement and of the amount and terms thereof; and notice of all defaults, disputes or controversies between Franchisee and OpenWorks resulting from such Guaranty or Agreement or otherwise, and the settlement, compromise or adjustment thereof.

8.   The undersigned agrees to pay all expenses paid or incurred by OpenWorks in enforcing the Agreement and this Guaranty against Franchisee and against the undersigned and in collecting or attempting to collect any amounts due thereunder and hereunder, including reasonable attorneys' fees and costs if such enforcement or collection is by or through an attorney-at-law.   Any waiver, extension of time or other indulgence granted from time to time by OpenWorks, its agents, its successors or assigns, with respect to the Agreement, shall in no way modify or amend this Guaranty, which shall be continuing, absolute, unconditional and irrevocable.

9.   If more than one person has executed the Guaranty, the term "the undersigned," as used herein shall refer to each such person, and the liability of each of the undersigned hereunder shall be joint and several and primary.

10.   The provisions of the Agreement providing that Arizona law shall govern, and requiring binding arbitration in Phoenix, Arizona shall also apply to this Guaranty and each Guarantor.

Date:_____, 20___          Name:
                                       Sign:_____

                                       Spouse's Name:_____

                                       Sign:_____

                                       Name:_____

                                       Sign:_____

                                       Spouse's Name:_____

                                       Sign:_____

ATTACHMENT  3,  PAGE  2

**ATTACHMENT 4**

**NON-DISCLOSURE AND NON-COMPETITION AGREEMENT**

This Non-Disclosure and Non-Competition Agreement (this **"Agreement"**) is made as of this _____ day of _____, 20__, by and between:

_____ (**"Franchisee"**), an OpenWorks Janitorial Franchisee under the janitorial Franchise Agreement between Franchisee and O.P.E.N. America, Inc. (**"OpenWorks"**) of even date herewith and to which this Agreement was attached (the **"Franchise Agreement"**); and

the undersigned (**"Recipient"**), who owns 5% or more of the ownership interests in Franchisee, and/or holds or has been offered a position as an employee or consultant of Franchisee (any such current and future interest or position held by Recipient is hereinafter referred to as the **"Position"**).

Recipient acknowledges that Franchisee is entering into this Agreement for itself and for the benefit of OpenWorks pursuant to the requirements of the Franchise Agreement. Any capitalized terms not otherwise defined will have such meaning as ascribed to them in the Franchise Agreement.

**BACKGROUND TO THE AGREEMENT**

In connection with their Position, Recipient will have access to, generate, or otherwise come into contact with certain proprietary and/or confidential information and trade secrets of Franchisee, OpenWorks or System, including without limitation training materials, programs, methods, techniques, specifications, standards, systems, procedures, sales and marketing programs and strategies, manuals, financial data, knowledge of specifications for and suppliers of equipment, supplies and services, bidding, pricing and billing methods, existing and prospective customer lists and information about them and their service contracts, at any time existing or under consideration, for the operation of OpenWorks' regional offices and commercial janitorial and other facility service businesses (the **"Confidential Information"**).

Recipient, Franchisee and OpenWorks desire to prevent the dissemination or misuse of such Confidential Information. For these and other reasons, and the fact that there are many other employment opportunities available to Recipient if his/her Position shall terminate, Recipient is in full and complete agreement that the following restriction covenants are fair and reasonable and are freely, voluntarily and knowingly entered into. FURTHER, RECIPIENT HAS BEEN GIVEN THE OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL COUNSEL BEFORE ENTERING INTO THIS AGREEMENT.

**AGREEMENT**

As an inducement to OpenWorks to enter into the Franchise Agreement with Franchisee, or to approve a transfer to or appointment of Recipient, and/or in consideration of Recipient's employment or continued employment by Franchisee, Recipient and Franchisee (on behalf of both Franchisee and OpenWorks) agree as follows:

1.    **Confidential Information.**

1.1.    **Ownership.**  Recipient acknowledges that OpenWorks and/or Franchisee is/are the sole owner of all the Confidential Information; that the Confidential Information is being imparted to Recipient in trust and confidence and only by reason of Recipient's Position; and that the Confidential Information is not generally known to the trade or public and is not known to Recipient except by reason of such disclosure.  Recipient further acknowledges that Recipient shall acquire no interest in the Confidential Information, other than the right to utilize it in connection with the performance of duties associated with Recipient's Position.  In addition, Recipient acknowledges that the use, duplication or disclosure of the Confidential Information except as expressly permitted by this Agreement shall constitute an unfair method of competition and that OpenWorks and Franchisee shall suffer irreparable injury thereby.

1.2.    **Work Product.**  Recipient agrees that all documents, papers, notes and other material and work product containing or derived from the Confidential Information or connected with Recipient's Position with Franchisee shall be Confidential Information. Recipient agrees that he will have no proprietary interest in any work product developed or used by him and arising out of his Position with Franchisee.  Recipient will, from time to time, as may be requested by Franchisee or OpenWorks, do all things which may be necessary to establish or document Franchisee's or OpenWorks' ownership of any such work product, including without limitation execution of assignments.

1.3.    **Confidentiality.**  All of the Confidential Information and all information and knowledge about the System, which is not in the public domain and such other information and material as OpenWorks or Franchisee may designate as confidential shall be deemed Confidential Information for purposes of this Agreement.  Recipient acknowledges that the Confidential Information is disclosed to Recipient solely on the condition that Recipient agree, and Recipient hereby does agree, that Recipient: (a) will use the Confidential Information in strict accordance with the instructions and directions given by Franchisee or OpenWorks from time to time; (b) will not use the Confidential Information, directly or indirectly, in any other business or capacity; (c) will not, at any time, while holding any Position with Franchisee or thereafter, in any manner or form, directly or indirectly, disclose, duplicate, license, sell, reveal, divulge, publish or communicate the Confidential Information, or any portion thereof, to any person or entity other than Franchisee, or authorized employees or consultants of Franchisee or OpenWorks who need to have such information in connection with their jobs; (d) will not copy any materials containing the Confidential Information, including without limitation the System manuals, without OpenWorks' prior written consent; (e) will observe and implement all reasonable procedures imposed from time to time by OpenWorks and/or Franchisee to prevent the unauthorized use and disclosure of the Confidential Information; (f) will keep all System manuals and other written materials containing any portion of the Confidential Information in a secure manner and place; and (g) if Recipient is legally compelled to disclose any of the Confidential Information, will do so only if Recipient has used his or her best efforts to afford OpenWorks and Franchisee the opportunity of obtaining appropriate protective orders or other assurances of confidentiality satisfactory to OpenWorks and Franchisee.

1.4.    **Return of Confidential Material.**  Upon termination or cessation of his or her Position with Franchisee for any reason, Recipient shall immediately (but in any event within five days of such termination or cessation) return to Franchisee all copies of any materials containing the Confidential Information (whether in original or duplicate form) and all property or equipment belonging to Franchisee and OpenWorks, or either of them, in Recipient's possession, custody or control, including any of such items produced or prepared by Recipient.  To the maximum extent of the law, OpenWorks reserves the right to deduct the cost of unreturned or damaged property, equipment or information from Recipient's compensation.

2. **Noncompetition.**

2.1. **Covenant.** Recipient recognizes that (a) the commercial janitorial and other facility services business is very competitive; (b) the System is intended to expand to be national in scope; (c) Recipient by virtue of his or her Position will have access to the Confidential Information and will have close contacts with OpenWorks customers for the purpose of maintaining and further developing the business and goodwill of the System; (d) the Position provides Recipient with the attendant ability to divert customer trade; and (e) OpenWorks and Franchisee each have strong legitimate interests in obtaining the covenant herein for the protection of the goodwill of the System.  Recipient therefore agrees that, without the express prior written consent of OpenWorks and Franchisee, which either may withhold in its sole and absolute discretion, Recipient shall not, during the Time Period (as defined below), directly or indirectly, whether personally or as an agent, employee, partner, representative, affiliate or in any other capacity on behalf of any person or entity, engage in, render services to, provide financing to, or have any interest in, in manner whatsoever any Competitive Business (as defined below) located or conducting business within the Area (as defined below).  It is agreed and understood that the purpose of this covenant is not to deprive Recipient of a means of livelihood and will not do so but is rather to protect the goodwill and interest of Franchisee, OpenWorks and the System.

2.2. **Time Period.** For the purposes of Section 2.1 of this Agreement, the term **"Time Period"** shall mean (a) for the period while Recipient holds a Position with Franchise; and (b) after the Recipient no longer holds a Position with Franchisee, for a period of 24 months thereafter; *provided, however,* that in no event shall the Time Period continue beyond the period that this same covenant of noncompetition remains in effect for the Franchisee.  In the event a court of competent jurisdiction determines that 24 months is unenforceable, the Time Period will be 18 months.  If a court of competent jurisdiction determines that 18 months is unenforceable, the Time Period will be 12 months.  If a court of competent jurisdiction determines that 12 months is unenforceable, the Time Period will be six months.

2.3. **Competitive Business.** For the purposes of Section 2.1 of this Agreement, the term **"Competitive Business"** shall mean any business providing janitorial services to commercial customers or any other services that Franchisee provides or provided to its customers while Recipient held a Position with Franchisee.

2.4. **Area.** For the purposes of Section 2.1 of this Agreement, the term **"Area"** shall mean (a) the geographical area in which Franchisee services or serviced OpenWorks customers, and (b) a radius of 75 miles from the regional office through which Franchisee conducts or conducted its OpenWorks business, and (c) a radius of 75 miles from any other OpenWorks regional office operated by OpenWorks or any of its master franchisees in the state where Franchisee conducts or conducted its OpenWorks business, and (d) a radius of 75 miles from any other OpenWorks regional office operated by OpenWorks or any of its master franchisees in any other state.

3. **No Solicitation.**

3.1. **Employees.** Recipient agrees never to employ or solicit for employment any person who is at the time employed by OpenWorks, Franchisee or any other franchisee in the OpenWorks System, and Recipient agrees not to directly or indirectly induce any such person to leave their employment with OpenWorks, Franchisee or any other franchisee in the OpenWorks System.

3.2. **Customers.** Recipient agrees that during the time Recipient holds a Position with Franchisee, and after Recipient's Position with Franchisee ends, except for solicitations Recipient makes on behalf of Franchisee, Recipient will never solicit as a customer for commercial janitorial or other facility services: (a) any OpenWorks customers serviced by Franchisee during the period Recipient held a Position with Franchisee, or (b) any other persons or entities who were OpenWorks customers

ATTACHMENT 4, PAGE 3

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0170**

serviced by others during the period Recipient held a Position with Franchisee.  Recipient also agrees that after Recipient no longer holds any Position with Franchisee, Recipient will not thereafter solicit as a customer for commercial janitorial or other facility services any prospective customers to whom OpenWorks had proposals or bids outstanding at the time Recipient's Position with Franchisee ended.

> **3.3.** **Lack of Prior Conflict.**  Recipient represents and acknowledges that they are not bound by any post-employment covenant with a third-party that would restrict the fulfillment of the Recipient's Position or the duties Recipient performs on behalf of the Franchisee.  To the extent Recipient is bound by any such post-employment covenants, Recipient represents and warrants that they have provided Franchisee with a copy of the applicable written covenant.

> **3.4.** **Notification.**  During the Time Period, Recipient shall notify any new employer or business associate, prior to entering into the employment or business relationship, of the existence of this Agreement and will provide such new employer or business associate with a copy of this Agreement.  Recipient further agrees and authorizes Franchisee and OpenWorks to notify others, including customers of Franchisee or OpenWorks and Recipient's future employers or business associates of Recipient's obligations under this Agreement.

> **3.5.** **Tolling of Time Periods.**  The running of the Time Period or any period of time specified in Section 2 or Section 3 of this Agreement will be tolled and suspended for any period of time in which the Recipient is found by a court of competent jurisdiction to have been in violation of any restrictive covenant contained therein.  Recipient further agrees that the existence of any claim it may have against Franchisee or OpenWorks whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Franchisee or OpenWorks of the covenants contained in this Agreement.

> **4.** **Modification.**  The covenants set forth in this Agreement shall each be construed as independent of any other covenant or provision of any other agreement.  OpenWorks may reduce the scope of the obligations under the covenants of this Agreement unilaterally and without the consent of any other person or entity, effective upon giving notice thereof to Franchisee and Recipient.

> **5.** **Remedies.**

> **5.1.** **Recipient's Acknowledgements.**  Recipient acknowledges and agrees that in the event of the termination of Recipient's Position with Franchisee, Recipient's experience and capabilities are such that the Recipient can obtain employment and engage in business activities which are of a different or non-competing nature from those of the Position; and that the enforcement of a remedy of injunction will not prevent Recipient from earning a reasonable living.  Recipient further acknowledges and agrees that the covenants contained in this Agreement are necessary for the protection of Franchisee's and OpenWorks' legitimate business interests and are reasonable in scope and in content.

> **5.2.** **Injunctive Relief.**  In the event of an actual or threatened breach by Recipient of any of the provisions of this Agreement, Franchisee and OpenWorks, or either of them, or their agents, shall immediately be entitled to injunctive relief restraining Recipient from the breach or threatened breach without having to show any actual damage.  It is specifically agreed that Franchisee and OpenWorks, or either of them, may incur incalculable and irreparable damage from any such violation, and that Franchisee and OpenWorks, or either of them, have no adequate remedy at law and are entitled to injunctive relief, without bond, for any such actual or threatened violation.  Nothing herein shall be construed as prohibiting Franchisee and OpenWorks, or either of them, from pursuing any other available remedies for such breach.

> **5.3.** **At-Will Employment.**  If Recipient is an employee, nothing in this Agreement shall affect Recipient's status as an employee at will.  Employment of Recipient by the Franchisee may be

terminated by either Recipient or Franchisee for any lawful reason at any time with or without cause. Any representation to the contrary is unauthorized and not valid.

**5.4.   Authority to Contract.**  Unless otherwise specified in writing, Recipient shall have no power to, and Recipient shall not, obligate the Franchisee or OpenWorks in any manner whatsoever to any contract, agreement, undertaking, commitment or other obligation, unless specifically authorized and directed to do so, in advance and in writing by the Franchisee.  Further, Recipient shall not, without specific approval of and direction by the Franchisee, borrow on behalf of the Franchisee or OpenWorks, purchase capital equipment, or sell any capital assets of Franchisee or OpenWorks.

**5.5.   Enforceability.**  Franchisee's or OpenWorks' failure to enforce any provisions of this Agreement shall not constitute a waiver of the Franchisee's or OpenWorks' right to pursue any prior or subsequent breach, violation or default of the Agreement.

**6.   Survival.**  The provisions of this Agreement shall survive the expiration or termination of any agreement or relationship between Franchisee and Recipient or OpenWorks and Franchisee for any reason, in accordance with the terms hereof and shall be enforceable notwithstanding the existence of any claim or cause of action of Recipient against Franchisee and OpenWorks, or either of them, predicated on any contract or other basis whatsoever.

**7.   Severability.**  In the event any term or provision of this Agreement is declared to be invalid or unenforceable for any reason, the provision shall be modified to the extent necessary to make it enforceable, or if it cannot be so modified, then severed, and the remaining terms of this Agreement shall remain in full force and effect, and it is hereby declared the intention of the parties that they would have executed the Agreement as so modified.

**8.   Notice.**  Any notice to be given to Recipient under this Agreement will be sufficient and deemed delivered if it is in writing and delivered to the U.S. Post Office to be sent prepaid by certified or registered mail addressed to Recipient at his or her residential address as provided below, or to such other residential address as Recipient shall have provided in writing to both Franchisee and OpenWorks.

**9.   General.**  Except as otherwise expressly stated herein, this Agreement contains the entire understanding between the parties with respect to the subjects hereof, and supersedes all prior oral and written negotiations and agreements.  Except as provided in Section 4 of this Agreement, this Agreement may be amended only by an instrument in writing signed by Franchisee and Recipient and approved in writing by OpenWorks.  The waiver of any breach or violation of this Agreement shall not be deemed to amend this Agreement and shall not constitute a waiver of any other or subsequent breach.  Headings are for convenience and shall not limit or control interpretation.  Words in this Agreement shall be deemed to refer to whatever number and gender the context requires.  This Agreement shall be governed by the laws of the state in which Franchisee's OpenWorks business is conducted.  Any claim or dispute arising out of or in connection with this Agreement shall be resolved by arbitration held in the City of Phoenix, Arizona, governed by the United States Arbitration Act 9 U.S.C. § 1-16, and conducted by one or more independent arbitrators who are experienced in franchise matters and have no past or present relationship with any party.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns.  OpenWorks shall be a third party beneficiary of this Agreement and entitled to enforce it as though OpenWorks were a signatory.

*[Signatures on following page]*

ATTACHMENT 4, PAGE 5

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0172**

**RECIPIENT:**

**FRANCHISEE**, accepting for itself and for its Franchisor, O.P.E.N. America, Inc.:

_____
(Full Legal Name of Recipient)

_____
(Full Legal Name of Franchisee)

By:_____
(Signature)

By: _____
(Signature)

_____
(Name Printed or Typed)

_____
(Position/Title)

_____
(Residential Street Address)

_____
(City, State, Zip Code)

_____
(Date)

_____
(Name Printed or Typed)

_____
(Position/Title)

_____
(Residential Street Address)

_____
(City, State, Zip Code)

_____
(Date)

ATTACHMENT  4,  PAGE  6

INT_____/ INT_____
Unit Janitorial Franchise Agreement

**A - 0173**

**ATTACHMENT 5**

TRADEMARKS

OpenWorks has the following trademarks that it uses in its janitorial cleaning services.  You must use the trademarks in accordance with the terms of the Franchise Agreement and the Manual.  These trademarks may be revised by OpenWorks in accordance with the Franchise Agreement.



| OpenWorks® |
| Give your facility the works® |
| TotalWorks™ |
| FirstWorks® |
| BusinessWorks™ |
| TechWorks™ |
| SkillWorks™ |

INT_____/ INT_____
Unit Janitorial Franchise Agreement

## ATTACHMENT 6

SPOUSAL CONSENT

The undersigned each being the spouse of a Franchisee (or the spouse of a 5% or greater owner of Franchisee) hereby states

       1.     That he or she has read and understands the Janitorial Franchise Agreement and the Franchise Disclosure Document and all exhibits; and

       2.     That he or she consents to the terms and conditions of the Janitorial Franchise Agreement, including but not limited to those concerning transfer, and

       3.     That he or she consents to execution of the Janitorial Franchise Agreement by Franchisee; and

       4.     That he or she consents to execution of the Personal Guaranty.

Dated:_____     Signature:_____

Print Name:_____

ATTACHMENT 6, PAGE 1

**ATTACHMENT 7**

**ADDENDUM
TO THE JANITORIAL FRANCHISE AGREEMENT OF
O.P.E.N. AMERICA, INC.
REQUIRED BY THE STATE OF ILLINOIS**

1.  The following language is added to Paragraph 11.2 of the Franchise Agreement:

    "Notwithstanding the foregoing provisions of this Section 11.2, Illinois law will govern franchises granted to residents of Illinois and franchises located in the State of Illinois when the offer was made or accepted in Illinois."

2.  The following language is added to Paragraph 11.8 of the Franchise Agreement:

    "The parties acknowledge that Illinois law provides that any provision in a franchise agreement that designates jurisdiction or venue in a forum outside of Illinois is void provided that a franchise agreement may provide for arbitration outside of Illinois."

3.  The conditions under which your franchise can be terminated and your rights upon non-renewal may be affected by Illinois law, 815 ILCS 705/19 and 705/20.

4.  Section 41 of the Illinois Franchise Disclosure Act states that "any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act or any other law of this state is void."

The provisions of this Addendum only apply if the jurisdictional requirements of the Illinois Franchise Disclosure Act are met independently without reference to this Addendum and to the extent they are then valid requirements of the statute.

**FRANCHISOR:**                                    **FRANCHISEE:**
**O.P.E.N. AMERICA, INC.**

By:_____            Entity Name:_____

Officer:_____       Signature:_____

Date: _____          Printed Name:_____

                                                          Title:_____

                                                          Date: _____


                                                          Name:_____

                                                          Sign:_____

                                                          Date: _____


                                                          Name:_____

                                                          Sign:_____

                                                          Date: _____

# EXHIBIT D

## PROMISSORY NOTE

$_____                                    _____, 20__


For value received, the undersigned ("Maker") promises to pay to O.P.E.N. America, Inc., an Arizona corporation ("OpenWorks") ("Holder"), at Phoenix, Arizona, the principal sum of _____ U.S. Dollars ($_____), payable in installments as follows:

(A) One Initial installment of _____ Dollars ($_____), without interest, payable on _____, 20_____ ; and

(B) _____ (_____) successive equal monthly installments of principal, together with interest at the rate of 12% per year accruing on the unpaid principal from and after the date of _____, 20__, each such payment of principal and interest in the amount of _____ Dollars ($_____), with the first such payment to be made on _____, 20__, and the remaining payments to be made on the same day of each succeeding calendar month until all such payments have been made, on which date the entire unpaid balance of principal and interest shall be due and payable.

This Note is made pursuant to that certain Franchise Agreement of even date herewith (unless otherwise specified) by and between Maker and OpenWorks ("Franchise Agreement").  All capitalized terms that are not otherwise defined will have the meaning ascribed to them in the Franchise Agreement.

Principal and interest shall be payable in lawful money of the United States of America.  Checks shall constitute payment when collected.

Prepayment in whole or in part may be made at any time without notice or penalty.  Holder shall have the right to credit all payments received first against accrued but unpaid interest, then against any unpaid principal payment which is due or in default, and shall thereafter credit the remainder of any payment against the last principal payment(s) due under this Note.  Holder shall have the right to offset payments due hereunder against any amounts which are or may become payable from Holder to Maker and such offset will not be deemed a default by Holder of any agreement under which such sums or payment is due.

Should any installment due hereunder not be paid as it matures, the amount of such installment, which constitutes interest shall bear interest at the same rate as principal.

A default shall be deemed to have occurred in the event (i) the Maker of this Note shall fail to pay any payment under this Note when due; (ii) the Franchise Agreement between Maker and OpenWorks is terminated; (iii) any Act of Default occurs under the Franchise Agreement (as set forth in <u>Section 10.2.1</u> thereof) or any material breach or default by Maker under any other agreement between Maker and OpenWorks or its Affiliates (as defined in the Franchise Agreement), if the default is not cured within the time permitted, if any, under such agreement; (iv) any Maker of this Note becomes bankrupt or insolvent, or dies; (v) a judgment in excess of One Thousand Dollars ($1,000.00) is entered against any Maker and remains unsatisfied for over 30 days; (vi) a levy of attachment, execution or any other process is made against any of the assets of any Maker; (vii) Maker fails to pay,

withhold, collect or remit any tax or tax deficiency when assessed or due; (viii) Maker makes a bulk sale or gives notice of an intent to do so; (ix) Maker suspends the conduct of business under the Franchise Agreement; or (x) Holder, at any time in its sole and absolute good faith discretion, believes that Maker's financial condition has become materially impaired or unsatisfactory.

Should a default occur, then the whole sum of principal, and interest thereon which shall then have accrued but which remains unpaid, shall become immediately due and payable at the option of Holder, with default interest on the entire unpaid principal and accrued and unpaid interest from the date of such default until paid at the lesser of (i) the rate of 1% per month, or (ii) the highest rate permitted by applicable commercial usury laws.

It is the intention of the parties hereto to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby would be usurious under applicable law (including the laws of the United States of America), then, in that event, notwithstanding anything to the contrary in this Note, it is agreed that: (i) the aggregate of all consideration which constitutes interest that is contracted for, taken, reserved, charged or received under this Note shall under no circumstances exceed the maximum amount allowed by such applicable law; (ii) in the event the maturity of this Note is accelerated by reason of an event of default, or in the event of any permitted prepayment, then such consideration that constitutes interest under applicable law may never include more than the maximum amount allowed by such applicable law; (iii) and excess interest, if any, provided for in this Note or otherwise shall be cancelled automatically and, if theretofore paid, shall be credited by Holder on the principal amount of this Note (or, to the extent that the principal amount of this Note shall have been or would thereby be paid in full, refunded by Holder to Maker).   The acceleration of the maturity of this Note does not include the acceleration of any interest which has not otherwise accrued on the date of such acceleration, and Holder does not intend to collect any unearned interest in the event of acceleration.

Each Maker waives demand, diligence, presentment for payment, protest and notice of demand, protest and nonpayment.  Each Maker further agrees that the granting without notice of any extension of time for payment of any sum due hereunder, or under any security agreement, guaranty or other instrument securing this Note, or for the performance of any covenant, condition or agreement hereof or thereof, or the taking or release of other or additional security, shall in no way release or discharge the liability of any Maker.  Each Maker further agrees that this Note shall be enforceable by Holder notwithstanding the existence of any claim or cause of action by Maker against OpenWorks or Holder.

This Note shall be governed by and construed under the laws of the State of Arizona, without giving effect to the application of any Arizona conflict of law rules.  Any proceeding brought by Holder against Maker may be brought in Maricopa County, Arizona, and each Maker and endorser hereof waives all questions of personal jurisdiction and venue for the purpose of carrying out this provision.

The obligations of each of the Makers under this Note are joint and several, and Holder may enforce this Note against all Makers, or any one or more but not necessarily all Makers.  In the event Holder is required to file any action, legal or other, to enforce its rights under this Note, Holder shall be entitled to an award of its reasonable attorneys' fees and costs incurred in connection therewith.

Time is of the essence of this Note and each and every term and provision hereof.  Holder's waiver of a default, or delay or failure to exercise any right upon default, or acceptance of late or partial payments, shall not be a waiver of Holder's rights and shall not impair Holder's rights upon other defaults of the same or a different kind.

**Franchisee(s) ["Makers"]**

Name:_____        Spouse's Name:_____

Signature:_____        Signature:_____


Name:_____        Spouse's Name:_____

Signature:_____        Signature:_____


Date:_____        Date: _____

# Exhibit E

# AGREEMENT FOR ACCOUNT ASSIGNMENT OR INCREASE

# OPENWORKS AGREEMENT
# FOR ACCOUNT ASSIGNMENT OR INCREASE

**DATE THIS ACCOUNT ASSIGNMENT AGREEMENT IS SUBMITTED TO FRANCHISEE:** _____

**Franchisee Information:**

Franchisee Name: _____

Address:_____

_____

Telephone Number: _____

Franchise Number: _____

Date Franchise Agreement Signed: _____

**Account Information:**

Account Name: _____

Office Location: _____

_____

Start Date: _____

Type of Services: _____

Monthly Billing: _____

**Account Assignment Status:**

OpenWorks hereby assigns to Franchisee the Facilities Services Agreement with the Account identified above.  The assignment of this Account shall serve to fulfill OpenWorks' obligations in relation to:

☐ *The initial Account Volume to be provided under the Franchise Agreement.*

☐ *The amendment to the Franchise Agreement (Purchase Agreement) dated _____, _____ for your purchase of Additional Accounts.*

☐ *The replacement of an Account previously accepted by you but terminated within the 30-day trial period.  This Account will replace _____ with the monthly billing stated above.*

☐ Other: _____.

**Account Refusal Status:**

☐ If this box is checked, you have exercised more than three refusals, and the 30-day trial period either (as indicated by the following checked box) will **NOT** ☐ or will ☐ apply to you.

☐ If this box is checked, this Agreement is for an increase to one of your existing Accounts and you cannot reject it.

**Account in Excess of OpenWorks' Obligations and Marketing Fee:**

☐ If this box is checked, the monthly volume of this Account, or the increase in this existing Account, exceeds OpenWorks' obligations to provide you with Account volume under the Franchise Agreement or otherwise, and you agree to pay OpenWorks a Marketing Fee in the amount of $_____ at the time you accept this Account.

---

## ACCEPTANCE

I, the undersigned Franchisee (or authorized representative of Franchisee), hereby **ACCEPT** this Assignment of the Account and agree to faithfully perform all services in connection therewith in accordance with the Maintenance Agreement for the Account, including the work specifications and schedule, and the Manual.  I further acknowledge and specifically agree to the terms and conditions set forth in the Franchise Agreement and those printed on the reverse side of this Agreement with respect to this Account.

Date: _____

Signature: _____

Printed Name: _____

---

## REJECTION

I, the undersigned Franchisee (or authorized representative of Franchisee), hereby **REJECT** this Assignment of the Account for the following reasons: _____

I understand that under the terms of the Franchise Agreement (including all amendments thereto), if this Account was offered by OpenWorks in fulfillment of an obligation to provide a specified level of Accounts, OpenWorks may have an additional 30 days to fulfill the obligation.

Date: _____

Signature: _____

Printed Name: _____

---

This Agreement for Account Assignment or Increase is not effective until it has been approved and executed by OpenWorks.

APPROVED By: _____

Dated: _____, 20____

## ADDITIONAL TERMS AND CONDITIONS TO THE AGREEMENT FOR ACCOUNT ASSIGNMENT OR INCREASE

**Refusal of an Account**.  You may refuse up to three separate new Accounts from the initial Account Volume or offered by OpenWorks for any reason whatsoever during the term of your Franchise Agreement.  However, each refusal of an Account from the initial Account Volume will extend the fulfillment period by an additional 30 days.  Thereafter, any Account from the initial Account Volume, which is initially refused by you or to which you discontinue services after accepting an Account, will reduce the Account volume OpenWorks is obligated to offer you and may, at OpenWorks' sole discretion, extend the fulfillment period by an additional 30 days.  Your refusal of an Account will not relieve you of any payment obligations to OpenWorks, including without limitation your obligations under promissory notes for installments of your initial franchise fee or any Marketing Fee.

You have a trial period of 30 days from the date service under the Maintenance Agreement for the Account is scheduled to commence to refuse an Account.  You must notify OpenWorks if you wish to refuse the Account, and OpenWorks must actually receive the notice within the 30 day period in order for it to be effective.  If you fail to give a notice of refusal, or if OpenWorks does not actually receive it within the 30 day period, you will have waived your right to refuse the Account.  You will lose your right to refuse an Account if at any time you are obligated to service the Account you fail to do so in accordance with the Maintenance Agreement and work schedule and the Manual.

If you refuse an Account during the 30-day trial period, OpenWorks will use its commercially reasonable efforts to locate another franchisee to service the Account.  **However, you must continue servicing the Account in good faith until the earlier of:  (i) the commencement of services by another franchisee, or (ii) 30 days after OpenWorks actually received your notice refusing the Account.**

<u>**Acceptance of an Account**</u>.  By accepting the Account and signing the front of this Agreement for Account Assignment or Increase, you agree to all of the following terms, which are hereby incorporated in the Agreement by reference:

a) You acknowledge receiving the Maintenance Agreement & work schedule for the assigned Account.

b) You agree to service the Account and comply strictly with the terms of the Maintenance Agreement and work schedule for the assigned Account, all according to the Manual and the standards, procedures and policies established by OpenWorks from time to time.

c) You certify that you have sufficient resources to service the assigned Account, including working capital to purchase all needed supplies and equipment, and to meet all expected payrolls for the first 45 days.

d) You agree to contact the Client at least one time each week during the first four weeks of service to discuss any concerns the Client may have.  At the end of the first month of service, and each month thereafter while you are providing service under the assigned Maintenance Agreement, you agree to obtain a written and signed evaluation form from the Client and forward a complete copy of the evaluation to OpenWorks.

e) A representative of OpenWorks may inspect the Client's premises from time to time without notice to you to insure that services are being provided in accordance with OpenWorks' standards and the Maintenance Agreement and work schedule for the assigned Account.  If a deficiency is discovered at any time, during an inspection or following a complaint, OpenWorks has the right to correct the deficiency and charge you OpenWorks' current fees for doing so.

f) If any portion of the assigned Account is an Additional Account (additional business in excess of the initial Account Volume or replacement Account volume OpenWorks is required to provide you), then you agree to pay OpenWorks the Marketing Fee stated in the Agreement Account Assignment or Increase.

g) If the Client cancels the assigned Account, or if the assigned Account is transferred at the request of the Client, in either case as a result of your wrongful act, omission or negative attitude, account satisfaction reasons or for any reason that you or your employees could have controlled, or for any violation of the Maintenance Agreement or work schedule, your Franchise Agreement or the Manual, then you must pay any unpaid portion of the Marketing Fee and, at the option of OpenWorks, the entire unpaid amount of the Marketing Fee for the Account shall become immediately due and payable.

h) You acknowledge that OpenWorks has made no representations to you about how long the Client will use your services except as expressly stated in the Maintenance Agreement.  You understand that there is no assurance that the Client will renew or extend the Maintenance Agreement.  OpenWorks retains all rights as the contracting party with the Client.

i) If you discontinue services for the assigned Account at any time for any reason, you agree to immediately turn over to OpenWorks the Client's keys, security codes and cards in your possession or the possession of your employees.  If you

do not do so, you agree to pay OpenWorks all charges assessed by the Client plus $500 a day until the Client's keys, codes and cards are delivered to OpenWorks.

Date:_____

Signature:_____

Printed Name:_____

**EXHIBIT F**

**EQUIPMENT PURCHASE AGREEMENT**

THIS AGREEMENT is entered into this ___ day of _____ by and between O.P.E.N. America, Inc., (hereinafter referred to as "O.P.E.N." or "Seller") and _____ (hereinafter referred to as "Buyer").

## BUYER & SELLER AGREE AS FOLLOWS:

1. **Sale of Equipment.** Seller agrees to sell & Buyer agrees to buy the equipment, described on the attached Exhibit "A". Exhibit "A", by this reference, is hereby incorporated in this Agreement and the items referred to therein shall collectively be referred to as the "Equipment."

2. **Cost & Payments.** The total principal cost to the Buyer for the Equipment shall be _____ ($_____). Buyer shall pay to O.P.E.N. the sum of _____ dollars and _____ cents ($____) per month for _____ consecutive months according to the terms of the attached promissory note (Exhibit "B"), hereby incorporated in to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first mentioned above.

Seller:

O.P.E.N. America, Inc.

Signature:

_____

Name:

_____

Title:

_____

Date:

_____

Buyer:

Signature:

_____

Name:

_____

Title:

_____

Date:

_____

## EXHIBIT A TO EQUIPMENT PURCHASE AGREEMENT

**DESCRIPTION**                                                    **QTY**

NT_____/ INT_____

## EXHIBIT B TO EQUIPMENT PURCHASE AGREEMENT
## PROMISSORY NOTE

$_____                                                    Date : _____


      For value received, the undersigned ("**Maker**") promises to pay to O.P.E.N. America, Inc. ("**OPENWORKS**") or its assignee (each referred to herein as "**Holder**"), at Phoenix, Arizona, the principal sum of _____ dollars and _____ cents ($_____), payable in installments as follows:

(A)  Twelve (12 ) successive equal monthly installments of principal and interest at the rate of twelve percent (12%) per year accruing on the unpaid principal, each such payment in the amount of _____ dollars and 00/100 ($       .00), with the first such payment to be made on _____ and the remaining payments to be made on the same day of each succeeding calendar month until all such payments have been made, on which date the entire unpaid balance of principal shall be due and payable.

      Principal and interest shall be payable in lawful money of the United States of America. Checks shall constitute payment when collected.

      Prepayment in whole or in part may be made at any time without notice or penalty. Holder shall have the right to credit all payments received first against accrued but unpaid interest, then against any unpaid principal payment which is due or in default, and shall thereafter credit the remainder of any payment against the last principal payment(s) due under this Note.  Holder shall have the right to offset payments due hereunder against any amounts which are or may become payable from Holder to Maker.

      Should any installment due hereunder not be paid as it matures, the amount of such installment which constitutes interest shall bear interest at the same rate as principal.

      A default shall be deemed to have occurred in the event (i) the Maker of this Note shall fail to pay any payment under this Note when due; (ii) the Franchise Agreement between Maker and OPENWORKS is terminated; (iii) any event of default occurs under the Franchise Agreement or any other agreement between Maker and OPENWORKS, if the default is not cured within the time permitted, if any, under such agreement; (iv) any Maker of this Note becomes bankrupt or insolvent, or dies; (v) a judgment in excess of One Thousand Dollars ($1,000.00) is entered against any Maker and remains unsatisfied for over thirty (30) days; (vi) a levy of attachment, execution or any other process is made against any of the assets of any Maker; (vii) Maker fails to pay, withhold, collect or remit any tax or tax deficiency when assessed or due; (viii) Maker makes a bulk sale or gives notice of an intent to do so; (ix) Maker suspends the conduct of business under the Franchise Agreement; or (x) Holder, at any time in its sole and absolute good faith discretion, believes that Maker's financial condition has become materially impaired or unsatisfactory.

      Should a default occur, then the whole sum of principal, and interest thereon which shall then have accrued but which remains unpaid, shall become immediately due and payable at the option of Holder, with default interest on the entire unpaid principal and accrued and unpaid

NT_____/ INT_____

interest from the date of such default until paid at the lesser of (i) the rate of one percent (1%) per month, or (ii) the highest rate permitted by applicable commercial usury laws.

It is the intention of the parties hereto to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby would be usurious under applicable law (including the laws of the United States of America), then, in that event, notwithstanding anything to the contrary in this Note, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest that is contracted for, taken, reserved, charged or received under this Note shall under no circumstances exceed the maximum amount allowed by such applicable law; (ii) in the event the maturity of this Note is accelerated by reason of an event of default, or in the event of any permitted prepayment, then such consideration that constitutes interest under applicable law may never include more than the maximum amount allowed by such applicable law; (iii) and excess interest, if any, provided for in this Note or otherwise shall be cancelled automatically and, if theretofore paid, shall be credited by Holder on the principal amount of this Note (or, to the extent that the principal amount of this Note shall have been or would thereby be paid in full, refunded by Holder to Maker).  The acceleration of the maturity of this Note does not include the acceleration of any interest which has not otherwise accrued on the date of such acceleration, and Holder does not intend to collect any unearned interest in the event of acceleration.

Each Maker waives demand, diligence, and presentment for payment, protest and notice of demand, protest and nonpayment.  Each Maker further agrees that the granting without notice of any extension of time for payment of any sum due hereunder, or under any security agreement, guaranty or other instrument securing this Note, or for the performance of any covenant, condition or agreement hereof or thereof, or the taking or release of other or additional security, shall in no way release or discharge the liability of any Maker.  Each Maker further agrees that this Note shall be enforceable by Holder notwithstanding the existence of any claim or cause of action by Maker against OPENWORKS or Holder.

This Note shall be governed by and construed under the laws of the State of Arizona, without giving effect to the application of any Arizona conflict of law rules.  Any proceeding brought by Holder against Maker may be brought in Maricopa County, Arizona, and each Maker and endorser hereof waives all questions of personal jurisdiction and venue for the purpose of carrying out this provision.

The obligations of each of the Makers under this Note are joint and several, and Holder may enforce this Note against all Makers, or any one or more but not necessarily all Makers.  In the event Holder is required to file any action, legal or other, to enforce its rights under this Note, Holder shall be entitled to an award of its reasonable attorneys' fees and costs incurred in connection therewith.

Time is of the essence of this Note and each and every term and provision hereof.  Holder's waiver of a default, or delay or failure to exercise any right upon default, or acceptance of late or partial payments, shall not be a waiver of Holder's rights and shall not impair Holder's rights upon other defaults of the same or a different kind.

NT_____/ INT_____

Holder may negotiate, sell, assign or transfer all rights and interest in this Note at any time.

**Franchisee(s) ["Makers"]**

Name:_____

Signature:_____

Date: _____


Name:_____

Signature:_____

Date: _____

NT_____/ INT_____

## PERSONAL GUARANTY OF PURCHASER'S OBLIGATIONS

The undersigned (collectively "**Guarantors**"), hereby personally and unconditionally guaranty the performance and payment of all of Purchaser's obligations, debts and responsibilities arising in connection with this Equipment Purchase Agreement and related Promissory Note.  This guaranty is effective irrespective of the Purchaser's financial status and whether or not the Purchaser shall have filed for relief under the United States Bankruptcy Code.  Further, Guarantors waive any right to prior notice of default and/or demand for performance.  This guaranty shall be in effect until the entire unpaid balance of principal and interest due under the Equipment Purchase Agreement and related Promissory Note shall be paid.

Date: _____, 20__       Name: _____

                                   Sign:  _____


                                   Name: _____

                                   Sign:  _____

                                   Date: _____

NT_____/ INT_____

**EXHIBIT G**

**OPERATIONS AND SAFETY MANUAL FOR FRANCHISE OWNERS**
**TABLE OF CONTENTS**

INTRODUCTION TO OPERATIONS AND SAFETY MANUAL (2 pages)

<u>Part I - Operations Manual for Franchise Owners</u>

Table of Contents (8 pages)
Section 1    -    Introduction to OpenWorks  (3 pages)
Section 2    -    Starting Your Own Business  (7 pages)
Section 3    -    Operating Your Own Franchise  (37 pages)
Section 4    -    The Process of Cleaning  (66 pages)
Section 5    -    Team Cleaning  (6 pages)
Section 6    -    Cleaning Procedures (Green Cleaning)  (38 pages)
Section 7    -    Servicing Your Accounts  (8 pages)
Section 8    -    Customer Service  (32 pages)
Section 9    -    Human Resources  (22 pages)
Section 10   -    Business Practices *Accounting*  (12 pages)
Section 11   -    Glossary  (11 pages)
Section 12   -    Cleaning Procedure Test  (58 pages)
Section 13   -    Sales  (55 pages)
Section 14   -    Recommended Reading  (2 pages)
Section 15   -    Approved Vendor List  (1 pages)

<u>Part II - Franchise Owner Safety Manual</u>

Table of Contents (2 pages)
Chapter 1    -    Franchise Safety Manual (3 pages)
Chapter 2    -    Administering the Program (9 pages)
Chapter 3    -    Accident Reporting and Investigation (6 pages)
Chapter 4    -    Hazard Communication Standard (22 pages)
Chapter 5    -    Bloodborne Pathogens (26 pages)
Chapter 6    -    Back Safety (12 pages)
Appendices   -    State OSHA Contact Numbers; Hazard Communication Additional Information; Bloodborne Pathogens Final Standard; Bloodborne Pathogens Additional Information; Back Injuries Additional Information; Safety Review (22 pages)

TOTAL: 485 PAGES

# EXHIBIT H

## O.P.E.N. AMERICA, INC. DBA OPENWORKS
## LIST OF CURRENT FRANCHISEES
### (As of December 31, 2015)

As of the date this Franchise Disclosure Document was issued, OpenWorks offers a referral fee to existing franchisees that refer a prospective franchisee to OpenWorks if and when that person signs a franchise agreement. The referral fee may influence an existing franchisee's responses to a prospective franchisee's questions.  The referral fee is not paid to franchisees that only answer questions from a prospective franchisee that initiates the contact using the information below.   The prospective franchisee must provide the name of the referring franchisee when the prospective franchisee is provided with this Franchise Disclosure Document.   The current referral fee is $250. OpenWorks reserves the right to modify this program and the referral fee in the future.

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| **ARIZONA** | | | | | | |
| Aguirre, Silvia | 1001 N 43rd Ave # 156 | Phoenix | AZ | 85009 | fabshas2014@yahoo.com | 602-384-4631 |
| Ahmed, Munzir | 210 E Brown Rd, Apt 121 | Mesa | AZ | 85201 | RIDZLLC@gmail.com | 480-703-0706 |
| Amaya, Maria | 549 N. Pima | Mesa | AZ | 85201 | maryumana501@gmail.com | 480-862-5082 |
| Ana Cecilia Reeves | 2746 N 60th | Scottsdale | AZ | 85257 | Ana.ci1@hotmail.com | 602-625-3601 |
| Antonio Montenegro | 7602 W Lynn Rd | Phoenix | AZ | 85033 | tony4uto@yahoo.com | 480-307-3718 |
| Balan, Rodica | 745 E Irma Ln | Phoenix | AZ | 85024 | RodicaBalan4@Yahoo.com | 623-330-0313 |
| Bamokian, Steve | 4423 N 29th Drive | Phoenix | AZ | 85017 | CleanWiz7@Gmail.com | 480-450-2926 |
| Bautista, Yazmin | 3409 W. Paradise Dr. | Phoenix | AZ | 85029 | ARTUROMARIN@LIVE.COM | 602-348-4447 |
| Bucurenciu, Cornel | 3011 E Topeka Dr | Phoenix | AZ | 85050 | estercohen1717@gmail.com | 602-421-1029 |
| Cameron, Claudia | 5505 South 34th Ave | Phoenix | AZ | 85041 | cpc4769@gmail.com | 813-516-4036 |
| Cannella, Robert | 1094 E. Maddison St. | San Tan Valley | AZ | 85140 | lovcan@yahoo.com | 480-888-0728 |
| Caron, Faylene | 13606 N. 110th Avenue | Sun City | AZ | 85351 | faytc@yahoo.com | 623-201-0798 |
| Castro, Jesus | 5741 W. Monona Dr. | Glendale | AZ | 85308 | jacastro-2@hotmail.com | 623-628-9409 |
| Caviness, Kimberly | P.O. Box 375 | Superior | AZ | 85173 | kym.caviness66@gmail.com | 520-391-0696 |
| Cazares, Edith | 12625 W. Laurel Lane | El Mirage | AZ | 85335 | Edith0968@Gmail.com | 623-313-3632 |
| Chaffee, Kenneth W. | 1075 E. Ranch Road | Payson | AZ | 85541 | KenChaffee@Yahoo.com | 928-478-4415 |
| Chaney, Bobbie | 6281 W. Highland Ave | Phoenix | AZ | 85033 | CNCCleaning77@yahoo.com | 602-670-4619 |
| Cisneros, Nohemy | 3521 N 106th Ave | Avondale | AZ | 85392 | ncisneros456@hotmail.com | 623-385-9042 |
| Correa, Gustavo | 5645 N 76th Drive | Glendale | AZ | 85303 | g.correa85@yahoo.com | 623-205-4833 |
| Costelo, Carmen | 7611 S. 36th Street, Unit 259 | Phoenix | AZ | 85042 | carmenscleaning@yahoo.com | 480-363-9215 |
| Crawford, Shariff | 40320 W. Peggy Court | Maricopa | AZ | 85238 | ShariffCrawford@Gmail.com | 623-826-8602 |
| Cruz, Erlinda | 5212 W Roanoke Ave | Phoenix | AZ | 85035 | margocz@aol.com | 602-446-1639 |
| Darko, Samini | 9543 W Miami | Tolleson | AZ | 85353 | SamDarko6026974477@Yahoo.com | 602-697-4477 |
| Davila, Esaul | P.O.Box 353 | Buckeye | AZ | 85326 | esauldavila_6@msn.com | 602-679-6607 |
| Day, Alicia | 85 W Combs Rd., Suite 101 #272 | San Tan Valley | AZ | 85140 | faithworkscleaningsolutions@gmail.com | 718-607-1850 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| de Jesus Meza de Contreras, Maria | 6974 W Montebello Ave | Glendale | AZ | 85303 | marycontreras95@gmail.com | 559-412-3418 |
| Denga, Pedro | 10139 W. Highland Avenue | Phoenix | AZ | 85037 | Pedro.Denga@Yahoo.com | 602-405-5957 |
| Discua, Ibis | 1841 E. Granada | Phoenix | AZ | 85006 | idiscua@yahoo.com | 602-679-8721 |
| Duarte, Cesar | 5501 W. Wolf Street | Phoenix | AZ | 85031 | Ceaz2007@gmail.com | 623-570-1887 |
| Dvornski, Mark | 6405 W. Del Rio | Chandler | AZ | 85226 | mdvornski@cox.net | 480-893-6191 |
| Eldirais, Abdelrahman Mohamed | 2004 W Tyson St | Chandler | AZ | 85224 | AALDORES@HOTMAIL.COM | 602-441-8999 |
| Erazo, Otoniel | 4631 W. Vogel Ave. | Glendale | AZ | 85302 | Elisa.erazo26@gmail.com | 623-377-6097 |
| Figueroa, Miguel | 7818 W Hazelwood St | Phoenix | AZ | 85033 | mmlde13@gmail.com | 623-329-2026 |
| Flores, Gunther | 6329 W. Hughes Dr | Phoenix | AZ | 85043 | gunnysworld@cox.net | 602-758-0132 |
| Fornino, Felix | 4618 E Hunter Ct | Cave Creek | AZ | 85331 | apcfelix@gmail.com | 480-282-2058 |
| Forster, Dustin | 3228 W Glendale Ave #105 | Phoenix | AZ | 85051 | ForsterClean@Gmail.com | 623-225-8020 |
| Frizzell, Rick | 2407 W Corral Rd | Phoenix | AZ | 85041 | rickfrizzell@gmail.com | 602-421-3490 |
| Gadson, Chavez | 17007 W Watkins St | Goodyear | AZ | 85338 | clamargadson@gmail.com | 253-985-0925 |
| Garcia, Michael | 10759 W. Cambridge Avenue | Avondale | AZ | 85392 | MLGElectric@cox.net | 602-332-1563 |
| Gill, Frank | 7125 E. Superstition Springs Bl | Mesa | AZ | 85209 | GIZXRM@GMAIL.COM | 480-703-5585 |
| Gonzalez, Elisa | 29948 W. Pierce Street | Buckeye | AZ | 85396 | m.e.greencleaningsolution@hotmail.com | 623-703-0081 |
| Gonzalez, Lidia | 6514 W. Riva Road | Phoenix | AZ | 85043 | ESLGonzalez44@Gmail.com | 480-600-5576 |
| Guerrero Sr, Marco | 605 N Larkspur Street | Gilbert | AZ | 85234 | MarcoAGuerreroSr@hotmail.com | 480-255-5889 |
| Gutierrez, Viviana Maximo | 1915 S 39 St, Unit 17 | Mesa | AZ | 80206 | guviviana1001@msn.com | 480-540-8215 |
| Guzman, Julissa R | 4220 N 25th Street Apt 3 | Phoenix | AZ | 85016-5602 | guzman.yuli@yahoo.com | 623-533-2993 |
| Guzman, Marina | PO Box 46426 | Phoenix | AZ | 85063 | GAndVCommercialCleaning@Gmail.com | 602-348-0676 |
| Haro, Rafaela | 8115 W. Papago St. | Phoenix | AZ | 85043 | fernandezphnx@aol.com | 323-351-4766 |
| Harrington, Mike | 451 W. Marlin Place | Chandler | AZ | 85248 | kelbypud@gmail.com | 480-963-3890 |
| Hernandez, Alberto T. | 8613 W. Polk St. | Tolleson | AZ | 85353 | albertoth65@gmail.com | 602-577-2644 |
| Hernandez, Debra | 11880 W Grant Street | Avondale | AZ | 85323 | carlossanz81.cs@gmail.com | 623-216-7218 |
| Hernandez, Susana | 11402 E. Weir Avenue | Mesa | AZ | 85208 | Ezechavez@msn.com | 602-577-3568 |
| Hernandez, Trinidad | 2009 S. 83rd Drive | Tolleson | AZ | 85353 | TriniHernandez@cox.net | 623-398-5417 |
| Imeah, Stanley | 1205 W. Catherine Avenue | Phoenix | AZ | 85041 | imeahstan@netzero.com | 602-410-2355 |
| Jones, Jacqueline | 2601 S. 116th Avenue | Avondale | AZ | 85323 | aboveaverageaz@gmail.com | 623-271-5640 |
| Kang, Angela | 24225 N 37th Lane | Glendale | AZ | 85310 | angelakang53@gmail.com | 623-376-2403 |
| Kuku, Mohamed | 3834 W. Golden Lane | Phoenix | AZ | 85051 | mkuku@asu.edu | 602-463-1050 |
| Lara, Israel | 3636 E. Inverness Ave Apt# 1038 | Mesa | AZ | 85206 | Israel588@Hotmail.com | 480-815-8663 |
| Lara, Norma | 924 S. 28th Ave | Phoenix | AZ | 85009 | normalara1791@gmail.com | 602-481-7851 |
| Ledesma, Jesse | 11880 W Grant Street | Avondale | AZ | 85323 | jrlboudi10@gmail.com | 623-800-3034 |
| Lopez, Blanca | 2411 W. Prichett Pl | Tucson | AZ | 85745 | blancalopez96@hotmail.com | 520-343-1938 |

EXHIBIT H TO FDD
A-0192
Page 192 of 211

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Lopez, David | 14451 N 41st Street | Phoenix | AZ | 85032 | davlopz603@aol.com | 602-762-7271 |
| Lopez, Nora | 8902 W. Mackenzie Drive | Phoenix | AZ | 85037 | hugotostado@gmail.com | 480-285-6837 |
| Madrid, Jose | 7119 West Osborn | Phoenix | AZ | 85033 | OpenWorksByMadrid@hotmail.com | 602-617-0599 |
| Martin, Karin | 8987 W Olive Ave#117-12 | Peoria | AZ | 85345 | k.o.solutionsllc@gmail.com | 602-400-1105 |
| Martinez, Rene | 4123 W Carol Ave | Phoenix | AZ | 85051 | MondragonServices12@Yahoo.com | 602-466-8185 |
| Mata, Rafael | 3819 E. Beck Lane | Phoenix | AZ | 85032 | rericksac@gmail.com | 623-261-1278 |
| McMillan, Sean | 5757 E. Flossmoor Circle | Mesa | AZ | 85206 | seanpm40@hotmail.com | 480-600-1030 |
| Mejia, Diego | 107 W. 32nd St. | Tucson | AZ | 85713 | diegomejiar@hotmail.com | 520-704-5060 |
| Mercado, Victor | 2002 N. 58th Drive | Phoenix | AZ | 85035 | Victor.I.Mercado@Gmail.com | 602-281-0805 |
| Morales Cuenca, Patricia M. | 9805 West Jasmine Trail | Peoria | AZ | 85383 | rwayas@hotmail.com | 623-385-6772 |
| Morales, Espiridion | 12563 W Fairmount Ave | Avondale | AZ | 85392 | e1956morales@yahoo.com | 602-689-2831 |
| Moreno-Acevedo, Hector | 10941 W. Minnezona Ave | Phoenix | AZ | 85037 | Hector_Moreno90@Yahoo.com | 623-221-7089 |
| Mota, Hector | 7924 W. Pomo St. | Phoenix | AZ | 85043 | hectormota700@hotmail.com | 602-319-9048 |
| Munoz, Terry | 10062 E. Placita Del Timbre | Tucson | AZ | 85747 | MariaMunoz23@Cox.net | 520-977-8574 |
| Nwabeke, Charlie | 499 E. Press Rd. | Santan Valley | AZ | 85140 | charles4chioma@yahoo.com | 480-277-9800 |
| Oden, Mary | 2799 S 160th Lane | Goodyear | AZ | 85338 | maryo.1130@yahoo.com | 414-334-6193 |
| Orozco, Reyes | 11156 W Elm Lane | Avondale | AZ | 85323 | reydawg36@hotmail.com | 623-313-1522 |
| Padilla, Eduardo G. | 11840 West Virginia | Avondale | AZ | 85323 | eddog28@gmail.com | 623-302-3457 |
| Parris, Jermaine M. | 9211 S 7th Pl | Phoenix | AZ | 85041 | tariusgary@aol.com | 480-238-6398 |
| Perez, Cristina | 5304 N. 106th Avenue | Glendale | AZ | 85307 | totalcleaningsolutions@gmail.com | 602-909-2863 |
| Perminus Ndogoni | 1051 S. Maverick Street | Chandler | AZ | 85286 | PNdogoni@Yahoo.com | 480-559-5585 |
| Postiglione, Maria | 8504 E. Lindner Ave | Mesa | AZ | 85208 | galvezgang650@aol.com | 480-343-8686 |
| Ramirez, Manuel | 5217 W. Siesta Way | Laveen | AZ | 85339 | RamirezAnna4160@Gmail.com | 602-820-9529 |
| Redd, Amina | P.O. BOX 12289 | Glendale | AZ | 85318 | agninc4@msn.com | 623-332-4613 |
| Reed, Ranada | 11363 W. Locust Lane | Avondale | AZ | 85323 | stonie.cephus1973@gmail.com | 602-505-6981 |
| Rice, Janiece | 286 W Hereford Dr | San Tan Valley | AZ | 85143 | fjgreencleaning@gmail.com | 480-845-9699 |
| Rodriguez, Camilo | 2931 W Monte Vista Rd | Phoenix | AZ | 85009 | roman_services@yahoo.com | 602-358-6599 |
| Rodriguez, Gustavo | 5801 N. 62nd. Drive | Glendale | AZ | 85301 | GARodriguez4@yahoo.com | 623-628-9724 |
| Rodriguez, Jorge | 9146 W Hazelwood Street | Phoenix | AZ | 85037 | Maria.wisdomcleaning@gmail.com | 623-313-5914 |
| Rodriguez, Juan | 914 E. Commonwealth Place | Chandler | AZ | 85225 | rdjn914@msn.com | 480-510-3506 |
| Rojas, Estrella | 10233 E. Lakeview Ave | Mesa | AZ | 85209 | vrojas@cox.net | 480-252-8289 |
| Rosales, Diego | 1702 N. 113th Ave. | Avondale | AZ | 85323 | lcollazo@asu.edu | 602-301-8841 |
| Rowley, Tom | 2761 S. Southwind Dr | Gilbert | AZ | 85295 | srowley54@gmail.com | 480-495-6956 |
| Sahagun, Maria | 2606 N. 89th Drive | Phoenix | AZ | 85037 | arabellaesofia@gmail.com | 602-812-8989 |
| Salaam, Princess | 3421 W. Dunlap Ave, #102 | Phoenix | AZ | 85051 | actsllc9@gmail.com | 623-227-5334 |
| Salazar, Juan A. | 2202 East Monterey Way | Phoenix | AZ | 85016 | jandres39@yahoo.com | 602-405-2435 |
| Sandoval, Jonatan | 9717 W. Florence Ave. | Tolleson | AZ | 85353 | SandovalJonatan750@Yahoo.com | 623-329-8521 |
| Saunders, Darcie G. | 4030 W Bloomfield Road | Phoenix | AZ | 85029 | darcie@casasbonitasbydarcie.com | 602-628-1354 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Symmonds, David | 12433 W Hearn Rd | El Mirage | AZ | 85335 | DVDSymmonds@Yahoo.com | 623-313-7203 |
| Tanner, Julie L. | 4102 E. Ray Rd. #1005 | Phoenix | AZ | 85044 | fourTs88@msn.com | 480-759-4884 |
| Tanner, Melissa | 4102 E. Ray Rd., #1005 | Phoenix | AZ | 85044 | fourTs88@msn.com | 480-759-4884 |
| Timmerman, Lee | 10247 W. Georgia Ave. | Glendale | AZ | 85307 | LeeTimmerman@LeeTimmerman.com | 602-717-6610 |
| Toc, Matei | 26215 N 55th Lane | Phoenix | AZ | 85083 | matei_t@yahoo.com | 602-330-1642 |
| Torres, Maria | 105 E. 3rd St | Mammoth | AZ | 85618 | mtdurazo@gmail.com | 520-250-2750 |
| Valdez, Francisco | 1262 E Arrowhead Tr | Gilbert | AZ | 85297 | nachos.trucking@hotmail.com | 520-705-5588 |
| Valencia, Frank | 6329 West Pima Street | Phoenix | AZ | 85043 | valenciafrank@cox.net | 623-336-8334 |
| Valerio, Diana | 7575 W Oregon Ave | Glendale | AZ | 85303 | dmexicanita89@yahoo.com | 602-214-2714 |
| Vasquez, Paulette | 3227 N. 20th Street | Phoenix | AZ | 85016 | wedoitright.sv@gmail.com | 323-691-9221 |
| Vera, Ana L. | 3725 E Amelia Ave | Phoenix | AZ | 85018 | SACLEANINGSERVICES@HOTMAIL.COM | 480-717-8879 |
| Villalobos, Adolfo | P.O. Box 381 | Queen Creek | AZ | 85242 | adolfo316@gmail.com | 480-987-1451 |
| Willams, Lance | 4627 E Melinda Lane | Phoenix | AZ | 85050 | LanceWilliams@Cox.net | 602-690-9905 |
| Williams, Charles | P O Box 1326 | Tolleson | AZ | 85353 | CWilliams290@msn.com | 602-413-0838 |
| Zapata, Ruben | 1106 S. Lebanon Lane | Tempe | AZ | 85281 | bigzmoves@yahoo.com | 602-430-4175 |
| **Number of Active Franchisees for Region: 113** | | | | | | |
| **CALIFORNIA** | | | | | | |
| Alvarado, Ezequiel | 2233 Franzen Ave #A | Santa Ana | CA | 92705 | brothersalvaradocleaning@hotmail.com | 714-606-9817 |
| Amador, Abigail | 2058 E Oris | Compton | CA | 90222 | amadorabi180@yahoo.com | 310-936-6535 |
| Arriaga, Michelle | 996 W 24th Street | San Bernardino | CA | 92405 | egmichelle90@yahoo.com | 909-659-3131 |
| Aye-Darko, John | 26502 Beecher Lane | Stevenson Ranch | CA | 91381 | johnayedarko@yahoo.com | 661-808-4990 |
| Beans, Carl Raymond | 375 Redondo Ave #132 | Long Beach | CA | 90814 | crbeans@gmail.com | 562-608-8893 |
| Campos, Lorenzo | 267 W Claremont | Pasadena | CA | 91103 | lcampos459@gmail.com | 626-993-4869 |
| Carlos Aguilera | 15435 Dulcinea lane | Fontana | CA | 92336 | carlos.aguilera@pepsico.com | 909-908-4873 |
| Chavez, Eleazar | 2802 S. Hobart Blvd | Los Angeles | CA | 90018 | echavez7660@yahoo.com | 323-733-3223 |
| Cruz III, Ray | 1072 Corto St | Simi Valley | CA | 93065 | rayctmitesempire@gmail.com | 818-427-6876 |
| Danny Akhtar Rizvi | 1416 S LaTijera Blvd | Inglewood | CA | 90302 | dannyrizvi14@yahoo.com | 310-908-1892 |
| De La Mora, Ali | 7108 Kuhl Drive | Commerce | CA | 90040 | ali_bg_7@yahoo.com | 562-244-6442 |
| Deepika Nand , Sheikher | 11814 Marshall Street | Culver City | CA | 90230 | khera_sd@yahoo.com | 310-398-6158 |
| Deshan Arita & Javier Gonzalez | 24462 Fiji Dr | Moreno Valley | CA | 92551 | omega.clean1@yahoo.com | 951-269-5483 |
| Desta, Matias Mulugeta | 10799 Poplar St #158 | Loma Linda | CA | 92354 | matias_desta@yahoo.com | 909-659-3926 |
| Escobar, Guadalupe | 2913 Actis Rd | Bakersfield | CA | 93309 | GuadalupeEscobarBKFD@gmail.com | 661-477-0346 |
| Garcia, Grisel | 945 Van Wig Ave | La Puente | CA | 91746 | garciaquirozgrisel@yahoo.com | 323-795-8929 |
| Georgitte Freeman | 1519 S Kemp Ave | Compton | CA | 90220 | msgfreeman@gmail.com | 323-385-2586 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Hardy, Johan | 1261 N Lakeview Ave #J808 | Anaheim | CA | 98027 | jhn28@hotmail.com | 714-270-5718 |
| Harrison, Jacqueline | 8250 Vineyard Ave #2 | Rancho Cucamonga | CA | 91730 | cleaninglady91701@yahoo.com | 909-244-4272 |
| Iqbal, Zafar | 6919 Sepulveda Blvd #28 | Van Nuys | CA | 91405 | zafor_0860@yahoo.com | 818-231-2515 |
| Jean Rigaud | 11477 Bobolink Lane | Moreno Valley | CA | 92557 | Grproduction1@gmail.com | 951-847-5945 |
| Johnson, Alma | 6481 W. 77th St. | Los Angeles | CA | 90045 | codylarry@hotmail.com | 310-743-4165 |
| Juan Ortega Macias | 645 3/4 West 94th Street | Los Angeles | CA | 90044 | jcarlosx_1@hotmail.com | 323-770-4899 |
| Julio Santillana | 2128 Rimpau Blvd. | Los Angeles | CA | 90016 | santillanam@msn.com | 323-331-0670 |
| Kamara, Mohammed | 2390 Millcreek Pl #210 | Corona | CA | 92879 | kamara3108@hotmail.com | 623-628-8295 |
| Lee, Yvonne | 2211 W. 20th St. | Los Angeles | CA | 90018 | jefferylee55@gmail.com | 323-635-0816 |
| Linares, Adam | PO BOX 3213 | N Hollywood | CA | 91609 | snlmaintenance@openworksweb.com | 213-256-5421 |
| McDuffy, Robert | 14995 Daisy Rd | Adelanto | CA | 92301 | r.mcduffy@yahoo.com | 951-333-5709 |
| Mehrzai, Wassi | 10201 Mason Ave | Chatsworth | CA | 91311 | toobasidiki@hotmail.com | 818-792-6646 |
| Mejia, Mainor | PO# 1904 | Lynwood | CA | 90262 | mainor.mejia@yahoo.com | 323-907-2552 |
| Mercado, Juan | 6600 Jaboneria Rd | Bell Gardens | CA | 90201 | mejc60@live.com | 323-774-4990 |
| Mercado, Nannette | 9903 Paramount Blvd #489 | Downey | CA | 90240 | mejc60@live.com | 323-560-8505 |
| Michelle Aguilar | 9227 Park Ave | South Gate | CA | 90280 | michelle.aguilar9@aol.com | 562-381-5552 |
| Miller, Clarvin | 14530 Medinah Way | Marino Valley | CA | 92555 | claymilz@gmail.com | 951-243-3598 |
| Nogueda, Joel | 4310 W 167th St | Lawndale | CA | 90260 | mrchueco@yahoo.com | 310-406-9095 |
| Owusu, Nanayaw | 0432 Grand Canal | Irvine | CA | 92620 | oinc28@hotmail.com | 949-973-5888 |
| Palacios, Martin | 9301 Mirror Circle | Westminster | CA | 92683 | ritecleanusa@gmail.com | 714-884-2300 |
| Palacios, Raul Garza | 15719 Temple Ave | La Puente | CA | 91744 | rpalacios129@yahoo.com | 626-548-1167 |
| Ramirez, Saul | 2230 Heather Way | Pomona | CA | 91767 | vazquezramirez@msn.com | 909-398-0483 |
| Rebeca Miranda | 2809 W Ramona Rd #2 | Alhambra | CA | 91803 | rebecca_miranda11@hotmail.com | 323-202-0902 |
| Sandoval, Jose Ivan | 11112 Penn Street | Lynwood | CA | 90262 | sandoval.openworks@hotmail.com | 818-299-2946 |
| Sheikh, Shahnez | 43136 Sand West Court | Lancaster | CA | 93536 | shahnessheith@aol.com | 310-903-6736 |
| Sicre, Pedro | 4648 1/4 Live Oak Street | Bell | CA | 90201 | petersicre@sbcglobal.net | 323-972-8034 |
| Sortillon, Mitchell | 18700 Yorba Linda Blvd #207 | Yorba Linda | CA | 92886 | mdsorti@att.net | 213-448-6847 |
| Tamara Battle-Agurs | 3723 1/2 W 106th Street | Inglewood | CA | 90303 | navvetcleaning@yahoo.com | 213-364-1802 |
| Tanaka, Toshio | 636 N. Hill Place #412 - B | Los Angeles | CA | 90012 | toshiotanaka55@gmail.com | 213-687-6962 |
| Tello, Alejandro | 2555 W Wilson Road Apt 31 | Anaheim | CA | 92804 | aand3g60@yahoo.com | 714-936-1045 |
| Torres, Victor | 14738 Saticoy Street | Van Nuys | CA | 91405 | Victorleotorres@gmail.com | 818-836-1349 |
| Tru Clean | 10475 Glenellen Ave | San Diego | CA | 92126 | truclean2013@gmail.com | 858-212-4969 |
| Umana, Gil | 142 North Ardmore Ave | Los Angeles | CA | 90004 | Gileumana@gmail.com | 213-389-2452 |
| Vargas, Felipe | 804 Bartolo Ave | Montebello | CA | 90640 | felipedejvb@yahoo.com | 213-952-2250 |
| Vicente Crooks | 20404 Saticoy Street, Apt 115 | Winnetka | CA | 91306 | skylacompany@gmail.com | 213-595-3095 |
| Wellington Mutize | 456 E Orange Grove Blvd | Pasadena | CA | 91104 | wmutize595@gmail.com | 818-472-1801 |
| Wilkerson, Trevell | 264 S La Cienega Blvd Suite 113 | Beverly Hills | CA | 90211 | Trevew2@aol.com | 310-228-7669 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Zertuche, Carlos | 4303 Eagle Rock Blvd | Los Angeles | CA | 90041 | openworks4u@yahoo.com | 323-213-6780 |
| Aguirre, Angelica | 2005 San Jose Dr #L 154 | Antioch | CA | 94509 | perspectiveplusbuildingsvcs@gmail.com | 909-275-9806 |
| Ana Nalleli Garcia | 928 Ventura St | Richmond | CA | 94805 | healthycleaningjs@gmail.com | 510-455-0451 |
| Barajas, Eva | 13618 Doty Ave | Hawthorne | CA | 90250 | evabarajas24@gmail.com | 310-920-3725 |
| Parius Futch | 4117 Allendale Ave | Oakland | CA | 94619 | pre.futch@gmail.com | 510-827-6832 |
| **Number of Active Franchisees for Region: 59** | | | | | | |
| **COLORADO** | | | | | | |
| Howard Williams | 6002 US Hwy 30 | Cheyenne | WY | 82001 | capitalcitymaintenance@hotmail.com | 307-421-9680 |
| **Number of Active Franchisees for Region: 1** | | | | | | |
| **ILLINOIS** | | | | | | |
| Abebe, Nardos | 1016 W Ainslie St #3 | Chicago | IL | 60640 | Nardos74@Yahoo.com | 773-386-2127 |
| Awotayo, Adedeji | 1723 W Touhy Ave #5 | Chicago | IL | 60626 | mosej1221@yahoo.com | 773-644-0873 |
| Blair, Jonathan | 5123 S. Kimbark Ave, Apt 204 | Chicago | IL | 60615 | jonathan.a.blair@gmail.com | 480-577-4657 |
| Caballero, Mario | 3005 N. Lotus Avenue | Chicago | IL | 60641 | GreenClean2014@Yahoo.com | 773-848-5005 |
| Chervko, Viktor | 1914 Farnsworth Lane #204 | Northbrook | IL | 60062 | viktorv585@gmail.com | 847-414-6717 |
| Eyob W Meskel | 2157 Graystone Place | Hoffman Estates | IL | 60169 | eyobtd@gmail.com | 815-505-7291 |
| Galvan, Jesus | 1020 E Lilac Dr | Palatine | IL | 60074 | JGalvan@Fordgum.com | 224-659-9245 |
| Gonzalez, Roxana | 1810 S Allport #3F | Chicago | IL | 60608 | pilsenfox@yahoo.com | 312-692-9283 |
| Hamilton, James | 2101 Spencer Road | Joliet | IL | 60433 | DNJ3198@aol.com | 815-715-4582 |
| Hanic, Amir (Eric) | P.O. BOX 46386 | Chicago | IL | 60646 | AHanic@SBCGlobal.net | 773-263-6102 |
| Holliday, Maurice | 18217 S Kostner Ave | Country Club Hills | IL | 60478 | uridetransport@yahoo.com | 708-717-9596 |
| Julious, Shameka | 1135 E. 159th Pl | South Holland | IL | 60473 | ShamekaJulious14@Comcast.net | 708-543-1681 |
| Kopic, Mihret | 766 Biloxie Ct | Carol Stream | IL | 60188 | MihretKopic@ATT.net | 630-346-0535 |
| Kosk, Anna & Robert | P O Box 595 | Itasca | IL | 60143 | KoskAnna@Yahoo.com | 630-546-2161 |
| Manzanarez, Arturo | 148 Circle Ave #206 | Forest Park | IL | 60130 | aremanilglobalservices@gmail.com | 312-730-0442 |
| McLaughlin, Jason | 10121 S Peoria St | Chicago | IL | 60643 | jasonmclaughlin38@yahoo.com | 708-546-9775 |
| Nelson, Shawn | 14404 S Leavitt Ave | Dixmoor | IL | 60426 | angel101521@gmail.com | 773-892-6194 |
| Nkemnkeng, Cecilia | 7353 N Sheridan Rd | Chicago | IL | 60626 | rnkem@yahoo.com | 224-201-5513 |
| Nyiawung, Thomas | 1625 W North Shore Ave, Apt 102 | Chicago | IL | 60626 | tnyiawung@gmail.com | 312-804-4593 |
| Ortiz, Martha | 2741 S Kedzie Ave, 1st Floor | Chicago | IL | 60623 | ortizlaura.pink@gmail.com | 773-574-0760 |
| Palomar, Juan | 29 Pioneer Rd | Waukegan | IL | 60085 | jupalomar@att.net | 847-525-9118 |
| Reyes, Eduardo | 3405 S. Ashland Ave 2nd Floor | Chicago | IL | 60608 | ERCLEANING2012@yahoo.com | 773-663-2737 |
| Richards, Joycin | 1527 Fowler Ave | Evanston | IL | 60201 | tashakayr@aol.com | 847-630-6725 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Sanchez, Lorena | 3086 Lynnwood Ct | Streamwood | IL | 60107 | lsflores73@gmail.com | 630-400-3627 |
| Sereno, Manuel | 5841 S. Kilbourne Avenue | Chicago | IL | 60629 | bysereno@gmail.com | 708-774-5006 |
| Thomas, Bennie | 415 S Maple, Apt 403 | Oak Park | IL | 60302 | benjammin4u@gmail.com | 773-865-7174 |
| Thomas, Kevin | 1805 Dempster Ave | Evanston | IL | 60201 | KevinCuts99@yahoo.com | 773-630-4559 |
| Tiffany Morgan | 1308 Luther Avenue | Joliet | IL | 60432 | tiffany.s.morgan73@gmail.com | 708-510-5207 |
| Wiley, Cleauquita | 2727 W. 97th St | Evergreen Park | IL | 60805 | hcsmaint2015@gmail.com | 773-732-3770 |
| Worthy, Rickey | 8425 Lorel Ave | Burbank | IL | 60459 | ali7209@hotmail.com | 708-227-6085 |
| **Number of Active Franchisees for Region: 30** | | | | | | |
| **TEXAS** | | | | | | |
| B & H Cleaning Services | 1800 Pine Ridge Drive | Bedford | TX | 76021 | Richie.Rich1300@Gmail.com | 214-701-5646 |
| Bayson-Sanchez, Annetra | 8533 Quicksilver Dr | Dallas | TX | 75249 | puttytatt75@hotmail.com | 214-455-1034 |
| Brene, Belkis | 4012 Lakewood Dr | Fort Worth | TX | 76135 | perezbrene413@gmail.com | 817-210-7896 |
| Carolina, James | 269 Brookdale Drive | Little Elm | TX | 75068 | jhcarolina@yahoo.com | 214-407-1894 |
| Cavalier, David | 1001 Red Leaf Dr, Apt 2902 | Arlington | TX | 76017 | gigimurray71@yahoo.com | 817-714-4220 |
| Christopher Oakes | 517 W Main Street #42 | Azle | TX | 76020 | oakeschristopher@gmail.com | 817-901-0895 |
| Dachen, Moses | 6109 Winter Park Lane | Arlington | TX | 76018 | mosdachen@yahoo.com | 214-514-9842 |
| Dominique Bennett | 11330 Amanda Lane | Dallas | TX | 75238 | | 318-678-8237 |
| Eddins, Christopher | 4590 Beechnut #305 | Houston | TX | 77096 | serviceonesvcs@gmail.com | 832-829-6580 |
| Edwards, Deadra | 3824 Cedar Springs Rd Ste 525 | Dallas | TX | 75219 | dede@stewardwaters.com | 972-898-2354 |
| Gomez, Lucrecia | 704 Harbour Town Drive | Lake Dallas | TX | 75065 | LBGomez31@Hotmail.com | 469-878-1398 |
| Gutierrez, Heriberto | 2633 McKinney Ave. Ste 130-238 | Dallas | TX | 75204 | heriguti@att.net | 214-796-9930 |
| Harris, Jarrod Leroine | 2829 Siskin Drive | Mesquite | TX | 75181 | harris.jarrod@gmail.com | 469-272-6855 |
| J & T Maintainance, LLC | PO Box 182081 | Arlington | TX | 76018 | glorehands@yahoo.com | 469-335-4624 |
| Juan Cardozo | 2000 Sycamore Drive | Mesquite | TX | 75149 | | 469-571-4847 |
| Leyva-Diaz, Jesus | 2601 Frankford Road #1904 | Dallas | TX | 75287 | jessemo4@yahoo.com | 940-210-1724 |
| Martinez, Maria | 858 Kingwest Parkway Apt 181 | Irving | TX | 75063 | cvasquez1956@yahoo.com | 469-432-4155 |
| McDaniel, Quient | P O Box 152301 | Dallas | TX | 75315 | qmcdaniel1964@gmail.com | 214-772-1275 |
| Rhoden, Rapheal | 1414 Belleview St. | Dallas | TX | 75215 | contactcybo@gmail.com | 214-300-9041 |
| Richmond, Charles | 923 Blue Jay Dr. | Murphy | TX | 75094 | cjrinvestmentgroup@yahoo.com | 469-964-1441 |
| Smith, Felina | 6720 Meadowcrest Drive | Arlington | TX | 76002 | sokleen1229@gmail.com | 817-375-0567 |
| Spears, Vickie | 14720 Lone Spring Dr | Little Elm | TX | 75068 | VDSpears@yahoo.com | 214-527-7878 |
| Stacy Crockett | 1841 Dudley Ave | Dallas | TX | 75203 | scrock18@gmail.com | 972-365-4386 |
| Valles, Rosa | 1013 Receda Court | Fort Worth | TX | 76131 | RosaValles52@Gmail.com | 817-703-3467 |
| Watson, Frederick | 1817 Ariel Drive | Dallas | TX | 75232 | FreddyLee@Live.com | 682-218-1554 |
| Woodson, Autrey | 226 Rolling Hills | Lancaster | TX | 75146 | FirstStopCleaningService@Yahoo.com | 214-772-4343 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| **Number of Active Franchisees for Region: 26** | | | | | | |
| **WASHINGTON** | | | | | | |
| Aaron Chin | P O Box 239 | Renton | WA | 98057 | axxchin@yahoo.com | 425-246-3531 |
| Ahmed, Mariam | P. O. Box 5402 | Kent | WA | 98064 | hmadme@live.com | 253-631-1619 |
| Akuila Ratukalou | 15405 Des Moines Memorial Drive | Burien | WA | 98148 | aratukalou@wallypark.com | 206-579-0152 |
| Al Easawi, Ahmad | 4752 S. 172nd Street | Seatac | WA | 98188 | ahmad_baghdad@yahoo.com | 206-393-2332 |
| Al-huchiami, Ismael | 3240 S 152nd Apt 18 | Seatac | WA | 98188 | times3333@aim.com | 206-643-8344 |
| Ali, Shugri Mohamed | 7509 24th Ave SW #7 | Seattle | WA | 98106 | shugri_ali@yahoo.com | 206-353-5271 |
| Almasri, Huwayda | 16718 Juanita Dr NE Unit #A1 | Kenmore | WA | 98028 | ataaseel@yahoo.com | 206-209-7797 |
| Amare, Almaz | 17555 Stone Ave N | Shoreline | WA | 98133 | almaza@u.washington.edu | 206-313-8763 |
| Andreev, Valentin | 5810 200 St., SW #B | Lynnwood | WA | 98036 | vivona2000@gmail.com | 425-299-0273 |
| Anguelova, Sevdalina | 18906 21st Ave. West | Lynnwood | WA | 98036 | velina_05@yahoo.com | 425-773-6707 |
| Aranda, Gladys | 639 3rd Ave S, apt 49 | Kent | WA | 98032 | gladinseattle@hotmail.com | 206-427-7653 |
| Badarch, Tumurbaatar | 16717 Whitman Ave N #5 | Shoreline | WA | 98133 | bujinod@yahoo.com | 206-353-8109 |
| Baquiring, Jose | 7351 16th Avenue SW | Seattle | WA | 98106 | josebaquiring@yahoo.com | 206-768-8072 |
| Barrientos, Leonel | 11749 Greenwood Ave N | Seattle | WA | 98133 | leonelbp10@hotmail.com | 206-619-0859 |
| Campbell, Larry | 11515 SE 302nd Court | Auburn | WA | 98092 | larry5_98023@yahoo.com | 253-569-6651 |
| Cavcic, Sedin | 13002 26th Ave S | Seatac | WA | 98168 | xxsedinxx@gmail.com | 206-407-6649 |
| Chakova, Stefka Hristova | 14820 Bothell Way NE #149 | Lake Forest Park | WA | 98155 | stefani789@abv.bg | 206-330-7869 |
| Chuluunbaatar, Chuluuntsetseg | 7224 208th St SW #2 | Edmonds | WA | 98026 | c_chuluunbaatar@yahoo.com | 206-501-0097 |
| Dev, Sunil | 258 Blaine Ct. SE | Renton | WA | 98056 | s.dev@comcast.net | 425-985-6792 |
| Diaz, Alejandra Aguilar | 8825 206th St SE Unit B | Snohomish | WA | 98296 | openworksbydiaz@yahoo.com | 206-661-4745 |
| Diaz, Bidney Perez | 120 124th St SW Unit D-2 | Everett | WA | 98204 | bidnyprincess@gmail.com | 425-508-7074 |
| Diaz, Dalila | 10440 Des Moines Memorial Dr. | Seattle | WA | 98168 | DalilaDOpenWorks@hotmail.com | 206-412-9650 |
| Diaz, Maria | 1830 Whitman Court N.E. | Renton | WA | 98059 | Teresa_Kha@live.com | 425-591-9485 |
| Disadila, Tony | 31514 25th Ln S # E103 | Federal Way | WA | 98003 | disadilatony@yahoo.com | 253-632-1097 |
| Donrov, Tsogtoo | 11300 3rd Ave NE Apt 312 | Seattle | WA | 98125 | tsogtoo.9916@yahoo.com | 206-910-4148 |
| Erazo, Ramona | P.O. BOX 7073 | Bellevue | WA | 98007 | yazmin.marines13@gmail.com | 425-985-8702 |
| Farah, Said | 12329 Roosevelt Way NE | Seattle | WA | 98133 | hfarah56@yahoo.com | 360-674-0957 |
| Gabriela Solano | 9713 S 248th St #C10 | Kent | WA | 98030 | gabysolano50@gmail.com | 206-272-0539 |
| Gerts, Taisiya | 8304 152nd St SE | Snohomish | WA | 98296 | gsergey2001@yahoo.com | 425-750-5888 |
| Gonzales, Sergio | 3811 NE 3rd Ct | Renton | WA | 98056 | gonzalezsergio1@outlook.com | 425-919-7517 |
| Gonzalez, Raymundo | 21745 SE 299th Wy | Kent | WA | 98042 | ray1992@icloud.com | 206-639-1727 |
| Goundar, Sarojini | 38025 34th Court South | Auburn | WA | 98001 | jinisjanitorial@comcast.net | 650-245-0631 |
| Gubeljic, Amna | 1608 149th Pl. SE | Bellevue | WA | 98007 | hareamna@hotmail.com | 425-562-9542 |
| Gutierrez, Carlos | 11515 26th Ave NE Apt 202 | Seattle | WA | 98125 | teoria23.cg@gmail.com | 206-457-9024 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Hagan, Jerad | 3109 NE 14th Street #3 | Renton | WA | 98056 | jeradhagan@yahoo.com | 425-301-3410 |
| Hagan, Rhea L. | 28391 34th Ln S | Auburn | WA | 98001 | nicoman6@msn.com | 206-351-8540 |
| Herrera, Cesar | 4002 Broadmoor Dr NE | Tacoma | WA | 98422 | cesarherrera253@gmail.com | 253-441-0238 |
| Husnic, Dzemal | 3205 S 203rd Street | Seatac | WA | 98198 | dzemalhusnic@yahoo.com | 206-793-8145 |
| Huy,  Darithy | 12836 23rd Rd. Ave. S | Sea Tac | WA | 98168 | darithyh@yahoo.com | 206-288-2961 |
| Ifre, Idoy | 3730 S 148th St, Apt 10 | Tukwilla | WA | 98168 | hussien3008@hotmail.com | 206-412-4511 |
| Ijere, Samuel | 11408 183rd PL NE | Redmond | WA | 98052 | maddoxinvestment@yahoo.com | 425-628-5970 |
| James Fisher | 10312 Golden Given Road E | Tacoma | WA | 98445 | jamescfisher@live.com | 253-677-0772 |
| Janchiv, Batjargal | 108 5th Ave South, Unit 508 | Seattle | WA | 98104-2370 | batjargalj@gmail.com | 408-806-2291 |
| Jones, Chris | 12944 NE 136th Pl | Kirkland | WA | 98034 | cjyess@gmail.com | 206-786-2831 |
| Juarez, Alma | 12944 NE 136th PL | Kirkland | WA | 98034 | cjyess@gmail.com | 206-786-2830 |
| Julio Trinidad Figueroa | 2810 Ruddell Road SE Apt 2-1 | Lacey | WA | 98503 | biguesttroubles2001@gmail.com | 360-451-7705 |
| Kamau, Margret & Titus Njuguna | 952 SW Campus Dr Apt 8C1 | Federal Way | WA | 98023 | tmsn@rocketmail.com | 253-202-7427 |
| Karan, Supriya | 701 Bremerton Pl NE | Renton | WA | 98059 | rockykaran@comcast.net | 253-221-1061 |
| Kardasheva, Ekaterina | 5135 NE 11th St. | Renton | WA | 98059 | Katya_Vulkova@yahoo.com | 425-443-2362 |
| Kariuki, James | 13010 S.E. 279th Pl. | Kent | WA | 98030 | jamesngaruiya@q.com | 206-427-8022 |
| Karley Harp | PO Box 255 | Malden | WA | 99149 | KarleyHarp@yahoo.com | 509-428-9597 |
| KC Cleaning Svc, Inc | 2735 SW 342nd St | Federal Way | WA | 98023 | daeseung75@yahoo.com | 253-218-9423 |
| Kethlaor, Perry | 5202 Fleming St | Everett | WA | 98203 | pkethlaor@gmail.com | 425-343-7376 |
| Kevin & Nicole Brown | 1006 E. Hill Ave | Moses Lake | WA | 98837 | Ncbrow495@aol.com | 206-398-9647 |
| Kim, Kyong Soo | 13312 SE 184th St. | Renton | WA | 98058 | kyongsookim50@gmail.com | 425-226-7980 |
| Kim, Yang Soon | 16616 48th Ave W #K201 | Lynnwood | WA | 98037 | dolphinnim57@gmail.com | 206-832-6809 |
| Kirsten Davidson | 151 East Kiowa Street | Iroquois | SD | 57353 | wieseclassyclean@gmail.com | 605-354-1802 |
| Klyavkova, Irina | 650 Duvall Ave. NE, | Renton | WA | 98059 | iklyavkov@yahoo.com | 425-255-5323 |
| Krumov, Stefan | 19826 48th Ave W Apt L13 | Lynnwood | WA | 98036 | st.krumov@gmail.com | 425-772-3283 |
| Kumar, Mohnesh | 743 F St NE | Auburn | WA | 98002 | mohinesh_kumar@yahoo.com | 206-474-7548 |
| Le, Tuyet Kim | 11019 17th Avenue SW | Seattle | WA | 98146 | le_uyen676@yahoo.com | 206-444-5194 |
| Lopez, Mario | 475 E Northbend Way # 1 | North Bend | WA | 98045 | lopez_cleaning@hotmail.com | 206-397-9312 |
| Lucas, Lidia | 15400 SE 155th Place,  #84 | Renton | WA | 98058 | lidialucas999@gmail.com | 425-351-5563 |
| Lui, Timothy | 10201 Dakota Way | Everett | WA | 98204 | timothylui82@yahoo.com | 425-220-0746 |
| Luvsan, Chikhermaa | 10717 Burke Ave N | Seattle | WA | 98133 | odge79@gmail.com | 206-457-7660 |
| Lynce, Jean | 17252 125th Avenue SE | Renton | WA | 98058 | jean_lynce@yahoo.com | 425-572-0145 |
| Maria Martinez | 3222 45th St NE | Tacoma | WA | 98422 | corajudam@yahoo.com | 206-356-6116 |
| Martinez, Deysi | 3435 Auburn Way, Apt. A20 | Auburn | WA | 98092 | deysirmart@hotmail.com | 425-443-5494 |
| Martinez, Elianeth | 8014 156th Street SE | Snohomish | WA | 98296 | elianeth_martinez@hotmail.com | 425-773-4757 |
| Meza, Alba | 17657 111th Ave SE | Renton | WA | 98055 | albacelina@hotmail.com | 425-442-3465 |
| Mijares, Rigoberto | 22404 39th Ave W | Mountlake Terrace | WA | 98043 | GreenCleaningSolutions@outlook.com | 206-271-4726 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Moga, Khadija | 7905 MLK Jr Way | Seattle | WA | 98118 | khadija2244@yahoo.com | 206-909-7696 |
| Mora, Alondra | 10412 SE 228th Street | Kent | WA | 98031 | amgeneralcleaning@hotmail.com | 206-412-8074 |
| Neftaly Martinez | 2447 S 273rd Place, #282 | Federal Way | WA | 98003 | ajanitorialservices@gmail.com | 253-954-6122 |
| Nguyen, Dung Thi Thanh | 23155 24th Ave S | Des Moines | WA | 98198 | tonytranpk@yahoo.com | 206-832-6238 |
| Nguyen, Ngan Hong Thi | 504 Whitworth Ave S | Renton | WA | 98057 | hungly999925@yahoo.com | 206-327-3165 |
| Nguyen, Ngoc Andy"" | 6746 38th Ave S | Seattle | WA | 98118 | NWMaintenance206@gmail.com | 206-242-1453 |
| Nouri, Raghad | 824 S 177th PL | Burien | WA | 98148 | raghad.nouri11@gmail.com | 206-676-2210 |
| Pacheco, Monica | 3121 SE 6th Street | Renton | WA | 98058-2831 | monapacheco@yahoo.com | 425-213-7932 |
| Pena, Francisco Javier | 10502 124th Avenue NE | Kirkland | WA | 98033 | jbmwx5@live.com | 206-619-4924 |
| Phan, Loc | 16122 SE 258th St | Covington | WA | 98042 | locphan253@gmail.com | 253-310-3776 |
| Phan, Thuy | 4218 E N Street | Tacoma | WA | 98404 | Locphan253@gmail.com | 253-310-3776 |
| Phanmeesai, Sourisack | 12805 NE 8th St #5 | Bellevue | WA | 98005 | sourisack@yahoo.com | 425-891-4419 |
| Piskunov, Lyudmila | 5402 Parkview Lane | Everett | WA | 98203 | millapiskunov@hotmail.com | 425-268-1111 |
| Plata-Dimas, Andrea | 2518 Kristine Ct. | Centralia | WA | 98531 | Varpla@yahoo.com | 650-996-9416 |
| Prasad, Rajendra | 28257 51st Place S | Auburn | WA | 98001 | | |
| Ramirez, Isidra | 1605 Norpoint Way NE, Apt B | Tacoma | WA | 98422 | isidraramirez68@yahoo.com | 253-561-3230 |
| Raul Soto | 14993 N US Hwy 101 | Shelton | WA | 98584 | raulsoto51.rs@gmail.com | 360-280-2545 |
| Reynaga Jr., Carlos | 2107 Earl Street | Centralia | WA | 98531 | jcrey63@hotmail.com | 360-508-2889 |
| Robledo, Maria De los angeles | 23816 100th Ave SE, Apt 42 | Kent | WA | 98031 | angelesrobledo2011@hotmail.com | 253-261-9430 |
| Robles, Socorro | 627 166th Ave NE | Bellevue | WA | 98008 | socorro@sparkleanwa.com | 425-953-0633 |
| Rojas, Orlando | 12814 15th Place W | Everett | WA | 98204 | bucaro13@hotmail.com | 425-761-1257 |
| Ruhani, Bajram | 12356 28th Ave South | Seattle | WA | 98168 | ruhanihhc@gmail.com | 206-501-9545 |
| Rutkovskaya, Lyudmila | 435 Shelton Place NE | Renton | WA | 98056 | LyudmilaRutkovskaya@yahoo.com | 425-577-1618 |
| Savelio Sanerivi | 3322 I Street NE # F101 | Auburn | WA | 98002 | Sanerivi013@gmail.com | 253-426-5823 |
| Silvia Stoyanova | 20932 49th Ave West | Lynnwood | WA | 98036 | SilviaStoyanova@hotmail.com | 206-412-8245 |
| Singh, Parmjit | 3514 101st St.  SE | Everett | WA | 98208 | pamisehmbi@comcast.net | 425-263-7607 |
| Soneriu, Nicoleta | 14520 16th AVE W | Lynnwood | WA | 98087 | nicole_soneriu@yahoo.com | 425-496-5172 |
| Song, Bo | 7707 233rd PL SW | Edmonds | WA | 98026 | bosong09@gmail.com | 206-708-0694 |
| Steele, Carmen | 4933 153rd PL SE | Everett | WA | 98208 | carmen.steele26@gmail.com | |
| Steve Vallery | 21100 Royal Ann Rd | Bothell | WA | 98021 | stevoado@yahoo.com | 425-638-2191 |
| Torres Rios, Juan | 14216 79th Ave NE | Kirkland | WA | 98034 | zully71@gmail.com | 425-905-0688 |
| Travis Manumaleuna | 831 R St NE #6C | Auburn | WA | 98002 | tlm_253@yahoo.com | 253-391-7038 |
| Trifkovic, Mladen | 13322 24 Ave South | Seatac | WA | 98168 | cz_trifkovic@msn.com | 206-778-5242 |
| Tuiletufuga, Sasser | 30248 26th Pl | Federal Way | WA | 98003 | sasatuiletufuga26@gmail.com | 253-221-6851 |
| Vargas, Jorge | 22799 26th AVE S | Des Moines | WA | 98198 | varguichi@hotmail.com | 206-510-8575 |
| Vargas, Noe | 21806 40th Ave E | Spanaway | WA | 98387 | gallofino253@gmail.com | 253-468-6897 |
| Vargas, Saul | 2518 Kristine Ct | Centralia | WA | 98531 | saulvargas736@gmail.com | 650-996-9416 |

| Franchisee Name | Franchise Address | City | ST | Zip | E-mail | Phone |
|---|---|---|---|---|---|---|
| Vargas, Tania | 1123 M. Washington Ave | Centralia | WA | 98531 | taniavp1@yahoo.com | |
| Villar, Luis | 14445 NE 40th St., #D-104 | Bellevue | WA | 98007 | zallyyoshimi@hotmail.com | 206-877-3473 |
| Wu, Zhu Fang | 3302 132nd Place SW | Lynnwood | WA | 98087 | Vallwu11@frontier.com | 206-947-5718 |
| Yakushin, Yuriy | 19520 6th Drive SE | Bothell | WA | 98012 | zoyayuriy@hotmail.com | 425-482-6085 |
| Yevsyugov, Anatoliy | 13014 42nd Avenue SE | Everett | WA | 98208 | anatoliy.openworks@yahoo.com | 425-359-8051 |
| Zaldivar-Guillen, Martha | 2708 8th Street SE | Puyallup | WA | 98374 | meceras@gmail.com | 253-232-7873 |
| **Number of Active Franchisees for Region:  114** | | | | | | |

# EXHIBIT I

## O.P.E.N. AMERICA, INC. DBA OPENWORKS
### LIST OF FORMER FRANCHISEES
(January 1, 2015 to December 31, 2015)

If you buy this franchise, your contact information may be disclosed to other buyers when you leave the franchise system.

| Franchisee Name | City | State | Email | Phone |
|---|---|---|---|---|
| **ARIZONA** | | | | |
| Ali, Mugahid | Phoenix | AZ | Mugahid_Ali84@Yahoo.com | 623-229-3954 |
| Angulo, Virgilio Aaron | Buckeye | AZ | angulovir1@msn.com | 623-298-8792 |
| Apostle, E. Lynn | Peoria | AZ | apostle272@msn.com | 602-617-7269 |
| Deserano, Robert | Phoenix | AZ | rscleaningsolutions@cox.net | 602-882-8556 |
| Gilbert, Gregory | Mesa | AZ | ggilbertphx@gmail.com | 602-510-1915 |
| Gonzalez, Michael | Mesa | AZ | owgccleaners@hotmail.com | 480-369-9680 |
| Huerta, Jorge | Phoenix | AZ | oviedojaho@hotmail.com | 602-317-9599 |
| Johnson, Harold | Peoria | AZ | HJohnson35@cox.net | 623-582-2416 |
| Johnson, Todd | Chandler | AZ | TJCNN5@Hotmail.com | 801-918-8324 |
| Kaborloomene, Sumene Anthony | Phoenix | AZ | TonyKabs@Juno.com | 623-332-3448 |
| Lendechi, Frances | Apache Junction | AZ | | 480-626-3834 |
| Mullen, Cornia[1] | Buckeye | AZ | faytc@yahoo.com | 623-201-0798 |
| Navarro, Abraham | Phoenix | AZ | openworksbyabraham@ymail.com | 602-740-5960 |
| Ndayishimiye, Mohamed | Phoenix | AZ | FredMoha.OpenWorks@Gmail.com | 602-751-3669 |
| Pacholke, Victor | Apache Junction | AZ | | 480-539-1903 |
| Perez, Raul | Phoenix | AZ | FitCleanGil@Gmail.com | 480-765-3029 |
| Rubio, Hugo | Phoenix | AZ | HugoRubio37@Gmail.com | 623-225-2749 |
| Samuel, Lorraine | Phoenix | AZ | samuel940@cox.net | 480-263-1751 |
| Verdugo, Anthony | Phoenix | AZ | verdugoasv@yahoo.com | 602-435-0897 |
| Williams, Taurus | Phoenix | AZ | Williams.Taurus1979@gmail.com | 602-350-9017 |
| Zebada, Luis | Tolleson | AZ | ZebadaLuis@Gmail.com | 623-687-8931 |
| **CALIFORNIA** | | | | |
| Achille, Greguy | Hollywood | CA | greguyachille@yahoo.com | 253-228-3740 |
| Alvarez, David | Inglewood | CA | Dave.Alvarez@live.com | 310-491-4117 |
| Bates, Richard | West Covina | CA | cafeelan@msn.com | 626-622-2328 |

---

[1] This franchise was transferred from Corina Mullen to Faylene Caron on 1/9/2015.  The franchise address was changed to 13606 N. 100th Avenue, Sun City, Arizona.

| Franchisee Name | City | State | Email | Phone |
|---|---|---|---|---|
| Burciaga, Laura[2] | Los Angeles | CA | l.burciaga@hotmail.com | 323-346-3810 |
| Hennington, Crystal | Compton | CA | maryhennington@sbcglobal.net | 323-477-6860 |
| Mejia, Isabel | Corona | CA | ai.cleaningservice@yahoo.com | 714-623-2722 |
| Miller, Lenard | Buena Park | CA | | 310-947-7093 |
| Olusanya, Moses[3] | Los Angeles | CA | DeStarsKleeners@yahoo.com | 323-440-9197 |
| Red Horse Group Inc. | Long Beach | CA | kaihintan@yahoo.com | 213-400-8188 |
| Rodriguez, Nilson | Eitwanda | CA | rrcleanings@gmail.com | 909-570-1011 |
| Saavedra, Jose Luis | Stanton | CA | jlsaavedra25@outlook.com | 714-215-8374 |
| Tran, Minh | Lawndale | CA | | 310-531-4865 |
| Turner, Marcus | Downey | CA | turnersjanitorialservice@yahoo.com | 562-204-5211 |
| Walker, Janice | Covina | CA | | 626-485-1565 |
| Woodard, Erma | Los Angeles | CA | ewoodard@law.usc.edu | 323-353-6858 |
| **ILLINOIS** | | | | |
| Becerra, Santos | Berwyn | IL | s.becerra1970@gmail.com | 630-430-1506 |
| Chalmos Mitchell | Joliet | IL | ChalmosMitchell@Hotmail.com | 773-749-6138 |
| Johnson, Yolanda[4] | Joliet | IL | DNJ13198@aol.com | 815-272-4397 |
| Moore, Michael | Chicago | IL | kennypat45@yahoo.com | 219-577-4009 |
| Patton, Kenneth | Chicago | IL | TessiaTaylor12@Gmail.com | 773-683-7264 |
| Taylor, Latessia | Joliet | IL | Antwanhamilton1@gmail.com | 312-860-7361 |
| Weems, Cornelius | Crown Pointe | IL | TeamCardinals@Live.com | 815-600-4430 |
| **TEXAS** | | | | |
| Bratton, Tasha | Arlington | TX | TashaBratton@yahoo.com | 817-226-6259 |
| Casillas, Jose M. | Gainsville | TX | | 940-641-1469 |
| Escobedo, Fausto | Dallas | TX | texaslonestarcleaning@yahoo.com | 214-796-2235 |
| Mendoza, Victor | Kaufman | TX | mmendozavictor@aol.com | 214-797-0368 |
| Park, Miae | Lewisville | TX | pusanmp@gmail.com | 972-899-1153 |
| Sullivan, Annie | Fort Worth | TX | BlessingsAndHonorJanitorial@Yahoo.com | 817-986-5871 |
| **WASHINGTON** | | | | |
| Ahmed, Hussein[5] | Seattle | WA | Hamed1991@yahoo.com | 206-228-9711 |
| Aleman, Victor | Bellevue | WA | jmelgar60@hotmail.com | 206-235-3958 |
| Gonzalez Diaz, Elber | Lacey | WA | elber.gonzalez77@yahoo.com | 360-918-2679 |
| Kumar, Ashwini | Auburn | WA | avikumar1978@yahoo.com | 253-508-6296 |
| Manushka, Uuganbayer | Seattle | WA | bunduuk@yahoo.com | 206-972-9924 |
| Muse, Hawa | Seattle | WA | mjmohamed@yahoo.com | 206-458-3308 |
| Omar, Liban | Tukwila | WA | liibaan591@gmail.com | 206-687-0080 |

---

[2] This franchise was transferred from Laura Burciaga to Michelle Aguilar on 7/6/2015.  The location was changed to 9227 Park Ave, South Gate, California.
[3] This franchise was transferred from Moses Olusanya to Georgitte Freeman on 8/18/15.  The location was changed to 1519 S Kemp Ave, Compton, California.
[4] This franchise was transferred from Yolanda Johnson to James Hamilton on 3/18/15.  The location is the same.
[5] This franchise was transferred from Hussein Ahmed to Shugri Mohamed Ali on 7/21/2015.  The franchisee address was changed to 7509 24th Ave SW #7, Seattle, Washington.

| Franchisee Name | City | State | Email | Phone |
|---|---|---|---|---|
| Thermidor, Hermanise | Kent | WA | lbanks83@msn.com | 253-304-7342 |
| Zere, Azmera S. | Renton | WA | michael@sngi.org | 206-792-6676 |

# EXHIBIT J

## O.P.E.N America, Inc. d/b/a OpenWorks

**AUDITED**
**FINANCIAL STATEMENTS**
**and**
**Independent Auditors' Report**

**For the Periods Ending**

**December 31, 2015 and December 31, 2014**

**and**

**December 31, 2014 and December 31, 2013**



Financial Statements
December 31, 2015 and 2014

# O.P.E.N. America, Inc.
# dba OpenWorks

O.P.E.N. America, Inc. dba OpenWorks
Table of Contents
December 31, 2015 and 2014

Independent Auditor's Report ................................................................................................................... 1

Financial Statements

    Balance Sheets ......................................................................................................................................... 2
    Statements of Earnings ............................................................................................................................ 3
    Statements of Stockholder's Equity ....................................................................................................... 4
    Statements of Cash Flows ....................................................................................................................... 5
    Notes to Financial Statements ................................................................................................................. 7



CPAs & BUSINESS ADVISORS

## Independent Auditor's Report

To the Stockholder and Board of Directors
O.P.E.N. America, Inc. dba OpenWorks
Phoenix, Arizona

**Report on the Financial Statements**
We have audited the accompanying financial statements of O.P.E.N. America, Inc. dba OpenWorks, which comprise the balance sheets as of December 31, 2015 and 2014, and the related statements of earnings, stockholder's equity, and cash flows for the years then ended, and the related notes to the financial statements.

**Management's Responsibility for the Financial Statements**
Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

**Auditor's Responsibility**
Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

**Opinion**
In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of O.P.E.N. America, Inc. dba OpenWorks as of December 31, 2015 and 2014, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

*Eide Bailly LLP*

Phoenix, Arizona
February 29, 2016

O.P.E.N. America, Inc. dba OpenWorks
Balance Sheets
December 31, 2015 and 2014

|  | 2015 | 2014 |
|---|---|---|
| **Assets** | | |
| **Current Assets** | | |
| Cash and cash equivalents | $ 73,413 | $ - |
| Accounts receivable, net of allowance for doubtful accounts of $105,009 in 2015 and $96,091 in 2014 | 2,359,575 | 1,854,907 |
| Current maturities of notes receivable, net | 1,838,743 | 1,498,917 |
| Prepaid expenses and other assets | 107,591 | 133,633 |
| Deferred franchise costs | 480,583 | 180,541 |
| Restricted cash | - | 53,063 |
| Total current assets | 4,859,905 | 3,721,061 |
| Notes Receivable, Less Current Maturities | 1,279,911 | 1,054,524 |
| Property and Equipment, Net | 135,639 | 55,510 |
| **Other Assets** | | |
| Deposits and other assets | 43,478 | 38,825 |
| Goodwill | 43,162 | 43,162 |
| Total other assets | 86,640 | 81,987 |
|  | $ 6,362,095 | $ 4,913,082 |
| **Liabilities and Stockholder's Equity** | | |
| **Current Liabilities** | | |
| Accounts payable | $ 471,521 | $ 294,819 |
| Services payable to franchisees | 2,239,076 | 2,026,450 |
| Line of credit | 629,057 | 358,270 |
| Accrued expenses | 492,029 | 332,530 |
| Deferred revenue | 480,583 | 267,684 |
| Deferred rent | 69,790 | 99,515 |
| Current maturities of note payable on equipment | 10,682 | 24,875 |
| Total current liabilities | 4,392,738 | 3,404,143 |
| **Long-Term Liabilities** | | |
| Note payable on equipment, less current maturities | - | 10,682 |
| Total liabilities | 4,392,738 | 3,414,825 |
| **Stockholder's Equity** | | |
| Common stock, no par value; 100,000 shares authorized, 1,000 shares issued and 770 shares outstanding | 1,000 | 1,000 |
| Additional paid-in capital | 31,766 | 31,766 |
| Retained earnings | 2,519,591 | 1,913,491 |
| Stockholder notes receivable | (535,000) | (400,000) |
| Less 230 shares of common stock held in treasury, at cost | (48,000) | (48,000) |
| Total stockholder's equity | 1,969,357 | 1,498,257 |
|  | $ 6,362,095 | $ 4,913,082 |

See Notes to Financial Statements

**O.P.E.N. America, Inc. dba OpenWorks**
Statements of Earnings
Years Ended December 31, 2015 and 2014

| | 2015 | 2014 |
|---|---|---|
| Revenue | | |
| Franchise fees | $ 2,713,572 | $ 2,334,087 |
| Service revenues | 25,054,431 | 22,280,849 |
| Total operating revenue | 27,768,003 | 24,614,936 |
| Cost of Revenues | 19,248,041 | 17,387,706 |
| Gross profit | 8,519,962 | 7,227,230 |
| Operating Expenses | | |
| Selling | 1,289,570 | 1,026,416 |
| Operating | 1,473,464 | 1,194,828 |
| Administrative | 4,361,140 | 3,937,954 |
| Total operating expenses | 7,124,174 | 6,159,198 |
| Earnings from operations | 1,395,788 | 1,068,032 |
| Other Income (Expense) | | |
| Other income | 120,738 | 164,944 |
| Other expense | (43,405) | (16,650) |
| Interest expense | (6,251) | (9,406) |
| Net other income | 71,082 | 138,888 |
| Net Earnings | $ 1,466,870 | $ 1,206,920 |

See Notes to Financial Statements

**O.P.E.N. America, Inc. dba OpenWorks**
Statements of Stockholder's Equity
Years Ended December 31, 2015 and 2014

| | Common Stock | | Additional Paid-in Capital | Retained Earnings | Stockholder Notes Receivable | Treasury Stock | | Total |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | | | | Shares | Amounts | |
| Balance, December 31, 2013 | 770 | $ 1,000 | $ 31,766 | $ 1,137,560 | $ - | 230 | $ (48,000) | $ 1,122,326 |
| Net earnings | - | - | - | 1,206,920 | - | - | - | 1,206,920 |
| Distributions | - | - | - | (430,989) | - | - | - | (430,989) |
| Changes in stockholder notes receivable | - | - | - | - | (400,000) | - | - | (400,000) |
| Balance, December 31, 2014 | 770 | $ 1,000 | $ 31,766 | $ 1,913,491 | $ (400,000) | 230 | $ (48,000) | $ 1,498,257 |
| Net earnings | - | - | - | 1,466,870 | - | - | - | 1,466,870 |
| Distributions | - | - | - | (860,770) | - | - | - | (860,770) |
| Changes in stockholder notes receivable | - | - | - | - | (135,000) | - | - | (135,000) |
| Balance, December 31, 2015 | 770 | $ 1,000 | $ 31,766 | $ 2,519,591 | $ (535,000) | 230 | $ (48,000) | $ 1,969,357 |

See Notes to Financial Statements

O.P.E.N. America, Inc. dba OpenWorks
Statements of Cash Flows
Years Ended December 31, 2015 and 2014

| | 2015 | 2014 |
|---|---|---|
| Operating Activities | | |
| Net earnings | $    1,466,870 | $    1,206,920 |
| Adjustments to reconcile net earnings to net | | |
| cash used for operating activities | | |
| Depreciation | 38,498 | 57,109 |
| Bad debt expense | 100,800 | 257,216 |
| Gain on sale of property and equipment | - | (2,794) |
| Note receivables issued for franchise fees | (2,839,488) | (2,554,072) |
| Effects of changes in operating assets and liabilities: | | |
| Accounts receivable | (525,468) | (195,619) |
| Prepaid expenses and other assets | 26,042 | (20,530) |
| Deferred franchise costs | (300,042) | 44,580 |
| Deposits and other assets | (4,653) | (3,309) |
| Accounts payable | 176,702 | 14,558 |
| Services payable to franchisees | 212,626 | 248,547 |
| Accrued expenses | 159,499 | 177,153 |
| Deferred revenue | 212,899 | (39,273) |
| Deferred rent | (29,725) | (36,343) |
| Net Cash used for Operating Activities | (1,305,440) | (845,857) |
| Cash Flows from Investing Activities | | |
| Payments received for notes receivables | 2,194,275 | 2,081,455 |
| Purchase of property and equipment | (118,627) | (26,358) |
| Proceeds from sale of property and equipment | - | 4,500 |
| Change in restricted cash | 53,063 | 4,524 |
| Net Cash from Financing Activities | 2,128,711 | 2,064,121 |
| Cash Flows from Financing Activities | | |
| Net borrowings (payments) on line of credit | 270,787 | (491,730) |
| Repayments of note obligations | (24,875) | (22,166) |
| Issuance of notes receivable, due from stockholder | (135,000) | (400,000) |
| Proceeds from payment on notes receivable, due from stockholder | - | 90,000 |
| Distributions to stockholder | (860,770) | (430,989) |
| Net Cash used for Financing Activities | (749,858) | (1,254,885) |
| Net Change in Cash and Cash Equivalents | 73,413 | (36,621) |
| Cash and Cash Equivalents, Beginning of Year | - | 36,621 |
| Cash and Cash Equivalents, End of Year | $    73,413 | $    - |

See Notes to Financial Statements

O.P.E.N. America, Inc. dba OpenWorks
Statements of Cash Flows
December 31, 2015 and 2014

|  | 2015 | 2014 |
|---|---|---|
| Supplemental Disclosures of Cash Flow Information | | |
| Cash payments for interest | $ 6,251 | $ 9,406 |
| | | |
| Noncash Financing Activities | | |
| Sale of equipment through issuance of note receivable | $ - | $ 28,275 |

See Notes to Financial Statements

## Note 1 -    Principal Activity and Significant Accounting Policies

**Principal Business Activity**

O.P.E.N. America, Inc. dba OpenWorks (the Company) was incorporated in the State of Arizona in June 1987. The Company is engaged in the business of providing commercial janitorial services and selling janitorial service franchises to individuals in Arizona, Washington, Illinois, California, Texas, and Colorado. Generally, the Company executes fixed-priced janitorial service contracts for terms of one year or longer and, subsequently, sells the exclusive contract rights to franchisees.

A standard franchise agreement covers a ten-year period and includes an option for the franchisee to renew for two additional ten-year terms. Management anticipates that the renewal options will be exercised. Under a standard agreement, the customers pay the Company which retains a 15% royalty fee. The balance of the amount collected is remitted to the franchisees net of any other amounts due to the Company.

**Cash and Cash Equivalents**

The Company considers all highly liquid debt instruments purchased with an original maturity of three months or less to be cash equivalents. The Company maintains cash in deposit accounts in federally insured banks. At times, the balance in the accounts may be in excess of federally insured limits.

**Restricted Cash**

Restricted cash represents amounts collected from new franchisees and held in escrow until specified performance obligations have been met or until a specified amount of time has elapsed.

**Accounts Receivable**

Accounts receivable are uncollateralized customer obligations. Accounts receivable are stated at the invoice amount and are due upon receipt.

Generally, account balances with invoices over 30 days old are considered delinquent. Payments of accounts receivable are applied to the specific invoices identified on the customer's remittance advice or, if unspecified, to the earliest unpaid invoice.

The carrying amount of accounts receivable is reduced by a calculation allowance that reflects management's best estimate of amounts that will not be collected. The allowance for doubtful accounts is based on management's assessment of the collectability of specific customer accounts and the aging of the accounts receivable. If there is a deterioration of a major customer's credit worthiness or actual defaults are higher than the historical experience, management's estimates of the recoverability of amounts due the Company could be adversely affected. All accounts or portions thereof deemed to be uncollectable or to require an excessive collection cost are written off to the allowance for doubtful accounts and amounts due for additional accounts purchased by the franchisee.

**Notes Receivable**

Notes receivable are uncollateralized franchise obligations for initial franchisee fees less any down payment. Notes are for 24 to 48 months at 12% annual interest. Note payments are deducted from the payments due to the franchisees for services performed. Collections on the notes of up to 15% of the franchisees monthly revenue begin when the franchisee begins servicing its first customer. Once the Company has satisfied 50% of its fulfillment obligations, the full monthly note payment is deducted from the amounts paid to the franchisee.

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2015 and 2014

If a franchisee is not generating any revenue for note payments, and no payments are being received from the franchisee, the note is considered delinquent and interest accruals are discontinued. An allowance is established for these accounts and any other accounts that management considers to be uncollectable.

If actual defaults are higher than expected, management's estimates of the recoverability of amounts due to the Company would be adversely affected. All accounts or portions thereof deemed to be uncollectable or to require an excessive collection cost are written off to the allowance for doubtful accounts.

**Property and Equipment**

Property and equipment is recorded at cost. Expenditures for renewals and improvements that significantly add to the productive capacity or extend the useful life of an asset are capitalized. Expenditures for maintenance and repairs are charged to expense. When equipment is retired or sold, the cost and related accumulated depreciation are eliminated from the accounts and the resultant gain or loss is reflected in income.

Depreciation is provided using the straight-line method, based on useful lives of the assets which range from three to seven years or the length of the lease term for leasehold improvements.

The Company reviews the carrying value of property and equipment for impairment whenever events and circumstances indicate that the carrying value of an asset may not be recoverable from the estimated future cash flows expected to result from its use and eventual disposition. In cases where undiscounted expected cash flows are less than the carrying value, an impairment loss is recognized equal to an amount by which the carrying value exceeds the fair value of the assets. The factors considered by management in performing this assessment include current operating results, trends and prospects, the manner in which the property is used, and the effects of obsolescence, demand, competition, and other economic factors. Based upon this assessment there was no impairment at December 31, 2015 and 2014.

**Goodwill**

Goodwill represents costs in excess of purchase price over the fair value of the assets of businesses acquired, including other identifiable intangible assets.

Goodwill is not amortized, rather potential impairment is considered on an annual basis, or more frequently upon the occurrence of an event or when circumstances indicate that the amount of goodwill is greater than its fair value. As of December 31, 2015 and 2014, the carrying value of the Company's goodwill was not considered impaired.

**Stockholder Notes Receivable**

Stockholder notes receivable consist of notes receivable due from the Company's stockholder. Amounts outstanding on the notes receivable were $535,000 and $400,000 at December 31, 2015 and 2014, respectively. The notes bear interest at 1.72% at December 31, 2015. The outstanding notes are due from the stockholder on demand and no later than December 31, 2019.

As of December 31, 2015 and 2014, the Company's stockholder has the ability and intent to extend the demand notes beyond the current period. As such, the amount has been reclassified as reductions to stockholder's equity in 2015 and 2014.

**Sales Taxes**

The Company collects sales taxes on certain equipment transactions. The collection and remittance of the sales taxes are not reflected in the statement of earnings.

**Revenue Recognition, Deferred Revenue, and Deferred Costs**

The Company recognizes initial franchise fee revenue and associated costs when substantially all material services as outlined in the written franchise agreement have been performed. Initial franchise fee revenue and associated costs for which services have not been performed are deferred for recognition in the future. Revenues from initial franchise fees are segregated into initial services, including training and provision of supplies, and initial account offering. Management anticipates that deferred revenue will be recognized within a 12-month period. The associated deferred costs are recorded up to the amount of the deferred revenue less estimated future costs that will be incurred to earn the revenue. Excess costs are expensed as incurred.

Service revenue is recognized when persuasive evidence of delivery has occurred or services have been rendered. Service revenue for which the Company is responsible for the fulfillment of the service and is the primary obligor and is responsible for pricing is recorded gross basis while service revenue in which the Company is not the primary obligor and serves as an agent the revenue is recorded net of costs paid to franchisee.

**Advertising Costs**

Advertising costs are expensed as incurred. Advertising expense was approximately $390,000 and $400,000, respectively, for the years ended December 31, 2015 and 2014.

**Income Taxes**

The Company, with the consent of its stockholders, has elected under the Internal Revenue Code to be taxed as an S Corporation. The stockholders of an S Corporation are taxed on their proportionate share of the Company's taxable income. Therefore, no provision or liability for federal income taxes has been included in the financial statements. Certain specific deductions and credits flow through the Company to its stockholders.

The Company evaluates its tax positions that have been taken or are expected to be taken on income tax returns to determine if an accrual is necessary for uncertain tax positions. As of December 31, 2015 and 2014, the unrecognized tax benefits accrual was zero. The Company will recognize future accrued interest and penalties related to unrecognized tax benefits in income tax expense, if incurred.

**Estimates**

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities, disclosure of contingent assets and liabilities at the date of the financial statements, and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2015 and 2014

**Subsequent Events**

The Company has evaluated subsequent events through February 29, 2016, the date which the financial statements were available to be issued.

### Note 2 -   Franchisee Notes Receivable

Franchisee notes receivable consisted of the following at December 31:

|  | 2015 | 2014 |
|---|---|---|
| Notes receivable from franchisees; generally bearing interest at 12% with monthly payments of principal and interest over varying periods with maturities ranging from 2016 to 2019; secured by customer service contracts. | $ 3,210,756 | $ 2,943,026 |
| Less allowance for doubtful accounts | (92,102) | (389,585) |
|  | 3,118,654 | 2,553,441 |
| Less current maturities | (1,838,743) | (1,498,917) |
| Long-term maturities of notes receivable | $ 1,279,911 | $ 1,054,524 |

Management has included interest earnings on notes receivable in the franchise fees revenue on the statement of earnings, as management considers the providing of the notes receivable and revenues a part of the franchise sales process. The interest earnings totaled approximately $212,000 and $185,000 for the years ended December 31, 2015 and 2014, respectively. The Company had nonaccrual loans of approximately $181,000 and $140,000 as of December 31, 2015 and 2014, respectively.

Future maturities of notes receivable, net of allowance for doubtful accounts, are as follows:

| Years Ending December 31, | |
|---|---|
| 2016 | $ 1,838,743 |
| 2017 | 964,351 |
| 2018 | 233,348 |
| 2019 | 82,212 |
|  | $ 3,118,654 |

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2015 and 2014

A summary of changes in the allowance for doubtful accounts related to long-term notes receivable for the years ended December 31 is as follows:

|  | 2015 | 2014 |
|---|---|---|
| Balance, beginning of year | $ 389,585 | $ 179,284 |
| Provision for bad debts | 80,000 | 224,800 |
| Receivables written off | (377,483) | (14,499) |
| Balance, end of year | $ 92,102 | $ 389,585 |

The Company evaluates the collectability of the balances based on historical experience and the specific circumstances of individual notes, with an allowance for uncollectible amounts being provided, if necessary.

## Note 3 -   Property and Equipment

Property and equipment consisted of the following at December 31:

|  | 2015 | 2014 |
|---|---|---|
| Computer software | $ 932,027 | $ 924,772 |
| Equipment | 271,915 | 177,696 |
| Leasehold improvements | 2,179 | - |
| Furniture | 408,895 | 395,914 |
| Vehicles | 44,950 | 44,950 |
| Total | 1,659,966 | 1,543,332 |
| Less accumulated depreciation and amortization | (1,524,327) | (1,487,822) |
| Property and equipment, net | $ 135,639 | $ 55,510 |

Depreciation expense was $38,498 and $57,109 for the years ended December 31, 2015 and 2014, respectively.

## Note 4 -   Notes Payable to Bank

As of December 31, 2014, the Company maintained a line of credit with Wells Fargo Bank, N.A. with an available line of $1,500,000. The revolving line bore interest at the bank's prime rate plus 0.50%, subject to a floor of 5.00% (5.00% at December 31, 2014). The line of credit was secured by substantially all of the Company's assets and was guaranteed by the stockholder. There was $358,270 outstanding on this line of credit at December 31, 2014. The line of credit expired in August 2015.

In November 2015, the Company attained a new line of credit with MidFirst Bank beginning November 30, 2015 with an available line of $2,000,000. The revolving line bears interest at the bank's prime rate plus 0.50% (4.00% at December 31, 2015). The line of credit is secured by substantially all of the Company's assets and is personally guaranteed by the stockholder. There was $629,057 outstanding on this line of credit at December 31, 2015. The line of credit expires on August 30, 2017.

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2015 and 2014

The current line of credit agreement has covenants requiring the Company to maintain certain financial ratios and levels of net worth. At December 31, 2015, the Company was in compliance with these covenants.

## Note 5 -   Long-Term Debt

On April 17, 2013, the Company received loan proceeds to finance vehicles purchased prior to December 31, 2012 and equipment to be used in franchise operations.

Long-term debt consisted of the following as of December 31:

|  | 2015 | 2014 |
|---|---|---|
| Note payable to Wells Fargo, maturing May 2016, in an original amount of $72,838, payable in 36 monthly payments of $2,159, including interest at 4.27%, collateralized by equipment. | $ 10,682 | $ 35,557 |
| Less current portion | (10,682) | (24,875) |
|  | $ - | $ 10,682 |

Future maturities of notes payable are as follows:

| Year Ending December 31, | | |
|---|---|---|
| 2016 | $ 10,682 | |
|  | $ 10,682 | |

## Note 6 -   Deferred Revenue and Costs

The Company received initial franchise fees which did not meet the requirements for revenue recognition as of December 31, 2015 and 2014. Consequently, recognition of the revenue and related costs will be deferred until the requirements are met. Management believes that the costs related to initial franchises exceed the initial franchise revenue. Excess costs are expensed as incurred.

Deferred revenue consisted of the following at December 31:

|  | 2015 | 2014 |
|---|---|---|
| Deferred revenue | $ 480,583 | $ 267,684 |
| Less deferred direct franchise costs | (480,583) | (180,541) |
| Deferred revenue, net | $ - | $ 87,143 |

The deferred revenue and associated costs will be recognized for each individual franchisee, when the Company has provided the franchisee with the volume of offered accounts purchased by the franchisee.

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2015 and 2014

## Note 7 -   Operating Lease Commitments

The Company leases operating facilities in multiple states under non-cancelable operating leases with various expiration dates through June 2019. The leases have rent-free provisions, escalating rent amounts and payment holidays resulting in a deferred rent liability of $69,790 and $99,515 for the years ended December 31, 2015 and 2014, respectively.

Future minimum payments under these commitments are as follows:

| Years Ending December 31, | |
|---|---|
| 2016 | $      404,672 |
| 2017 | 166,106 |
| 2018 | 72,980 |
| 2019 | 15,726 |
| | $      659,484 |

Rent expense was approximately $370,000 and $331,000 for the years ended December 31, 2015 and 2014, respectively.

## Note 8 -   Profit Sharing Plan

The Company maintains a defined contribution profit sharing plan covering all eligible employees defined in the plan. Contributions to the plan are determined by the Board of Directors, subject to limitations allowable under applicable provisions of the Internal Revenue Code.

The contributions were approximately $36,000 and $17,000 for the years ended December 31, 2015 and 2014, respectively.

## Note 9 -   Franchise Operations

During the years ended December 31, 2015 and 2014, franchise operations were as follows:

| | |
|---|---|
| Franchises and licenses, December 31, 2013 | 300 |
| Franchises opened during the year | 47 |
| Franchises closed during the year | (20) |
| Franchises and licenses, December 31, 2014 | 327 |
| Franchises opened during the year | 69 |
| Franchises closed during the year | (53) |
| Company owned regions | 7 |
| Franchises, licenses and company owned regions, December 31, 2015 | 350 |

**Note 10 -   Major Customers**

The Company earned approximately 15% and 11% of its service revenues from one major customer during the years ended December 31, 2015 and 2014, respectively. The Company was owed approximately $377,000 and $311,000 from this major customer at December 31, 2015 and 2014, respectively.

**Note 11 -   Commitments and Contingencies**

Under the terms of the Company's franchise agreements, the Company can be liable for certain losses or damages arising from the operations of the franchisees' cleaning service. However, the agreements provide that franchisees will indemnify the Company for all such losses resulting from claims against the Company and require franchisees to carry minimum liability insurance of $4,000,000.

Upon the sale of a franchise, the Company's obligations are to: (1) provide training for the franchisee; (2) provide the initial service account volume purchased; and (3) replace service account volume for customers terminating service within one year of the commencement of service, subject to certain restrictions.

The Company is also subject to certain claims that arise in the ordinary course of business. In the opinion of management, no pending or threatened claims, actions or proceedings against the Company are expected to have a material adverse effect on the Company's operations or financial condition.



Financial Statements
December 31, 2014 and 2013

# O.P.E.N. America, Inc.
# dba OpenWorks

A - 0222

O.P.E.N. America, Inc. dba OpenWorks
Table of Contents
December 31, 2014 and 2013

Independent Auditor's Report ................................................................................................................................ 1

Financial Statements

Balance Sheets ................................................................................................................................ 2
Statements of Earnings ................................................................................................................... 3
Statements of Stockholder's Equity .............................................................................................. 4
Statements of Cash Flows ............................................................................................................. 5
Notes to Financial Statements ....................................................................................................... 7



CPAs & BUSINESS ADVISORS

**Independent Auditor's Report**

To the Stockholders and Board of Directors
O.P.E.N. America, Inc. dba OpenWorks
Phoenix, Arizona

**Report on the Financial Statements**
We have audited the accompanying financial statements of O.P.E.N. America, Inc. dba OpenWorks, which comprise the balance sheets as of December 31, 2014 and 2013, and the related statements of earnings, stockholder's equity, and cash flows for the years then ended, and the related notes to the financial statements.

**Management's Responsibility for the Financial Statements**
Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

**Auditor's Responsibility**
Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

**Opinion**
In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of O.P.E.N. America, Inc. dba OpenWorks as of December 31, 2014 and 2013, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

*Eide Bailly LLP*

Phoenix, Arizona
March 9, 2015

www.eidebailly.com

1850 N. Central Ave., Ste. 400  |  Phoenix, AZ 85004-4624  |  T 602.264.5844  |  F 602.277.4845  |  EOE

**A - 0224**

**O.P.E.N. America, Inc. dba OpenWorks**
Balance Sheets
December 31, 2014 and 2013

|  | 2014 | 2013 |
|---|---|---|
| **Assets** | | |
| **Current Assets** | | |
| Cash and cash equivalents | $ - | $ 36,621 |
| Accounts receivable, net of allowance for doubtful accounts of $96,091 in 2014 and $65,564 in 2013 | 1,854,907 | 1,691,704 |
| Stockholder notes receivable, due in one year | - | 90,000 |
| Current maturities of notes receivable, net | 1,498,917 | 1,368,924 |
| Prepaid expenses and other assets | 133,633 | 113,103 |
| Deferred franchise costs | 180,541 | 225,121 |
| Restricted cash | 53,063 | 57,587 |
| Total current assets | 3,721,061 | 3,583,060 |
| Notes Receivable, Less Current Maturities | 1,054,524 | 908,425 |
| Property and Equipment, Net | 55,510 | 116,242 |
| **Other Assets** | | |
| Deposits and other assets | 38,825 | 35,516 |
| Goodwill | 43,162 | 43,162 |
| Total other assets | 81,987 | 78,678 |
| | $ 4,913,082 | $ 4,686,405 |
| **Liabilities and Stockholder's Equity** | | |
| **Current Liabilities** | | |
| Accounts payable | $ 294,819 | $ 280,261 |
| Services payable to franchisees | 2,026,450 | 1,777,903 |
| Line of credit | 358,270 | 850,000 |
| Accrued expenses | 332,530 | 155,377 |
| Deferred revenue | 267,684 | 306,957 |
| Deferred rent | 99,515 | 135,858 |
| Current maturities of note payable on equipment | 24,875 | 23,837 |
| Total current liabilities | 3,404,143 | 3,530,193 |
| **Long-Term Liabilities** | | |
| Note payable on equipment, less current maturities | 10,682 | 33,886 |
| Total liabilities | 3,414,825 | 3,564,079 |
| **Stockholder's Equity** | | |
| Common stock, no par value; 100,000 shares authorized, 1,000 shares issued and 770 shares outstanding | 1,000 | 1,000 |
| Additional paid-in capital | 31,766 | 31,766 |
| Retained earnings | 1,913,491 | 1,137,560 |
| Stockholder notes receivable | (400,000) | - |
| Less 230 shares of common stock held in treasury, at cost | (48,000) | (48,000) |
| Total stockholder's equity | 1,498,257 | 1,122,326 |
| | $ 4,913,082 | $ 4,686,405 |

See Notes to Financial Statements

**O.P.E.N. America, Inc. dba OpenWorks**
Statements of Earnings
Years Ended December 31, 2014 and 2013

| | 2014 | 2013 |
|---|---|---|
| Revenue | | |
| Franchise fees | $ 2,334,087 | $ 1,956,273 |
| Service revenues | 22,280,849 | 20,345,206 |
| Total operating revenue | 24,614,936 | 22,301,479 |
| Cost of Revenues | 17,387,706 | 15,781,713 |
| Gross profit | 7,227,230 | 6,519,766 |
| Operating Expenses | | |
| Selling | 1,026,416 | 954,217 |
| Operating | 1,194,828 | 1,138,298 |
| Administrative | 3,937,954 | 3,880,569 |
| Total operating expenses | 6,159,198 | 5,973,084 |
| Earnings from operations | 1,068,032 | 546,682 |
| Other Income (Expense) | | |
| Other income | 164,944 | 67,499 |
| Other expense | (16,650) | (105,621) |
| Interest expense | (9,406) | (20,556) |
| Net other income (expense) | 138,888 | (58,678) |
| Net Earnings | $ 1,206,920 | $ 488,004 |

See Notes to Financial Statements

**A - 0226**

**O.P.E.N. America, Inc. dba OpenWorks**
Statements of Stockholder's Equity
Years Ended December 31, 2014 and 2013

| | Common Stock | | Additional Paid-in Capital | Retained Earnings | Stockholder Notes Receivable | Treasury Stock | | Total |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | | | | Shares | Amounts | |
| Balance, December 31, 2012 | 770 | $ 1,000 | $ 31,766 | $ 1,079,990 | $ - | 230 | $ (48,000) | $ 1,064,756 |
| Net Loss | - | - | - | 488,004 | - | - | - | 488,004 |
| Distributions | - | - | - | (430,434) | - | - | - | (430,434) |
| Balance, December 31, 2013 | 770 | 1,000 | 31,766 | 1,137,560 | - | 230 | (48,000) | 1,122,326 |
| Net Earnings | - | - | - | 1,206,920 | - | - | - | 1,206,920 |
| Distributions | - | - | - | (430,989) | - | - | - | (430,989) |
| Changes in Stockholder Notes Receivable | - | - | - | - | (400,000) | - | - | (400,000) |
| Balance, December 31, 2014 | 770 | $ 1,000 | $ 31,766 | $ 1,913,491 | $ (400,000) | 230 | $ (48,000) | $ 1,498,257 |

See Notes to Financial Statements

**A - 0227**

O.P.E.N. America, Inc. dba OpenWorks
Statements of Cash Flows
Years Ended December 31, 2014 and 2013

|  | 2014 | 2013 |
|---|---|---|
| **Operating Activities** | | |
| Net earnings | $ 1,206,920 | $ 488,004 |
| Adjustments to reconcile net earnings to net cash used for operating activities | | |
| Depreciation | 57,109 | 78,647 |
| Bad debt expense | 257,216 | 296,500 |
| (Gain) on sale of property and equipment | (2,794) | - |
| Note receivables issued for franchise fees | (2,554,072) | (1,083,842) |
| Effects of changes in operating assets and liabilities: | | |
| Accounts receivable | (195,619) | 51,754 |
| Prepaid expenses and other assets | (20,530) | (44,239) |
| Deferred franchise costs | 44,580 | (64,055) |
| Deposits and other assets | (3,309) | (4,289) |
| Checks written in excess of cash deposits | - | (38,654) |
| Accounts payable | 14,558 | (29,774) |
| Services payable to franchisees | 248,547 | 177,522 |
| Accrued expenses | 177,153 | (226,532) |
| Deferred revenue | (39,273) | 64,666 |
| Deferred rent | (36,343) | (22,862) |
| **Net Cash used for Operating Activities** | (845,857) | (357,154) |
| | | |
| **Cash Flows from Investing Activities** | | |
| Payments received for notes receivables | 2,081,455 | 793,646 |
| Purchase of property and equipment | (26,358) | (30,856) |
| Proceeds from sale of property and equipment | 4,500 | - |
| Change in restricted cash | 4,524 | (57,587) |
| **Net Cash from Financing Activities** | 2,064,121 | 705,203 |
| | | |
| **Cash Flows from Financing Activities** | | |
| Net borrowings on line of credit | (491,730) | 160,000 |
| Proceeds from issuance of loans | - | 39,121 |
| Repayments of note obligations | (22,166) | (15,115) |
| Issuance of notes receivable, due from stockholder | (400,000) | (90,000) |
| Proceeds from payment on notes receivable, due from stockholder | 90,000 | 25,000 |
| Distributions to stockholder | (430,989) | (430,434) |
| **Net Cash used for Financing Activities** | (1,254,885) | (311,428) |
| | | |
| **Net Change in Cash and Cash Equivalents** | (36,621) | 36,621 |
| | | |
| **Cash and Cash Equivalents, Beginning of Year** | 36,621 | - |
| | | |
| **Cash and Cash Equivalents, End of Year** | $ - | $ 36,621 |

See Notes to Financial Statements

A - 0228

**O.P.E.N. America, Inc. dba OpenWorks**
Statements of Cash Flows
December 31, 2014 and 2013

Supplemental Disclosures of Cash Flow Information
    Cash payments for interest     $ 9,406    $ 20,556

Noncash Financing Activities
    Equipment financed with issuance of debt    $ -    $ 33,717

    Sale of equipment through issuance of note receivable    $ 28,275    $ -

## Note 1 -   Principal Activity and Significant Accounting Policies

**Principal Business Activity**

O.P.E.N. America, Inc. dba OpenWorks (the Company) was incorporated in the State of Arizona in June 1987. The Company is engaged in the business of providing commercial janitorial services and selling janitorial service franchises to individuals in Arizona, Washington, Illinois, California, and Texas. Generally, the Company executes fixed-priced janitorial service contracts for terms of one year or longer and subsequently sells the exclusive contract rights to franchisees.

A standard franchise agreement covers a ten-year period and includes an option for the franchisee to renew for two additional ten-year terms.  Management anticipates that the renewal options will be exercised. Under a standard agreement, the customers pay the Company which retains a 15% royalty fee. The balance of the amount collected is remitted to the franchisees net of any other amounts due to the Company.

**Cash and Cash Equivalents**

The Company considers all highly liquid debt instruments purchased with an original maturity of three months or less to be cash equivalents. The Company maintains cash in deposit accounts in federally insured banks. At times, the balance in the accounts may be in excess of federally insured limits.

**Restricted Cash**

Restricted cash represents amounts collected from new franchisees and held in escrow until specified performance obligations have been met or until a specified amount of time has elapsed.

**Accounts Receivable**

Accounts receivable are uncollateralized customer obligations. Accounts receivable are stated at the invoice amount and are due upon receipt.

Generally, account balances with invoices over 30 days old are considered delinquent. Payments of accounts receivable are applied to the specific invoices identified on the customer's remittance advice or, if unspecified, to the earliest unpaid invoice.

The carrying amount of accounts receivable is reduced by a calculation allowance that reflects management's best estimate of amounts that will not be collected.  The allowance for doubtful accounts is based on management's assessment of the collectability of specific customer accounts and the aging of the accounts receivable.  If there is a deterioration of a major customer's credit worthiness or actual defaults are higher than the historical experience, management's estimates of the recoverability of amounts due the Company could be adversely affected.  All accounts or portions thereof deemed to be uncollectable or to require an excessive collection cost are written off to the allowance for doubtful accounts and amounts due for additional accounts purchased by the franchisee.

**Notes Receivable**

Notes receivable are uncollateralized franchise obligations for initial franchisee fees less any down payment. Notes are for 24 to 48 months at 12% annual interest. Note payments are deducted from the payments due to the franchisees for services performed. Collections on the notes of up to 15% of the franchisees monthly revenue begin when the franchisee begins servicing its first customer. Once the Company has satisfied 50% of its fulfillment obligations, the full monthly note payment is deducted from the amounts paid to the franchisee.

**A - 0230**

If a franchisee is not generating any revenue for note payments, and no payments are being received from the franchisee, the note is considered delinquent and interest accruals are discontinued. An allowance is established for these accounts and any other accounts that management considers to be uncollectable.

If actual defaults are higher than expected, management's estimates of the recoverability of amounts due to the Company would be adversely affected. All accounts or portions thereof deemed to be uncollectable or to require an excessive collection cost are written off to the allowance for doubtful accounts.

**Property and Equipment**

Property and equipment is recorded at cost. Expenditures for renewals and improvements that significantly add to the productive capacity or extend the useful life of an asset are capitalized. Expenditures for maintenance and repairs are charged to expense. When equipment is retired or sold, the cost and related accumulated depreciation are eliminated from the accounts and the resultant gain or loss is reflected in income.

Depreciation is provided using the straight-line method, based on useful lives of the assets which range from three to seven years.

The Company reviews the carrying value of property and equipment for impairment whenever events and circumstances indicate that the carrying value of an asset may not be recoverable from the estimated future cash flows expected to result from its use and eventual disposition. In cases where undiscounted expected cash flows are less than the carrying value, an impairment loss is recognized equal to an amount by which the carrying value exceeds the fair value of the assets. The factors considered by management in performing this assessment include current operating results, trends and prospects, the manner in which the property is used, and the effects of obsolescence, demand, competition, and other economic factors. Based upon this assessment there was no impairment at December 31, 2014 and 2013.

**Goodwill**

Goodwill represents costs in excess of purchase price over the fair value of the assets of businesses acquired, including other identifiable intangible assets.

Goodwill is not amortized, rather potential impairment is considered on an annual basis, or more frequently upon the occurrence of an event or when circumstances indicate that the amount of goodwill is greater than its fair value. As of December 31, 2014 and 2013, the carrying value of the Company's goodwill was not considered impaired.

**Stockholder Notes Receivable**

Stockholder notes receivable consist of notes receivable due from the Company's stockholder. Amounts outstanding on the notes receivable were $400,000 and $90,000 at December 31, 2014 and 2013, respectively. The notes bear interest at 1.72% at December 31, 2014. The note was non-interest bearing as of December 31, 2013 as it matured in less than one year and was subsequently paid in 2014. The outstanding notes are due from the stockholder on demand and no later than December 31, 2019.

As of December 31, 2014, the Company's stockholder has the ability and intent to extend the demand notes beyond the current period. As such, the amount has been reclassified as reductions to stockholder's equity in 2014.

**Sales Taxes**

The Company collects sales taxes on certain equipment transactions. The collection and remittance of the sales taxes are not reflected in the statement of earnings.

**Revenue Recognition, Deferred Revenue, and Deferred Costs**

The Company recognizes initial franchise fee revenue and associated costs when substantially all material services as outlined in the written franchise agreement have been performed.  Initial franchise fee revenue and associated costs for which services have not been performed are deferred for recognition in the future. Revenues from initial franchise fees are segregated into initial services, including training and provision of supplies, and initial account offering.  Management anticipates that deferred revenue will be recognized within a 12-month period.  The associated deferred costs are recorded up to the amount of the deferred revenue less estimated future costs that will be incurred to earn the revenue. Excess costs are expensed as incurred.

Service revenue is recognized when persuasive evidence of delivery has occurred or services have been rendered. Service revenue for which the company is responsible for the fulfillment of the service and is the primary obligor and is responsible for pricing is recorded gross basis while service revenue in which the company is not the primary obligor and serves as an agent the revenue is recorded net of costs paid to franchisee.

**Advertising Costs**

Advertising costs are expensed as incurred. Advertising expense was approximately $400,000 and $330,000, respectively, for the years ended December 31, 2014 and 2013.

**Income Taxes**

The Company, with the consent of its stockholders, has elected under the Internal Revenue Code to be taxed as an S Corporation. The stockholders of an S Corporation are taxed on their proportionate share of the Company's taxable income. Therefore, no provision or liability for federal income taxes has been included in the financial statements. Certain specific deductions and credits flow through the Company to its stockholders.

The Company has adopted the provisions of FASB Accounting Standards Codification Topic ASC 740-10 (previously Financial Interpretation No. 48, Accounting for Uncertainty in Income Taxes), on January 1, 2009. The implementation of this standard had no impact on the financial statements. As of both the date of adoption, and as of December 31, 2014 and 2013, the unrecognized tax benefit accrual was zero.

The Company will recognize future accrued interest and penalties related to unrecognized tax benefits in income tax expense if incurred. The Company is no longer subject to federal tax examinations by tax authorities for years before 2011 and state examinations for years before 2010.

**Estimates**

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities, disclosure of contingent assets and liabilities at the date of the financial statements, and the reported amounts of revenues and expenses during the reporting period.  Actual results could differ from those estimates.

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2014 and 2013

**Subsequent Events**

The Company has evaluated subsequent events through March 9, 2015, the date which the financial statements were available to be issued.

**Note 2 -    Franchisee Notes Receivable**

Notes receivable consisted of the following at December 31:

|  | 2014 | 2013 |
|---|---|---|
| Notes receivable from franchisees; generally bearing interest at 12% with monthly payments of principal and interest over varying periods with maturities ranging from 2015 to 2018; secured by customer service contracts. | $    2,943,026 | $    2,565,963 |
| Less allowance for doubtful accounts | (389,585) | (288,614) |
|  | 2,553,441 | 2,277,349 |
| Less current maturities, net of allowance for doubtful accounts | (1,498,917) | (1,368,924) |
| Long-term maturities of notes receivable | $    1,054,524 | $    908,425 |

Management has included interest earnings on notes receivable in the franchise fees revenue on the statement of earnings, as management considers the providing of the notes receivable and revenues a part of the franchise sales process.  The interest earnings totaled $184,833 and $172,221 for the years ended December 31, 2014 and 2013, respectively. The Company had nonaccrual loans of approximately $140,000 and $137,000 as of December 31, 2014 and 2013, respectively.

Future maturities of notes receivable, net of allowance for doubtful accounts, are as follows:

| Years Ending December 31, | |
|---|---|
| 2015 | $    1,498,917 |
| 2016 | 774,817 |
| 2017 | 217,326 |
| 2018 | 62,381 |
|  | $    2,553,441 |

A summary of changes in the allowance for doubtful accounts related to long-term notes receivable for the years ended December 31 is as follows:

|  | 2014 | 2013 |
|---|---|---|
| Balance, beginning of year | $    288,614 | $    179,284 |
| Provision for bad debts | 224,800 | 278,000 |
| Receivables written off | (123,829) | (168,670) |
| Balance, end of year | $    389,585 | $    288,614 |

The Company evaluates the collectability of the balances based on historical experience and the specific circumstances of individual notes, with an allowance for uncollectible amounts being provided if necessary.

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2014 and 2013

## Note 3 -   Property and Equipment

Property and equipment consisted of the following at December 31:

|  | 2014 | 2013 |
|---|---|---|
| Computer software | $     924,772 | $     905,184 |
| Equipment | 177,696 | 240,781 |
| Furniture | 395,914 | 395,914 |
| Vehicles | 44,950 | 44,950 |
| Total | 1,543,332 | 1,586,829 |
| Less accumulated depreciation and amortization | (1,487,822) | (1,470,587) |
| Property and equipment, net | $     55,510 | $     116,242 |

Depreciation expense was $57,109 and $78,647 for the years ended December 31, 2014 and 2013, respectively.

## Note 4 -   Notes Payable to Bank

As of December 31, 2014 and 2013, the Company maintained a line of credit with Wells Fargo Bank, N.A. with an available line of $1,500,000.  The revolving line bore interest at the bank's prime rate plus 0.5%, subject to a floor of 5.00% (5.00% at December 31, 2014 and 2013).  The line of credit is secured by substantially all of the Company's assets and is personally guaranteed by the stockholder. There was $358,270 and $850,000 outstanding on this line of credit at December 31, 2014 and 2013, respectively. The line of credit was renewed in August 2014, and expires on August 31, 2015.

The line of credit agreement has covenants requiring the Company to maintain certain financial ratios and levels of net worth.  At December 31, 2014, the Company was in compliance with these covenants.

## Note 5 -   Long-Term Debt

On April 17, 2013, the Company received loan proceeds to finance vehicles purchased prior to December 31, 2012 and equipment to be used in franchise operations.

Long-term debt consisted of the following as of December 31:

|  | 2013 | 2012 |
|---|---|---|
| Note payable to Wells Fargo, maturing May 2016, in an original amount of $72,838, payable in 36 monthly payments of $2,159, including interest at 4.27%, collateralized by equipment. | $     35,557 | $     57,723 |
| Less current portion | (24,875) | (23,837) |
|  | $     10,682 | $     33,886 |

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2014 and 2013

Future maturities of notes payable are as follows:

| Years Ending December 31, | | |
|---|---|---|
| 2015 | $ | 24,875 |
| 2016 | | 10,682 |
| | $ | 35,557 |

## Note 6 -   Deferred Revenue and Costs

The Company received initial franchise fees which did not meet the requirements for revenue recognition as of December 31, 2014 and 2013.  Consequently, recognition of the revenue and related costs will be deferred until the requirements are met.  Management believes that the costs related to initial franchises exceed the initial franchise revenue.  Excess costs are expensed as incurred.

Deferred revenue consisted of the following at December 31:

| | | 2014 | | 2013 |
|---|---|---|---|---|
| Deferred revenue | $ | 267,684 | $ | 306,957 |
| Less deferred direct franchise costs | | (180,541) | | (225,121) |
| Deferred revenue, net | $ | 87,143 | $ | 81,836 |

The deferred revenue and associated costs will be recognized for each individual franchisee, when the Company has provided the franchisee with the volume of offered accounts purchased by the franchisee.

## Note 7 -   Operating Lease Commitments

The Company leases operating facilities in multiple states under non-cancelable operating leases with various expiration dates through February 2018. The leases have rent-free provisions and escalating rent amounts and payment holidays resulting in a deferred rent liability of $99,515 and $135,858 for the years ended December 31, 2014 and 2013, respectively.

Future minimum payments under these commitments are as follows:

| Years Ending December 31, | | |
|---|---|---|
| 2015 | $ | 352,145 |
| 2016 | | 339,002 |
| 2017 | | 98,393 |
| 2018 | | 6,618 |
| | $ | 796,158 |

Rent expense was approximately $330,000 for the years ended December 31, 2014 and 2013.

O.P.E.N. America, Inc. dba OpenWorks
Notes to Financial Statements
December 31, 2014 and 2013

## Note 8 -   Profit Sharing Plan

The Company maintains a defined contribution profit sharing plan covering all eligible employees defined in the plan. Contributions to the plan are determined by the Board of Directors, subject to limitations allowable under applicable provisions of the Internal Revenue Code.

The contributions were approximately $17,000 and $12,000 for the years ended December 31, 2014 and 2013, respectively.

## Note 9 -   Franchise Operations

During the years ended December 31, 2014 and 2013, franchise operations were as follows:

| | |
|---|---:|
| Franchises and licenses, December 31, 2012 | 303 |
| Franchises opened during the year | 60 |
| Franchises closed during the year | (63) |
| Franchises and licenses, December 31, 2013 | 300 |
| Franchises opened during the year | 47 |
| Franchises closed during the year | (20) |
| Franchises and licenses, December 31, 2014 | 327 |
| Company owned regions | 5 |
| Franchises, licenses and company owned regions, December 31, 2014 | 332 |

## Note 10 -  Major Customers

The Company earned approximately 11% and 10% of its service revenues from one major customer during the years ended December 31, 2014 and 2013, respectively. The Company was owed approximately $311,000 and $357,000 from this customer at December 31, 2014 and 2013, respectively.

## Note 11 -  Commitments and Contingencies

Under the terms of the Company's franchise agreements, the Company can be liable for certain losses or damages arising from the operations of the franchisees' cleaning service.  However, the agreements provide that franchisees will indemnify the Company for all such losses resulting from claims against the Company and require franchisees to carry minimum liability insurance of $4,000,000.

Upon the sale of a franchise, the Company's obligations are to: (1) provide training for the franchisee; (2) provide the initial service account volume purchased; and (3) replace service account volume for customers terminating service within one year of the commencement of service, subject to certain restrictions.

The Company is also subject to certain claims that arise in the ordinary course of business. In the opinion of management, no pending or threatened claims, actions or proceedings against the Company are expected to have a material adverse effect on the Company's operations or financial condition.

# EXHIBIT K

## LIST OF AGENTS FOR SERVICE OF PROCESS

| State | Name and Address of Agent |
|-------|---------------------------|
| Arizona | Henry Stein<br>2826 S. Carriage Lane, Suite 100<br>Mesa, Arizona  85202 |
| California | California Commissioner of Business Oversight<br>320 W. Fourth Street, Suite 750<br>Los Angeles, California 90013-2344 |
| Illinois | Illinois Attorney General<br>500 South Second Street<br>Springfield, Illinois 62706 |
| Washington | Washington Securities Commissioner<br>150 Israel Rd. SW<br>Tumwater, Washington 98501 |

If a state is not listed, O.P.E.N. America, Inc. dba OpenWorks has not appointed an agent for service process in that state in connection with the requirements of franchise laws.  There may be states in addition to those listed above in which O.P.E.N. America, Inc. dba OpenWorks has appointed an agent for service of process.

EXHIBIT L

RENEWAL AMENDMENT
TO
FRANCHISE AGREEMENT

THIS RENEWAL AMENDMENT (the "**Amendment**") is made by and between O.P.E.N. America, Inc., an Arizona corporation ("**OpenWorks**"), and _____ _____ ("**Franchisee**" or "**you**"), as an amendment to the new, replacement Franchise Agreement dated as of _____, 20__ (the "**Franchise Agreement**") , which OpenWorks and Franchisee are entering into to extend their current, expiring franchise relationship.  This Amendment is to be effective concurrently with the Franchise Agreement.

      **A.**    **Defined Terms.**  All capitalized terms used in this Amendment shall have the meanings defined in the Franchise Agreement unless otherwise expressly defined in this Amendment.

      **B.**    **No Initial Franchise or Renewal Fee.**  OpenWorks agrees to waive the initial franchise fee and not to charge you any renewal fee.  Section 6.1 of the Franchise Agreement is therefore deleted in its entirety and left blank.

      **C.**    **No Initial Training.**  OpenWorks will not provide you with any initial training, and the requirement that you successfully complete initial training is waived.  Section 5.1.1 of the Franchise Agreement is therefore deleted in its entirety and left blank.

      **D.**    **No Starter Kits.**  OpenWorks will not provide you with a free "starter" kit of equipment and/or supplies.  Section 5.3 of the Franchise Agreement is therefore deleted in its entirety and left blank.

      **E.**    **No Initial Volume.**  OpenWorks will not provide you with any initial Account Volume.  Section 5.2.1 of the Franchise Agreement is therefore deleted in its entirety and left blank.

      **F.**    **Release.**  Franchisee, and if Franchisee is a corporation or other legal entity, the undersigned principals of Franchisee, each individually and on behalf of their respective entities, predecessors, successors and assigns, and each such entity's shareholders, officers, directors, agents, employees, servants, partners, members, attorneys and managers, and all of their respective heirs and personal representatives (individually and collectively the "**Releasing Parties**"), do hereby fully release, remise and forever discharge OpenWorks and its predecessors and their past and present shareholders, officers, directors, agents, employees, for, from and against any and all claims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages and liabilities of every kind and character whatsoever, including, without limitation, any action, omission, misrepresentation or other basis of liability founded either in tort or contract and the duties arising thereunder, that any of the Releasing Parties has had in the past, or now has, whether known or unknown, absolute or contingent, whether currently existing or hereafter asserted, by reason of any matter, cause or thing set forth in, relating to or arising out of, or in any way connected with or resulting from the grant of Franchisee's franchise by OpenWorks or the performance by OpenWorks under the expiring Franchise Agreement between Franchisee and OpenWorks, *provided, however*, that the foregoing release and discharge shall not apply to obligations or rights as expressly set forth in this Renewal Amendment or to the future performance of the Franchise Agreement.

      **G.**    **Interpretation.**  In the event of any conflict between the express provisions of this Amendment and the Franchise Agreement, the terms of this Amendment shall control.  This Amendment is hereby incorporated by reference into the Franchise Agreement.  Except as expressly amended by this Amendment, the Franchise Agreement shall remain in full force and effect.

IN WITNESS WHEREOF the parties hereto have executed this Renewal Amendment to be effective concurrently with the Franchise Agreement.

**Franchisee:**                                                    **OpenWorks:**

_____                    O.P.E.N. America, Inc., an Arizona corporation
(Entity Name – If Applicable)

By: _____                By: _____
(Signature)                                                        (Signature)

_____
(Type or Print Name) (Type or Print Name)

Its: _____               Its: _____
(Title)                                                                 (Title)

Dated: _____,20__         Dated:_____20__

**Principals of Franchisee:**

_____
(Signature)

_____
(Type or Print Name)

Dated: _____,20__

_____
(Signature)

_____
(Type or Print Name)

Dated: _____,20__

## EXHIBIT M

**OPENWORKS AGREEMENT**
**FOR EXTENDED ACCOUNT GUARANTEE**

DATE THIS EXTENDED ACCOUNT GUARANTEE IS
SUBMITTED TO FRANCHISEE: _____

**Franchisee Information:**

Franchisee Name:_____

Address: _____

_____

Telephone Number: _____

Franchise Number:_____

Date Franchise Agreement Signed: _____

**Account Information:**

Account Name: _____

Office Location: _____

_____

Start Date: _____

Type of Services: _____

Monthly Billing:_____

**Extended Account Guarantee Fee:**

Percentage Of Monthly Billing: _____

Total Extended Account Guarantee Fee: _____

Start Date: _____

### REPLACEMENT OF ACCOUNT

If the account stated above is cancelled by the client for any reason other than the account satisfaction reasons printed on the next page of this Agreement, then OpenWorks will offer you a replacement account within 150 days.  The replacement account will be the same or greater monthly billing magnitude as the account that it replaces.  If the monthly billing volume of the replacement account is greater than the canceled account, OpenWorks may assess a marketing fee from you that is based on the overage.  OpenWorks is not obligated to offer you an extended account guarantee fee on the replacement account.

### ACCEPTANCE

I, the undersigned Franchisee (or authorized representative of Franchisee), hereby **ACCEPT** the Extended Account Guarantee and agree to faithfully perform all services in connection therewith in accordance with the Maintenance Agreement for the Account, including the work specifications and schedule, and the Manual.  I further acknowledge and specifically agree to the terms and conditions stated above and set forth in the Franchise Agreement and those printed on the next page of this Agreement with respect to this account.

Date: _____          Signature: _____

                                        Printed Name:  _____

This Extended Account Guarantee is not effective until it has been approved and executed by O.P.E.N. America, Inc. ("OpenWorks").

INT_____/ INT_____

APPROVED By: _____          Dated: _____, 20__

## ADDITIONAL TERMS AND CONDITIONS TO THE EXTENDED ACCOUNT GUARANTEE AGREEMENT

**Calculation of Fee.**  Under this Agreement, you agree to pay OpenWorks the monthly extended account guarantee fee stated on the previous page.  This fee is based on the stated percentage of the monthly account billing ("Gross Revenue") on the account named above ("Account") and is calculated on the basis of your Gross Revenue for the immediately preceding month.  This percentage will not change for as long as you have the guarantee on the Account.  OpenWorks will deduct the extended account guarantee fee from its monthly remittance of Gross Revenue to you.

**Termination and Transfer**.  The extended account guarantee will continue as long as you are servicing the selected Account.  If the extended account guarantee is terminated, you will not receive any refund of the fees paid for the guarantee.  You may terminate the extended account guarantee upon 30 days written notice to OpenWorks.  If you transfer or sell the Account then the extended account guarantee is terminated, although OpenWorks may, but is not obligated to, offer an extended account guarantee to the transferee.  If OpenWorks terminates your Account for any of the account satisfaction reasons stated below, then the extended account guarantee will be terminated without further notice.

**Account Satisfaction:**  If a client cancels its Account or OpenWorks terminates the Account for any of the following reasons, then this Extended Account Guarantee Fee Agreement is terminated without further notice: (a) you have repeatedly failed to perform commercial janitorial services ("Janitorial Services") to the Account's satisfaction and/or in accordance with the Maintenance Agreement and/or OpenWorks' standards; (b) the Account has lodged an oral or written complaint with OpenWorks regarding you, your service or your employees; OpenWorks has notified you of the substance of the complaint, and the Account remains dissatisfied for more than five days from the date of the notice; (c) OpenWorks receives an oral or written request from the Account that the Account be serviced by a different franchisee; (d) you provide Janitorial Services to the Account in a capacity other than that of an OpenWorks franchisee; (e) you abandon or fail to provide service to the Account as scheduled or the Account notifies OpenWorks that it is dissatisfied on any two days within a period of 60 consecutive days; (f) you cancel or fail to keep appointments with OpenWorks or the client for quality control inspections on any two occasions within a period of 60 consecutive days; (g) OpenWorks receives an oral or written request from an Account that its Maintenance Agreement be terminated; (h) you or your designated manager are not Fluent in English; (i) you fail to maintain an adequate staff of employees sufficient to provide service to an Account; or (j) you no longer wish to service the Account.

**General**.  Except as otherwise expressly stated herein, this Agreement contains the entire understanding between the parties with respect to the subjects hereof, and supersedes all prior oral and written negotiations and agreements.  This Agreement may be amended only by an instrument in writing signed by Franchisee and by the Franchisor.  The waiver of any breach or violation of this Agreement shall not be deemed to amend this Agreement and shall not constitute a waiver of any other or subsequent breach.  Headings are for convenience and shall not limit or control interpretation.  Words in this Agreement shall be deemed to refer to whatever number and gender the context requires.  This Agreement shall be governed by the laws of Arizona.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns

INT_____/ INT_____

**EXHIBIT N**



## Liability Deduction Form

Name: _____

Address: _____

Phone Number: _____

I/We have elected to participate in the insurance program sponsored by OpenWorks and not obtain similar coverage elsewhere. Therefore, I/we hereby authorize and direct OpenWorks to arrange for us to be covered by the program sponsored by OpenWorks and direct OpenWorks to pay the fees from my/our monthly gross income. The current fees are described below but I/we understand that the fee may be adjusted by OpenWorks to account for increased insurance and handling costs. I/We understand that this figure includes a handling charge by OpenWorks.

I/We understand that coverage under this policy is for standard business liability insurance coverage only and that I/we am/are still responsible for all other insurance and/or business services bonding requirements under the Franchise Agreement.

Print Name: _____

Print Name:_____

Signature: _____Date: _____

Signature: _____Date: _____

*Please remember that if you opt to carry your own liability insurance policy, you MUST furnish us with proof of current insurance coverage at all times.*

| Monthly Fees | Monthly Gross Income |
|---|---|
| $85.00 | $0.00 to $2,000.00 |
| 3.6% of monthly gross income | $2,001.00 to $20,000.00 |
| 1.98% of monthly gross income | $20,001.00 to $75,000.00 |
| 1.68% of monthly gross income | $75,001.00 to $150,000.00 |
| 1.37% of monthly gross income | $150,001 and up |



## Bonding Deduction Form

Name: _____

Address: _____

_____

Phone Number: _____

      I/We have elected to participate in the business services bond program sponsored by OpenWorks and not obtain similar coverage elsewhere.  Therefore, I/we hereby authorize and direct OpenWorks to arrange for us to be covered by the program sponsored by OpenWorks and direct OpenWorks to pay the fees from my/our monthly gross income.  The current fees are described below but I/we understand that the fee may be adjusted by OpenWorks to account for increased bond and handling costs.  I/We understand that this figure includes a handling charge by OpenWorks.

I/We understand that coverage under this policy is for standard business services bond coverage only and that I/we am/are still responsible for all other insurance(s) under the Franchise Agreement.

Print Name: _____

Print Name: _____

Signature: _____     Date: _____

Signature: _____     Date: _____

Please remember that if you opt to carry your own business services bond, you MUST furnish us with proof of current coverage at all times.

| Monthly Fees |
|:---:|
| $ 6.00 |

**EXHIBIT O**


The Franchise Agreement provides that OpenWorks will evaluate your credit history upon signing the Franchise Agreement and at any time you finance any Marketing Fee.  Following are "Candidate Disclosure / Authorization Regarding Procurement of Consumer Reports" and "Candidate Release Authorization" forms that OpenWorks' vendor uses in connection with the background check as of the date the Franchise Disclosure Document was issued.  The documents and vendor we use in connection with the background check may be changed by OpenWorks without notice.

INT_____/ INT_____

**EXHIBIT O TO FDD**
Page 1 of 3

**A - 0244**

## Franchisee Disclosure / Authorization
## Regarding Procurement of Consumer Reports

O.P.E.N America, Inc. an Arizona Corporation, dba OpenWorks (the "Company") will order a consumer report and/or investigative consumer report ("background check report") on you in connection with your application to purchase a franchise from the Company, we may order additional background check reports on you without obtaining additional consent, where permissible by law. The consumer reporting agency ("Consumer Reporting Agency") that will prepare the report is ADP Screening and Selection Services, 301 Remington Street, Fort Collins, Colorado 80524, telephone 800-367-5933. In the event that information from the report is utilized in whole or in part in making an adverse decision with regard to your purchase of a franchise, before making the adverse decision, we will provide you with a copy of the consumer report and a description in writing of your rights under the law.

You have the right to request, in writing, within a reasonable time, that we make a complete and accurate disclosure of the nature and scope of the information requested. Such disclosure will be made to you within 5 days of the date on which we receive the request from you or within 5 days of the time the report was first requested, whichever is the later. To receive this information or to inspect any files concerning such a report or to determine if a report has been requested, you may contact the Company or the Consumer Reporting Agency.

The Fair Credit Reporting Act and certain state laws give you specific rights in dealing with consumer reporting agencies. You will find these rights in the attached documents.

Please be advised that we may also obtain an investigative consumer report including information as to your character, general reputation, personal characteristics, and mode of living. By your signature below, you hereby authorize us to order consumer and/or investigative consumer reports including, but not limited to, the following information: social security number validation; criminal, public, educational and, as appropriate, driving records; employment history and earnings history; military service; credit reports, licensing and certification checks, and drug testing results. The information may be obtained from private and public repositories of information, and can be disclosed to the processing agency below and its agents.

I agree that a facsimile or photocopy of this form is valid just like the original form.

This report will be processed by:
ADP Screening and Selection Services
301 Remington Street
Fort Collins, Colorado 80524 800-367-5933

Applicant's Name: _____
            (Please Print)

Applicant's Address: _____

City/State/Zip: _____

Signature: _____

Social Security Number: _____

For Identification Purposes Only:  Date of Birth: _____

**A - 0245**

# Franchisee Candidate Release Authorization

I.   In connection with my application to purchase a franchise from OpenWorks (the Company), I understand that a consumer report and/or an investigative consumer report will be ordered that may include information as to  my character, general reputation, personal characteristics, mode of living, work habits, performance, and experience, along  with reasons for termination of past employment. I understand that in compliance with applicable law and as directed by  company policy and consistent with the job described, you may be requesting information from public and private sources  about, but not limited to, my: workers' compensation injuries, driving record, court record, education, credentials, credit, and  references. If company policy requires, I am willing to submit to drug testing to detect the use of illegal drugs prior to and  during employment.

II.  Medical and workers' compensation information will only be requested in compliance with the Federal Americans with Disabilities Act (ADA) and/or any other applicable state laws.  According to the Fair Credit Reporting Act, I am entitled to know if my franchise application is denied because of information obtained by the Company from a Consumer Reporting Agency.  If so, I will be notified and given the name and address of the agency or the source that provided the information.

III. I acknowledge that a telephonic facsimile (FAX) or photographic copy shall be as valid as the original.  This release is valid for most federal, state and county agencies including the Minnesota Department of Labor.

IV.  Washington and California applicants only: if you want a free copy of the report(s) ordered, check this box □. The report(s) will be sent to you by the consumer reporting agency listed here. The reports will be processed by: ADP Screening and Selection Services, 301 Remington Street, Fort Collins, Colorado 80524. See attached Franchisee Candidate Disclosure / Authorization Form for other notices.

V.   I hereby authorize, without reservation, any law enforcement agency, institution, information service bureau, school, employer, reference or insurance company contacted by OpenWorks (the Company) or its agent, to furnish the information described in Section I.

VI.  I hereby authorize release of information from my Department of Transportation regulated drug and alcohol testing records by my previous employer to OpenWorks.  This release is in accordance with DOT Regulation 49 CFR Part 40, Section 40.25.  I understand that information to be released by my previous employer, is limited to the following DOT-regulated items: alcohol tests with a result of 0.04 or higher, verified positive drug tests, refusals to be tested, other violations of DOT agency drug and alcohol testing regulations, information obtained from previous employers of a drug and alcohol rule violation and any documentation of completion of the return-to-duty process following a rule violation.

VII. Nothing herein shall constitute any acknowledgement that the Fair Debt Collection Practices Act and/or the Fair Credit Reporting Act, in whole or in part, apply to the transaction envisioned between OpenWorks and the Consumer.  In addition, nothing herein shall be construed as creating, confirming or ratifying the creation of an employer-employee relationship between OpenWorks and the Consumer, it being the intention of the parties that no such relationship has, or will be, created.  Rather, the legal relationship to be created is one involving a Franchisor and a Franchisee with the Consumer serving as a principal of the Franchisee and/or a guarantor of the Franchisee.

The following information is required by law enforcement agencies and other entities for positive identification purposes when checking public records. It is confidential and will not be used for any other purposes. I hereby release the Franchisor and agents and all persons, agencies, and entities providing information or reports about me from any and all liability arising out of the requests for or release of any of the above mentioned information or reports.

---

Please print your full name                                     LAST                                     FIRST                                     MIDDLE

---

Please print other names you have used

---

Home Address                                                              City                              State                    Zip Code

---

Social Security Number                                         Date of Birth  (FOR IDENTIFICATION PURPOSES ONLY)

The following states require sex and race to obtain information: AL, AR, FL, GA, IA, IL, IN, MI, OR, SC, TX, WI

Sex:   ☐ Male   ☐ Female        Race:   ☐ Asian        ☐ Black/African American        ☐ Hispanic/Latino        ☐ White        ☐ Other

---

Driver's License Number                              State Issuing License                              Name as it appears on license

**I PROMISE THE INFORMATION THAT I PROVIDED ON THIS FORM IS TRUE AND CORRECT.  I UNDERSTAND THAT DISHONESTY WILL DISQUALIFY ME FROM CONSIDERATION FOR PURCHASE OF A FRANCHISE.**

---

**Signature**                                                        **Today's Date**

**EXHIBIT P**

**ASSIGNMENT
OF MAJORITY INTEREST IN
FRANCHISE RIGHTS
TO OTHER INDIVIDUAL(S)**

**THIS ASSIGNMENT OF MAJORITY INTEREST IN FRANCHISE RIGHTS TO OTHER INDIVIDUAL(S)** (this "**Assignment**") is made and to be effective as of the ____ day of _____, 20__, by and between _____ ("**Seller**") and _____ ("**Buyer**").

1.    **Assignment.**  For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller sets over, transfers and assigns to Buyer, effective as of _____, 20__ (the "**Closing Date**"), ___% *[50% or more but less than 100%]* of Seller's ownership interests as Franchisee under the Franchise Agreement dated _____, _____ ("**Seller's Agreement**") by and between Seller and O.P.E.N. America, Inc., an Arizona corporation ("**Franchisor**"), relating to a janitorial services franchise with a _____ franchise package to be operated in the State of _____.

2.    **Payments to Franchisor.**  On or before the Closing Date, Seller shall pay to Franchisor all royalties, advertising contributions, accounts payable and all other amounts owed by Seller to Franchisor, plus a transfer fee of $_____.

3.    **Representations and Warranties.**  As an inducement to Franchisor to consent to this Assignment, Seller and Buyer represent and warrant to Franchisor as follows:

a.    Seller and Buyer desire to assign the partial ownership interest in the franchise from Seller to Buyer for their own business purposes, and have requested that Franchisor consent to this Assignment.

b.    There has been no material adverse change in the information provided to Franchisor regarding Seller or Buyer; and no default or event of default has occurred under Seller's Agreement, nor under any other agreement between Franchisor and Seller or Buyer, and no event has occurred which, with the passage of time, or the giving of notice, or both, would constitute such a default or event of default.

c.    As of the Closing Date, the full legal names of Seller and Buyer, and their respective percentage interests in the franchised business, and their respective residential addresses, telephone numbers and social security numbers, are as follows:

_____    ____ %

_____    Telephone:

_____    _____

_____    Social Security #:

                                    _____

INT_____/ INT_____

_____     ____ %

_____     Telephone:

_____     _____

_____     Social Security #:

                                         _____

_____     ____ %

_____     Telephone:

_____     _____

_____     Social Security #:

                                         _____

**4.      Assumption by Buyer.**  Buyer hereby assumes, and Buyer and Seller hereby agree to be bound by and perform, all obligations of Seller under Seller's Agreement that by their terms or nature continue in effect after the termination of Seller's Agreement.

**5.      Termination of Seller's Agreement.**   By mutual agreement, Seller and Franchisor hereby terminate Seller's Agreement, effective as of the Closing Date.

**6.      Training.** *(Check the box that applies)*

☐     Buyer must pay Franchisor a training fee of $_____  and complete Franchisor's initial training program to Franchisor's satisfaction.

*(or)*     ☐     Buyer does not have to complete Franchisor's initial training program.

**7.      Buyer's Acknowledgments.**  Buyer hereby acknowledges that:  (a) all financial information about the business was provided by Seller; (b) Franchisor has not verified such information and does not represent that it is correct; (c) Buyer has performed his or her own independent diligence regarding the business, and decided to purchase the partial interest in the business at the agreed price based solely on Buyer's own diligence; (d) Franchisor makes no representation as to whether the purchase price is "fair" or "reasonable"; (e) the financial results of the business may not be the same when controlling ownership of the business changes; and (f) Franchisor's approval of the transfer to Buyer does not constitute a guaranty or representation that the business will be profitable or successful.

**8.      Franchise Agreement.**  Seller and Buyer hereby agree to execute and deliver to Franchisor, concurrently herewith, Franchisor's current form of Franchise Agreement (the "**New Agreement**") together with all ancillary documents relating to the franchise, including without limitation the attached Non-Disclosure and Non-Competition Agreement.  Except as provided in <u>Section 4</u> above, the New Agreement shall entirely replace Seller's Agreement.  The current form of Franchise Agreement which is the New Agreement is hereby amended as follows:

INT_____/ INT_____

a. **Initial Fee.** Franchisor waives the initial franchise fee.

b. **Franchise Term.** The term of the New Agreement shall be shortened to match the term of Seller's Agreement, and shall expire on _____, 20__ (unless renewed as provided in the New Agreement).

c. **No Supplies.** Franchisor will not provide any equipment or supplies to Seller and Buyer under the New Agreement.

d. **Training.** Franchisor will not provide any initial training unless training is provided for in Section 6 above and Franchisor is paid the stated training fee.

e. **Initial Accounts.** *(Check the box that applies)*

☐ Franchisor has already offered Seller the Initial Account Volume (as defined in Seller's Agreement) that Franchisor is obligated to provide under Seller's Agreement, and Franchisor will not be obligated to offer any Initial Account Volume (as defined in the New Agreement) to Seller and Buyer under the New Agreement.

*(or)* ☐ Franchisor will provide Seller and Buyer with the Seller's remaining unfulfilled initial Account Volume of $_____ by _____, 20__ (which Franchisor was obligated under Seller's Agreement to provide to Seller as of the Closing Date), but Franchisor will not have any further obligations to Seller and Buyer to provide any Initial Account Volume (as defined in the New Agreement).

f. **Trial Period.** Seller and Buyer hereby accept and agree to service under the New Agreement all of the existing customer accounts previously serviced by Seller under Seller's Agreement. Franchisor shall have no further obligations to Seller or Buyer with respect to any refunds, trial period, Franchisee rights of refusal or guaranteed replacement with respect to such existing accounts. If Franchisor is obligated to provide Buyer with any initial Account Volume under Section 8.e immediately above, then the provisions of the New Agreement with respect to refunds, a trial period, _____ (___) rights of refusal and guaranteed replacement shall apply to just the Initial Account Volume to be provided by Franchisor under Section 8.e.

9. **Waiver and Release.** Seller hereby fully releases, remises and forever discharges Franchisor, and its predecessors, and their past and present shareholders, officers, directors, agents and employees, for, from and against any and all claims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages and liabilities of every kind and character whatsoever, including, without limitation, any action, omission, misrepresentation or other basis of liability founded either in tort or contract and the duties arising thereunder, that the releasing party has had in the past, or now has, whether known or unknown, absolute or contingent, whether currently existing or hereafter asserted, by reason of any matter, cause or thing set forth in, relating to or arising out of, or in any way connected with or resulting from the grant of Seller's franchise by Franchisor to Seller or the performance by Franchisor under Seller's Agreement; *provided, however*, that the foregoing release and discharge shall not apply to obligations or rights as expressly set forth in this Assignment or to the future performance of the New Agreement.

10. **Governing Law.** This Assignment shall be construed in accordance with, and it shall be governed by, the laws of the State of Arizona.

INT_____/ INT_____

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first above written.

**SELLER:**                                                    **BUYER:**

_____                    _____
Signature                                                          Signature


_____                    _____
Print Name                                                        Print Name

Dated: _____, 20__                            Dated: _____, 20__


                                                                      **BUYER:**


                                                                      _____
                                                                      Signature


                                                                      _____
                                                                      Print Name

                                                                      Dated: _____, 20__


## CONSENT TO TRANSFER BY
## O.P.E.N. AMERICA, INC.

In consideration of the payment of a transfer fee of $_____ and the foregoing release, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and subject to the conditions in the foregoing Assignment, O.P.E.N. America, Inc. hereby consents to the foregoing Assignment of the partial franchise rights of _____ to _____ and none other.

O.P.E.N. America, Inc.,
an Arizona corporation


By: _____

Its: _____

Dated: _____, 20__


INT_____/ INT_____

**ASSIGNMENT
OF ALL
FRANCHISE RIGHTS
TO OTHER INDIVIDUAL(S)**

**THIS ASSIGNMENT OF ALL FRANCHISE RIGHTS TO OTHER INDIVIDUAL(S)** (this **"Assignment"**) is made and to be effective as of the _____ day of _____, 20__, by and between _____ (**"Seller"**) and _____ _____ (**"Buyer"**).

**1. Assignment.** For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller sets over, transfers and assigns to Buyer, effective as of _____, 20__ (the **"Closing Date"**), all of Seller's right, title and interest as Franchisee under the Franchise Agreement dated _____, _____ (**"Seller's Agreement"**) by and between Seller and O.P.E.N. America, Inc., an Arizona corporation (**"Franchisor"**), relating to a janitorial services franchise with a _____ franchise package to be operated in the State of _____.

**2. Payments to Franchisor.** On or before the Closing Date, Seller shall pay to Franchisor all royalties, advertising contributions, accounts payable and all other amounts owed by Seller to Franchisor, plus a transfer fee of $_____.

**3. Representations and Warranties.** As an inducement to Franchisor to consent to this Assignment, Seller and Buyer represent and warrant to Franchisor as follows:

    **a.** Seller and Buyer desire to assign the franchise rights from Seller to Buyer for their own business purposes, and have requested that Franchisor consent to this Assignment.

    **b.** There has been no material adverse change in the information provided to Franchisor regarding Seller or Buyer; and no default or event of default has occurred under Seller's Agreement, nor under any other agreement between Franchisor and Seller or Buyer, and no event has occurred which, with the passage of time, or the giving of notice, or both, would constitute such a default or event of default.

    **c.** Seller has offered the Franchisor a first right of refusal to acquire the Seller's right, title and interest in Seller's franchised business, as provided in Seller's Agreement.

**4. Assumption by Buyer.** Buyer hereby assumes and agrees to be bound by and perform all obligations of Seller under Seller's Agreement that by their terms or nature continue in effect after the termination of Seller's Agreement.

**5. Termination of Seller's Agreement.** By mutual agreement, Seller and Franchisor hereby terminate Seller's Agreement, effective as of the Closing Date. Seller agrees to comply with all of the post termination obligations in Seller's Agreement, including without limitation the covenants prohibiting Seller from using confidential information and engaging in any competitive business.

**6. Training.** *(Check the box that applies)*

        ☐    Buyer must pay Franchisor a training fee of $_____ and complete Franchisor's initial training program to Franchisor's satisfaction.

*(or)*      ☐    Buyer does not have to complete Franchisor's initial training program.

**7. Buyer's Acknowledgments.** Buyer hereby acknowledges that: (a) all financial information about the business was provided by Seller; (b) Franchisor has not verified such information and does not represent that it

INT_____/ INT_____

is correct; (c) Buyer has performed his or her own independent diligence regarding the business, and decided to purchase the business at the agreed price based solely on Buyer's own diligence; (d) Franchisor makes no representation as to whether the purchase price is "fair" or "reasonable"; (e) the financial results of the business may not be the same when it is operated by Buyer; and (f) Franchisor's approval of the transfer to Buyer does not constitute a guaranty or representation that the business will be profitable or successful.

**8.   Franchise Agreement.**  Buyer hereby agrees to execute and deliver to Franchisor, concurrently herewith, Franchisor's current form of Franchise Agreement (**"Buyer's Agreement"**) together with all ancillary documents relating to the franchise, including without limitation the attached Non-Disclosure and Non-Competition Agreement.  Except as provided in Sections 4 and 5 above, Buyer's Agreement shall entirely replace Seller's Agreement.  The current form of Franchise Agreement which is Buyer's Agreement is hereby amended as follows:

a.   **Initial Fee.**  Franchisor waives the initial franchise fee.

b.   **Franchise Term.**  The term of Buyer's Agreement shall be shortened to match the term of Seller's Agreement, and shall expire on _____, 20__ (unless renewed as provided in Buyer's Agreement).

c.   **No Supplies.**  Franchisor will not provide Buyer with any equipment or supplies.

d.   **Training.**  Franchisor will not provide any initial training unless training is provided for in Section 6 above and Franchisor is paid the stated training fee.

e.   **Initial Accounts.**  *(Check the box that applies)*

☐   Franchisor has already offered Seller the Initial Account Volume (as defined in Seller's Agreement) that Franchisor is obligated to provide under Seller's Agreement, and Franchisor is not obligated to offer Buyer any Initial Account Volume (as defined in Buyer's Agreement).

*(or)*   ☐   Franchisor will provide Buyer with the Seller's remaining unfulfilled Initial Account Volume of $_____ by _____, 20___ (which Franchisor was obligated to provide under Seller's Agreement to Seller as of the Closing Date), but Franchisor will not have any further obligations to Buyer to provide any Initial Account Volume (as defined in Buyer's Agreement).

f.   **Trial Period.**  Buyer hereby accepts and agrees to service all of the customer accounts being transferred to Buyer by Seller.  Franchisor shall have no further obligations to Seller or Buyer with respect to any refunds, trial period, Franchisee rights of refusal or guaranteed replacement of the Accounts transferred from Seller to Buyer.  If Franchisor is obligated to provide Buyer with any Initial Account Volume under Paragraph 8.e immediately above, then the provisions of Buyer's Agreement with respect to refunds, a trial period, _____ (___) rights of refusal and guaranteed replacement shall apply to just the Initial Account Volume to be provided by Franchisor to Buyer under Section 8.e.

**9.   Waiver and Release.**  Seller hereby fully releases, remises and forever discharges Franchisor, and its predecessors, and their past and present shareholders, officers, directors, agents and employees, for, from and against any and all claims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages and liabilities of every kind and character whatsoever, including, without limitation, any action, omission, misrepresentation or other basis of liability founded either in tort or contract and the duties arising thereunder, that the releasing party has had in the past, or now has, whether known or unknown, absolute or contingent, whether currently existing or hereafter asserted, by reason of any matter, cause or thing set forth in, relating to or arising out of, or in any way connected with or resulting from the grant of Seller's franchise by Franchisor to

INT_____ / INT_____

Seller or the performance by Franchisor under Seller's Agreement; *provided, however*, that the foregoing release and discharge shall not apply to obligations or rights as expressly set forth in this Assignment or to the future performance of the Buyer's Agreement.

**10. <u>Governing Law</u>.**  This Assignment shall be construed in accordance with, and it shall be governed by, the laws of the State of Arizona.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first above written.

**SELLER:**                                           **BUYER:**


_____          _____
Signature                                              Signature


_____          _____
Print Name                                             Print Name


Dated: _____, 20__                     Dated: _____, 20__

## CONSENT TO TRANSFER BY
## O.P.E.N. AMERICA, INC.

In consideration of the payment of a transfer fee of $_____ and the foregoing release, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and subject to the conditions in the foregoing Assignment, O.P.E.N. America, Inc. hereby consents to the foregoing Assignment of the franchise rights of _____ to _____ and none other.

Dated: _____, 20__          O.P.E.N. America, Inc.,
                                      an Arizona corporation


                                      By: _____


                                      Its: _____

## EXHIBIT Q
### RECEIPTS

**THIS DISCLOSURE DOCUMENT SUMMARIZES CERTAIN PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS DISCLOSURE DOCUMENT AND ALL AGREEMENTS CAREFULLY.**

**IF WE OFFER YOU A FRANCHISE, WE MUST PROVIDE THIS DISCLOSURE DOCUMENT TO YOU 14 CALENDAR DAYS BEFORE YOU SIGN A BINDING AGREEMENT WITH, OR MAKE PAYMENT TO US OR AN AFFILIATE IN CONNECTION WITH THE PROPOSED FRANCHISE SALE OR GRANT.**

**IF WE DO NOT DELIVER THIS DISCLOSURE DOCUMENT ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT OR MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580, AND YOUR STATE AGENCY LISTED IN THE STATE AGENCIES EXHIBIT.**

**THE FRANCHISOR IS O.P.E.N. AMERICA, INC., DBA OPENWORKS, LOCATED AT 4742 NORTH 24TH STREET, SUITE 450, PHOENIX, ARIZONA 85016. ITS TELEPHONE NUMBER IS (602) 224-0440.**

**THE NAME, PRINCIPAL BUSINESS ADDRESS AND TELEPHONE NUMBER OF EACH FRANCHISE SELLER FOR THIS OFFERING IS:**

___ Jo Ann Miya (Southern California), 4300 Long Beach Blvd., Ste. #450, Long Beach, CA 90807, Telephone # (562) 428-9210
___ Nathan Wilkens (Northern California), 5900 Hollis Street, Suite V, Emeryville, CA 94608, Telephone # (415) 814-1078
___ Matthew Hamilton (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Patrick Tumilty (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Clifford D' Amico (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Katrina Hughes (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Spencer Stevens (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Sherrie Holloway (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ J. Anthony Hobson (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Stephen Moore (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ _____ (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736

**Issuance Date: February 29, 2016**

See Exhibit K for our registered agents authorized to receive service of process.

**I have received a Franchise Disclosure Document dated February 29, 2016, that included the following Exhibits:**

| Exhibit A: | List of State Franchise Administrators | | Exhibit F: | Equipment Purchase Agreement |
|---|---|---|---|---|
| Exhibit B: | State-Specific Addenda | | Exhibit G: | Table of Contents of the Operations and Safety Manual |
| Exhibit C: | Franchise Agreement and Exhibits | | Exhibit H: | List of Current Franchisees |
| | Attachment 1: | Business Starter Packages | Exhibit I: | List of Former Franchisees |
| | Attachment 2: | Terms | Exhibit J: | Financial Statements |
| | Attachment 3: | Personal Guaranty | Exhibit K: | List of Agents for Service of Process |
| | Attachment 4: | Non-Disclosure and Non-Competition Agreement | Exhibit L: | Renewal Amendment to Franchise Agreement |
| | Attachment 5: | Trademarks | Exhibit M: | Extended Account Guarantee Agreement |
| | Attachment 6: | Spousal Consent | Exhibit  N: | Insurance and Bond Applications |
| | Attachment 7: | Illinois Addendum | Exhibit O: | Background Check Release and Authorization |
| Exhibit D: | Promissory Note | | Exhibit P: | Assignments of Franchise Rights |
| Exhibit E: | Agreement for Account Assignment or Increase | | Exhibit Q: | Receipts |

Date: _____

      (do not leave blank)

_____
Signature of Prospective Franchisee individually,and on behalf of any entity to be formed.

_____
Print Name

**Please sign this copy of this receipt, PRINT YOUR NAME, date your signature, and return to OpenWorks at 4742 North 24th Street, Suite 450, Phoenix, Arizona 85016.**

| 2622548.3  03/16 | A:560462.12 | E:2322954.1 | I:2607322.1 | M:2323111.1 | Q:2622548.3 |
|---|---|---|---|---|---|
| 015961.00027 | B:2622509.2 | F:2322957.1 | J:2621710.1 | N:2323113.1 | |
| **FDD: 2607355.5** | C:2622019.2 | G:2322991.1 | K:2322448.1 | O:2321049.2 | |
| | D:2322952.1 | H:2607921.1 | L:2323109.1 | P:2323121.1 | |

**PROSPECTIVE FRANCHISEE'S COPY EXHIBIT Q TO FDD**

A - 0255

# EXHIBIT Q
## RECEIPTS

**THIS DISCLOSURE DOCUMENT SUMMARIZES CERTAIN PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE.  READ THIS DISCLOSURE DOCUMENT AND ALL AGREEMENTS CAREFULLY.**

**IF WE OFFER YOU A FRANCHISE, WE MUST PROVIDE THIS DISCLOSURE DOCUMENT TO YOU 14 CALENDAR DAYS BEFORE YOU SIGN A BINDING AGREEMENT WITH, OR MAKE PAYMENT TO US OR AN AFFILIATE IN CONNECTION WITH THE PROPOSED FRANCHISE SALE OR GRANT.**

**IF WE DO NOT DELIVER THIS DISCLOSURE DOCUMENT ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT OR MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580, AND YOUR STATE AGENCY LISTED IN THE STATE AGENCIES EXHIBIT.**

**THE FRANCHISOR IS O.P.E.N. AMERICA, INC., DBA OPENWORKS, LOCATED AT 4742 NORTH 24TH STREET, SUITE 450, PHOENIX, ARIZONA 85016.  ITS TELEPHONE NUMBER IS (602) 224-0440.**

**THE NAME, PRINCIPAL BUSINESS ADDRESS AND TELEPHONE NUMBER OF EACH FRANCHISE SELLER FOR THIS OFFERING IS:**

___ Jo Ann Miya (Southern California), 4300 Long Beach Blvd., Ste. #450, Long Beach, CA 90807, Telephone # (562) 428-9210
___ Nathan Wilkens (Northern California), 5900 Hollis Street, Suite V, Emeryville, CA 94608, Telephone # (415) 814-1078
___ Matthew Hamilton (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Patrick Tumilty (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Clifford D' Amico (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Katrina Hughes (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Spencer Stevens (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Sherrie Holloway (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ J. Anthony Hobson (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ Stephen Moore (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736
___ _____ (Corporate/Arizona) 4742 N. 24th Street, Suite 450, Phoenix, AZ 85016, Telephone # (800) 777-6736

**Issuance Date: February 29, 2016**

See Exhibit K for our registered agents authorized to receive service of process.

**I have received a Franchise Disclosure Document dated February 29, 2016, that included the following Exhibits:**

| Exhibit A: | List of State Franchise Administrators | Exhibit F: | Equipment Purchase Agreement |
|---|---|---|---|
| Exhibit B: | State-Specific Addenda | Exhibit G: | Table of Contents of the Operations and Safety Manual |
| Exhibit C: | Franchise Agreement and Exhibits | Exhibit H: | List of Current Franchisees |
| | Attachment 1: | Business Starter Packages | Exhibit I: | List of Former Franchisees |
| | Attachment 2: | Terms | Exhibit J: | Financial Statements |
| | Attachment 3: | Personal Guaranty | Exhibit K: | List of Agents for Service of Process |
| | Attachment 4: | Non-Disclosure and Non-Competition Agreement | Exhibit L: | Renewal Amendment to Franchise Agreement |
| | Attachment 5: | Trademarks | Exhibit M: | Extended Account Guarantee Agreement |
| | Attachment 6: | Spousal Consent | Exhibit N: | Insurance and Bond Applications |
| | Attachment 7: | Illinois Addendum | Exhibit O: | Background Check Release and Authorization |
| Exhibit D: | Promissory Note | Exhibit P: | Assignments of Franchise Rights |
| Exhibit E: | Agreement for Account Assignment or Increase | Exhibit Q: | Receipts |

Date: _____
(do not leave blank)

_____
Signature of Prospective Franchisee individually,and on behalf of any entity to be formed.

_____
Print Name

**Please sign this copy of this receipt, PRINT YOUR NAME, date your signature, and return to OpenWorks at 4742 North 24th Street, Suite 450, Phoenix, Arizona 85016.**

2622548.3  03/16
015961.00027
**FDD: 2607355.5**

A:560462.12
B:2622509.2
C:2622019.2
D:2322952.1

E:2322954.1
F:2322957.1
G:2322991.1
H:2607921.1

I:2607322.1
J:2621710.1
K:2322448.1
L:2323109.1

M:2323111.1
N:2323113.1
O:2321049.2
P:2323121.1

Q:2622548.3

**FRANCHISOR'S COPY**
**EXHIBIT Q TO FDD**

A   0256

# EXHIBIT 3

# EXHIBIT 3

*MARKO0003*
*Entity Transfer*

## ASSIGNMENT
## OF ALL
## FRANCHISE RIGHTS OF INDIVIDUAL(S)
## TO THEIR ENTITY

**THIS ASSIGNMENT OF FRANCHISE RIGHTS OF INDIVIDUAL(S) TO THEIR ENTITY** (this **"Assignment"**) is made and to be effective as of the18th day of JANUARY, 2017, by and between RUTH MARK (**"Assignor"**) and RUTH, LLC *[name of entity]*, a(n) COLORADO *[name of state]* LLC *[type of entity]* (**"Assignee"**).

**1.      Assignment.**  For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Assignor sets over, transfers and assigns to Assignee, effective as of JANUARY 18, 2017 (the **"Closing Date"**), all of Assignor's right, title and interest as Franchisee under the Franchise Agreement dated SEPTEMBER 12, 2016 (the **"Agreement"**) by and between Assignor and O.P.E.N. America, Inc., an Arizona corporation (**"Franchisor"**), relating to a janitorial services franchise with a OW 3 franchise package to be operated in the State of COLORADO.

**2.      Payments to Franchisor.**  On or before the Closing Date, Assignor shall pay to Franchisor all royalties, advertising contributions, accounts payable and all other amounts owed by Assignor to Franchisor, plus a transfer fee of $ 00.00.

**3.      Representations and Warranties.**  As an inducement to Franchisor to consent to this Assignment, Assignor and Assignee represent and warrant to Franchisor as follows:

 **a.**  Assignor and Assignee desire to assign the Agreement from Assignor to Assignee for their own business purposes, and have requested that Franchisor consent to this Assignment.

 **b.**  There has been no material adverse change in the information provided to Franchisor regarding Assignor or Assignee; and no default or event of default has occurred under the Agreement, nor under any other agreement between Franchisor and Assignor or Assignee, and no event has occurred which, with the passage of time, or the giving of notice, or both, would constitute such a default or event of default.

 **c.**  Assignee is duly organized and in good standing under the laws of the State of COLORADO.  Attached are true, complete and current copies of Assignee's Articles of Incorporation and Bylaws or equivalent organizational documents.

 **d.**  As of the date of this Assignment, the full legal name of each of Assignee's owners, and all of Assignee's directors and officers (or managing partners or managing members if Assignee is a partnership or limited liability company), and each such person's residential address, telephone number, social security number, and ownership interest, are as follows:

| | |
|---|---|
| RUTH MARK | 100 % |
| 2360 S QUEBEC STREET APT 205 | Telephone: |
| DENVER, CO 80231 | 303-667-1598 |
| | Social Security #: |
| | 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 |

   e.  Assignee's address for purposes of notice pursuant to the Agreement is:

          2360 S QUEBEC STREET APT 205

          DENVER, CO 80231

**4.     Assumption by Assignee.**  Assignee assumes and agrees to be bound by and perform all obligations of Assignor under the Agreement.  Assignor also remains fully obligated under the Agreement.  Attached hereto is a true and complete copy of a resolution of the governing body of Assignee approving the assumption of the Agreement and this Assignment.

**5.     Assignee's Acknowledgements.**  Assignee hereby acknowledges that Franchisor's approval of the transfer to Assignee does not constitute a guaranty or representation that Assignee will be profitable or successful.

Form for individual franchisee(s) transferring all franchise rights to their entity (no new owners)

A - 0259

6.    Waiver and Release.

    a. Assignor hereby fully releases, remises and forever discharges Franchisor, and its predecessors, and their past and present shareholders, officers, directors, agents and employees, for, from and against any and all claims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages and liabilities of every kind and character whatsoever, including, without limitation, any action, omission, misrepresentation or other basis of liability founded either in tort or contract and the duties arising thereunder, that the releasing party has had in the past, or now has, whether known or unknown, absolute or contingent, whether currently existing or hereafter asserted, by reason of any matter, cause or thing set forth in, relating to or arising out of, or in any way connected with or resulting from the grant of the franchise by Franchisor to Assignor or the performance by Franchisor under the Agreement; *provided, however*, that the foregoing release and discharge shall not apply to obligations or rights as expressly set forth in this Assignment or to the future performance of the Agreement by Franchisor.

    b. If Assignor is a resident of California, then the release in the previous paragraph of this Assignment includes without limitation, any claim that might be asserted by Assignor under either the California Franchise Investment Law, California Corporations Code Sections 31000 through 31516, or the California Franchise Relations Act, California Business and Professions Code, Section 20000 through 20043, and

> **Assignor expressly waives all rights, protections, privileges and benefits under Section 1542 of the Civil Code of California, which states:**
>
> **A general release does not extend to claims which the [party giving the release] does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the [party receiving the release].**

7.    **Governing Law.** This Assignment shall be construed in accordance with, and it shall be governed by, the laws of the State of Arizona.

    IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first above written.

**ASSIGNOR:**                                   **ASSIGNEE:**

_____                       RUTH, LLC
Signature                                       Entity Name

_____                       a[n] COLORADO        LLC
Ruth Mark                                            (state)      (type of entity)
Print Name

                                                By: _____
                                                    Signature

                                                Title: _____ Owner

Form for individual franchisee(s) transferring all franchise rights to their entity (no new owners)

A - 0260

**CONSENT TO TRANSFER BY
O.P.E.N. AMERICA, INC.**

In consideration of the payment of a transfer fee of $ 00.00 and the foregoing release, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and subject to the conditions in the foregoing Assignment, O.P.E.N. America, Inc. hereby consents to the foregoing Assignment of the Franchise Agreement from RUTH MARK to RUTH, LLC and none other.

Dated:  JANUARY 18, 2017      O.P.E.N. America, Inc.,
an Arizona corporation

By: _____

Its: _____

435927.2
3/03

-4-

015961.10006(83)

Form for individual franchisee(s) transferring all franchise rights to their entity (no new owners)

**A - 0261**

Form **W-9**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the requester. Do not send to the IRS.

**Print or type**
**See Specific Instructions on page 2.**

Name (as shown on your income tax return)

Business name/disregarded entity name, if different from above
**RUTH, LLC**

Check appropriate box for federal tax classification:
- [ ] Individual/sole proprietor
- [ ] C Corporation
- [ ] S Corporation
- [ ] Partnership
- [ ] Trust/estate
- [x] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ - - - - - - - -
- [ ] Other (see instructions) ▶

[ ] Exempt payee

Address (number, street, and apt. or suite no.)
**2360 S Quebec St Apt 205**

Requester's name and address (optional)

City, state, and ZIP code
**Denver, CO 80231**

List account number(s) here (optional)

---

**Part I** | **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number
8 1 – 4 1 2 1 8 5 1

---

**Part II** | **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here** | Signature of U.S. person ▶ | Date ▶ 01/16/2017

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien,
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,
- An estate (other than a foreign estate), or
- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)

**A - 0262**