**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:18-cv-02412-NRN

RUTH MARK; and those similarly situated;

      Plaintiffs,

v.

O.P.E.N. AMERICA, INC., d/b/a OPENWORKS;

      Defendants.

---

**RESPONSE TO DEFENDANT'S MOTION TO STAY
PURSUANT TO 9 U.S.C. § 3, ECF DOC. 10**

---

Ruth Mark immigrated to the United States from Africa only a few years ago. She thought that a franchise opportunity with OpenWorks would be her ticket to the American Dream. Instead, she was OpenWorks's employee. But as opposed to getting paid for her work, she paid OpenWorks for the privilege of her job. *See* Compl. ¶¶ 1-25; ECF Doc. 1. She alleges that OpenWorks's franchise model is a sham—built on misclassification of employees, fraud, and a breach of OpenWorks's duty of good faith and fair dealing. *Id.* ¶¶ 98-126.

The questions before the Court here, however, do not concern the substance of Plaintiff's claims but rather **where** those claims should be heard. Defendant argues in its motion to stay that Plaintiff's claims are covered by a binding arbitration agreement that requires her to arbitrate her claims in Arizona (where OpenWorks is based) before an arbitrator selected from a group of three that is hand-picked by OpenWorks. *See*

1

Agreement §§ 11.8, 11.8.4[1]. But OpenWorks does not argue that **this** Court should compel Plaintiff's claims into arbitration. Instead, it argues that this Court should stay Plaintiff's case pending an order from the District Court for the District of Arizona compelling Plaintiff's claims into arbitration under 9 U.S.C. § 4. The narrow question here, therefore, is whether the Court is "satisfied that the issue involved in [this] suit or proceeding is referable to arbitration under . . . an agreement [to arbitrate]." Because the arbitration agreement at issue here was (1) never entered into by the parties, and (2) even if it were entered into by the parties, is unenforceable as a matter of federal and state law, the Court should deny Defendant's motion.

## A. OpenWorks Never Executed the Agreement, which Means that the Court Cannot be "Satisfied" That Plaintiff's Claims are Referable to Arbitration.

As now-Justice Gorsuch clarified while writing for the Tenth Circuit,

> Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs.

*Howard v. Ferrellgas Partners*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, *J.*).

In this case, Defendant has not met its burden of establishing that the parties have entered into an agreement to arbitrate. By the terms of the agreement attached to Defendant's motion to stay, the "Agreement will not be binding on OpenWorks unless and until it has been signed by an authorized officer of OpenWorks." Agreement § 11.14. On

---

[1] Citations and references to the "Agreement" refer to the OpenWorks Janitorial Franchise Agreement at ECF Doc. 11-1.

the agreements signature page, it appears that Plaintiff Ruth Mark signed the agreement as a purported "FRANCHISEE." ECF Doc. 11-1 at A-0049. In the space reserved for OpenWorks to execute the agreement, however, there is no signature. *Id.* Someone—and it is not clear who—signed the agreement as a witness, but that witness is not representing or purporting to represent OpenWorks. Indeed, the signature page suggests that the witness is *not* a party to the agreement—meaning that he or she is neither OpenWorks nor Mark—insofar as the statement above the witness's signature provides that the "Agreement was executed on the date stated above, by the *above named parties* and in *my* presence as a *witness*." *Id.* (emphasis added).

A party need not sign an agreement to be bound by it, but where the terms of a contract expressly require that assent take a particular form, and the parties have not provided assent in that form, the contract is not effective.[2] *Scaife v. Assoc. Air. Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) (finding defendant signature required when contract included both a signature block for defendant and stated that agreement became effective when it was witnessed and "executed" by a "duly authorized" representative from each party); *Baier v. Darden Restaurants*, 420 S.W.3d 733 (Mo. Ct. App. 2014) (trial court properly found no contract was formed when employer drafted arbitration agreement with

---

[2] While the terms of the Agreement dictate that Arizona law should apply, that choice-of-law provision is also not valid if the Agreement was not completed, and therefore the law of Colorado, as the state where the contract was negotiated, should apply to the question of whether the parties entered into the agreement. *Schnabel v. Trilegiant Corp.*, 697 F. 3d 110, 118 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."). Regardless of which law applies, however, the outcome is the same under general principles of contract formation.

signature line for employer representative but that line was left blank); *All State Home Mortg. v. Daniel*, 977 A.2d 438 (Md. Ct. Spec. App. 2009) (arbitration clause unenforceable for lack of mutual assent when express terms of arbitration clause provided that it was effective and binding "when both parties sign it," and All State had not signed it); *Byrd v. Simmons*, 5 So. 3d 384, 388 (Miss. 2009).

In this case, based on the terms of the agreement before the Court, there is nothing but an illusory one-sided promise "unless and until [the Agreement] has been signed by an authorized officer of OpenWorks." Agreement § 11.14. The Agreement has a signature page the includes a space for OpenWorks to sign the agreement through an "officer," and yet those signature lines are entirely blank. The agreement cannot be effective.[3]

Because there is no agreement between the parties, the Court cannot be "satisfied" that the dispute is covered by an arbitration agreement, and thus cannot grant a stay under § 3 of the FAA. This case is importantly different from *Roe v. Gray,* 165 F. Supp. 2d 1164, 1173 (D. Colo. 2001), where a court considering a motion to stay under § 3 declined to decide issues of arbitrability that would be decided before a court in the Eastern District of North Carolina where the defendants had filed a § 4 petition. Questions of "arbitrability" ask whether claims fall within the terms of a binding and enforceable arbitration agreement. Questions of **formation** ask whether the parties have entered into a binding arbitration agreement at all. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 299 (2010).

---

[3] To the extent that Plaintiff's signature on the agreement creates an open offer to Defendant, Plaintiff revokes that offer.

While considerations of comity may counsel in favor of deferring issues of arbitrability to the court where a § 4 petition is pending, *Roe*, 165 F. Supp. 2d at 1173, those same considerations do not apply where the parties did not enter into the agreement that potentially renders that other court the proper venue to consider a § 4 petition. *Cf. Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (questions of formation cannot be delegated by an agreement to an arbitrator because there is no agreement to arbitrate any dispute unless the parties have entered into an agreement). In this case, it is the venue selection provision at § 11.8 of the Agreement that gives the District of Arizona the authority to resolve the § 4 petition. But that venue selection provision was never part of a completed contract between the parties and is thus ineffective. It would make little sense to defer questions to a different court based on a venue selection provision if there were a genuine dispute that one of the parties had forged the agreement containing such provision and unilaterally selected that other jurisdiction as the more desirable venue for the case. It similarly makes little sense to defer these preliminary questions of enforceability to another court based on the terms of a contract that does not exist.

**B. Even If the Parties Entered into the Agreement, It Is Unconscionable and Unenforceable as a Matter of State and Federal Law.**

Even if the Agreement was completed, the Court should deny Defendant's motion because the agreement is unenforceable as a matter of federal law and unconscionable as a matter of Arizona law.

1. Legal Framework

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate

shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To reconcile this "savings clause" with the protections that the FAA was intended to afford against "judicial hostility to arbitration agreements," *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 225 (1987), the Supreme Court has described two FAA-based restrictions on courts' authority to deny enforcement of arbitration agreements: (1) courts must not treat arbitration agreements with disfavor relative to other agreements, *see, e.g.*, *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (arbitration clauses must be placed on "equal footing with other contracts" (internal quotation marks omitted)), or arbitration with disfavor relative to resolution in a public forum, *see, e.g*, *Marmet Health Care Ctr.*, 132 S. Ct. 1201 (2013); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 934 (9th Cir. 2013) (state rule must not "prohibit[] outright arbitration of a particular type of claim"); and (2) courts must not employ generally applicable laws or rules of decision to limit the contracting parties' "discretion in designing arbitration processes [that are] efficient [and] streamlined," *Concepcion*, 563 U.S. at 344; *see also Smith v. Jem Grp., Inc.*, 737 F.3d 636, 641 (9th Cir. 2013).

Yet, as the Supreme Court has also explained, the inverse of these propositions is equally important to the FAA landscape. First, because arbitration is fundamentally a creature of contract, arbitration agreements may be defeated by the same defenses that are applicable to other contracts. *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377 (10th Cir. 2016); *Jem Grp.*, 737 F.3d at 642 (Washington law not preempted because it required only that drafter "disclose the arbitration agreement . . . to the same degree that he or she

must disclose *all material terms*" (emphasis added)).

Second, the FAA does not offer protection to terms that *undermine* the principles of fair, efficient, and effective dispute resolution. While some arbitration clauses appear to be crafted to promote streamlined and fair adjudication, others may be designed to impede that result. Although the FAA insulates arbitration clauses from attack based solely on their designation of an arbitral forum, where the terms of an arbitration clause render the arbitral process fundamentally "[un]fair," courts may refuse to enforce the agreement based on "generally applicable polic[ies] against abuses of bargaining power." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013); *see also Nesbitt v. FCNH, Inc.*, 811 F.3d at 377.

In this case, there are two relevant limitations on "unfair" arbitration agreements. The first is a limitation of federal law spelled out in *Nesbitt*, where the Tenth Circuit denied enforcement of an arbitration agreement that prevented the plaintiffs from "effectively vindicating" their federal statutory claims under the Fair Labor Standards Act (FLSA), like the federal claims that Plaintiff has asserted here, because of the costs the plaintiffs might have to incur in pursuing their case. 811 F.3d at 377.

The second limitation is one of state law. If the Agreement has been completed, then Arizona law applies. Agreement § 11.2 Under Arizona law, in deciding whether an agreement is unconscionable courts, consider both procedural and substantive unconscionability.

Procedural unconscionability "addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or ignorance of

important facts or other things that mean bargaining did not proceed as it should." *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013). In contrast, substantive unconscionability addresses the fairness of the terms of the contract itself. "A contract may be substantively unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties." *Id.*

2.  Overall Procedural Unconscionability of the Agreement

Procedural consciousability is of no relevance to Plaintiff's argument that the Agreement prevents her from effectively vindicating her rights under federal law, *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1373 (D. Colo. 2014), aff'd, 811 F.3d 371 (10th Cir. 2016) (agreement not procedurally unconscionable and yet unenforceable as a matter of federal law pursuant to the effective vindication doctrine), and it is only part of the analysis in deciding whether the Agreement is unenforceable and unconscionable as a matter of Arizona law.

Nonetheless, it bears noting at the outset, that the Agreement here includes multiple serious indications of procedural unconscionability. Ms. Mark is an immigrant from South Sudan who came to this Country in 2011. Mark Decl. ¶ 2, Ex. A ("Mark Decl."). English is her second language. *Id.* ¶ 11. While she indicated her express assent to the Agreement, including its arbitration provision, that provision is part of an extensive form contract that exceeds 50 pages and includes many complex terms. OpenWorks presented the contract to Ms. Mark on a take-it-or-leave-it basis. Ms. Mark explains:

> Some of the words in the contract with OpenWorks are hard. The contract book was too much. When you are reading, you just read the words, but because it is too big, you can't really know them. Some of the words one cannot understand, especially when English is your second language. I

8

> never knew about the arbitration agreement. I didn't know that there were some jobs that have agreements about that. I didn't know what arbitration was when I signed the contract. The first time I heard about arbitration was when my lawyer explained it to me. I didn't know that word.

*Id.* at 14-15. And regarding the circumstances of contract formation, she recounts: "It would take me 2 or 3 months to read that book and look up each thing, each word one by one. But I had to sign it quickly." *Id.* ¶ 17.

   3.  The Venue Selection Term

   In analyzing whether it is "satisfied" that the claims at issue are covered by an arbitration agreement and, therefore, that the case should be stayed pursuant to 9 U.S.C. § 3 pending resolution of the § 4 petition in Arizona, the Court's analysis should begin and end with the conclusion that the parties never actually completed the Agreement because OpenWorks never signed it. If the Court decides, however, that the parties did in fact enter into the Agreement, the Court should turn next to the venue selection provision.

   While there are several other terms that are unconscionable under Arizona law and unenforceable as a matter of federal law, the existence and enforceability of the venue selection provision is the basis for Defendant's argument that the District of Arizona is the proper court to enforce the arbitration agreement and that principles of comity should counsel against this Court addressing any threshold matters regarding enforceability. Mot. at 9, ECF Doc. 10. If the Court determines that the venue selection agreement is unenforceable as a matter of federal and state law, then the court in the District of Arizona is not the proper court for OpenWorks to move to compel arbitration. In that case, this Court need not stay these proceedings pending resolution of the § 4

petition in Arizona.

The venue selection provision, requiring Ms. Mark to arbitrate her disputes with OpenWorks in Arizona, Agreement § 11.8, prevents Ms. Mark from effectively vindicating her rights under the FLSA. Ms. Mark cannot afford even one trip to Arizona to testify in this matter, let alone the multiple trips she might have to take if she were to testify before one of the arbitrators selected from a group handpicked by OpenWorks. *See Id.* § 11.84. Ms. Mark and her family effectively live hand to mouth. Mark Decl. ¶¶ 3-12. All her modest savings were drained by OpenWorks. *Id.* ¶11. And she and her family survive on the little work she and her husband are able to get. Until quite recently, they had trouble affording food. *Id.* ¶¶ 6-7. A trip to Arizona would require Ms. Mark to leave her two young children at home with her husband who would then have to cut back his hours driving for Uber, which would mean substantially less of the income her family needs to continue meeting their basic needs. *Id.* ¶ 10. She declares that if her husband does not work as an Uber driver, "we will be homeless." *Id.* Because she could not incur these costs, the venue selection provision prevents Ms. Mark from being able to pursue her FLSA claims. For this reason, the provision is unenforceable under the Tenth Circuit's analysis in *Nesbitt*, 811 F.3d 371.

For similar reasons, the venue selection provision is also substantively unconscionable under Arizona law. Under Arizona law, a venue selection term is unconscionable when it deprives the plaintiff of her day in court and is not consistent with her reasonable expectations. *Societe Jean Nicolas Et Fils v. Mousseux*, 597 P.2d 541, 543 (Ariz. 1979). For the reasons explained above, the term deprives Ms. Mark of an

opportunity to vindicate her rights. *See, e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1289–1290 (9th Cir. 2006) (en banc). Additionally, the term is inconsistent with Ms. Mark's reasonable expectations. Ms. Mark performed all her work in Colorado and interacted with the company in Colorado. She did not even know that OpenWorks was based in Arizona. Mark Decl. ¶ 16.

4. The Remaining Unenforceable Terms

Several other terms in the arbitration provision are also unenforceable and unconscionable. If they came before the Court on a motion to compel arbitration, they would provide the Court with ample basis for denying that motion. They come before the Court here, however, on a motion to stay the proceedings under 9 U.S.C. § 3, and in this context, Defendant may argue that—assuming the contract has been concluded and the forum selection provision is valid—the court in Arizona should decide whether the agreement is enforceable.

This Court should reject that invitation. To stay proceedings, the Court must be "satisfied" that the claims at issue are subject to arbitration, but the Court cannot be satisfied of that conclusion if the arbitration agreement purporting to cover Plaintiff's claims is unenforceable. While the court in *Roe* deferred questions of arbitrability to the court hearing a § 4 petition based on principles of comity, this Court need not do the same when the question before it is whether the arbitration agreement is entirely unconscionable and unenforceable, and there are so many strong indicia of unconscionability that deferring to the court in Arizona would do nothing more than delay the administration of justice.

Besides the forum selection provision, the unenforceable and unconscionable terms present in the agreement include the following:

- **Loser Pays Provision**: Under the arbitration provision, "[a]ll expenses of arbitration must be paid by the party against whom the arbitrator renders a decision." Agreement § 11.8. Particularly given that the arbitrator would be selected from a group handpicked by OpenWorks, this provision is unenforceable as a matter of federal law because it prevents Ms. Mark from effectively vindicating her federal rights. The FLSA provides a right for the *employee* to recover her fees and costs if she prevails in the action. 29 U.S.C. § 216(b). It is entirely antithetical to this scheme to require the plaintiff to pay perhaps many thousands of dollars if she does not prevail.  "[B]eing at the mercy of the arbitrator's discretion . . . is not the same as the protections of the FLSA." *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 378 (10th Cir. 2016). Alternatively, this term is unconscionable and unenforceable as a matter of state law, *Newton v. Am. Debt Services, Inc.*, 549 Fed. Appx. 692, 694 (9th Cir. 2013); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010), as is the fee-shifting term covering actions to enforce the arbitration provision, Agreement § 11.11.

- **The Biased Arbitrator Selection Provision**: The contract also provides that OpenWorks will have the ability to unilaterally select an arbitrator by handpicking a group of three potential arbitrators from which Ms. Mark may select one. Agreement §11.8.4. This term is harsh, one-sided, and substantively unconscionable. *Zaborowski v. MHN Gov't Services, Inc.*, 601 Fed. Appx. 461 (9th

Cir. 2014) (arbitration clause substantively unconscionable when method for choosing arbitrators was unfair; defendant would select three arbitrators and plaintiff had to choose from among them); *see also Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1258 (10th Cir. 2018).

- **Punitive Damages Waiver**: The agreement also forces Ms. Mark to waive her right to seek punitive damages that she may otherwise be entitled to. Agreement § 11.8. This provision is also unconscionable and unenforceable as a matter of state law. *Wernett v. Serv. Phoenix, L.L.C.*, 2009 WL 1955612 (D. Ariz. July 6, 2009) (arbitration clause prohibiting award of punitive damages, tort damages, or costs and attorney fees held unconscionable); *see also Zaborowski v. MHN Gov't Services, Inc.*, 601 Fed. Appx. 461 (9th Cir. 2014) (arbitration clause which bans punitive damages substantively unconscionable); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) (arbitration clause prohibiting award of punitive damages held unconscionable); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003).

- **Statute of Limitations Modification**: The Agreement also shortens the applicable statutes of limitation for all claims to one year and establishes a pre-filing exhaustion requirement that requires the complaining party to serve a demand on the other party and then, within 90 days of such demand, to commence an arbitration proceeding. Agreement § 11.10. This agreement expressly defies the unwaivable statutory rights afforded Plaintiff by the FLSA, 29 U.S.C. § 255, and thus is unenforceable pursuant to *Nesbitt*. 811 F.3d at 377. "[F]ederal courts have

routinely concluded that arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable." *Reyes v. Gracefully, Inc.*, 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018) (internal quotation marks omitted). As applied to Plaintiff's state-law claims, the shortened period is unconscionable as a matter of state law because it is non-negotiated term beyond Ms. Mark's reasonable expectations. *Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1031 (Ariz. Ct. App. 1992).

Finally, the Court should decline to consider severing any of the unenforceable and unconscionable terms in this Agreement. Several of the terms here are harsh and one sided, suggesting that the arbitration scheme was designed not to provide the parties with an alternative dispute resolution mechanism but rather as an "inferior forum" that works to the drafting party's advantage. *Armendariz v. Found. Health Psychcare Services, Inc.*, 6 P.3d 669, 695-97 (Cal. 2000). Additionally, severing these unenforceable terms to make the arbitration agreement enforceable would require substituting the party's agreement with the Court's. It would also create for drafting parties an incentive to pack their agreements with unconscionable and unenforceable terms knowing that those terms may chill claims and that at worst, the agreements will be enforced in their absence. Restatement (Second) of Contracts § 184 cmt. b (1981) ("[A] court will not aid a party who has taken advantage of his dominant bargaining power to extract from the other party a promise that is clearly so broad as to offend public policy by redrafting the agreement so as to make a part of the promise enforceable.").

Plaintiff acknowledges that unlike in *Nesbitt*, 811 F.3d at 376, the arbitration

agreement here ostensibly includes a savings provision, Agreement § 11.12. But having this purported "Severability" clause is as good for OpenWorks's purposes here as having none at all. A true, mutual severance provision might allow the Court to exercise its discretion to sever some unenforceable terms and enforce the agreement in their absence. But that is not what this clause allows. This clause purports to allow OpenWorks and OpenWorks alone to decide whether any of the terms that have been taken out of the agreement are so important to OpenWorks that it would rather vitiate the agreement entirely. *Id.* In light of the extreme one-sidedness of that provision, the Court should ignore it in deciding the severance question.

* * *

To stay this case, the Court must be "satisfied" that the claims here are covered by an arbitration requirement. Defendant has not met that burden. The agreement here was never executed by the parties, and even if it were, several of its substantive terms are unenforceable as a matter of federal or state law, including the venue selection provision that serves as the premise for Defendant's argument that the District of Arizona is the only court capable of considering its petition to compel arbitration under 9 U.S.C. § 4. The Court should deny Defendant's motion.

Respectfully Submitted,

s/*David H. Seligman*
David H. Seligman
Towards Justice
1410 High Street, Suite 300

15

Denver, CO 80218
Tel.: 720-248-8426
Fax: 303-957-2289
Email: david@towardsjustice.org

**Certificate of Service**

I hereby certify that on November 28, 2018 I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5 by filing the forgoing using the Court's CM/ECF electronic filing system.

 s/David H. Seligman
David H. Seligman