**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:18-cv-02412-RBJ-NRN

RUTH MARK; and those similarly situated;

    Plaintiffs,

v.

O.P.E.N. AMERICA, INC., d/b/a OPENWORKS;

    Defendants.

---

**SURREPLY TO MOTION TO STAY PURSUANT TO 9 U.S.C. § 3**

---

The Court should not stay this case based solely on the new evidence and assurances provided by Defendant in its reply brief. ECF Doc. 25. After producing a contract signed by a witness but not Defendant, Defendant magically found a new copy of the agreement signed by the same witness but now with Defendant's signature. Defendant completely fails to attest that the contract was signed before Plaintiff filed her response brief and fails to satisfactorily explain how the witness would have signed the agreement before Defendant.

In sum, Defendant's new evidence does nothing to ameliorate the apparent unenforceability of the arbitration agreement based on its several unfair, unconscionable, and illegal terms, and it does not even resolve the question of formation. On that issue there remains, at the very least, a fact question.

**A.** <u>**There Remains an Issue of Fact Regarding Whether Defendant Signed the Agreement**</u>

After Plaintiff pointed out in her response that Defendant never signed the purported contract including the arbitration agreement, Defendant submitted a new version of the contract

1

with its signature. *Compare* ECF Doc. 11-1 at A-0049 (signature page without Defendant's signature), *with* ECF Doc. 25-1 at C-050 (new signature page with Defendant's signature). This new and contrary evidence leads to a dispute of fact regarding whether the contract containing the arbitration agreement was ever formed. That question should be the subject of factfinding by the Court.

In deciding whether to stay this case, the Court must be "satisfied" that there are no genuine issues of material fact regarding the contract's existence and "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *See Hancock v. American Tel. and Tel. Co., Inc.*, 701 F. 3d 1248, 1261 (10th Cir. 2012); *see also* 9 U.S.C. § 3 (allowing a stay pending arbitration only after the court is "satisfied" that the case is arbitrable). Where there are issues of fact as to the existence of the agreement, the Court may undertake factfinding, including discovery followed by an evidentiary hearing.[1] Given the conflicting evidence produced by Defendant, that factfinding is exactly what should happen here.

Defendant provides no competent evidence that the agreement was signed by OpenWorks before Plaintiff revoked it. Indeed, Defendant offers regular business practice evidence that ***both*** versions of the contract—the one signed by Defendant and the one unsigned by Defendant—are the actual contracts. *See* Fed. R. Evid. 406. The unsigned contract was purportedly found in

---

[1] In *Hancock*, the Tenth Circuit analogized the standard for determining the existence of an arbitration agreement to the standard for determining the existence of a valid forum selection clause in the context of a Rule 12(b)(3) motion to dismiss for improper venue. *See Hancock*, 701 F. 3d at 1261 (quoting *Murphy v. Schneider National, Inc.,* 362 F. 3d 1133, 1139 (9th Cir. 2004)). Under that standard, "[i]f the defendant presents evidence that venue is improper and the plaintiff responds with contrary evidence, 'it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance ***until the district court holds an evidentiary hearing on the disputed facts***.'" *Id.* (quoting *Murphy,* 362 F. 3d at 1139 and emphasis added).

Defendant's electronic files, where, according to Defendant, agreements with franchisees are maintained. *See* ECF Doc. 11-1 at A-0001 ¶¶ 3, 6 (unsigned agreement is the result of "usual and customary business practices used to sell franchises"); ECF Doc. 25-2 ¶¶ 5-7 ("I am familiar with the usual and customary business practices of OpenWorks as they relate to the storage of documents kept in the regular course of OpenWorks' business…. OpenWorks maintains copies of documents kept in the regular course of its business activities, like the Agreement, in OPS [elsewhere described as an electronic file storage system]…. I found a copy of an OpenWorks Janitorial Agreement dated September 12, 2016 in OPS. However, that copy was not signed by OpenWorks."). Meanwhile, the contract signed by Defendant was purportedly subsequently found in a file cabinet, and Defendant offers a declaration that it is regular business practice to keep executed agreements there too. ECF Doc. 25-2 ¶¶ 7-8 ("I decided to look for a hard copy of the Agreement in one of the filing cabinets in which OpenWorks maintains copies of documents kept in the regular court of its business activities, like the Agreement…. On December 6, 2018, I found a copy of the Agreement in an OpenWorks filing cabinet."). Defendant has thus put forward evidence that either version of the contract could be the real contract kept in the ordinary course of business. That alone creates a dispute of fact supporting further factfinding.

Moreover, even assuming an OpenWorks official signed the agreement, it is not at all clear *when* the agreement was signed. None of the declarations filed in support of Defendant's reply provide any information about when OpenWorks purported to enter into the agreement. If, as is completely possible given the evidence put forward, Defendant signed after Plaintiff's response

was filed—*i.e.*, after November 28, 2018, ECF Doc. 19—that new signature has no effect.[2]

The evidence offered by Defendant raises more questions that are susceptible to factfinding, particularly when, per *Hancock*, the Court gives Plaintiff the benefit of all reasonable doubt and inferences. *See Hancock.*, 701 F. 3d at 1261. For example, why did Defendant apparently sign the hard copy only after it scanned the agreement into its electronic filing system where it claims to keep fully executed agreements in the regular course of business? And why did the witness signature appear on both the version with Defendant's signature and the version without Defendant's signature? Did the witness that signed see Defendant sign or not?

Given the conflicting evidence regarding ***if*** Defendant signed and ***when*** Defendant signed and giving Plaintiff the benefit of all reasonable doubt and inferences, an issue of fact regarding contract formation exists, and this Court cannot be "satisfied" that a stay is appropriate without factfinding through discovery and an evidentiary hearing.

B.  **Absent Defendant's Signature, There Is No Contract**

Defendant also attempts to argue that the agreement is enforceable against Plaintiff even if Defendant never signed it—or did not sign it until after Plaintiff filed her Response and revoked the contract.

While it is true that, in some contexts, an arbitration agreement may be valid even where it has not been signed by both parties, the law is clear that where an agreement specifies the manner in which the parties must assent, that is the exclusive manner of assent. *Union Interchange, Inc. v. Sierota*, 355 P.2d 1089, 1090-91 (Colo. 1960) ("If an offer prescribes the place, time or manner of

---

[2] To the extent the contract attached to the Motion which lacked Defendant's signature constituted an open offer, Plaintiff carefully revoked in her response. *See* ECF Doc. 19 at 4 n. 4.

acceptance its terms in this respect must be complied with in order to create a contract." (internal quotation marks omitted)).

Defendant also claims that the version of the agreement lacking its signature creates a contract that is binding on Plaintiff, while acknowledging that it would not be binding on Defendant. ECF Doc. 25 at 5 ("This Agreement will not be binding on OpenWorks unless and until it has been signed by an authorized officer of OpenWorks." (quoting agreement)). But an agreement that binds one party and not the other is not a contract at all. A contract is formed when both parties have assented to be bound by it such that both parties can enforce it. CONTRACT, Black's Law Dictionary (10th ed. 2014) (A contract is "an agreement between two or more parties creating ***obligations that are enforceable*** or otherwise recognizable at law." (emphasis added)).  This is so because the touchstone of contracting is mutuality, and "[m]utuality requires [that] all contracts … impose ***upon each of the parties*** a legal binding obligation which each can enforce against the other." *Hoppe v. Percheron Associates*, LLC, 11-CV-03233-CBS, 2012 WL 3135378, at *3 (D. Colo. Aug. 1, 2012) (internal citations and quotations omitted and emphasis added). Thus, by the terms of the agreement, a contract cannot be created without Defendant's signature.

Finally, to the extent Defendant asserts that a subsequent assignment somehow formed an agreement that did not previously exist, that is impossible. If Defendant did not sign, no contract was ever formed, and a contract that does not exist cannot be assigned.

C. **This Court Should Not Defer Questions of Formation the Court in Arizona**

In its Reply, Defendant continues to press its argument that the forum selection clause in the purported agreement counsels this Court to leave the determination of whether an arbitration agreement exists to the Court in Arizona considering Defendant's petition to compel arbitration.

But if no contract exists, then no forum selection clause exists, and thus this Court must apply general venue and choice of law principles to decide whether the contract exists. Applying these principles, Colorado is the proper venue and source of law for this dispute. *See* 28 U.S.C. § 139; *see generally Wood Bros. Homes, Inc. v. Walker Adj. Bureau*, 601 P. 2d 1369 (Colo. 1979) (adopting Restatement (Second) of Conflict of Laws).

D. **This Court Should Not Defer Questions of Enforceability to the Court in Arizona**

Furthermore, for the reasons stated in Plaintiffs' response, even if the parties entered into the contract, the arbitration agreement—including the venue selection provision that serves as the basis for Defendant's petition—is clearly unenforceable as a matter of state and federal law. While there is precedent in the District of Colorado to defer questions regarding the scope of an arbitration clause (arbitrability) to the court where the § 4 petition was filed, there is no precedent for deferring questions of enforceability, particularly where the arbitration clause at issue is so clearly unenforceable. *See* Resp., ECF Doc. 11-15.

E. **Defendant Contends That Plaintiff Is Not a Party to the Contract it Seeks to Enforce, and Therefore No Arbitration Agreement Exists Between the Parties to This Case**

Even if the Court concluded that the parties entered into the agreement and that the agreement is enforceable, there would be the remaining question of whether Ms. Mark remains bound by the arbitration agreement. In the recently submitted scheduling order, Defendant asserts that Plaintiff transferred "all rights, duties, and obligations of the Agreement" to a distinct limited liability company. ECF Doc. 28 at 3 n.2.

The assignment Defendant describes, while perhaps undermining any breach of contract claims that Plaintiff might have if she were still a party to the contract, also robs Defendant of the ability to enforce the contract and its arbitration provision against Plaintiff. Plaintiff hereby accepts

6

Defendant's interpretation that all Plaintiff's "duties" have been transferred to some other entity by the assignment and accepts that this may waive claims she may have had under any contract absent the assignment. Plaintiff therefore no longer has the duty to arbitrate this dispute.

For the forgoing reasons, the Motion should be denied.

                                      Respectfully Submitted,

                                      ~~s/~~ /s/ *David H. Seligman*____
                                      David H. Seligman
                                      Alexander N. Hood
                                      Towards Justice
                                      1410 High St., Suite 300
                                      Denver, CO 80218
                                      Tel.: 720-248-8426
                                      Fax: 303-957-2289
                                      Email: david@towardsjustice.org

                                      Attorneys for Plaintiffs

## Certificate of Service

  I hereby certify that on January 6, 2019 I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.

              s/David Seligman
              David Seligman