IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02412-RBJ-NRN

RUTH MARK; and those similarly situated,

    Plaintiffs,

v.

O.P.E.N. AMERICA, INC., d/b/a OPENWORKS,

    Defendant.

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT & DISMISSAL WITH PREJUDICE

The Opt-In Plaintiffs Wanda Strauss, Mohamed Muney Mohamed, Debra Morrett, Ojo Yesuto, Mohamoud Ali, and Marco Guerrero (collectively the "Opt-In Plaintiffs") and O.P.E.N. America, Inc. d/b/a Openworks ("Openworks" or "Defendant") (together, the "Parties"), through undersigned counsel and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, respectfully submit this Joint Motion for Approval of FLSA Settlement and Dismissal with Prejudice.

### I.  INTRODUCTION

On September 20, 2018, Plaintiff Ruth Mark filed this proposed hybrid class/collective action lawsuit against Defendant in the United States District Court for the District of Colorado, generally alleging violation of federal and state wage laws and asserting other common-law tort and contractual claims. As the Court is aware, Plaintiff Mark, the initial named plaintiff in this putative class and collective action, resolved her individual claims against Defendant in October

2019.  *See* ECF Doc. 59.  Before Plaintiff Mark's individual settlement, however, six current and former franchisees of Defendant joined the litigation as Opt-In Plaintiffs pursuant to 29 U.S.C. § 216(b).  Although an amended complaint has not been filed, the Opt-In Plaintiffs pursued their collective action claims under the FLSA.  While the complaint filed by Plaintiff Mark (ECF Doc. 1) (the "Complaint") includes allegations by Plaintiff Mark for a class action pursuant to Fed. R. Civ. P. 23 for both Colorado wage and hour violations and various fraud claims, the Opt-Ins did not amend the Complaint to initiate the class action process as representatives of the class or for class certification.  Thus, all class claims asserted in the Complaint are being resolved on an individual basis with the Opt-In Plaintiffs rather than as a class action.

The Parties have had significant bona fide disagreements about legal and factual issues at the core of this dispute.  Nonetheless, the Parties acknowledge the risk of an adverse outcome at trial and thus agree to the settlement agreement attached here as **Exhibit 1**.  The attached settlement is a reasonable compromise and fairly compensates the Opt-In Plaintiffs for the applicable pending claims.  In exchange for the consideration noted in the settlement agreement as a collective action settlement, the Opt-In Plaintiffs seek to voluntarily dismiss this case pursuant to the terms of the settlement agreement.  In this motion, the Parties jointly request that the Court approve the settlement and dismiss this case so that the Parties can fully and finally resolve this pending litigation.

Additionally, as identified by the Parties for the Court in its Stipulated Notice of Settlement (ECF Doc. 65) and the Second Stipulated Notice of Settlement (ECF Doc. 67), Opt-In Plaintiff Marco Guerrero filed Chapter 7 Bankruptcy and Defendant reached a settlement with the bankruptcy trustee and counsel for Guererro's bankruptcy estate.  That settlement agreement

is attached here as **Exhibit 2**. The bankruptcy court has approved the settlement. *See* **Exhibit 3**.

Finally, the Parties wish to highlight two aspects of the settlement that the Court should bear in mind when considering whether to approve it:

1. The settlement would resolve all claims in this case, ending the litigation; and
2. The Opt-In Plaintiffs have expressly agreed that the monetary value in the settlement agreement is a fair and reasonable compromise.

## II.     RELEVANT FACTUAL HISTORY

Defendant, like many companies, operates its business by offering its name-brand recognition, services, and marketing to franchisees. Franchisees typically pay a start-up fee and recurring amounts for insurance, advertising, and marketing. Defendant then provides training, materials, and opportunities for the franchisees. Each Opt-In Plaintiff is a current or former franchise owner of Defendant and obtained their franchise between 2012 and 2017. Each Opt-In Plaintiff later terminated their franchise agreement with Defendant for various reasons. In jointly seeking approval for settlement, it is important to note that the Opt-In Plaintiffs allege common wage claims stemming from the same common nucleus—that Defendant misclassified employees as independent franchises and were misled by Defendant as to the success rates of franchisees. Defendant, however, disagrees, alleging that the independent franchises are properly classified and that its policies, practices, and methods are lawful.

While the Parties dispute the classification issue and allegations in the Complaint, the Parties have agreed to a settlement that fairly considers all claims and defenses and adequately compensates all Opt-In Plaintiffs.

### III. SETTLEMENT TERMS

After approximately eight months of negotiations, the Parties came to terms in principle on a settlement for the Opt-In Plaintiffs to fully resolve all pending claims.

The Parties worked together to finalize the settlement, attached hereto as Exhibit 1, which they now ask the Court to approve. In summary, the settlement agreement provides that Defendant is to pay $41,500.00 in full and final settlement of this dispute. The settlement agreement also provides an agreement between the Parties for a settlement of this dispute, involving both the state and federal claims, governed by the applicable standard for settling FLSA cases. The Parties have agreed to the following distribution of settlement funds:

| Amount | Recipient |
|---|---|
| $9,000.00 | Wanda Strauss, Opt-In Plaintiff |
| $5,000.00 | Mohammed Muney Mohamed, Opt-In Plaintiff |
| $9,000.00 | Debra Morrett, Opt-In Plaintiff |
| $9,500.00 | Ojo Yesuto, Opt-In Plaintiff |
| $7,000.00 | Mohamoud Ali, Opt-In Plaintiff |
| $2,000.00 | Marco Guerrero's Bankruptcy Estate |
| **$41,500.00** | **TOTAL** |

The settlement for the Opt-In Plaintiffs reflects an amount similar to their initial start-up costs and is the result of exhaustive negotiations between the Parties.

### IV. FLSA § 216(b) COLLECTIVE ACTION SETTLEMENT

As an initial matter, the FLSA itself does not require court approval for all FLSA settlements. *Hawthorn v. Flooring*, No. 1:19-CV-00019 WJ/SCY, 2020 U.S. Dist. LEXIS 102505 (D.N.M. June 10, 2020). And there are no discussions in any Supreme Court interpretations of the FLSA on whether a settlement or dismissal of an action to vindicate FLSA rights under 29 U.S.C. § 216(b) is conditioned on court approval. *Id.* (citing *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 405-06 (2d Cir. 2019)); *see also Fails v. Pathway Leasing Ltd.*

*Liab. Co.*, Civil Action No. 18-cv-00308-CMA-MJW, 2018 U.S. Dist. LEXIS 196319, at *10 (D. Colo. Nov. 19, 2018) (Judge Arguello holding that FLSA settlements typically do not need court approval unless, "for example, not all opt-in plaintiffs can be contacted to obtain consent to a settlement agreement or where a party alleges that an agreement does not actually pertain to a bona fide dispute—which is to say that there is evidence of malfeasance or overreaching in obtaining a settlement agreement…" and ordering the Parties to "[r]equest that the case be closed or all claims dismissed with prejudice premised upon an express representation that all plaintiffs, both named and those who have opted-in, have resolved their claims against Defendants.")

Although the Tenth Circuit Court of Appeals has not yet addressed this issue, it appears that the recent trend in the United States District Court for the District of Colorado is to require court approval of FLSA collective action settlements. *Davis v. Crilly*, 292 F. Supp. 3d 1167 (D. Colo. 2018). Thus, in an abundance of caution and in the face of uncertainty, the Parties now move the Court to review and approve the settlement agreement to fully resolve all pending claims and dismiss the current matter.

As stated above, this case principally involves wage claims under federal and state law and a set of common-law claims. *See generally* ECF Doc. 1. The claims revolve around the same set of facts, namely Defendant's classification of its franchisees and its methods, policies, and procedures in procuring and compensating franchisees. Importantly, prior to reaching an individual settlement agreement, Plaintiff Mark originally sought to pursue the claims as a hybrid collective/class action under the FLSA and Fed. R. Civ. P. 23. However, the Opt-In Plaintiffs and Defendant agree to pursue a FLSA collective action settlement to fully resolve the lawsuit and pending claims.

Thus, to effectuate the settlement and dismissal of the case, "the Parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." *Davis*, 292 F. Supp. 3d at 1170.  In order to approve the settlement, the Court must review the proposed settlement to ensure (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees.  *Id.*  If the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation.  *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016).

      A.      **The Opt-In Plaintiffs are Similarly Situated.**

As a threshold matter, the Parties note that the FLSA does not require certification. *Cazeau v. TPUSA, Inc.*, Civil No. 18-cv-00321-RJS-CMR, 2020 U.S. Dist. LEXIS 117192 at *8 (D. Utah July 2, 2020).  Rather, it requires only that the Opt-In Plaintiffs be similarly situated. *Id.*  To determine if Opt-In Plaintiffs are similarly situated, the Court considers whether: (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Davis*, 292 F. Supp. 3d at 1171.

First, all Opt-In Plaintiffs filed written notices to opt-in this action.  *See* ECF Docs. 9, 27. The Opt-In Plaintiffs consist of current and former franchise owners that were all subject to the same or substantially similar franchise agreements.  Additionally, each Opt-In Plaintiff was subject to the same policies and procedures concerning franchisee operations that Defendant instituted, such as recurring payments and disbursements.  In essence, each Opt-In Plaintiff

alleges to be part of the same scheme that allegedly withheld owed wages, misclassified them as franchisees, and made certain representations that allegedly give rise to other common-law claims. *See generally* ECF Doc. 1. Thus, the Opt-In Plaintiffs' claims, pertinent facts, and relationship with Defendant are substantially similar.

Second, Defendant's defenses apply equally to each Opt-In Plaintiff. In short, Defendant alleges that it properly classified all franchisees, and none of its policies, procedures, or methods—all applicable to the Opt-In Plaintiffs—were illegal or otherwise in violation of any state or federal law. Defendant further alleges that Opt-In Plaintiffs consented to each payment structure through the franchise agreements. Thus, there are no individualized defenses with respect to any particular Opt-In Plaintiff.

Third, fairness and procedural considerations—such as allowing Opt-In Plaintiffs to pool their resources for litigation—also show that each is similarly situated. More importantly, only these Opt-In Plaintiffs that have opted into this litigation will be affected by this settlement. In other words, this settlement does not affect the rights of any franchisees who have not already joined in this case; they may bring a separate action alleging the same claims against Defendant, regardless of this settlement. Additionally, this Motion states that the Parties agree to the settlement and jointly request approval. The Parties represent that each individual Opt-In Plaintiff was given the opportunity to review the final settlement and object and have decided to execute. For all of these reasons, the Parties request the Court find that the Opt-In Plaintiffs are similarly situated as required for settlement under the FLSA.

      **B.**      **Bona Fide Dispute in an Adversarial Context Concerning Disputed Questions of Law and Fact**

"To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Davis*, 292 F. Supp. 3d at 1172.

This case was hotly contested and litigated by the Parties in multiple courts, at one point even being appealed to the 10th Circuit Court of Appeals. The five requirements noted in *Davis* will be addressed in turn. First, as noted throughout this Motion, the Parties dispute whether Defendant properly classified the Opt-In Plaintiffs as franchisees, whether the Opt-In Plaintiffs are entitled to any unpaid "wages;" and whether Defendant acted in such a manner, through its policies and procedures, as to give rise to any common-law claims. Second, as noted earlier, Defendant operates a facilities management company that utilizes a franchise model to provide local franchisees the opportunity to start their own business utilizing Defendant's brand recognition, client base, and training. The franchisees at issue here—the Opt-In Plaintiffs that are claiming to be employees—are current or former franchise operators that executed a franchise agreement with Defendant. Third, Defendant disputes that they have not correctly paid the franchisees pursuant to the franchise agreement and in accordance with all applicable state and federal laws. Most importantly, the franchise agreements clearly delineated the relationship between the Parties and, as Defendant alleges, clearly shows that the Opt-In Plaintiffs are not owed any "wages." Fourth, the Opt-In Plaintiffs allege that Defendant exerted sufficient amount

of control over the Opt-In Plaintiffs to show that they are misclassified as franchisees and should be classified as employees.  The Opt-In Plaintiffs further allege that the relationship, and payments in comparison to the amount of work they did, further show that Defendant violated state and federal wage law, in addition to other common-law claims.  Finally, the Parties vigorously dispute the correct computation of wages owed, with the primary contention being whether wages are even owed to the Opt-In Plaintiffs.

Thus, this dispute involves a bona fide dispute between adversarial parties.  Settlement of this matter, as reflected in this Motion and by the settlement agreement was born of an adversarial process with all involved advocating for their clients.  If this matter is not settled, the Parties anticipate significant discovery, including depositions.

### C. The Settlement is Fair and Reasonable

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales.  *Davis*, 292 F. Supp. 3d at 1173 (citing *Baker v. Vail Resorts Mgmt. Co.*, Case No. 13-CV-01649-PAB-CBS, 2014 U.S. Dist. LEXIS 22812, 2014 WL 700096, at *2 (D. Colo. Feb. 24, 2014)).  When determining whether a settlement is fair and reasonable, courts weigh a number of factors, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery.  *Davis* 292 F. Supp 3d at 1173.  There is a strong presumption in favor of finding a settlement fair.  *Id.*; *see also Newberg* 4th § 13:14 (there is a presumption that settlements are

informed and non-collusive if the class is represented by experienced counsel, the settlement is the result of arms-length negotiation before an experienced mediator, and substantial discovery occurs prior to the settlement). Again, each factor will be discussed in turn.

First, there has been extensive discovery related to the issues here. Although this case has not yet reached the discovery stage, undersigned counsel each engaged in extensive fact-investigations, including, but not limited to, interviewing franchisee and/or agents of Defendant; researching claims and/or defenses that may be asserted based on the allegations, and reviewing payments and files kept by Defendant for each Opt-In Plaintiff. Further, there was extensive discovery in related litigation brought by Defendant in the United States District Court for the District of Arizona identified as *O.P.E.N. America, Inc. d/b/a OpenWorks v. Ruth, LLC and Ruth Mark*, 2:18-cv-03780 (D. Ariz.) (the "Arizona Litigation"). Specifically, many depositions were taken in the Arizona Litigation which further enhanced the Parties understanding of the relevant facts and impact on their claims and/or defenses.

Second, although this matter is in the early stages of litigation and Defendant has not yet responded to the Complaint, this case is more complex than a straightforward employee v. employer wage and hour dispute. Primarily, complexities arise in Defendant's classification of the Opt-In Plaintiffs as franchisees, which necessarily includes consideration and interpretation of the franchise agreements. Further, Opt-In Plaintiffs are pursuing various common-law claims under Colorado and Arizona law, including fraud, which further complicates the legal assessment and defenses by implicating two governing laws. Because of the complexity, and the Parties' confidence in their respective positions, this case will likely result in protracted litigation and great expense and cost for each side, unless the settlement is approved here.

Third, this settlement is devoid of fraud or collusion. This settlement is a product of arms-length negotiations that took place over the course of years (the Complaint was filed in September 2018) with numerous offers being exchanged, particularly in the last eight months. Undersigned counsel vigorously argued and negotiated the relevant facts, considerations, and risks before coming to the mutually agreeable settlement currently before the Court.

Fourth, the Parties benefited from representation by experienced counsel. Counsel on each side is well-versed in pursuing and/or defending state and federal wage law claims, and have largely built their respective practices specializing in these types of disputes. Thus, the Parties request that this Court attribute significant weight to their professional judgment and conclusion that this settlement represents a fair and reasonable resolution of this dispute.

Fifth, Defendant is confident that the Opt-In Plaintiffs have a very low probability of success if this case is decided on its merits. The franchise agreement clearly spells out the rights, responsibilities, and relationship between Defendant and the Opt-In Plaintiffs; this alone would be an incredible bar to overcome in litigation. While the Opt-In Plaintiffs dispute these arguments, they acknowledge that there are risks associated with these legal theories as applied in similar cases but believe that the facts alleged in the Complaint are sufficient to present viable claims that could lead to some degree of success on the merits. These issues would be hotly contested at trial, which would only occur after the Parties incurred significantly more litigation expense and a far more contentious and robust discovery period. Nonetheless, the Opt-In Plaintiffs' probability of success on the merits, at this time, is far from guaranteed and is one factor the Opt-In Plaintiffs assessed in reaching this fair and reasonable settlement.

Finally, the amount of the settlement, which, as noted earlier, is generally equivalent each

Opt-In Plaintiff's initial start-up fee and essentially returns the Parties to status quo. Importantly, many Opt-In Plaintiffs refused commercial cleaning accounts and did not incur significant expenses, if any, beyond the initial start-up fee. Opt-In Plaintiffs' potential recovery if not through this settlement is difficult to ascertain because there are so many variables in this matter. For example, Opt-In Plaintiffs would first need to show that they were indeed misclassified before any alleged unpaid wages could even be recovered. Further, Opt-In Plaintiffs' tort-based claims would fall into the province of the jury. As the Court is aware, juries can vary greatly in the amounts awarded under tort claims. Thus, this settlement is Opt-In Plaintiffs best route to recover and avoid protracted and risky litigation.

For the foregoing reasons, the Parties ask the Court to find that this settlement is fair and reasonable.

**D.     Attorneys' Fees**

The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b); *see, e.g., Gray v. Phillips Petrol. Co.*, 971 F.2d 591, 593 (10th Cir. 1992). Though the fee is mandatory, the Court has discretion to determine the amount and reasonableness of the fee. *Wright v. U-Let-Us Skycap Services, Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986).

Generally, the Court considers the following factors in determining the reasonableness of a fee award, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by a client or the circumstances; (8) the

amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Davis* 292 F. Supp 3d at 1174.

Here, Opt-In Plaintiffs and their counsel have agreed that counsel will waive their right to fees and reimbursement of costs. Thus, Opt-In Plaintiffs will receive all settlement funds.

Accordingly, the Parties request the Court approve of the award of attorneys' fees and expenses as set forth in the settlement agreement.

## V. CONCLUSION

**WHEREFORE**, the Parties respectfully request that the Court enter an Order:

1. Finding that the Opt-In Plaintiffs are similarly situated;

2. Approving the settlement agreement attached as Exhibit 1; and

3. Dismissing this case with prejudice.

Respectfully Submitted,

By: TOWARDS JUSTICE

s/ *Alexander Hood*
David Seligman
Alexander Hood
TOWARDS JUSTICE
1410 High Street, Suite 300
Email: david@towardsjustice.org
           alex@towardsjustice.org
*Attorneys for Opt-In Plaintiffs*

By: LEWIS BRISBOIS BISGAARD & SMITH LLP

s/ *Shawna Ruetz*
Jon Olafson
Shawna Ruetz

4829-6393-5174.9

13

> LEWIS BRISBOIS BISGAARD & SMITH LLP
> 1700 Lincoln Street, Suite 4000
> Denver, CO 80203
> Email: Jon.Olafson@lewisbrisbois.com
> Shawna.Ruetz@lewisbrisbois.com
> *Attorneys for Defendant*

## Certificate of Service

I hereby certify that on August 12, 2020 I served a true and correct copy of the forgoing on all parties that have appeared pursuant to F.R.C.P. 5.

> *s/ Shawna Ruetz*
> Shawna Ruetz